UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN individually and on behalf of all others similarly situated,

Plaintiffs,

v.

COLGATE-PALMOLIVE CO., and TOM'S OF MAINE INC.,

Defendants.

Case 1:16-cv-08364-RA

Declaration

of

**COLIN B. WEIR**

June 15, 2018

MAY REFERENCE MATERIALS DESIGNATED "CONFIDENTIAL" OR "HIGHLY

CONFIDENTIAL -- ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 15th Floor, Boston, Massachusetts 02108. ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.  I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts. I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio. I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels. I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, household appliances, herbal remedies, health/beauty care products, electronics, furniture, and computers. My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony, is attached hereto as Exhibit 1. This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition. Prior to joining ETI, I worked at Stop and Shop Supermarkets for a period of seven years, working as a cash department head, grocery/receiving clerk, and price-file maintenance head.

2.  Contained in Exhibit 1 is a list of numerous litigations in which I have participated in the design, execution and/or determination of the economic suitability of conjoint surveys, or have been found by the court to have expertise in conjoint analysis. These cases include, but are not limited to *Jones v. Nutiva; Hunter v. Nature's Way; Looper v. FCA; Sanchez-Knutson v.*



*Ford Motor Company; Belfiore v. Procter and Gamble; Kurtz v. Kimberly Clark; In re Scotts EZ Seed Litigation; In re: ConAgra Foods; Dzielak v. Whirlpool.*

3.    I received graduate level training in conjoint analysis as part of my MBA.  I take continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software.

## II.  ENGAGEMENT

4.    I provide this declaration in connection with the case filed by Anne de Lacour, Andrea Wright, and Loree Moran ("Plaintiffs") in the above-captioned action against Colgate-Palmolive Co. and Tom's of Maine Inc. ("Defendants").  I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts and opinions set forth herein.

5.    I have been advised by Counsel for Plaintiffs that individuals purchased certain Tom's of Maine brand Products[1] that were labeled as "natural" ("the Claim").[2]  I have been further advised that Plaintiffs allege that this Claim is false and misleading to reasonable consumers and therefore should not have been made.  I have been asked by Counsel for Plaintiffs to ascertain whether it would be possible to determine damages on a class-wide basis using common evidence, and if so, to provide a framework for the calculation of, and a preliminary estimate of, damages suffered by the proposed class of consumers as a result of the allegedly false and misleading Claim.

6.    ETI is being compensated at the rate of $600 per hour for my work on this case.  The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

---

[1] Tom's of Maine toothpastes and deodorants of various sizes, pack sizes, and flavors.

[2] *See, generally,* First Amended Complaint, filed January 18, 2018 ("Complaint").



7.     The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report and in Exhibit 2, attached hereto.  In addition, I have relied upon my educational background and more than 14 years of experience.

### III.  THE ALLEGED MISREPRESENTATION

8.     Plaintiffs' allegations center on Defendants' labeling of their Products as being "natural."  Plaintiffs allege that this Claim is misleading and deceptive, and therefore should not have been made.

**Product Differentiation**

9.     In economics, the concept of product differentiation can be summarized as the introduction of product attributes that allows the consumer to differentiate between otherwise similar products, with the goal of increasing sales and profits.[3]



---

[3] Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009, at 305-316, 449.

[4] COLGATETOMS00013657_CONFIDENTIAL.pptx

[5] COLGATETOMS00013657_CONFIDENTIAL.pptx



---

[6] COLGATETOMS00013657_CONFIDENTIAL.pptx

[7] COLGATETOMS00013657_CONFIDENTIAL.pptx

[8] COLGATETOMS00013164_CONFIDENTIAL.pptx

[9] COLGATETOMS00013164_CONFIDENTIAL.pptx

[10] COLGATETOMS00011738_CONFIDENTIAL.pptx



## IV. FRAMEWORK FOR DAMAGES

15.   As a threshold matter, it is my opinion that it is possible to determine class-wide damages in this case using Defendants' own available business records, third-party records, and industry resources.

16.   Below, I propose the use of conjoint analysis to calculate Price Premium Damages (wherein consumers would receive the value of the price premium they paid solely as a result of Defendants' conduct of labeling their Products with the Claim).[11]  This methodology can determine the damages for any given claim or set of claims, across any prescribed time period, and across geographic regions, given any of the possible liability scenarios that may arise in this litigation.

## V. CALCULATION OF THE PRICE PREMIUM:
## CONJOINT ANALYSIS

17.   In this litigation, price premium damages for the Class are the portion of the market price of the Products solely attributable to Defendants' misrepresentations.

18.   Conjoint analysis is a representative survey technique that permits an economist to analyze the value of various product attributes.[12]

19.   Conjoint analysis was initially developed in the 1960s as part of the marketing discipline, and continues to evolve as an economic tool.  Conjoint analysis is used to determine consumer preferences and price/attribute information for a given product.

---

[11] An alternative consumer survey based method that could be used to calculate Price Premium Damages is contingent valuation, which has a long history in litigation.

[12] Conjoint analysis as a discipline is quite broad, and can be used to facilitate many other sorts of research beyond the specific application that I discuss here.



20.   Conjoint analysis is founded on rigorous statistical and economic principles.[13] Indeed, conjoint analysis has been used in litigation contexts to calculate damages for years.[14]

21.   In a typical conjoint analysis, survey panelists are confronted with various choices of product attributes, prices, and other alternatives, and asked either to rank their preferences, or to choose the most preferred attribute or combination thereof.

22.   Through conjoint analysis, by systematically varying the attributes of the product and observing how respondents react to the resulting product profiles, one can statistically gather information about a product's various attributes.

23.   Statistical methods (including regression analysis) are then applied to the survey responses to calculate attribute value.[15]

24.   Conjoint analysis has a long history of use in industry and is widely accepted and relied upon by enterprises such as Procter & Gamble, Microsoft, General Motors, Ford, and Google.[16]   Conjoint is also widely respected by academics and is a regular part of the curriculum at universities world-wide, such as Duke, Ohio State, Northeastern, the University of South Australia, NYU, and the University of California.   Defendant Colgate itself relies upon conjoint analysis.

---

[13] *See, e.g.*, Sawtooth Software technical papers, available online at http://www.sawtoothsoftware.com/support/technical-papers; *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013) http://www.analysisgroup.com/assessing_false_advertising_claims.aspx

[14] *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*; *See, e.g., Khoday v. Symantec Corp.*, No. 11-180 (JRT/TNL), (2014 WL 1281600, at *10 (D. Minn. March 13, 2014); *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015); *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014);   *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014);   *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).

[15] *See, e.g., Getting Started With Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2014 ("Getting Started With Conjoint").

[16] *Id.*



25.   Conjoint analysis can, and indeed has, been used to analyze the value and importance of product claims, such as the "natural" Claim.  One recent study used conjoint analysis to determine "whether health claims (claims of health-promoting effects) of food products positively influence product price and consumer choices."[17]  Prior to conducting the conjoint survey, the study finds that "[i]n general, consumers consider health and wholesomeness as important aspects of food quality."  The study then uses choice-based conjoint analysis to measure the effects of various product attributes on the price of a single product, green tea.  The study examines only four product attributes: health claim, country of origin, the size of the product, and price.  The study finds that the health claim on green tea is a positive, statistically significant purchase driver, and results in a price premium of approximately 20%.

26.   In light of proposed FDA standardized front-of-pack nutrition labeling standards, another study sought "to estimate the relative contribution of declared amounts of different nutrients to the perception of the overall 'healthfulness' of foods by the consumer."[18]  The study determined that claims such as "this product has no saturated fat," "this product is fat free," and "this product is low in total fat" were among the 22 most important nutrient content claims.  The study concludes that "Conjoint analysis can lead to a better understanding of how consumers process information about the full nutrition profile of a product, and is a powerful tool for the testing of nutrient content claims."

27.   An application of conjoint analysis to orange juice was used to evaluate which attributes of orange juice consumers value most.  Results of the study showed that vitamin C

---

[17] *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013.

[18] *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al.*, Public Health Nutrition: 13(5), 688–694.



content was the most important purchase driver besides price, and the minimum price premium for vitamin C was approximately 17%.[19]

28. The use of conjoint analysis in similar applications is too extensive to document exhaustively here.

29. Conjoint analysis, as a survey tool, does not rely on an existing data set for its analysis because it relies on data generated through the survey process. Common conjoint analysis software would permit the administration of a representative sample survey, and the analysis of the results therefrom.

30. No individualized analyses, or Class-Member-specific inquiry will be required. All relevant data needed to complete the conjoint analysis will be Class-wide, common evidence.

**Price Premium: The Dennis Conjoint Survey**

31. I have been provided with, and have reviewed, a copy of the Declaration and Expert Report of J. Michael Dennis, Ph.D. dated June 15, 2018 ("Dennis Declaration"). Dr. Dennis is Senior Vice President at NORC in Chicago, IL and is a recognized expert in the design and implementation of online consumer statistical surveys with more than 20 years experience conducting such surveys at leading institutions.[20]

32. I worked with Dr. Dennis to develop parts of the survey.

33. Among other things, the Dennis Report discusses the process by which Dr. Dennis conducted a preliminary conjoint analysis and market simulation of Tom's of Maine Products with the Claim ("Dennis Survey"). I have also been provided with the results of that conjoint survey, which generally indicate that purchasers overwhelmingly prefer Tom's of Maine Products with the Claim as opposed to the Products without the Claim, and that units of Tom's of

---

[19] *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013):57-65.

[20] Dennis Declaration at 1-2.



Maine Products labeled with the Claim carry a price premium stemming solely from the labeling and sale of those units with the Claim.

34. The survey data contain the results of 1,000 completed responses to the survey.[21] These respondents are representative of the Class, the results of the survey are projectable to the class, and the results of the survey provide a reliable and accurate measurement of the market price premium solely attributable to the challenged Claim used by Tom's of Maine on their Toothpaste Products.[22]

35. The Dennis Report concludes that Tom's of Maine purchasers paid a price premium for the Products as a result of the Claim.[23] Dr. Dennis sets forth this price premium in his Report.[24]

36. As discussed below, the results of this survey may be used as an input in my Price Premium Damages calculation.

37. I have relied on conjoint surveys, and the work of Dr. Dennis, to determine damages in other litigations.[25]

**Supply-Side Considerations**

38. I understand that Dr. Dennis considered and accounted for supply-side factors in the determination of his price premium calculation.[26]

---

[21] *Id.*, at 21, 26.

[22] *Id.*, at 6, 9, 26, and 27.

[23] *Id.*, at 25-27.

[24] *Id.*

[25] *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574 (E.D. Cal. Apr. 27, 2015).

[26] Dennis Declaration, at 7, 13-14, and 24-25.



39.  I have also considered supply-side factors in my determination of damages.  First, unlike in a Lanham Act or intellectual property litigation where a but-for quantity of sales may need to be determined, in this litigation, the historic number of units sold is a fact and, in this litigation, it would be antithetical to the concept of class definition to suggest that the quantity supplied be anything other than the actual number of units sold by Defendants.

40.  Furthermore, as is borne out in the Dennis Survey, if one were to assume, *arguendo*, that Defendants would not have lowered their price in concert with demand (indicating that Defendants priced above the market clearing price), then the economic outcome would be that many or all of the purchases would not have take place at all.  As such, the price premium developed by Dr. Dennis are inherently conservative measures.

41.  It is also an economic perversion for a defendant engaged in a litigation (with an obvious conflict of interest) to simply state that it would never have adjusted its prices or would not have adjusted them enough so as to meet demand, and therefore damages should be set at zero or something less than actual economic damages.  If that were permitted, any defendant could simply postulate its way out of economic damages.

42.  I worked closely with Dr. Dennis to ensure that his survey was appropriately designed to measure the true market value of the price premium attributable to the Claim.

43.  Dr. Dennis and I had several discussions concerning the design of his survey where I provided input based upon economic concepts, and real-world retail sales and market data.  We also had several discussions concerning the results of his survey and how they should be interpreted and applied.

44.  One of the most important and most frequent topics of discussion between Dr. Dennis and myself was the data on actual sales of the Products in the real-world marketplace.  These real-world transactions occurred at prices that *already* reflect the supply-side factors then extant in the marketplace.  I understand that Dr. Dennis relied upon these historical data in setting the prices used in his conjoint survey.  We also discussed that variability in pricing both



at the wholesale and retail level showed that Defendants' and retailers' pricing was responsive to changing market forces.

45.   Another important supply-side factor that Dr. Dennis and I discussed was the fact that the quantity of the Products supplied is a known quantity, and fixed as a matter of history.

46.   Another important supply-side factor that Dr. Dennis and I discussed was the fact that, as I have discussed above, both Defendants and retailers varied their wholesale and retail prices (respectively) in response to their own business needs and changing market conditions. We discussed that Defendants do not control the retail price paid by consumers.

47.   Another important supply-side factor that Dr. Dennis and I discussed was the fact that, as I discuss below, the market for the Products was an "ordinary" market, subject to competitive pressures that both Defendants and retailers identified as risks to their business.

48.   Many major grocery retailers identify a willingness to adjust prices in response to changing economic conditions and consumer preferences.

- Kroger:

**COMPETITIVE ENVIRONMENT**

The operating environment for the food retailing industry continues to be characterized by intense price competition, aggressive expansion, increasing fragmentation of retail and online formats, entry of non-traditional competitors and market consolidation.  We have developed a strategic plan that we believe provides a balanced approach that will enable us to meet the wide-ranging needs and expectations of our customers in this challenging economic environment.  However, the nature and extent to which our competitors implement various pricing and promotional activities in response to increasing competition, including our execution of our strategic plan, and our response to these competitive actions, can adversely affect our profitability.  Our profitability and growth have been, and could continue to be, adversely affected by changes in the overall economic environment that affect consumer spending, including discretionary spending.[27]

- Publix:

---

[27] The Kroger Co. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.



***Increased competition and low profit margins could adversely affect the Company.***

The retail food industry in which the Company operates is highly competitive with low profit margins. The Company's competitors include national and regional supermarket chains, independent supermarkets, supercenters, membership warehouse clubs, mass merchandisers, dollar stores, drug stores, specialty food stores, restaurants, convenience stores and online retailers. The Company's ability to attract and retain customers is based primarily on quality of goods and service, price, convenience, product mix and store location.

As a result of the highly competitive environment, traditional supermarkets, including the Company, face business challenges. There has been a trend in recent years for traditional supermarkets to lose market share to nontraditional competitors. The Company's ability to retain its customers depends on its ability to meet the business challenges created by this highly competitive environment. There can be no assurance that the Company will be able to meet these challenges. In addition, the Company believes it will face increased competition in the future from existing and potentially new competitors and its financial condition and results of operations could be impacted by the pricing, purchasing, advertising or promotional decisions made by its competitors as well as competitor format innovation and location additions.[28]

- Safeway:

***Competitive Industry Conditions***

We face strong competition from traditional grocery retailers, non-traditional competitors such as supercenters and club stores, as well as from specialty and niche supermarkets, drug stores, dollar stores, convenience stores and restaurants. Increased competition may have an adverse effect on profitability as the result of lower sales, lower gross profits and/or greater operating costs.

Our ability to attract customers is dependent, in large part, upon a combination of location, quality, price, service, selection and condition of assets. In each of these areas, traditional and non-traditional competitors compete with us and may successfully attract our customers to their stores by aggressively matching or exceeding what we offer. In recent years, many of our competitors have increased their presence in our markets. Our responses to competitive pressure, such as additional promotions and increased advertising, could adversely affect our profitability. We cannot guarantee that our actions will succeed in gaining or maintaining market share. Additionally, we cannot

---

[28] Publix Super Markets, Inc. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.


ECONOMICS AND
TECHNOLOGY, INC.

predict how our customers will react to the entrance of certain non-traditional competitors into the grocery retailing business.

Because we face intense competition, we need to anticipate and respond to changing consumer demands more effectively than our competitors. We strive to achieve and maintain favorable recognition of our unique private-label brands, effectively market our products to consumers, competitively price our products and maintain and enhance a perception of value for consumers. Finally, we need to source and market our merchandise efficiently and creatively. Failure to accomplish these objectives could impair our ability to compete successfully and adversely affect our growth and profitability.[29]

- SuperValu:

**Competition**

Wholesale and Retail each operate in a highly competitive environment.

Wholesale competes directly with a number of traditional and specialty grocery wholesalers and retailers that maintain or develop self-distribution systems. Supervalu believes it competes in this business on the basis of price, quality, assortment, schedule and reliability of deliveries and services, service fees and distribution facility locations.

Principal competition for Supervalu's Retail segment comes from traditional grocery retailers, including regional and national chains and independent grocery store operators, and non-traditional retailers, such as supercenters, membership warehouse clubs, specialty supermarkets, hard discount stores, dollar stores, online retailers, convenience stores, drug stores and restaurants. Supervalu's ability to differentiate itself from its competitors and create an attractive value proposition for its customers is dependent upon a combination of price, quality, customer service, convenience, e-commerce offerings, assortment, in-stock levels, brand perception, store location and conditions, in-store marketing and merchandising and promotional strategies.

Supervalu believes that the success of its Wholesale and Retail segments is dependent upon the ability of its own stores, as well as the stores of wholesale customers it supplies, to compete successfully. Supervalu also competes to attract and maintain licensed and franchised operators to operate stores to which it provides wholesale distribution and services. This competition generally takes the form of alternative investment formats, such as a potential

---

[29] Safeway Inc. 2015 10-K Annual Report filed with the US Securities and Exchange Commission.



or existing licensee's investment in fast food restaurants, dollar stores, specialty supermarkets, drug stores and other potential investments.

Recent and ongoing consolidation within the grocery industry has resulted in, and is expected to continue to result in, increased competition, including from some competitors that have greater financial, marketing and other resources than Supervalu.[...]

**Supervalu faces intense competition.**

The grocery business is intensely competitive, and the recent and ongoing consolidation within the grocery industry is expected to result in increased competition, including from some competitors that have greater financial, marketing and other resources than Supervalu. The grocery industry is characterized by relatively small operating margins, and as competition in certain areas intensifies and as the industry continues to consolidate, Supervalu's results of operations may be negatively impacted through a loss of sales and reductions in gross margins. See "Business—Competition" for a discussion of the competitive environment.

If Supervalu is unable to appropriately respond to competition and execute on its initiatives to improve the competitive position or profitability of Supervalu, and differentiate Supervalu's offerings, Supervalu's sales, financial condition and results of operations may be adversely affected.[...]

**Competitive Environment**

The United States grocery business is highly competitive and management expects operating results will continue to be impacted by the effects of operating in a highly competitive and price-sensitive marketplace. In fiscal 2017, Supervalu's Retail segment was impacted to a greater degree than anticipated by price competition, competitive store openings and a challenging sales and operating environment. This environment contributed to lower sales from identical retail stores, which impacted gross profit and operating earnings. These factors affecting the Retail segment are expected to impact fiscal 2018 as well.[30]

- Ahold Delhaize (Stop & Shop):

  **Competitive environment and economic conditions (S)**

---

[30] SuperValu Inc. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.



> Changes to the competitive landscape and a weak macroeconomic climate
> without appropriate response could threaten Ahold Delhaize's ability to
> achieve its strategic objectives
>
> Key risk Drivers
>
> • Consumer value perception (price, assortment, quality)
>
> • Changing customer behavior (e.g., online shopping) and competition
>
> • Lack of distinctiveness
>
> • Consumer purchasing power under pressure
>
> • Inflationary forces impacting cost of goods sold
>
> • Pressure on margin[31]

49.  In addition to these factors that influenced Dr. Dennis' survey design, after the completion of the survey, the results were calculated using Hierarchical Bayes regression.[32]  The use of Hierarchical Bayes regression provides for, amongst other factors, the ability to estimate better market-level results from a conjoint survey.

50.  The proper use of supply-side factors, individually or in combination, as I have discussed above, permits the Dennis Survey to estimate a marketplace outcome -- the price premium that prevailed due to Defendants' use of the "natural" Claim.

**Dennis Survey Results**

51.  Based upon my observation that retail pricing of the Products fluctuated during the relevant time period, I advised Dr. Dennis that the price premium solely attributable to the Claim should be calculated as a percentage of the total price of the Products to be applicable to the various retail price points in the marketplace.  Dr. Dennis did so on a preliminary basis using a

---

[31] Ahold Delhaize Annual Report 2016.

[32] Dennis Declaration, at 23-24.



conjoint survey that took into account actual marketplace prices and other supply-side considerations and therefore is able to measure marketplace outcomes, and calculated the following price premium.

52.  As a proof of concept, Dr. Dennis calculated the price premium arising from the Claim in this litigation on a preliminary basis.  The results of these calculations are shown below.

**Price Premium Solely Attributable to the "Natural" Claim on Tom's of Maine Toothpastes**

| No. Respondents | Price Premium / Product Price | Price Premium Percent |
|---|---|---|
|  |  |  |

53.  As noted above, Dr. Dennis concludes that this price premium applies to every sale of the Products, to every Class Member, and the class period, respectively.  Consumers do not negotiate the price of the Products in one-off transactions.  The prices are set by the market, by the aggregate effects of all of the factors affecting supply and demand.  Just as a rising tide lifts all boats, a reduction in demand reduces prices market-wide.  This is why the price premium percentage calculated by Dr. Dennis applies to all Class Members market-wide regardless of the absolute price they paid, and regardless of any individual Class Member's subjective valuation of the Products.

54.  Unlike certain food products, for which the term "natural" could potentially have multiple interpretations, Dr. Dennis has confirmed that, for Tom's of Maine Products, there is only one interpretation of "natural" and that reasonable consumers "interpret the product labels in terms of whether or not the toothpaste contains artificial ingredients or contains only natural ingredients that are not artificial."[33,34]

---

[33] Dennis Declaration, at 20-21.

[34] Although I do not believe it is economically appropriate given Dennis' findings, I note that if the court were to so require, I would use the method to isolate any alternate interpretations of the term "natural" that was proposed by


ECONOMICS AND
TECHNOLOGY, INC.

## VI.  TOTAL SALES OF THE PRODUCTS

55.  I have been provided with myriad sales data, as described below.



57.  I have summarized the unit and dollar sales of the Products below in Tables 1 and 2.

_____

[The remainder of this page is intentionally left blank]

---

Elizabeth Howlett and myself in the *In re ConAgra Foods* case, which I hereby incorporate by reference.  That method calls for an additional step of conjoint research to subdivide the total value of the "natural" claim into its alleged subcomponent parts.

[35] COLGATETOMS00004908_CONFIDENTIAL.xlsx.


ECONOMICS AND
TECHNOLOGY, INC.

| ██████ | | |
|---|---|---|
| ███████████ | ██████ | ██████ |
| █████████ | █████ | █████ |
| ███████ | █████ | █████ |
| █████████ | █████ | ██████ |
| ███████████ | █████ | ███████ |
| █████████ | ███ | █████ |
| ███ | █████ | █████ |
| ██████ | █████ | █████ |
| ████ | █████ | █████ |
| ████████ | █████ | ███████ |
| ████ | █████ | █████ |
| ███████████ | █████ | █████ |
| ██████ | █████ | ██████ |
| ██████ | █████ | █████ |
| ████████ | █████ | █████ |
| ███████ | █████ | ███████ |

Source(s): COLGATETOMS00004908_CONFIDENTIAL.xlsx.

---

[The remainder of this page is intentionally left blank]



| ███████████ | ████████ | ████████ |
|---|---|---|
| ████████ | ████ | ████ |
| ████████ | ███ | ████ |
| ██████ | ███ | ████ |
| █████████ | ███ | █████ |
| █████████ | █████ | █████ |
| █████████ | ███ | ██ |
| ██ | ███ | █████ |
| █████ | ███ | █████ |
| ███ | ███ | █████ |
| ██████ | █████ | █████ |
| ███ | ███ | █████ |
| ██████████ | █████ | █████ |
| ██████ | █████ | ██████ |
| █████ | █████ | █████ |
| ██████ | ███ | █████ |
| ██████ | █████ | █████ |

Source(s): COLGATETOMS00004908_CONFIDENTIAL.xlsx.

---

[The remainder of this page is intentionally left blank]



## VII.  CALCULATION OF PRICE PREMIUM

## DAMAGES

58.  This litigation calls for a Price Premium damages calculation:

- Price Premium Damages -- wherein consumers would receive the difference between the market value (purchase price) of the Products (with the Claim) and the market value of the Products (without the Claim), at the time and point of sale

**Price Premium Damages**

59.  After completing all of the work as discussed above, the final calculation of total price premium damages in this litigation will be as follows.

60.  With the price difference due to the Claim determined on a percentage basis, the calculation of class-wide damages for any Product will be:

$$\%Price\ Premium\ Factor: Claim \times \$Units\ Sold\ = Damages$$

61.  This calculation can be performed on a class-wide basis, Nationwide or across different geographies, and for any defined time period, including the proposed Class Period(s) in this litigation.

62.  I have summarized the results of these preliminary calculations for Toothpaste Products in Table 3 below.

_____

[The remainder of this page is intentionally left blank]





Source(s): COLGATETOMS00004908_CONFIDENTIAL.xlsx.

63.  Price Premium damages for the Tom's of Maine Deodorant Products can be calculated in the same manner using the same techniques.

## VIII.  STATUTORY DAMAGES

64.  In addition to the above damage calculations for the Class, I have been advised by Counsel for Plaintiffs that several statutory nuances must be considered for New York consumers.  I have been advised that New York GBL § 349 provides for statutory damages of $50 per violation.  I have been advised that New York GBL § 350 provides for statutory damages of $500 per violation.



66.  Table 4 below sets forth the calculations of Statutory Damages.



| | | | |
|---|---|---|---|
| ███ | ███ | █ | ████ |
| ███ | ███ | █ | ████ |
| █████ | ███ | █████ | ████ |

Source(s): COLGATETOMS00004908_CONFIDENTIAL.xlsx.

## IX. RESERVATION OF RIGHTS

67. My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial. I therefore reserve the right to amend or modify my testimony.

### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Tisbury, Massachusetts, this 15th day of June, 2018.

Colin B. Weir



**Exhibit 1**

**Statement of Qualifications**
**of**

**COLIN B. WEIR**

# Statement of Qualifications

## COLIN B. WEIR

Colin B. Weir is Vice President at Economics and Technology, Inc. Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis. Such analysis often involves analysis of databases, call detail records, and other voluminous business records. Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software. Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations. Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels. Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue, Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation, Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University. He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND
TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.


Mr. Weir has submitted the following testimony:

**United States District Court Northern District of California, San Francisco Division,** *In re: Chrysler-Dodge-Jeep EcoDiesel® Marketing, Sales Practices, and Products Liability Litigation Dorun Bali, et al., v. Fiat Chrysler Automobiles N.V., FCA US LLC, Sergio Marchionne, VM Motori S.p.A., VM North America, Inc., Robert Bosch GmbH, Robert Bosch LLC, and Volkmar Denner*, Case No. MDL 2777-EMC, on behalf of Lieff Cabraser Heimann & Bernstein, Declaration submitted on June 6, 2018.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted April 30, 2018, Deposition on May 31, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East, Sarah LaVergne, Tony And Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William Ferguson and Cheryl Ferguson, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 1:15-cv-09882-JZL, on behalf of Greg Coleman Law, Declaration submitted April 20, 2018.

**United States District Court for the Northern District of California,** *Jackie Fitzhenry-Russell, an individual, on behalf of herself, the general public and those similarly situated v. The Coca Cola Company, and Does 1-50*, Case No. 5:17-CV-00603-EJD, on behalf of Gutride Safier, LLP, Declaration submitted April 16, 2018.

**United States District Court for the Southern District of New York,** *Josephine James Edwards, individually and on behalf of all others similarly situated, v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT, on behalf of Bursor & Fisher, P.A., Declaration submitted April 16, 2018; Deposition on June 7, 2018.

**United States District Court, Northern District of California,** *Jackie Fitzhenry-Russell, Robin Dale, and Gegham Margaryan, as individuals, on behalf of themselves, the general public and those similarly situated, v. Dr. Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., and Does 1-50,* Case No. 5:17-cv-00564-NC (lead); Case No. 5:17-cv-02341-NC (consolidated); Case No. 5:17-cv-04435-NC (consolidated), on behalf of Gutride Safier, LLP, Declaration submitted April 9, 2018; Deposition on April 19, 2018; Reply Declaration submitted June 6, 2018.



**United States District Court for the Western District of Texas, Austin Division,** *Sylvia Morris, on behalf of herself and all others similarly situated, v. Modernize Inc.*, Case No. 17:-cv-963-SS, on behalf of Bursor & Fisher, P.A., Declaration submitted March 13, 2018; Deposition on June 14, 2018.

**United States District Court, Northern District of California, San Jose Division,** *In re: Arris Cable Modem Consumer Litigation*, Case No. 17-cv-1834-LHK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on March 9, 2018; Reply Declaration submitted April 9, 2018; Deposition on April 11, 2018; Declaration submitted June 13, 2018.

**United States District Court, Southern District of New York,** *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR, on behalf of Levi & Korsinsky LLP, Declaration submitted on March 5, 2018.

**United States District Court, Eastern District of Michigan,** *Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome And Mary Ellen Thome, V. Whirlpool Corporation,* Case No. 16-cv-12409-SJM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted February 12, 2018; Deposition on May 15, 2018; Reply Declaration submitted May 17, 2018.

**United States District Court, Southern District of California,** *Jose Conde, et al., v. Sensa, et al.*, Case No. 14-cv-51 JLS (WVG), on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018.

**United States District Court, Northern District Of Illinois, Eastern Division,** *Angel Bakov, Julie Herrera, and Kinaya Hewlett, individually and on behalf of all others similarly situated, v.Consolidated World Travel, Inc. d/b/a Holiday Cruise Line, a Florida corporation,* Case No. 15-cv-02980-HDL SEC, on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2017; Deposition on April 25, 2018.

**United States District Court, Northern District of Illinois,** *Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly, Individually and on Behalf of All Others Similarly Situated, v. CVS Pharmacy, Inc., Target Corporation, Walgreen Co., Wal-Mart Stores, Inc., and Fruit of the Earth, Inc.*, Case No. 1:16-cv-06103, on behalf of Greg Coleman Law, Declaration submitted December 22, 2017; Reply Declaration on May 4, 2018.

**United States District Court, Southern District of New York,** *Jaish Markos, individually and on behalf of all others similarly situated, v. Russell Brands, LLC*, Case No. 16-CV-04362(CS), on behalf of The Sultzer Law Group, Declaration submitted on December 1, 2017, Deposition on January 4, 2018.



**United States District Court, Northern District of California,** *Siera Strumlauf, Benjamin Robles, and Brittany Crittenden, individually and on behalf of all others similarly situated, v. Starbucks Corporation,* Case No. 16-CV-01306-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 31, 2017, Deposition on December 13, 2017.

**United States District Court, Southern District of California,** *Sheila Dashnaw, William Meier, and Sherryl Jones, individually, and on behalf of all others similarly situated, v. New Balance Athletics, Inc., a corporation; and DOES 1 through 50, inclusive,* Case No. 3:17-cv-00159-L-JLB, on Behalf of The Wand Law Firm, Declaration submitted on September 8, 2017; Deposition on October 5, 2017; Rebuttal Declaration submitted December 11, 2017.

**United States District Court, Central District of California,** *Veronica Brenner, on behalf of herself and all others similarly situated, v. Procter & Gamble Co.,* Case No. 8:16-1093-JLS-JCG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 5, 2017; Deposition on October 10, 2016.

**United States District Court, Eastern District of California,** *Joann Martinelli, individually and on behalf of all others similarly situated, v. Johnson & Johnson And McNeil Nutritionals, LLC,* Case No. 2:15-cv-01733-MCE-DB, on behalf of Bursor & Fisher, P.A., Declaration submitted August 28, 2017, Deposition on December 20, 2017; Reply Declaration submitted on January 5, 2018.

**United States District Court, Northern District of California, San Francisco Division,** *Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, Individually and on Behalf of All Others Similarly Situated, v. Chipotle Mexican Grill, Inc.,* Case No. 3:16-cv-02200-HSG, on behalf of Kaplan Fox & Kilsheimer LLP, Declaration submitted August 11, 2017; Deposition on September 22, 2017.

**United States District Court, Southern District of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation,* Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017, Deposition on November 29, 2017.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.,* Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates,* Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017, Declaration submitted August 25, 2017, Declaration submitted on October 16, 2017.



**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation,* Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted May 9, 2016; Deposition on August 23, 2017; Reply Declaration submitted January 12, 2018; Reply Declaration submitted March 2, 2018.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company*, Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017; Reply Declaration submitted on October 2, 2017; Reply Declaration submitted on October 6, 2017; Declaration submitted on March 23, 2018.

**United States District Court, Southern District of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.

**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC*, Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017; Deposition on January 10, 2018; Supplemental Declaration submitted January 30, 2018; Declaration submitted on March 2, 2018; Supplemental Declaration submitted on March 30, 2018.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017.

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

ECONOMICS AND
TECHNOLOGY, INC.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50*, Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.

**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.*, Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017; Deposition on July 14, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company*, Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation*, Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017, Deposition on August 15, 2017, Rebuttal Declaration on March 20, 2018.

**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 26, 2016; Reply Declaration submitted October 14, 2016; Deposition on October 27, 2016; Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.

**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted September 1, 2016; Declaration submitted October 3, 2016; Deposition on November 4, 2016; Declaration submitted on January 5, 2017.

**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Declaration submitted August 8, 2016; Supplemental Declaration submitted January 22, 2018.

**United States District Court, Central District of California, Eastern Division,** *Jeff Looper, Michael Bright, Scott Johnson, individuals on behalf of themselves and all others similarly situated, v. FCA US LLC, f/k/a Chrysler Group LLC, a Delaware limited liability company, and DOES 1-100 inclusive*, Case No. 14-cv-00700-VAP-DTB, on behalf of Gibbs Law Group, LLP; Declaration submitted August 7, 2016; Deposition on September 29, 2016.

**United States District Court, Eastern District of California,** *Chad Herron, individually, on behalf of himself and all others similarly situation, v. Best Buy Stores, LP, a Virginia limited partnership*, Case No. 12-cv-02103-TLN-CKD, on behalf of Stonebarger Law, A Professional Corporation; Declaration submitted June 24, 2016; Deposition on July 29, 2016; Supplemental Declaration submitted September 8, 2016.

**United States District Court for the Southern District of Florida,** *Angela Sanchez-Knutson v. Ford Motor Company*, Case No. 14:61344-CIV DIMITROULEAS, on behalf of Kelley Uustal Trial Attorneys; Deposition on June 1, 2016.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Declaration submitted April 29, 2016; Deposition on July 13, 2016; Reply Declaration submitted on May 2, 2017; Declaration submitted on October 2, 2016; Reply Declaration submitted on December 14, 2017.

**United States District Court, District of New Jersey,** *In re: AZEK Decking Marketing & Sales Practices Litigation*, Case No. 12-cv-06627-MCA-MAH, on behalf of Seeger Weiss, LLP; Declaration submitted February 26, 2016; Declaration submitted May 16, 2016; Deposition on July 6, 2016; Reply Declaration submitted August 29, 2016.

**United States District Court. Northern District of California,** *In re: Nest Labs Litigation*, Case No. 5:14-cv-01363-BLF, on behalf of Bursor & Fisher, P.A.; Declaration submitted on January 22, 2016; Deposition on March 2, 2016; Reply Declaration submitted on June 3, 2016.

**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on January 19, 2016; Deposition on February 24, 2016; Reply Declaration submitted on May 10, 2016; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.

**United States District Court, Northern District of Ohio, Eastern Division,** *Christopher Meta, On Behalf Of Himself And All Others Similarly Situated v. Target Corporation, et al.*, Case No. 4:14-0832-DCN, on behalf of Tycko & Zavareei, LLP, Declaration submitted January 6, 2016; Deposition on March 15, 2016; Reply Declaration submitted on March 18, 2016.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.,* Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Declaration submitted December 28, 2015; Deposition on April 22, 2016; Rebuttal Declaration submitted June 10, 2016.

**United States District Court, District of New Jersey,** *In re: Tropicana Orange Juice Marketing and Sales Practices Litigation,* Case No. 12-cv-7382-WJM-JBC, on behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC.; Declaration submitted on November 6, 2015; Deposition on January 28, 2016.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.,* Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Declaration submitted on October 29, 2015; Deposition on December 21, 2015; Reply Declaration submitted on April 3, 2017.

**United States District Court, Eastern District Of New York,** *Patrick Hughes and Nafisé Nina Hodjat, individually and on behalf of others similarly situated, v. The Ester C Company; NBTY, Inc.; and Naturesmart, LLC*, Case No. 12-cv-00041-JFB-ETB, on behalf of Reese LLP and WhatleyKallas LLP; Declaration submitted October 22, 2015; Deposition on December 1, 2015; Reply Declaration submitted on January 28, 2016; Surrebuttal Declaration submitted on April 20, 2016; oral testimony and cross examination on September 20, 2016.

**United States District Court, District Of Connecticut,** *Glen Grayson, and Doreen Mazzanti, individually and on behalf of themselves and all others similarly situated, v. General Electric Company*, Case No. 3:13-cv-01799-WWE, on behalf of Izard Nobel LLP; Declaration submitted October 15, 2015; Deposition on November 17, 2015; Rebuttal Declaration submitted March 23, 2016.

**United States District Court, District of New Jersey,** *Lynne Avram, on behalf of herself and all others similarly situated, v. Samsung Electronics America Inc., and Lowe's Home Centers, Inc.*, Case No. 11-cv-6973-KM-MCA, on behalf of Faruqi & Faruqi LLP; Declaration filed July 15, 2015; Deposition September 29, 2015.

**United States District Court, District of Connecticut,** *Heidi Langan, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 3:13-cv-01471-RNC, on behalf of Izard Nobel LLP; Declaration filed June 23, 2015; Deposition on July 21, 2015; Reply Declaration filed October 15, 2015.

**United States District Court, Eastern District of California,** *Yesenia Melgar, on behalf of herself and all others similarly situated, v. Zicam LLC, and Matrixx Initiatives, Inc.*, Case No. 2:14-cv-00160-MCE-AC, on behalf of Bursor & Fisher, PA; Declaration filed June 8, 2015.



**United States District Court, Central District of California, Eastern Division-Riverside** *Michael J. Otto, individually, and on behalf of other members of the general public similarly situated, v. Abbott Laboratories, Inc.*, Case No. 12-01411-SVW(DTBx), on behalf of Baron & Budd; Declaration filed May 25, 2015; Deposition on June 2, 2015; Supplemental Declaration filed July 6, 2015.

**United States District Court, Central District of California,** *Russell Minoru Ono, individually and on behalf of others similarly situated, v. Head Racquet Sports USA, a corp. and Head USA Inc.*, Case No. 13-04222-FMO, on behalf of Baron & Budd; Declaration filed April 24, 2015, Deposition on June 30, 2015; Reply Declaration filed July 2, 2015.

**United States District Court, Southern District of Florida,** *Vanessa Lombardo, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies and Neutrogena Corporation*, Case No. 13-60536-SCOLA, on behalf of Morgan & Morgan; Declaration filed March 31, 2015.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed March 27, 2015.

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of Wolf Popper LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed April 30, 2015.

**United States District Court, Northern District of California,** *Patrick Hendricks, individually and on behalf of all others similarly situated, v. StarKist Co.*, Case No. 13-0729-YGR, on behalf of Bursor & Fisher, PA; Declaration filed January 20, 2015; Deposition on February 10, 2015; Reply Declaration filed April 7, 2015.

**United States District Court, Northern District of California, San Francisco Division,** *Scott Miller and Steve Leyton, individually and on behalf themselves, the general public and those similarly situated v. Ghirardelli Chocolate Company*, Case No. 12-04936-LB, on behalf of Gutride Safier LLP, Declaration filed January 8, 2015; Reply Declaration filed February 5, 2015.

**United States Bankruptcy Court, Eastern District of New York,** *In re: Kangadis Food Inc., d/b/a The Gourmet Factory, Debtor*, Case No. 14-72649-REG, on behalf of Bursor & Fisher, PA; Declaration filed August 5th, 2014; Oral testimony on November 24, 2014.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Family Management LLC, Aristidia Kangadis a/k/a "Mr. Aris," Andromahi Kangadis a/k/a "Mrs. Mahi," and Themis Kangadis*, Case No. 14-cv-1324-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 5, 2014; Deposition on October 9, 2014.



**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration filed August 11, 2014; Deposition on September 30, 2014.

**United States District Court, Eastern District of California,** *Kyle Dei Rossi and Mark Linthicum, on behalf of themselves and those similarly situated, v. Whirlpool Corporation*, Case No. 12-cv-00125-TLN-CKD, on behalf of Bursor & Fisher, P.A.; Declaration filed July 31, 2014, Deposition on August 20, 2014.

**United States District Court, Northern District of Illinois, Eastern Division,** *In re: Southwest Airlines Voucher Litigation.*, Case No. 11-cv-8176, Hon. Matthew Kennelly, on behalf of Siprut PC; Declaration filed June 4, 2014; Oral testimony and cross examination on June 16, 2014.

**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration filed May 5, 2014; Deposition on May 23, 2014; Declaration filed June 30, 2014; Declaration filed September 8, 2014; Deposition on September 16, 2014, Declaration filed October 27, 2014.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration filed March 31, 2014; Deposition on May 21, 2014; Declaration filed on January 8, 2016; Deposition on February 10, 2016; Reply Declaration submitted June 30, 2016; Declaration submitted September 1, 2016; Declaration submitted on October 20, 2016.

**United States District Court, Central District of California,** *Julie Fagan, Michael Fagan, Melissa Pennalatore, Amy Sapeika and Shelley Trinchero, individually and on behalf of all others similarly situated v. Neutrogena Corporation*, Case No. 13-cv-01316-SVW, on behalf of Izard Nobel LLP; Declaration filed March 21, 2014; Deposition on April 3, 2014; Supplemental Declaration filed August 4, 2014; Deposition on August 13, 2014; Declaration filed September 9, 2014.

**United States District Court, Central District of California,** *Enzo Forcellati and Lisa Roemmich, individually and on behalf of all others similarly situated v. Hyland's Inc., Standard Homeopathic Laboratories, Inc. and Standard Homeopathic Company*, Case No. 12-cv-01983-GHK, on behalf of Faruqi and Faruqi; Declaration filed December 13, 2013; Deposition on February 27, 2014.

**United States District Court, Southern District of Florida,** *Adam Karhu, on behalf of himself and all others similarly situated, v. Vital Pharmaceuticals, Inc., d/b/a VPX Sports*, Case No. 13-cv-60768-JIC, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed December 13, 2013; Declaration filed January 6, 2014; Declaration filed March 31, 2014.

**Trial Court of Massachusetts, District of Edgartown,** *Schepici v. JetBlue Airways Corp.,* on behalf of plaintiff; Mediation on December 4, 2013.



**Superior Court of California, County of Alameda,** *In re: Cellphone Termination Fee Cases, Ramzy Ayyad, et al, v. Sprint Spectrum, L.P.,* JCCP No. 4332, Case No. RG03-121510, on behalf of the Executive Committee; Declaration filed September 18, 2013.

**United States District Court, Northern District of California,** *Maria Torres, Gabriel Rojas, and Ian Kerner, individually and on behalf of all others similarly situated v. JC Penney Corporation, Inc.; and JC Penney Company, Inc.,*, Case No. cv-12-01105-RS, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration filed September 13, 2013; Deposition on October 2, 2013.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Foods Inc*, Case No. 13-cv-02311-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 26, 2013; Deposition on October 21, 2013.

**United States District Court, Northern District of California,** *Desiree Moore, on behalf of themselves, the general public, and all those similarly situated, v. Verizon Communications*, Case No. 4:09-cv-01823-SBA, on behalf of David Schachman and Associates PC, Jacobs Kolton Chtd., and Keller Grover, LLP; Declaration filed June 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on March 1, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 20, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 19, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 13, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 7, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 4, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on January 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 12, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 10, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on November 28, 2012.



**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declarations filed October 4, 2012 and November 5, 2012; Oral testimony and cross examination on November 27, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declaration filed April 16, 2012; Oral testimony and cross examination on May 11, 2012.

**United States District Court, District of Massachusetts,** *Marcy Cruz v. Justin Kagan, Arthur Hegarty, Ronald Teachman, and the City of New Bedford*, Case No. 1:09-cv-11793-RGS, on behalf of Marcy Cruz, Expert Report filed February 28, 2011; Oral testimony and cross examination on December 1, 2011.

**United States District Court, Southern District of New York,** *Bursor & Fisher P.A., v. Federal Communications Commission*, Case No. 1:11-cv-05457-LAK, on behalf of Bursor & Fisher P.A., Declaration filed August 17, 2011.

**United States District Court, District of New Jersey,** *In Re: Sprint Premium Data Plan Marketing and Sales Practices Litigation*, Master Case No. 10-6334 (SDW) MDL No. 2228, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed August 11, 2011.

**United States District Court, Northern District of California,** *Patrick Hendricks, on behalf of himself and all others similarly situated, v. AT&T Mobility LLC,* Case No. C11-00409, on behalf of Bursor & Fisher, P.A., Declaration filed August 7, 2011.

**Federal Communications Commission,** *In the Matter of Applications of AT&T Inc. & Deutsche Telekom AG for Consent to Assign or Transfer Control of Licenses and Authorizations*, WT Docket No. 11-65, on behalf of Butch Watson, Declaration filed June 20, 2011.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. O1 Communication, Inc. (U 6065 C), Defendant*, Case No. C.08-03-001, on behalf of the O1 Communications, Inc., Reply Testimony filed November 6, 2009; Oral testimony and cross examination on November 16, 2009.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Oral testimony and cross examination on November 9, 2009.

**United States District Court, District of New Jersey,** *Judy Larson, Barry Hall, Joe Milliron, Tessie Robb, and Willie Davis, individually and on behalf of all others similarly situated, v. AT&T Mobility LLC f/k/a Cingular Wireless LLC and Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel and Nextel Finance Company, Civ. Act. No. 07-5325 (JLL)*, on behalf of PinilisHalpern, LLP and Law Offices of Scott A. Bursor, Declaration filed *under seal* October 19, 2009.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. Pac-West Telecomm, Inc. (U 5266 C), Defendant*, Case No. C.08-09-017, on behalf of the Pac-West Telecomm, Inc., Rebuttal Testimony filed May 1, 2009.

**Illinois Commerce Commission,** Illinois Bell Telephone Company Annual Rate Filing for Non-Competitive Services Under an Alternative Form of Regulation, Ill. C. C. Docket No. 08-0249, on behalf of the People of the State of Illinois, Declaration filed May 2, 2008.

**Federal Communications Commission,** Qwest Petition for Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of AT&T Inc, For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of BellSouth Corporation For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of the Embarq Local Operating Companies for Forbearance Under 47 U.S.C. §160(c) From Application of *Computer Inquiry* and certain Title II Common Carriage Requirements; WC Docket Nos. 06-125 and 06-147, on behalf of the AdHoc Telecommunications Users Committee, Declaration filed October 9, 2007.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Declaration filed January 5, 2007; Deposition on November 13, 2007; Oral testimony and cross-examination on December 19, 2007; Oral testimony on January 9, 2008.

Mr. Weir has served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.

**Exhibit 2**

**Documents Reviewed**

- First Amended Complaint, filed December 9, 2016

- Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009.

- Declaration and Expert Report of J. Michael Dennis, Ph.D., June 15, 2018.

- Sawtooth Software technical papers, available online at

http://www.sawtoothsoftware.com/support/technical-papers.

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013).

http://www.analysisgroup.com/assessing_false_advertising_claims.aspx.

- *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al*.

- *Khoday v. Symantec Corp.*, No. 11-180 (JRT/TNL), (2014 WL 1281600, at *10 (D. Minn. March 13, 2014)

- *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015)

- *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)

- *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014)

- *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

- *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012)

- *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017)

- *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013)

- *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)

- *Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574 (E.D. Cal. Apr. 27, 2015)

- *Getting Started With Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2014.

- *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013

- *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al*., Public Health Nutrition: 13(5), 688–694

- *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013):57-65

- census.gov

- The Kroger Co. 2016 10-K Annual Report

- Publix Super Markets, Inc. 2016 10-K Annual Report

- Safeway Inc. 2015 10-K Annual Report

- SuperValu Inc. 2016 10-K Annual Report

- Ahold Delhaize Annual Report 2016.

- COLGATETOMS00011738_CONFIDENTIAL.pptx

- COLGATETOMS00011847_CONFIDENTIAL.pptx

- COLGATETOMS00013164_CONFIDENTIAL.pptx

- COLGATETOMS00013657_CONFIDENTIAL.pptx

- COLGATETOMS00023980_CONFIDENTIAL.PPTX

- COLGATETOMS00000710_CONFIDENTIAL.xlsx

- COLGATETOMS00004908_CONFIDENTIAL.xlsx

- COLGATETOMS00004910_CONFIDENTIAL.xlsx