# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN individually and on behalf of all others similarly situated, | Civil Action No. 1:16-CV-08364 (RA) |
|            Plaintiffs, | |
|     v. | |
| COLGATE-PALMOLIVE CO., and TOM'S OF MAINE INC. | |
|            Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

Dated:  June 15, 2018

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Neal J. Deckant
Frederick Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
jarisohn@bursor.com
ndeckant@bursor.com
fklorczyk@bursor.com

*Attorneys for Plaintiffs*

I.      INTRODUCTION ........................................................................................... 1

II.     SUMMARY OF COMMON FACTS ............................................................... 6

    A.   Defendants Made The Challenged "Natural" Claim On The Label Of
        Every Tom's Product Sold Throughout The Class Period ......................... 6

    B.   Defendants' "Natural" Claim Is False, Unfair, Deceptive, And/Or
        Misleading Because Tom's Products Are Made With Synthetic And
        Chemically Processed Ingredients And Are Thus Not "Natural" .............. 8

III.    THE LEGAL STANDARD FOR CLASS CERTIFICATION ....................... 10

IV.    THE REQUIREMENTS OF RULE 23(a) ARE READILY MET ................. 11

    A.   The Class Satisfies The Numerosity Requirement .................................. 11

    B.   Commonality Is Satisfied ........................................................................ 11

    C.   Plaintiffs' Claims Are Typical ................................................................ 13

    D.   Plaintiffs Will Adequately Represent The Class And Subclasses ........... 14

        1.     Plaintiffs' Interests Do Not Conflict With The Class Or
               Subclasses ....................................................................................14

        2.     Plaintiffs' Counsel Are Qualified ...............................................15

    E.   The Proposed Class May Be Objectively Ascertained ............................ 15

V.     THE PROPOSED CLASS SATISFIES RULE 23(b)(3) ................................ 16

    A.   Common Questions Of Law Or Fact Predominate ................................... 16

        1.     The Elements Of Breach Of Express Warranty In New
               York Can Be Established Through Common Proofs................................17

        2.     The Elements Of The California Consumer Protection
               Claims Can Be Established Through Common Proofs............................18

        3.     The Elements of The Florida Consumer Protection Claims
               Can Be Established Through Common Proofs .........................................19

        4.     The Elements Of The New York Consumer Protection
               Claims Can Be Established Through Common Proofs............................20

B.  Class-Wide Relief Can Be Proved On A Common Basis ......................................... 21

C.  Class Litigation Is Superior To Other Methods Of Adjudication ............................. 24

VI.  THE PROPOSED CLASS SATISFIES RULE 23(B)(2) ................................................. 24

VII.  CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................ 10, 16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ..................................................................................... 12, 16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ............................................................................... 14, 15

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*
   2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015) .......................................................... 23

*Civic Ass'n of the Deaf v. Giuliani*,
   915 F. Supp. 622 (S.D.N.Y. 1996) ........................................................................ 12

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ...................................................................................... 21

*ConAgra Foods, Inc.*,
   2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) ...................................................... 5, 23

*Consol. Rail Corp. v. Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .................................................................................. 11

*Davis v. Powertel, Inc.*,
   776 So. 2d 971 (2000) ....................................................................................... 19

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ...................................................................... 5, 12

*Fitzpatrick v. General Mills, Inc.*,
   263 F.R.D. 687 (S.D. Fla. 2010) .......................................................................... 19

*Fitzpatrick v. General Mills, Inc.*,
   635 F.3d 1279 (11th Cir. 2011) ............................................................................ 19

*Fogarazzao v. Lehman Bros., Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ......................................................................... 13

*Gortat v. Capala Bros., Inc.*,
   257 F.R.D. 353 (E.D.N.Y. 2009) ........................................................................ 10

*Gortat v. Capala Bros., Inc.*,
   2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ........................................................... 15

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ............................................................. 13

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012) ....................................................... 20

*Guido v. L'Oreal, USA, Inc.*,
   2013 WL 3353857 (C.D. Cal. 2013) ..................................... 5, 7, 21, 22

*Guido v. L'Oreal, USA, Inc.*,
   2014 WL 6603730 (C.D. Cal. July 24, 2014) ..................................... 5, 23

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 429 (S.D.N.Y. 2013) ................................................... 3

*In re Fosomax Prods. Liab. Litig.*,
   248 F.R.D. 389 (S.D.N.Y. 2008) ......................................................... 15

*In re Methyl Tertiary Buyl Ether ("MTBE") Prods. Liab. Litig.*,
   209 F.R.D. 323, 337 (S.D.N.Y. 2002) .................................................. 15

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ................................................... passim

*In re Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010) ............................................................. 18

*In re Visa Check / MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ............................................................... 10

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ............................................................... 24

*In re Whirlpool Corp. Front–Loading Washer Prods. Liability Litig.*,
   45 F. Supp. 3d 724 (N.D. Ohio 2014) .................................................. 23

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) ......................................................... 20

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) ......................................................... 18

*Keegan v. American Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ......................................................... 20

*Koch v. Ackert, Merrall & Condit Co.*,
   18 N.Y.3d 940 (2012) ......................................................................... 21

*Kraft v. Staten Island Boat Sales, Inc.*,
715 F. Supp. 2d 464 (S.D.N.Y. 2010) ................................................ 17

*Latman v. Costa Cruise Lines, N.V.*,
758 So. 2d 699 (Fla. Dist. Ct. App. 2000) ........................................ 19

*Makaeff v. Trump University, LLC*
2014 WL 688164 (S.D. Cal. 2014) .................................................... 18

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ...................................................... 10, 11

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*,
97 Cal. App. 4th 1282 (2002) ............................................................ 18

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000) ............................................................. 20

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ........................................................... 16

*Noble v. 93 Univ. Place Corp.*,
224 F.R.D. 330 (S.D.N.Y. 2004) ....................................................... 15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1995) ........................................................................... 21

*Paulino v. Conopco, Inc.*,
2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ...................................... 3

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........................................................................... 10

*Promuto v. Waste Mgmt., Inc.*,
44 F. Supp. 2d 628 (S.D.N.Y. 1999) ................................................. 17

*Rikos v. Procter & Gamble Co.*,
2015 WL 4978712 (6th Cir. Aug. 20, 2015) .................................. 5, 19

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) ............................................................. 22

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ............................................................. 13

*Samuels v. King Motor Co.*,
782 So. 2d 489 (Fla. Dist. Ct. App. 2001) ........................................ 19

*Seijas v. Republic of Argentina,*
606 F.3d 53 (2d Cir. 2010) ............................................................ 24

*Sykes v. Mel Harris & Assocs. LLC,*
285 F.R.D. 279 (S.D.N.Y. 2012) ................................................... 25

*Sykes v. Mel S. Harris and Associates LLC,*
2015 WL 525904 (2d Cir. Feb. 10, 2015) ........................... 11, 16, 25

*Tait v. BSH Home Appliances Corp.,*
289 F.R.D. 466 (C.D. Cal. 2012) .................................................. 20

*Tuckish v. Pompano Motor Co.,*
337 F. Supp. 2d 1313 (S.D. Fla. 2004) ......................................... 19

*U.S. Foodservice Inc. Pricing Litig.,*
729 F.3d 108 (2d Cir. 2013) ......................................................... 12

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ................................................ 5, 10, 11, 12

*Williams v. Gerber Prods. Co.,*
552 F.3d 934 (9th Cir. 2008) ........................................................ 18

*Zeisel v. Diamond Foods, Inc.,*
2011 WL 2221113 (N.D. Cal. 2011) ............................................ 18

**STATUTES**

7 U.S.C. § 6502 (21) ........................................................................ 9

Cal. Bus. & Prof. Code § 17203 ...................................................... 25

Cal. Bus. & Prof. Code § 1500 .......................................................... 4

Cal. Bus. & Prof. Code § 17200 ........................................................ 4

Cal. Civil Code § 1750...................................................................... 4

Fla. Stat. § 501.201 ...................................................................... 4, 19

N.Y. U.C.C. § 2-313(1)(a) ............................................................... 17

New York's General Business Law § 349................................... passim

New York's General Business Law § 350................................... passim

**RULES**

Fed. R. Civ. P. 23 ............................................................................................. 10, 13

Fed. R. Civ. P. 23(a) ................................................................................... 10, 11, 15

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 13

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 14

Fed. R. Civ. P. 23(b) ............................................................................................. 10

Fed. R. Civ. P. 23(b)(2) ................................................................................... 24, 25

Fed. R. Civ. P. 23(b)(3) .......................................................................... 4, 16, 24, 25

Fed. R. Civ. P. 23(g)(1) ........................................................................................... 6

**REGULATIONS**

7 C.F.R. § 205.2 ...................................................................................................... 9

## I.  INTRODUCTION

Defendants Colgate-Palmolive Co. and Tom's of Maine Inc. ("Tom's of Maine") (collectively "Defendants") manufacture and sell millions of Tom's of Maine brand personal care products to consumers throughout the United States every year.  Tom's of Maine's best-selling products are their deodorants and toothpastes, which account for ███ of their sales.[1]  Declaration of JoAnne Murphy 54:9- 55:1, Declaration of Neal J. Deckant Exh. 2[2] ██████████████████████ ████████████████████████████████████████████████████████The packaging of all Tom's of Maine's personal care products contains the same straightforward, material message:  the products are "natural."

The "natural" representation is included on each and every one of Tom's of Maine's toothpastes:



Q:      How many different varieties of toothpaste does Tom's of Maine sell?

A:      I'm going to give a range of between 12 and 15 ….

…

Q:      Does the word natural appear on the packaging or label of all toothpastes in all 12 to 15 categories?

A:      Yes.

Q:      On all flavors?

---

[1] Plaintiffs move for class certification of only Tom's of Maine's toothpaste and deodorant products.  A complete list of the products included in the putative class ("Tom's Products" or "Products") is attached as Exhibit 1 to the Declaration of Neal J. Deckant.

[2] For sake of brevity, all objections have been omitted from the deposition excerpts quoted in this brief and the accompanying declarations.  However, the full excerpted transcript pages with objections intact are submitted herewith as exhibits to the Deckant Declaration.

| Y: | Yes. |
|---|---|
| Q: | Including children's products? |
| Y: | Yes. |
| Q: | Fluoride and non-Fluoride? |
| Y: | Yes. |
| Q: | Is there any toothpaste that Tom's sells that does not contain a label or package with the word natural? |
| Y: | No, all of them do. |

Murphy Dep. at 58:20 – 60:4, Deckant Decl. Exh. 2.

Each and every Tom's of Maine deodorant also contains the same false and misleading "natural" representation:



| Q: | And in the deodorant category, do all of the labels and packaging contain the word natural? |
|---|---|
| A: | Deodorants, yes. |

Murphy Dep. at 65:10-13, Deckant Decl. Exh. 2.

Since 2010 (including the entirety of the class period), these "natural" representations have remained the same. Murphy Dep. at 108:2-7, Deckant Decl. Exh. 2. ██████████ ████████████████████████████████████████████ ███████████████████████████████ Deckant Decl. Exh 3, COLGATETOMS00011847.

A reasonable consumer would understand and expect that a product labeled "natural" would in fact be natural. *Paulino v. Conopco, Inc.,* 2015 WL 4895234, at *5 (E.D.N.Y. Aug. 17, 2015) ("Whether one labels a product 'natural' or 'all natural,' the same plausible inference can be drawn—that the product is natural, meaning it is not made with any non-natural ingredients.") Unfortunately for consumers, however, the Tom's Products in question are not actually "natural." Instead, the Products contain ingredients that are synthetic, artificial, and chemically processed. These ingredients include sodium lauryl sulfate ("SLS") and propylene glycol, ███████████ ███████████████████████████████████████████ Murphy Dep. at 126:11- 127:18, 132:6-18, Deckant Decl. Exh. 2; Deckant Decl. Exh. 4, COLGATETOMS00022476 ████ ████████████████████████████████████████████████████████ █████████████████████████████████████ █████████████████████████████████████ ████████████████████████████████ Deckant Decl. Exh. 5, COLGATETOMS00013657 █████████████████████████████ Deckant Decl. Exh. 6, COLGATE000024006 █████████████████████████████████████████ ████████ "The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source." *Hughes v. Ester C Co.,* 930 F. Supp. 2d 429, 475 (S.D.N.Y. 2013).

Plaintiffs Anne de Lacour, Andrea Wright, and Loree Moran ("Plaintiffs") are typical members of the proposed Class. They each purchased Tom's Products at a price premium because the Products were labeled "natural," precisely as Defendants intended. Unfortunately for Plaintiffs, they were mislead because the Products contain synthetic ingredients. Declaration of

Anne de Lacour ¶ 5; Declaration of Andrea Wright ¶ 5; Declaration of Loree Moran ¶ 5.

Plaintiffs allege that Defendants' claim that Tom's Products are "natural" is false, unfair, deceptive, and/or misleading. They assert claims for breach of express warranty, violation of New York's General Business Law ("GBL") § 349, New York's GBL § 350, California's Consumer Legal Remedies Act "CLRA", Cal. Civil Code §§ 1750, *et seq.*, California's False Advertising Law "FAL", Cal. Bus. & Prof. Code §§ 1500 *et seq.*, California's Unfair Competition Law "UCL", Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and Florida's Deceptive and Unfair Trade Practices Act "FDUTPA", Fla. Stat. §§ 501.201 *et seq.*

Plaintiffs move pursuant to Fed. R. Civ. P. 23(b)(3) for certification of a class defined as "all persons in the United States who purchased Tom's of Maine deodorant and/or toothpaste products (the "Products" or "Tom's Products") on or after September 24, 2015" (the "Class")[3]. Ms. Moran, who purchased Tom's Products at Trader Joe's in Oceanside, New York, also moves to certify a subclass of Class members who purchased Tom's Products in New York (the "New York subclass"). Moran Decl. at 4, 9. Ms. Wright, who purchased Tom's Products at Target and Trader Joe's in and near La Quinta, California also moves to certify a subclass of Class members who purchased Tom's Products in California (the "California Subclass"). Wright Decl. at 4, 9. Ms. de Lacour, who purchased Tom's Products at Whole Foods Market in Ft. Lauderdale, Florida, also moves to certify a subclass of Class members who purchased Tom's Products in Florida (the "Florida Subclass"). De Lacour Decl. at 4, 9.

---

[3] In the alternative, Plaintiffs move to certify the Class, as well as the New York, California, and Florida Subclasses on behalf of purchasers of "Purchased Products" (*i.e.* those products purchased by the respective class representatives – Tom's of Maine brand deodorants). Excluded from every proposed class definition are current and former officers and directors of Defendants, members of immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

Claims for consumer deception based on uniform labels are well suited for class certification, and courts within this Circuit and across the country routinely certify classes for similar deceptive advertising claims. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (labels on grass seed) (Briccetti, J.); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) (labels on olive oil) (Rakoff, J.); *Rikos v. Procter & Gamble Co.*, No. 14-4088, 2015 WL 4978712 (6th Cir. Aug. 20, 2015) (labels on nutritional supplement); *In re ConAgra Foods, Inc.*, No. 11-05379, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) (labels on cooking oil); *Guido v. L'Oreal, USA, Inc.*, No. 11-01067, 2014 WL 6603730, at *19 (C.D. Cal. July 24, 2014) (hair product label).

Plaintiffs' and the Class members' claims all arise from Defendants' uniform course of conduct; all factual issues necessary to resolve Plaintiffs' and the Class members' claims against Defendants are common; and all allegations can be proven on a class-wide basis using common proof in one trial. Specifically: (i) the Products' labels contain a uniform "natural" claim; (ii) the Products all contain synthetic ingredients; and (iii) the "natural" claim directly results in common injury because consumers pay a price premium for the Products and thus no individualized damages inquiry is required. These factors are "apt to drive the resolution of the litigation" for Plaintiffs' claims. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Class certification is also appropriate because the damages that directly stem from Defendants' deceptive conduct can be measured and assessed at trial. With respect to claims under GBL § 349 and § 350, damages are statutory and thus "no individualized damages inquiries are necessary." *Guido*, 2013 WL 3353857, at *16. Damages for breach of express warranty and damages under the California and Florida consumer protection statutes may be measured by the

amount class members overpaid as a result of Defendants' deceptive conduct. Plaintiffs can and will prove that all consumers pay a price premium as a direct result of Defendants' "natural" misrepresentation, which causes consumers to pay more for the Products than they otherwise would. *See* Weir Decl. ¶¶ 57-62. ███████████████████████

██████████████████████████████████████████████████████

██████████████████████ Deckant Decl. Exh. 7, COLGATETOMS00013164 ████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████ Deckant Decl. Exh. 8, COLGATETOMS00023391 ████

█████████████████████████████████████

Class certification of Plaintiffs' claims for injunctive relief is also appropriate because Defendants continue to deceptively label the Products as "natural," despite the presence of synthetic ingredients, and they have no plans to stop.

Accordingly, Plaintiffs respectfully request that this Court certify the proposed Classes, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1).

## II.    SUMMARY OF COMMON FACTS

### A.    Defendants Made The Challenged "Natural" Claim On The Label Of Every Tom's Product Sold Throughout The Class Period

Defendants admit that throughout the Class Period, each and every Tom's Product claimed on its front label that the product was "natural." Murphy Dep. 58:20 – 60:4 and 65:10-13, Deckant Decl. Exh. 2. The decision to make a particular claim on the front of a package is not one that consumer goods manufacturers make lightly, and Defendants are no exception.

██████████████████████████████████████████████████████

[REDACTED] Deckant Decl. Exh. 5, COLGATETOMS00013657 [REDACTED]

[REDACTED] By placing the "natural" claim on the front of all of its Products, Defendants demonstrate a belief that a "natural" claim on a personal care product is important to consumers in general, and that the "natural" statement on Tom's Products specifically motivates consumers to purchase the Products.

Defendants plaster the Product labels with this "natural" representation to capitalize on the growing market for natural products. Defendants' motivation for placing the "natural" claim on every Product label is clear – to increase demand and thus command a higher price and sell more products. [REDACTED]

[REDACTED] Deckant Decl. Exh. 9, COLGATETOMS00021920 [REDACTED]

[REDACTED] Deckant Decl. Exh. 10 ("COLGATETOMS00014108 ([REDACTED]

[REDACTED] As Plaintiffs allege, however, Defendants' "natural" claim, a key piece of Defendants' packaging, is false, unfair, deceptive and/or misleading to consumers and damages consumers by reason of its false, unfair, deceptive and/or misleading nature, including the amount of the price of Tom's Products attributable to the challenged "natural" claim.[4]

---

[4] As discussed in Section V below, Plaintiffs have retained Colin Weir, Vice President at Economics and Technology, Inc. ("ETI"), who has offered his expert economic opinion that the total price of any product can be broken up into the separate prices of that product's various attributes, which are all set by the marketplace and can be proven using common evidence. *See* Weir Decl. ¶ 18, 30. Mr. Weir proposes conjoint analysis to measure the amount of the retail price of Tom's Products that correspond to the "natural" claim. *Id.* ¶ 16.

**B. Defendants' "Natural" Claim Is False, Unfair, Deceptive, And/Or Misleading Because Tom's Products Are Made With Synthetic And Chemically Processed Ingredients And Are Thus Not "Natural"**

Defendants' representation that their Products are "natural" is false and misleading because each of the Products contains at least one, and in most instances, several, ingredients that are synthetic or chemically processed. The numerous chemical ingredients included in Tom's Products are not natural and are not the type of ingredients a reasonable consumer would expect to be in a natural product. The term "natural" means "existing in nature and not made or caused by people; coming from nature" or "not having any extra substances or chemicals added; not containing anything artificial."[5] Industry and regulatory definitions of natural are also instructive in defining a reasonable consumer standard. For example, the National Advertising Division of the Better Business Bureau has found that a "natural" ingredient does not include one that, while "literally sourced in nature" (as is every chemical substance), is, nevertheless subjected to extensive processing before metamorphosing into the ingredient that is included in the final product.

The United States Department of Agriculture ("USDA") has issued a Food Standard and Labeling Policy Book (Aug. 2005), which states that the term "natural" may be used on labeling for products that contain processed ingredients only where such ingredients are subjected to "minimal" processing. The policy recognizes that "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing." Office of Policy, Program & Employee Dev., Food Safety & Inspection Services, U.S. Dept. of Agriculture, *Food Standards and Labeling Policy Book* (2005).[6] The USDA also defines "nonsynthetic (natural)" as a "substance that is derived from mineral, plant, or

---

[5] http://www.merriam-webster.com/dictionary/natural
[6] http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf

animal matter and does not undergo a synthetic process…" 7 C.F.R. § 205.2.  In contrast, the USDA defines "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal, or mineral…"  7 U.S.C. § 6502 (21).

Each and every one of the Tom's of Maine toothpastes at issue contains the synthetic and chemically processed ingredient sodium lauryl sulfate ("SLS").  Sodium lauryl sulfate is a chemically processed surfactant, detergent, and emulsifier sourced from fatty acids that are extracted from coconut or palm oil, which are then chemically converted into esters and hydrogenated through the addition of chemicals to produce fatty alcohol.  The fatty alcohol is then sulfated and neutralized through further chemical processing to yield the final ingredient.  SLS is not natural.  No reasonable definition of "natural" includes ingredients that, even if sourced from "nature," are subjected to extensive, transformative chemical processing before their inclusion in a product.

Similarly, each and every one of the Tom's of Maine deodorants at issue contains the synthetic and chemically processed ingredient propylene glycol.  Propylene glycol is a stabilizer that is manufactured from a petroleum, natural gas, or vegetable source, which then goes through a complex, multi-step process involving the use of toxic chemicals to changes the substance's chemical composition.  Propylene glycol is not "natural."  It is a synthetic, man-made ingredient.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

████████████████████ *See* Murphy Dep. at 126:11- 127:18, 132:6-18; Deckant Decl. Exh. 2,

COLGATETOMS00022476 ████████████████████████████████████

████████████████ Additional factual details regarding Defendants' use of these ingredients will be sought by Plaintiffs during the second phase of discovery in this litigation.[7]

## III.    THE LEGAL STANDARD FOR CLASS CERTIFICATION

Class actions are an essential tool for adjudicating cases involving many small claims that are not economically feasible to prosecute individually.  In crafting Rule 23, "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  Class actions give voice to plaintiffs who "would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

To qualify for certification, Plaintiffs must demonstrate by a preponderance of the evidence that the putative class action meets each of the four requirements of Rule 23(a), and also satisfies at least one of the categories provided in Rule 23(b).  *See In re Visa Check / MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001).  The Court must conduct a "rigorous analysis," which may require it to "probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  However, "[t]he Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction.'" *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  Indeed, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* at 361-62.  Any doubt as to the propriety of certification should be resolved in

---

[7] Following the initial status conference on February 10, 2017, and a teleconference with the Court on March 1, 2017, the Court advised the parties that discovery would initially be limited to documents related to class certification.  A proposed schedule for merits discovery is to be submitted to the Court within 21 days of the Court's decision on the present motion. *See* 3/13/17 Case Management Plan and Scheduling Order, Dkt. No. 27.

favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the class members.  *See Marisol A.*, 126 F.3d at 377.

## IV.    THE REQUIREMENTS OF RULE 23(a) ARE READILY MET

Rule 23(a) sets forth four prerequisites for certification:  numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a).

### A.   The Class Satisfies The Numerosity Requirement

Generally, a presumption of numerosity attaches to classes of more than 40 in the Second Circuit.  *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  This case easily satisfies the numerosity requirement.  Tom's Products are sold nationwide at some of the largest retail chains including Walmart, Target, Walgreens and CVS.  Murphy Depo. at 82:18-83:2, Deckant Decl. Exh. 2.  Retail sales of Tom's Products during the class period were at least ██████████████  Weir Decl. at 17-18.

### B.   Commonality Is Satisfied

As the Supreme Court held in *Dukes*, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 131 S. Ct. at 2551.  Thus, commonality "is satisfied if there is a common issue that 'drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

---

[8] Defendants have provided sales data from the start of the Class Period through May 2017, although the Class Period is ongoing.  This estimate is likely significantly lower than the actual sales of Tom's Products as it does not include sales made from June 2017 through present.

stroke.' Consideration of this requirement obligates a district court to determine whether plaintiffs have 'suffered the same injury.'" *Sykes*, 2015 WL 525904, at *11 (2d Cir. Feb. 10, 2015). "Commonality does not mandate that all class members make identical claims and arguments." *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (certifying class). Indeed, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 131 S. Ct. at 2562.

Here, there is a common question the truth or falsity of which will determine each class member's claim, namely whether it is deceptive to label the Tom's Products as "natural." Courts routinely find commonality when claims arise from a uniform misrepresentation. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("[F]raud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials." (internal quotations and citations omitted)); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405 ("A common question with respect to the second theory of liability is whether the [label] claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *Ebin*, 297 F.R.D. at 565 (common question in a consumer class action is whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label).

Moreover, since materiality is determined by an objective "reasonable consumer" standard, this issue is also common to the class. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("[T]he Supreme Court has held materiality 'is a question common to all members of the class' when, as here, the materiality of an alleged misrepresentation is judged according to an

objective standard." (citing *Amgen*, 133 S. Ct. at 1191)).

Plaintiffs have therefore met the commonality requirement because there are common questions of law and fact with respect to Plaintiffs' and Class members' claims.

### C. **Plaintiffs' Claims Are Typical**

Rule 23(a)(3) requires Plaintiffs' claims to be "typical" of the class. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (internal quotations omitted). Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936-37; *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) (stating that denial of class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle … would destroy much of the utility of Rule 23").

In this case, Plaintiffs allege a common pattern of wrongdoing – Defendants' persistent and consistent claim that its products are "natural," including through its labeling and marketing of the Products. Plaintiffs will present the same evidence (based on the same legal theories) to support their claims, as well as the other Class Members' claims. Plaintiffs were all exposed to the same allegedly false advertising on the Tom's Products' labels.

Here, Plaintiffs' and other Class members' claims arise out of the same course of conduct by Defendants and are based on the same legal theories. Every Tom's Product was labeled "natural" and every product did in fact contain ingredients that are not natural. *See, e.g.*, Moran

Decl. ¶ 5 ("I purchased Tom's of Maine products expecting that the products were natural and did not contain synthetic or chemically processed ingredients."). Plaintiffs have been injured in the same manner as the putative class members and seek redress through common legal claims. Plaintiffs' claims are therefore typical of the Class and Subclasses.

### D. Plaintiffs Will Adequately Represent The Class And Subclasses

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of these factors are met here.

### 1. Plaintiffs' Interests Do Not Conflict With The Class Or Subclasses

Neither Plaintiffs nor their counsel has any interest antagonistic to absent Class members. Plaintiffs, like each absent Class member, have a strong interest in proving Defendants' common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress.

Ms. Moran, Ms. de Lacour, and Ms. Wright have also demonstrated their commitment to pursue these claims on behalf of absent class members. Each has reviewed and commented on pleadings, responded to extensive written discovery requests, reviewed and verified detailed responses to interrogatories and requests for admission, and maintains frequent contact with Plaintiffs' counsel regarding the status of the case. Moran Decl. ¶ 7; de Lacour Decl. ¶ 7; Wright Decl. ¶ 7. They are each willing to sit for a deposition, and to testify at the trial of this action. Moran Decl. ¶ 6; de Lacour Decl. ¶ 6; Wright Decl. ¶ 6. Plaintiffs also understand their

responsibility to the Class going forward, and will be available as necessary to see the action through to its end.  Moran Decl. ¶ 6, 8; de Lacour Decl. ¶ 6, 8; Wright Decl. ¶ 6, 8.

### 2. Plaintiffs' Counsel Are Qualified

Plaintiffs' counsel, Bursor & Fisher, P.A., are class action lawyers who have extensive experience litigating consumer claims, including claims against the manufacturers of personal care products.  *See* Bursor & Fisher, P.A. Firm Resume, Deckant Decl. Exh. 11.  The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in 5 of 5 class action jury trials since 2008.  *Id.*

### E. The Proposed Class May Be Objectively Ascertained

In addition to the four cornerstones of Rule 23(a), this District has held that "[t]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *In re Fosomax Prods. Liab. Litig.,* 248 F.R.D. 389, 395 (S.D.N.Y. 2008).  The class must be "identifiable" such that "its members can be ascertained by reference to objective criteria."  *In re Methyl Tertiary Buyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).  The standard for ascertainability "is not demanding." *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010).  Moreover, although the membership of the class must be ascertainable "at some point in the case," it need not be determined prior to class certification.  *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 341-42 (S.D.N.Y. 2004) (internal quotations and citations omitted).  Here, class members can be identified by reference to "objective criteria."  The Class and Subclasses consist of "persons in the United States who purchased Tom's of Maine Toothpaste and/or Deodorant Products on or after September 24, 2015."  There is nothing subjective about the Class definition: simply put, either individuals purchased the products, or they did not.  It is administratively feasible to identify class

members by reference to these criteria.

## V.    THE PROPOSED CLASS SATISFIES RULE 23(b)(3)

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both are met here.

### A.    Common Questions Of Law Or Fact Predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).  "[T]he Supreme Court has also instructed that Rule 23(b)(3) does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof . . . individual questions need not be absent.  The text of Rule 23(b)(3) itself contemplates that such individual questions will be present.  The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Sykes*, 780 F.3d at 81 (citations and internal alterations omitted). The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623-24. Predominance is also "readily met in certain cases alleging consumer … fraud."  *Id.* at 625.  Rule 23(b)(3) demands only predominance of common questions, not exclusivity or unanimity of them.

In this action, the legal and factual issues do not require individualized determinations but can be resolved through generalized proof applicable to each of Plaintiffs' claims. The critical question that will drive the resolution of this litigation is whether labeling the Products as "natural" despite the presence of synthetic ingredients is deceptive. It is inarguable that Defendants made its "natural" representation on the front of every label of the Tom's Products in question in this litigation, and, further, that Defendants admit that the products in question are made with the ingredients Plaintiffs allege are unnatural. Moreover, the evidence necessary to demonstrate the materiality of Defendants' "natural" representation and Class Members' reliance on the misrepresentation (in the states where such a showing is required) is also common to all members of the various Classes.

### 1. The Elements Of Breach Of Express Warranty In New York Can Be Established Through Common Proofs

Count I asserts claims against Defendants for breach of express warranty under New York common law. An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2-313(1)(a). "[T]o demonstrate that an express warranty was created under New York law, a plaintiff must prove that the statement falls within the definition of warranty, that she relied on it, and that it became part of the basis for the bargain." *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010). The elements for the common law claims are similar. *See Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (common law breach of warranty). Each of these elements can be established with common classwide proof that Tom's Products all bore the representation "natural," which expressly warranted that Tom's Products were natural. Complaint ¶ 46-50. The fact that the Products ultimately did not conform to Defendants' representation is provable with the common classwide evidence described above.

### 2. The Elements Of The California Consumer Protection Claims Can Be Established Through Common Proofs

Common questions of law also predominate with respect to the Counts II - IV for violations of the CLRA, UCL, and FAL that Plaintiff Wright brings on behalf of herself and the California subclass. Compl. ¶¶ 52-97. While pled under various legal theories, Plaintiff Wright's claims boil down to a single issue that is susceptible to common proof – whether Defendants' deceptive label is likely to mislead a reasonable consumer. *See In re Scotts EZ Seed Litig.,* 304 F.R.D. at 410. (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). As with N.Y. G.B.L. § 349, this is an objective test that is subject to common proof. *See Makaeff*, 2014 WL 688164, at *11. Moreover, while reliance is an element of a CLRA claim, it may be inferred as to the entire class if the representations were objectively material. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010); *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282, 1293 (2002). Stated differently, "reliance on the alleged misrepresentations may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members." *Makaeff*, 2014 WL 688164, at *13 (internal quotations and citations omitted). Under California law, a misrepresentation is material:

> If a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable mind would have been influenced by it.

*Id*. The fact that the statement prominently appeared on every label is evidence of its materiality. *See, e.g.*, *Johns*, 280 F.R.D. at 558-59. Numerous courts have applied this inference of reliance to certify CLRA claims. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410; *Zeisel*, 2011 WL 2221113, at *11; *Johns*, 280 F.R.D. 551. As such, predominance is easily satisfied for the California claims.

### 3. The Elements of The Florida Consumer Protection Claims Can Be Established Through Common Proofs

Plaintiff de Lacour alleges violations of Florida's Deceptive and Unfair Trade Practices Act "FDUTPA," Fla. Stat. §§ 501.201 *et seq.* on behalf of a Subclass of all Class members who purchased Tom's Products in Florida. Compl. ¶¶ 98-113. FDUTPA is "a consumer protection law intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004). The "FDUTPA is to be liberally construed" to protect consumers. *See Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001). Similar to a claim under New York or California law, a "claim under FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Rikos*, 2015 WL 4978712, at *13. Causation is proven objectively and actual reliance is not required under FDUTPA. "[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstance." *Davis*, 776 So. 2d at 974; *see also Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) (affirming reasoning of lower court, 263 F.R.D. 687, 695 ("[T]o satisfy FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive practice would – in theory – deceive an objective reasonable consumer")). If Defendants' "natural" claim is "likely to deceive" a reasonable consumer, then Defendants are liable under FDUTPA and as such common issues predominate Plaintiff de Lacour's FDUTPA claim. *See Fitzpatrick*, 635 F.3d at 1282-83; *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 702 (Fla. Dist. Ct. App. 2000) (finding class in FDUTPA action should be certified). As such, predominance is easily satisfied for the Florida claim.

### 4. The Elements Of The New York Consumer Protection Claims Can Be Established Through Common Proofs

Plaintiff Moran alleges violations of GBL § 349 and 350 on behalf of a Subclass of all Class members who purchased Tom's Products in New York. Compl. ¶¶ 114-132. To establish a prima facie case under § 349, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409. As Judge Briccetti held, "Plaintiffs' GBL claims thus depend on generalized evidence. Classwide evidence will be used to establish whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *see also Guido*, 284 F.R.D. at 483 (finding common issues predominate as to injury on plaintiffs' GBL claims because "the issue of whether plaintiffs and class members would have purchased [the product] had they known" advertising was false "can be established with common proof"); *Tait*, 289 F.R.D. at 485 (certifying GBL § 349 class when manufacturer of front-loading washing machines failed to disclose washers' propensity to develop biofilm, mold, mildew and foul odors); *Keegan*, 284 F.R.D. at 552 (certifying New York GBL § 349 claims and finding predominance when defendants allegedly provided the "same information to the entire class, *i.e.*, no information, concerning the possibility of excessive negative camber"); *Jermyn*, 256 F.R.D. at 435 (certifying GBL § 349 class and holding that "[c]ourts have repeatedly held that that section 349 claims based upon omissions, non-disclosures and deceptive corporate policy are well suited to class certification").

As this Court recognized, the analysis used to evaluate a Section 349 claim also applies to claims brought under Section 350. *In re EZ Seed Litig.*, Case No. 12-cv-04727, Memorandum Decision, at 18, (S.D.N.Y. May 22, 2013) (Dkt. No. 46). Sections 349 and 350 do not require proof of reliance, or proof that defendants knew or should have known the alleged statements were false or misleading. *See In re EZ Seed Litig.*, Case No. 12-cv-04727, Memorandum Decision, at 18-19, (S.D.N.Y. May 22, 2013) (Dkt. No. 46) (citing *Koch v. Ackert, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) and *Oswego Laborers'*, 85 N.Y.2d at 26). As such, predominance is easily satisfied here.

**B**. **Class-Wide Relief Can Be Proved On A Common Basis**

At class certification, Plaintiffs must "establish[] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Plaintiffs' method for calculating damages on a classwide basis must be consistent with their theory of liability by "measur[ing] only those damages attributable to that theory." *Id.*

Here, Plaintiff Moran and members of the New York Subclass were injured due to their purchases of Defendants' Products containing the deceptive "natural" representation. In *Guido*, the Court held that the plaintiffs had sufficiently shown that common issues predominated their GBL § 349 claim: "[B]ecause awarding classwide relief only requires that a fixed amount of statutory damages be granted to each class member, no individualized damages inquiries are necessary for the New York class. These considerations show that the predominance requirement is satisfied for the New York class." *Guido*, 2013 WL 3353857, at *16. Proof of damages for claims New York's General Business Law will be very simple.[9]

---

[9] For Count VIII, Violation of New York's Gen. Bus. Law § 349, subsection (h) provides for the recovery of "actual damages or fifty dollars, whichever is greater." So for Count VIII, the classwide damage calculation is ███████ ████████████████████████ Weir Decl. ¶ 63-65. For Count IX, Violation of New York's Gen. Bus. Law § 350, subsection E(3)

Alternatively, actual damages for these claims, as well as for Counts I - VII, can be calculated using a price premium approach, *see id.* ¶¶ 57-62. Class members were injured because they paid a price premium caused by Defendants' deceptive "natural" label. The measure of economic impact on the retail price of Tom's Products caused by Defendants' allegedly false, unfair, deceptive, and/or misleading labeling of those Products is a common question to all members of the Class that will be answered with common, as opposed to individualized proof.[10] The measure of each Class Member's damages is the amount of "price premium" inherent in each Tom's Product that Class Members purchased that corresponds to Defendants' "natural" marketing claim, which Plaintiffs allege is not actually provided by the Products because the Products include unnatural ingredients.[11] As Plaintiffs' economics expert Colin Weir opines, consumers are unable to individually negotiate the price they paid to purchase Tom's Products from retailers that is attributable to the "natural" claim –all consumers pay the same amount for the attribute because regardless of how they value the attribute, the price of Tom's Products is determined collectively in the marketplace, and not by any one individual Class Member.[12]

Even though retail prices of Tom's Products varies during the course of the Class Period, certification of a damages class is still appropriate because calculating a "price premium" that corresponds to a particular product attribute is easily accomplished by applying economic principles to common, class-wide evidence. *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015) (finding that individualized damages determinations alone cannot preclude class

---

provides for the recovery of "actual damages or $500, whichever is greater." For this claim, the statutory damage calculation is ██████████████████████████████████████████████████████████████████ ████████████████████████████ *ee Id.*

[10] *See* Weir Decl. ¶ 17.

[11] The term "price premium" is used here to indicate the additional amount that consumers paid for Tom's Products as a direct result of the natural claim, not the overall premium that Tom's Products may command in the marketplace as compared to competitor products. *See* Weir Decl. ¶ 57.

[12] Weir Decl. ¶ 44.

certification under the predominance inquiry). Economic analysis using the well-accepted conjoint method is thus capable of measuring the value of the "natural" marketing attribute as part of the total retail price of Tom's Products – the calculation of the premium that corresponds to the attribute is independent of the actual retail price any one particular consumer paid for Tom's Products over time.[13]  Thus, damages common to the Class, which result from a common misrepresentation, may be calculated using common evidence.  Other courts have approved the use of Mr. Weir's proposed methodologies or similar methodologies.  *See Guido*, 2014 WL 6603730, at *6 (certifying class where expert proposed using conjoint analysis and/or random coefficient demand estimation); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413 (certifying class where expert proposed "a conjoint analysis" and two other methods); *In re ConAgra Foods, Inc.*, 2015 WL 1062756, at *67 (certifying class where expert proposed conjoint analysis combined with hedonic regression); *In re Whirlpool Corp. Front–Loading Washer Prods. Liability Litig.*, 45 F. Supp. 3d 724, 750-53 (N.D. Ohio 2014) (finding conjoint analysis survey as to customers' "willingness to pay" for various product attributes to be "reasonably reliable").

As such, "Plaintiffs' model survives the minimal scrutiny required under *Comcast* and Rule 23(b)(3) — their theory of liability matches their theory of damages and individualized damages issues will not predominate."  *See Carpenters Pension Trust Fund v. Barclays PLC*, No. 12-5329, 2015 WL 5000849, at *21 (S.D.N.Y. Aug. 20, 2015).  Using the conjoint survey performed by Plaintiffs' expert Dr. J. Michael Dennis, Mr. Weir has calculated price premium damages totaling ████████ for the nationwide class.  By making his calculation already, Mr. Weir has gone above and beyond what is required by *Comcast.  See In re Scotts EZ Seed Litig.*,

[13] Weir Decl. ¶ 17-18, 30.

304 F.R.D. at 413 ("[N]othing in *Comcast* requires an expert to perform his analyses at the class certification stage.").  As such, the Class is appropriate for certification.

### C.  Class Litigation Is Superior To Other Methods Of Adjudication

Finally, a class action is the superior method of adjudication.  Rule 23(b)(3) provides four factors for the Court's consideration:

> (A) [T]he interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).  All four of these factors favor class treatment here.  It would cost Class members much more to litigate an individual case than they could recover in damages.  Where proceeding individually would be prohibitive due to the minimal recovery, "the class action device is frequently superior to individual actions."  *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).  The relatively small amount at issue for each Class member renders individual litigation infeasible, but a class action offers the potential for meaningful redress to the Class.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("[I]ndividual consumer class members have little interest in 'individually controlling the prosecution or defense of separate actions,' because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit.").  Moreover, this case is manageable as a class action because liability will be established predominantly through common classwide proof as described in Section II above.

## VI.    THE PROPOSED CLASS SATISFIES RULE 23(B)(2)

Rule 23(b)(2) provides for class certification when "the party opposing the class has refused to act on grounds generally applicable to the class, thereby making appropriate final

injunctive relief." Fed. R. Civ. P. 23(b)(2).  Injunctive relief is expressly authorized for Plaintiffs' statutory claims under New York's GBL § 349, California's UCL and CLRA, and Florida's FDUTPA.  *See* N.Y. GBL § 349(h); Cal. Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780; Fla. Sta. § 501.211(1).  Certification pursuant to Fed. R. Civ. P. 23(b)(2) is appropriate where the defendant "has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief."  Fed.R.Civ.P. 23(b)(2).  "That plaintiffs are seeking substantial monetary damages is of no concern given [that Plaintiffs seek] certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively." *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012).  This action qualifies as a class under Rule 23(b)(2) because Defendants' uniform deceptive labeling generally applies to all Class members, the requested injunctive relief will be reasonably necessary and appropriate after Plaintiffs succeed on the merits, and the restitution sought is incidental to the requested injunctive relief.  *See Sykes*, 780 F.3d at 97 (affirming (b)(2) certification based on the "defendants' uniform filing of false affidavits in state court to fraudulently procure default judgments against putative class members").

Plaintiffs request injunctive relief prohibiting Defendants from continuing the unlawful practice of making deceptive "natural" representations.  Such request can be satisfied with "indivisible" equitable relief that benefits all Class members at once, namely a prohibition on Defendants using the "natural" representation on its labels.  For the reasons set forth above, the Court should certify the Classes under Rule 23(b)(2) because injunctive relief for Plaintiffs and Class members is appropriate.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion to certify the Class and the New York, California, and Florida Subclasses.

Dated:  June 15, 2018

Respectfully submitted,


By:     /s/ Neal J. Deckant
          Neal J. Deckant

**BURSOR & FISHER, P.A.**

Joshua D. Arisohn
Neal J. Deckant
Frederick Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: jarisohn@bursor.com
          ndeckant@bursor.com
          fklorczyk@bursor.com

*Attorneys for Plaintiffs*