## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

ANNE DE LACOUR, ANDREA WRIGHT, and
LOREE MORAN individually and on behalf of
all others similarly situated,

No. 16 Civ. 08364 (RA) (AJP)

Plaintiffs,

v.

COLGATE-PALMOLIVE CO., and  TOM'S OF
MAINE INC.,

Defendants.

---

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
### FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS
### REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL


Dated:  September 24, 2018

**LATHAM & WATKINS LLP**

David Callahan *(pro hac vice)*
Kathleen P. Lally *(pro hac vice)*
Kathleen Elsner *(pro hac vice)*
Peter A. Shaeffer *(pro hac vice)*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Blake T. Denton
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Counsel for Defendants*
*Colgate-Palmolive Co. and Tom's of Maine, Inc.*

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND.................................................................................2

    A.    Tom's Stewardship Model Guides It In Developing Natural, Sustainable, And Responsible Personal Care Products.................................................2

    B.    Under The Stewardship Model, Tom's Products Are Sourced And Derived From Ingredients Occurring In Nature That Are Minimally-Processed.................2

    C.    Tom's Packaging And Labeling Contain Information Regarding The Products' Ingredients And Why Tom's Believes The Products Are "Natural And Good" ..................................................................................3

    D.    Plaintiffs' Alleged Experiences With Tom's Deodorant ........................4

        1.    Moran ..........................................................................................5

        2.    de Lacour .....................................................................................5

        3.    Wright .........................................................................................6

    E.    Plaintiffs' Claims In This Case Were Resolved Through A Prior Settlement ...............................................................................................7

III.   ARGUMENT ........................................................................................................7

    A.    The Definitions of Plaintiffs' Proposed Classes Are Overly-Broad.......................8

        1.    Plaintiffs Do Not Have Standing To Represent A Class Of Toothpaste Purchasers .................................................................8

        2.    The Proposed Classes Do Not Exclude Members Of The <u>Gay</u> Class..........9

        3.    The Proposed Classes Include Putative Class Members Who Were Not Actually Deceived Or Injured By The Allegedly Misleading Natural Representation.............................................................10

    B.    Plaintiffs Fail To Satisfy The Commonality Requirement ...................11

        1.    There Is No Common Understanding Of The Term Natural Among Plaintiffs And Members Of The Proposed Classes...................11

        2.    Plaintiffs Cannot Identify A Common Injury Provable by Common Proof...........................................................................................13

        3.    Members Of The Proposed Classes Who Reviewed The Entirety Of Tom's Packaging Also Would Not Have Suffered The Same Injury As Plaintiffs.....................................................................14

C.    Plaintiffs Are Neither Typical Of Nor Adequate To Represent The Proposed Classes.....................................................................................................14

    1.    Plaintiffs' Claims Are Atypical To A Portion Of The Proposed Classes.................................................................................................14

    2.    Plaintiffs Are Subject to Unique Defenses That Would Become The Focus Of The Litigation..............................................................15

        a.    The Claims Of Plaintiffs de Lacour And Wright, As Well As Other Members Of The <u>Gay</u> Class, Are Barred By The <u>Gay</u> Settlement...............................................................15

        b.    Plaintiffs Are Subject To The Unique Defense That They Are Not Reasonable Consumers Of Natural Personal Care Products...................................................................16

D.    Plaintiffs Cannot Satisfy The Requirements Of Rule 23(b) ................................17

    1.    Plaintiffs Cannot Satisfy The Requirements Of Rule 23(b)(3).................17

        a.    Because Consumers Purchase Tom's Products For A Variety Of Reasons, Whether The Natural Representation Was Material To Any Given Member Of The Proposed Classes Would Require Individualized Inquiries...........................18

        b.    Individual Inquiries Would Be Necessary To Determine Each Class Member's Understanding Of The Term Natural.........19

        c.    Individual Inquiries Would Be Necessary To Determine Whether The Proposed Class Members Received Any Benefit From Tom's Products............................................20

        d.    Variations In State Law For Breach Of Express Warranty Preclude A Finding That Common Issues Of Law Predominate .................................................................20

        e.    Plaintiffs' Proposed Classes Are Not Manageable .......................21

        f.    Plaintiffs Cannot Prove Classwide Damages................................23

    2.    A Class Cannot Be Certified Under Rule 23(b)(2) Because The Primary Purpose Of The Litigation Is Damages, And Plaintiffs Lack Standing For An Injunction .................................................24

IV.    CONCLUSION.....................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Algarin v. Maybelline,
  300 F.R.D. 444 (S.D. Cal. 2014) ................................................................... 10, 18, 19

Amchem v. Windsor,
  521 U.S. 591 (1997) ................................................................................................ 17

Ault v. Smucker,
  310 F.R.D. 59 (S.D.N.Y. 2015) .............................................................................. 18

Burgess v. Citigroup,
  624 F.App'x 6 (2d Cir. 2015) ................................................................................... 9

Comcast v. Behrend,
  569 U.S. 27 (2013) ................................................................................................. 23

Dauphin v. Chestnut Ridge,
  2009 WL 2596636 (S.D.N.Y. 2009) ................................................................. 15, 17

DiMuro v. Clinique,
  572 F.App'x 27 (2d Cir. 2014) ..................................................................... 8, 14, 15, 22

Ebin v. Kangadis,
  297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................ 11

Fermin v. Pfizer,
  215 F.Supp.3d 209 (E.D.N.Y. 2016) ..................................................................... 17

Galli v. Metz,
  973 F.2d 145 (2d Cir. 1992) ................................................................................... 21

Gordon v. Sonor,
  92 F.Supp.3d 193 (S.D.N.Y. 2015) ....................................................................... 15

Hairston v. S. Beach Bev.,
  2012 WL 1893818 (C.D. Cal. 2012) ..................................................................... 16

Hughes v. Ester C.,
  317 F.R.D. 333 (E.D.N.Y. 2016) ........................................................................... 20

In re Adelphia,
  272 F.App'x 9 (2d Cir. 2008) ................................................................................. 15

In re Avon,
  2015 WL 5730022 (S.D.N.Y. 2015) ...................................................... 10, 11, 13, 20, 22, 25

**Page(s)**

In re Bridgestone,
  288 F.3d 1012 (7th Cir. 2002) .................................................................... 21

In re ConAgra,
  302 F.R.D. 537 (C.D. Cal. 2014).................................................................. 24

In re Currency Conversion,
  230 F.R.D. 303 (S.D.N.Y. 2004).................................................................. 16

In re Foodservice,
  729 F.3d 108 (2d Cir. 2013) ........................................................................ 11

In re Fosamax,
  248 F.R.D. 389 (S.D.N.Y. 2008)............................................................... 8, 22

In re Hain,
  2015 WL 12001273 (C.D. Cal. 2015) ................................... 11, 18, 19, 20

In re Petrobras,
  862 F.3d 250 (2d Cir. 2017) .................................................................. 10, 21

In re Rezulin,
  210 F.R.D. 61 (S.D.N.Y. 2002).................................................................... 21

In re Scotts EZ Seed,
  304 F.R.D. 397 (S.D.N.Y. 2015)............................................................. 11, 18

Johns v. Bayer,
  2010 WL 476688 (S.D. Cal. 2010) ................................................................ 8

Johnson v. Nextel,
  780 F.3d 128 (2d Cir. 2015) .......................................................................... 8

Jones v. ConAgra,
  2014 WL 2702726 (N.D. Cal. 2014) ...................................... 12, 18, 20

Kaczmarek v. IBM,
  186 F.R.D. 307 (S.D.N.Y. 1999).................................................................. 21

Klein v. Robert's,
  28 A.D. 3d 63 (N.Y. App. Div. 2006) ......................................................... 21

Kommer v. Bayer,
  252 F.Supp.3d 304 (S.D.N.Y. 2017) ...................................................... 17, 25

Langan v. J&J,
  897 F.3d 88 (2d Cir. 2018) .......................................................................... 21

**Page(s)**

Larsen v. Trader Joe's,
  2012 WL 5458396 (N.D. Cal. 2012) ...................................................................... 9

Lewis Tree Serv. v. Lucent,
  211 F.R.D. 228 (S.D.N.Y. 2002) ...................................................................... 15

Lombardo v. J&J,
  124 F.Supp.3d 1283 (S.D. Fla. 2015) ........................................................... 10, 18

Newman v. RCN,
  238 F.R.D. 57 (S.D.N.Y. 2006) .................................................................. 10, 12

Newton v. Merrill Lynch,
  259 F.3d 154 (3d Cir. 2001) ........................................................................... 20

Oscar v. BMW,
  2012 WL 2359964 (S.D.N.Y. 2012) .......................................................... 14, 19

Pagan v. Abbot,
  287 F.R.D. 139 (E.D.N.Y. 2012) .................................................................... 14

Philip Morris v. Hines,
  883 So.2d 292 (Fla. Dist. Ct. App. 2003) .................................................. 18, 19

Randolph v. Smucker,
  303 F.R.D. 679 (S.D. Fla. 2014) ....................................................... 11, 12, 18, 20

Szymczak v. Nissan,
  2011 WL 7095432 (S.D.N.Y. 2011) ............................................................... 21

Teamsters v. Bombardier,
  546 F.3d 196 (2d Cir. 2008) ...................................................................... 8, 24

Vaccariello v. XM,
  295 F.R.D. 62 (S.D.N.Y. 2013) ...................................................................... 20

Wal-Mart v. Dukes,
  564 U.S. 338 (2011) ..................................................................... 7, 11, 14, 25

Wal-Mart v. Visa,
  396 F.3d 96 (2d Cir. 2005) ................................................................... 9, 10, 15

Webb v. Carter's,
  272 F.R.D. 489 (C.D. Cal. 2011) .................................................................... 23

Weiner v. Snapple,
  2010 WL 3119452 (S.D.N.Y. 2010) ..................................................... 21, 22, 23, 24

**Page(s)**

Wiener v. Dannon,
   255 F.R.D. 658 (C.D. Cal. 2009) ................................................................. 15

Wixon v. Wyndham,
   2009 WL 3353445 (N.D. Cal. 2009) ........................................................... 25

**RULES**

Fed. R. Civ. P. 23 ................................................................................................. 17

Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment .................................... 25

Defendants Colgate-Palmolive Co. and Tom's of Maine, Inc. ("Tom's" and collectively, "Defendants") submit the following opposition to Plaintiffs' motion for class certification:

## I.    INTRODUCTION[1]

For nearly fifty years, Tom's has been governed by certain core principles in providing personal care products that are naturally sourced and derived, sustainable, and responsible.  As part of these core principles, Tom's provides <u>extensive</u> information on its packages about what "makes a product natural and good" to Tom's and directs customers to its website, which contains even more detailed information about the source of each ingredient, the purpose of each ingredient, how it is derived, and what alternative ingredients might be used.  Ignoring this industry-leading transparency, Plaintiffs claim that the word natural on Tom's deodorants was the sole representation that misled them into buying products they contend are not natural.

Not only do Plaintiffs' claims myopically focus only on the word natural and ignore all of the information that was readily available to them on the packaging and on Tom's website, but Plaintiffs also provide no evidence that members of the proposed classes have a uniform definition of natural or would be uniformly misled by the word natural in purchasing Tom's products.  Moreover, a survey conducted by Columbia University marketing professor Dr. Ran Kivetz ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████

The problems with Plaintiffs' request for class certification do not end there.  Plaintiffs also ignore serious problems with the definitions of their classes, the interplay of their current request with a prior settlement of identical claims, the fact that they lack standing to represent a class of purchasers of products they did not purchase or to seek an injunction, that they have not shown a method for calculating classwide damages, and that their claims are subject to unique

---

[1] All citations and quotations are omitted from and all emphasis is supplied to all quoted material.

defenses that would render them inadequate to represent and atypical of their proposed classes. Plaintiffs' request for class certification is deficient in almost every way, and should be denied.

## II.     FACTUAL BACKGROUND

### A.     Tom's Stewardship Model Guides It In Developing Natural, Sustainable, And Responsible Personal Care Products

Tom and Kate Chappell founded Tom's in 1970.  Tom's was one of the first companies to offer personal care products (i.e., toothpaste, deodorant, mouthwash, shampoo, soap, and body wash) free from artificial flavors, fragrances, colors, and preservatives.  Sprague Decl. ¶2.  The Stewardship Model sets guidelines to ensure that Tom's products meet its definition of natural, sustainable, and responsible.  Id. ¶3.  As defined by the Stewardship Model, Tom's products are:

- "[S]ourced and derived from nature";
- "[F]ree of artificial flavors, fragrances, colors . . . and preservatives";
- Processed in a manner "that supports [Tom's] philosophy of human and environmental health";
- "Free from animal ingredients with the exception of some bee products"; and
- "Not tested on animals."  Lally Decl., Ex. A.

Tom's products have a loyal following, and complaints regarding the ingredients in Tom's products are rare.  ███████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████.  Id. at Ex. B.

### B.     Under The Stewardship Model, Tom's Products Are Sourced And Derived From Ingredients Occurring In Nature That Are Minimally-Processed

Under the Stewardship Model, Tom's personal care products use naturally sourced and derived ingredients.  Lally Decl., Ex. A.  Tom's website explains that an ingredient is "naturally sourced" when used in a form that "hasn't changed much from how it occurs in the identified source material."  Id. at Ex. C.  Similarly, an ingredient is "naturally derived" if it is naturally occurring and modified through additional processing only to improve its safety or efficacy.  Id.

All such processing is also done pursuant to the Stewardship Model.  Sprague Decl. ¶10. Any processing of ingredients in Tom's deodorant and toothpaste must involve material of plant

2

or mineral origin.  Id.  For example, although sodium lauryl sulfate ("SLS") can be derived from petroleum-based sources, Tom's uses SLS derived from coconut or palm kernel oil.  Id.  Tom's propylene glycol is formed through a reaction that takes place at high temperatures and pressures between glycerin obtained from vegetable sources and hydrogen.[2]  Id.  Tom's is transparent about the ingredients used in its products, and any consumer can visit Tom's website to learn what Tom's means by natural, the identity and purpose of ingredients, how an ingredient was processed (if at all), and potential alternatives.  Id. at ¶11; Lally Decl., Ex. C.

**C.    Tom's Packaging And Labeling Contain Information Regarding The Products' Ingredients And Why Tom's Believes The Products Are "Natural And Good"**

Tom's packaging provides considerable information regarding the products' ingredients and Tom's philosophy regarding natural products.  The package and label for the deodorant and toothpaste at issue specifically identifies "[w]hat makes a product natural and good," including "[n]o animal testing or animal ingredients," "[n]o artificial colors, flavors, fragrance, or preservatives," and that Tom's strives to "maximize recycled content and recyclability of [its] packaging."  Lally Decl., Ex. D; id. at Ex. E.  The label also directs consumers to visit Tom's website to learn about the Stewardship Model and what Tom's "mean[s] by natural." Id.

But the toothpastes and deodorants at issue are by no means uniform.  Not only are toothpaste and deodorant obviously different products with different uses, ingredients, and price points, but Tom's also offers a variety of deodorants, including those with different scents ("Tea Tree," "Refreshing Lemongrass," "Maine Woodspice"), formats (stick and crystal roll-on), ingredients (propylene-glycol-free), and consumers (men's or women's).  Lally Decl., Ex. D-G, J.  Similarly, Tom's sells toothpaste with, among other things, different flavors ("Clean Mint,"

---

[2] Citing no evidence, Plaintiffs claim the hydrogenolysis process used to form the propylene glycol involves "toxic chemicals."  Pls.' Mem. ISO Mot. for Class Cert. (Dkt. No. 70) ("Mem.") at 9.  Tom's hydrogenolysis process, however, involves no "toxic chemicals," but rather glycerin obtained from vegetable oils and hydrogen, as explained on its website.  Sprague Decl. ¶10.

"Spearmint," "Fennel"), functions (cavity protection, enamel strength, whitening), ingredients (fluoride-free and SLS-free), and consumers (adults, children, toddlers).  Id. at Ex. H-I, K-M.

Nor do these products have uniform packaging.  Lally Decl., Ex. D-M.  For example, Tom's "Refreshing Lemongrass" deodorant represents that it has "no aluminum," "no artificial . . . fragrance or preservatives" and "24 HR odor protection."  Id. at Ex. D.  In contrast, Tom's "Mineral Confidence" deodorant features "hypoallergenic," "clinically proven 24 hour odor protection," and "no aluminum chlorohydrate."  Id. at Ex. E.  For toothpaste, the "Luminous White" packaging states that it is "[s]afe for enamel," contains "[c]linically proven whitening technology," "[h]elps prevent tarter build-up," and is "[s]afe for everyday use" (id. at Ex. L), while the "Whole Care" toothpaste touts that it "fights cavities," provides "whitening" and "fresh breath," and contains "no artificial dyes or sweeteners" (id. at Ex. M).

### D.     Plaintiffs' Alleged Experiences With Tom's Deodorant[3]

Plaintiffs allege Defendants misrepresented Tom's products as natural when they purportedly contain synthetic and chemical ingredients.  Am. Compl. (Dkt. No. 8) ¶¶1, 13.  The Amended Complaint rotely recites that each Plaintiff "purchased Tom's Products based on claims . . . that the Products were 'natural.'. . .  [and] would not have purchased Tom's Products if the labels had not stated the Products were 'natural.'. . . [or] if she had know[n] the Products contained ingredients that were not in fact natural."  Id. at ¶¶6-8; see also de Lacour Decl. (Dkt. No. 69) ¶5; Moran Decl. (Dkt. No. 68) ¶5; Wright Decl. (Dkt. No. 67) ¶5.  While the Amended Complaint implicates every Tom's product and many ingredients, Plaintiffs' motion is limited to certain toothpastes and deodorants and only specifically discusses two ingredients they contend are not natural: SLS in Tom's toothpastes and propylene glycol in Tom's deodorants.  Compare Am. Compl. (Dkt. No. 8) at Ex. A, with Mem. (Dkt. No. 70) at 8-9.  Discovery has shown,

---

[3] As discussed herein, no Plaintiff alleges that she purchased Tom's toothpaste and was damaged by that purchase.  Am. Compl. (Dkt. No. 8) ¶¶6-8; disc. infra at 5-6.

however, that even Plaintiffs purchased Tom's products for a variety of reasons, have different definitions of natural, and had varying levels of engagement in reviewing the ingredients.

### 1.    Moran

Loree Moran contends she first purchased Tom's deodorant in the fall of 2015, although she could not recall a specific month or date of purchase.  Lally Decl., Ex. N at 19:14-20:12. Despite purporting to represent a class of toothpaste consumers, Moran admitted that she has no concerns regarding Tom's toothpaste and is bringing this case solely regarding Tom's deodorant. Id. at 78:2-16.  Moran admitted that she purchased Tom's deodorant for many reasons other than the natural representation, including a friend's recommendation, her research regarding the effects of "aluminum," familiarity with Tom's, and the label's "no aluminum" statement.  Id. at 21:3-23:15, 32:2-33:23, 54:15-23, 55:7-14.  Moran also testified that a natural product is one that is "pure," contains "[n]o additives," and is not "manipulated in any way."  Id. at 87:5-13.  She admitted, however, that human intervention was necessary to make personal care products:

> The product itself would need to be assembled by people, put in a factory, and that involves people. . . . Short of going outside and grabbing a leaf off a tree and rubbing it under your arms, people have to be involved somewhere.  Id. at 138:1-9.

Despite "frequently" reading ingredient lists, Moran did not review the ingredient list on Tom's deodorant until after purchasing and using it several times.  Id. at 49:11-24, 59:10-20, 74:12-15.  She also claimed that she did not see significant portions of the label directing consumers to visit Tom's website, and that she never visited the website, even when researching "no aluminum" deodorants and Tom's in particular.  Id. at 68:13-18, 85:22-24.  Moran confirmed she will not purchase Tom's deodorant again.  Id. at 44:13-18.

### 2.    de Lacour

Before filing this case, Anne de Lacour used Tom's deodorant for fifteen years, and did not use any other commercial deodorant during that time.  Lally Decl., Ex. O at 27:15-28:15, 45:16-23.  She also purchased Tom's toothpaste one time more than five years ago, an admission that places her outside the proposed class period.  Id. at 33:24-34:9; see also Mem. (Dkt. No. 70)

5

at 4.  Like many purchasers, including the other Plaintiffs, de Lacour had a variety of reasons for purchasing Tom's deodorant, including that it was "natural," contained "[n]o aluminum," "no parabens," and had "no artificial preservatives." Id. at 37:19-38:3.  Despite her purported concerns regarding natural products, de Lacour claims that she never reviewed the label's ingredient list during her <u>fifteen</u> <u>years</u> of using Tom's deodorant, and only stopped using the deodorant when Plaintiffs' counsel contacted her searching for plaintiffs for this case.  Id. at 18:1-20:21, 31:17-20.  Like Moran, de Lacour will not purchase Tom's deodorant in the future; her current deodorant is a combination of baking soda and water.  Id. at 27:25-28:8, 56:3-6.  de Lacour uses this combination because she views it as more "natural," which she defines as "[n]ot . . . chemically altered" and "comes from nature." Id. at 30:12-16, 45:2-20.[4]

### 3.    Wright

Andrea Wright also purchased Tom's deodorant for <u>years</u> prior to the current litigation. Lally Decl., Ex. P at 24:25-25:5.  She does not appear to have purchased Tom's toothpaste.  Id. at 44:23-25.  Like the other Plaintiffs, Wright purportedly relied on several representations in making her purchases, including "[n]atural," "no aluminum," and "unscented." Id. at 40:23-41:4.  Importantly, Wright had <u>no</u> concerns with Tom's deodorant until she was contacted by counsel, and contends that <u>only</u> <u>after</u> retaining Plaintiffs' counsel did she learn that Tom's deodorant contained ingredients that were purportedly not natural – which she defines as "organic" and not containing "synthetic type stuff" – and became dissatisfied with the product. Id. at 16:3-17:11, 42:23-25, 55:22-25.  In fact, Wright first saw the ingredient list for Tom's deodorant while preparing for her deposition in this case, and she has never visited Tom's website. Id. at 31:13-17, 44:20-22.  Like the other Plaintiffs, Wright will not purchase Tom's deodorant in the future. Id. at Ex. Q.

---

[4] Ironically, baking soda is also a man-made product.  See "How Products are Made," available at http://www.madehow.com/Volume-1/Baking-Soda.html (last visited Sept. 24, 2018).

**E.   Plaintiffs' Claims In This Case Were Resolved Through A Prior Settlement**

In 2014, Tom's resolved a class action predicated on allegations that Tom's products were purportedly falsely labeled as natural because they allegedly contained certain chemically-processed ingredients.  First Am. Compl. (Dkt. No. 14) ¶2, Gay v. Tom's, No. 0:14-cv-60604-KMM (S.D. Fla. 2014) ("Gay").  After a lengthy mediation, an extensive national campaign to notify class members, and robust briefing before the court, Chief Judge Michael Moore of the Southern District of Florida held a fairness hearing and granted final approval of the Settlement Agreement on March 11, 2016.  Lally Decl., Ex. R at ¶¶9-10.

In granting final approval, Judge Moore certified a settlement class of purchasers of "at least one Tom's of Maine Covered Product from March 25, 2009 through September 23, 2015."  Id. at ¶3.  Class members who submitted a valid claim received compensation from a settlement fund and Tom's made certain packaging and labeling changes, including providing additional information on Tom's standards for natural, sustainable, and responsible.  Lally Decl., Ex. S at § IV(A)-(B).[5]  In turn, the Settlement Agreement and Final Order make clear that class members who did not exclude themselves are deemed to have released all claims against Defendants relating to, inter alia, the "labeling, marketing, advertising, packaging, promotion, manufacture, [and] sale and distribution" of Tom's products as natural and are enjoined from pursuing those claims in any style, forum, or manner.  Id. at Ex. R at ¶¶15-16, 18; id. at Ex. S at § IX(B)(1).

## III.   ARGUMENT

A class may be certified if, after "rigorous analysis," the court is satisfied that each of the prerequisites for certification in Rule 23 have been met and the adjudication of the plaintiff's claim will fully and fairly resolve the claims of the proposed class.  Wal-Mart v. Dukes, 564 U.S. 338, 351 (2011).  Plaintiffs must prove their claims satisfy the requirements of Rule 23(a) as well as one or more of the subparts of Rule 23(b).  Teamsters v. Bombardier, 546 F.3d 196, 201-02

---

[5] By virtue of entering into the Settlement Agreement, the Gay plaintiffs and their counsel believed – and Judge Moore ordered – that the changes to the packaging and website sufficiently addressed the concerns laid out in the Gay complaint.  Lally Decl., Ex. S.

(2d Cir. 2008).  Plaintiffs may not rest on the allegations in their pleadings or conclusory statements, but must put forth <u>evidence</u> proving that class certification is appropriate.  <u>Id.</u>; <u>Johnson v. Nextel</u>, 780 F.3d 128, 138 (2d Cir. 2015).

### A.  The Definitions of Plaintiffs' Proposed Classes Are Overly-Broad

Before evaluating the requirements of Rule 23, the Court must consider whether the proposed class is properly defined and ascertainable.  <u>In re Fosamax</u>, 248 F.R.D. 389, 397 (S.D.N.Y. 2008).  Classes that are overly broad or not ascertainable cannot be certified.  <u>Id.</u>

### 1.  Plaintiffs Do Not Have Standing To Represent A Class Of Toothpaste Purchasers

Although Plaintiffs seek to represent consumers who purchased either Tom's deodorant or toothpaste, no Plaintiff alleges that she purchased Tom's toothpaste and was damaged by that purchase.  Am. Compl. (Dkt.  No. 8) ¶¶6-8; de Lacour Decl. (Dkt. No. 69) ¶5; Moran Decl. (Dkt. No. 68) ¶5; Wright Decl. (Dkt. No. 67) ¶5.  Plaintiffs, therefore, lack standing to pursue claims regarding Tom's toothpaste, as their claims rely <u>solely</u> on their purchases of deodorant.  <u>See</u>, <u>e.g.</u>, <u>DiMuro v. Clinique</u>, 572 F.App'x 27, 29 (2d Cir. 2014); <u>Johns v. Bayer</u>, 2010 WL 476688, *4-5 (S.D. Cal. 2010).  Toothpaste and deodorant have different ingredients, packaging, and uses and are by no means "nearly identical."  <u>DiMuro</u>, 572 F.App'x at 29.  Even the ingredients that Plaintiffs identify as allegedly not natural are differently derived and processed.  <u>See</u> disc. <u>supra</u> at 2-3.  And Plaintiffs have put forth <u>no</u> evidence that purchasers of toothpaste and deodorant are sufficiently similar.  <u>See</u> Mem. (Dkt. No. 70) at <u>passim</u>.  The very fact that some Plaintiffs purchased toothpaste and were not concerned about the natural representation indicates that purchasers of toothpastes and deodorants consider them differently and have different motivations for purchasing.  Lally Decl., Ex. N at 78:2-16.[6]  Plaintiffs' request for certification of

---

[6] The fact that Plaintiffs have limited their request for class certification to only certain of Tom's products (in contrast to the allegations in the Amended Complaint) is a tacit admission by Plaintiffs that they do not have standing to assert claims regarding products they did not purchase.  Mem. (Dkt. No. 70) at 4 n.3 (alternatively requesting certification of a class of purchasers of the products purchased by Plaintiffs, "Tom's of Maine brand deodorants").

a class of toothpaste purchasers should be denied. Larsen v. Trader Joe's, 2012 WL 5458396, *4-5 (N.D. Cal. 2012); disc. infra at 9-25.[7]

##### 2. The Proposed Classes Do Not Exclude Members Of The Gay Class

Plaintiffs completely ignore the Gay settlement, which materially impairs Plaintiffs' request for class certification. To begin with, Plaintiffs' proposed classes fail to exclude consumers who were also members of the Gay Class. Mem. (Dkt. No. 70) at 4. The Gay Settlement Agreement and Final Order precludes members of the Gay Class (including de Lacour and Wright, and perhaps Moran) from "filing, commencing, prosecuting, intervening in or participating" in litigation against Defendants relating to, inter alia, Tom's allegedly false and misleading natural representation. Lally Decl., Ex. R at ¶18; id. at Ex. S at § IX(B)(1).

"Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief" and such authority to release claims is only "limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." Wal-Mart v. Visa, 396 F.3d 96, 106 (2d Cir. 2005). It is indisputable that the claims in this case arise from an "identical factual predicate" as those asserted in Gay: both actions allege that Tom's employed false and misleading natural representations that caused class members to pay a "premium" for products that were not natural. Compare First Am. Compl. (Gay Dkt. No. 14) ¶¶2-3, with Am. Compl. (Dkt. No. 8) ¶¶3, 6-8.[8] And the same ingredients at issue here were included in the "Covered Ingredients" in Gay, further evidencing an "identical factual predicate" for purposes of releasing Plaintiffs' claims. Compare Lally Decl., Ex. S at § II(A)(15), with Am. Compl. (Dkt. No. 8) ¶27. Plaintiffs' interests were also adequately represented in the Gay settlement. "Adequate

---

[7] Though de Lacour and Moran purchased Tom's toothpaste, de Lacour's purchase occurred outside the class period and Moran stated she is not concerned with Tom's toothpaste. See disc. supra at 5.

[8] Although Plaintiffs' Amended Complaint covers a different time period than the period in Gay, the date on which a consumer purchased a Tom's product has no effect on Defendants' potential liability in this action and, therefore, cannot constitute a separate factual predicate for purposes of releasing Plaintiffs' claims. See, e.g., Burgess v. Citigroup, 624 F.App'x 6, 8-9 (2d Cir. 2015).

representation of a particular claim is established mainly by showing an alignment of interests between class members." Wal-Mart, 396 F.3d at 106-07.  As applicable here, the Gay settlement covers the same products and ingredients at issue in this case and provides nearly the same recovery requested by Plaintiffs, including restitution and injunctive relief.  Compare Lally Decl., Ex. S at §§ II(A)(15), IV(A)-(B), with Am. Compl. (Dkt. No. 8) ¶¶27, 112, pp. 31-32.

Accordingly, those individuals who are members of the Gay Class have released their claims and cannot pursue them a second time in this case.  See, e.g., Wal-Mart, 396 F.3d at 107.[9]

### 3.      The Proposed Classes Include Putative Class Members Who Were Not Actually Deceived Or Injured By The Allegedly Misleading Natural Representation

Plaintiffs purport to bring this case on behalf of a proposed class of "all persons in the United States who purchased Tom's of Maine deodorant and/or toothpaste products . . . on or after September 24, 2015," as well as subclasses of California, Florida, and New York consumers.  Mem. (Dkt. No. 70) at 4.  Plaintiffs assert claims for breach of express warranty under New York law on behalf of a nationwide class and for violations of California, Florida, and New York consumer protection laws on behalf of subclasses for each of those states.  Id. Plaintiffs' claims require inquiry into whether members of the proposed classes were actually deceived and injured by the allegedly false and misleading natural representation.  Id. at 3-4.[10]

As currently framed, however, Plaintiffs' proposed classes include countless individuals who were either not deceived by the natural representation or suffered no injury from their purchases of Tom's deodorant and toothpaste, including but not limited to:

- Consumers like Moran who relied on recommendations of friends and family in purchasing Tom's products (see, e.g., Newman v. RCN, 238 F.R.D. 57, 63-64, 80-81 (S.D.N.Y. 2006));

---

[9] While the Second Circuit has declined to adopt a stand-alone requirement that plaintiffs set forth an administratively feasible way to identify members of a proposed class, it also held this requirement was already present in the predominance and superiority elements of Rule 23(b)(3).  In re Petrobras, 862 F.3d 250, 268-69 (2d Cir. 2017).  As individual inquiries would be required to identify those who purchased for the first time after September 24, 2015, Plaintiffs' motion should be denied.  See disc. infra at 22.

[10] See also, e.g., Algarin v. Maybelline, 300 F.R.D. 444, 457 (S.D. Cal. 2014); Lombardo v. J&J, 124 F.Supp.3d 1283, 1290 (S.D. Fla. 2015); In re Avon, 2015 WL 5730022, *7 (S.D.N.Y. 2015).

- Consumers who read the ingredients listed on the packaging or on Tom's website and fully understood what ingredients were in the product and why Tom's considers them to be natural (see, e.g., Randolph v. Smucker, 303 F.R.D. 679, 695 (S.D. Fla. 2014));

- Consumers who purchased Tom's products for reasons other than the fact that they contain natural ingredients (see, e.g., In re Hain, 2015 WL 12001273, *10 (C.D. Cal. 2015)); and

- Consumers who fully benefitted from their purchases of Tom's products and have no complaints about the products (see, e.g., In re Avon, 2015 WL 5730022, *7).

The defects here mirror those in cases for which other courts have rejected class certification, including cases where members of the proposed class purchased products for reasons apart from the natural representation or suffered no harm.  See, e.g., In re Hain, 2015 WL 12001273, *10.

### B.    Plaintiffs Fail To Satisfy The Commonality Requirement

The commonality prong of Rule 23 requires Plaintiffs "to demonstrate that the class members have suffered the same injury" that "depend[s] upon a common contention," the truth or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 564 U.S. at 350.  In cases where neither the alleged misrepresentations nor injury are common to the proposed class, class certification is inappropriate.

#### 1.    There Is No Common Understanding Of The Term Natural Among Plaintiffs And Members Of The Proposed Classes

Plaintiffs allege that all putative class members define the term natural in the same way, but provide no evidence to support this claim.[11]  Mem. (Dkt. No. 70) at 8.  ███████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████  Lally Decl.,

---

[11] The cases cited by Plaintiffs to argue that courts "routinely" find commonality from a uniform misrepresentation are inapposite, as they involved representations that were not reasonably susceptible to different interpretations.  In re Foodservice, 729 F.3d 108, 118 (2d Cir. 2013) (claims involving concealment of a mark-up inserted in invoices); In re Scotts EZ Seed, 304 F.R.D. 397, 403 (S.D.N.Y. 2015) (claims involving "50% thicker with half the water"); Ebin v. Kangadis, 297 F.R.D. 561, 564-65 (S.D.N.Y. 2014) (claims involving "100% Pure Olive Oil").

[12] Any definition of "natural" must also recognize that Plaintiffs are alleging injury from their purchases of deodorant.  Mem. (Dkt. No. 70) at passim.  As Moran acknowledged, "[s]hort of going outside and

<span style="font-size:smaller">(continued...)</span>

Ex. T; see also id. at Ex. U (████████████████████████████████

████████████████████████████████████████

Even the Plaintiffs themselves could not articulate a single definition of the term natural during their depositions.  To Moran, a natural product is one that is "[p]ure," without "additives," and not "manipulated in any way."  Lally Decl., Ex. N at 87:5-11.  Wright, on the other hand, views natural products as being "organic" with no "synthetic type stuff," id. at Ex. P at 42:23-25, while de Lacour wants natural products that are "[n]ot chemically altered" and "come[] from nature."  Id. at Ex. O at 30:12-16.[13] ███████████████████████████

█████████████ Kivetz Decl. at ¶¶135-44. ███████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

Id. at Ex. L at 9, Ex. M at 15.

Because consumers do not have a single definition of natural and class members do not understand the natural representation on Tom's deodorant in the same way, individual inquiries are required and a finding of commonality is precluded.  See, e.g., Jones v. ConAgra, 2014 WL 2702726, *14 (N.D. Cal. 2014); Randolph, 303 F.R.D. at 695; Newman, 238 F.R.D. at 75.[14]

---

(...continued)

grabbing a leaf off a tree and rubbing it under your arms," some form of processing is necessary to manufacture deodorant.  Lally Decl., Ex. N at 138:1-11.

[13] de Lacour's current choice of a replacement to Tom's deodorant, a combination of baking soda and water, illustrates how natural lacks a common meaning.  While de Lacour testified that no commercial deodorant meets her natural standard, Wright currently uses a Trader Joes brand that contains propylene glycol, the very ingredient in deodorant that Plaintiffs challenge in their class certification motion.  Lally Decl., Ex. O at 45:2-20; id. at Ex. P at 49:8-50:12, 52:12-19; Mem. (Dkt. No. 70) at 3, 9.

[14] The FDA has not issued any regulations or provided any definition or guidance for the use of the term natural on personal care products (Defs.' Mem. ISO Mot. to Stay (Dkt. No. 33) at 1-3), and Plaintiffs have previously taken the position that the definition of natural for food products is not instructive vis-à-vis personal care products (Opp. to Mot. to Stay (Dkt. No. 35) at 1, 4-5), precluding them from now arguing that any such definition could be used in this case.

### 2.      Plaintiffs Cannot Identify A Common Injury Provable by Common Proof

Plaintiffs have likewise not produced <u>any</u> evidence that the proposed classes suffered a common injury provable by common proof.  Mem. (Dkt. No. 70) at <u>passim</u>.  Plaintiffs attempt to allege a common injury by claiming that Tom's deodorants and toothpastes contain the natural representation and as such, all consumers were deceived and all consumers paid a premium.  <u>Id.</u> at 5.  It is not clear, however, that all members of the proposed classes purchased Tom's products because they were seeking a natural product.  ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████[15]

Furthermore, the Tom's deodorant label Plaintiffs take issue with contains representations separate from natural, including "no aluminum," "24 HR odor protection," "[n]o artificial fragrance or preservatives," "[n]o animal testing or animal ingredients," "[s]ustainable practices are a priority in every aspect of our business," and "[w]e strive to maximize recycled content and recyclability of our packaging."  Lally Decl., Ex. D.  Despite claiming that they relied solely on the natural representation, all three Plaintiffs admitted they purchased Tom's deodorant based partly on other representations on the label, including "no aluminum," which is not alleged to be misleading.  <u>See</u> disc. <u>supra</u> at 5-6; Am. Compl. (Dkt. No. 8) at <u>passim</u>.

Whether any given consumer received the benefits he or she expected from Tom's products, however, cannot be a common question answered by common proof.  <u>In re Avon</u>, 2015

---

[15] Dennis's survey related to toothpaste and did not address the product actually purchased by Plaintiffs (<u>i.e.</u>, deodorant).  <u>See</u> disc. <u>infra</u> at 26.

WL 5730022, *7 (no common injury when many consumers "wanted the product notwithstanding the misleading act").  For example, if a consumer purchased deodorant because of the truthful representation that it has no aluminum, and the consumer received that benefit, she would not have suffered any injury, let alone the same injury as other members of the proposed classes.  See, e.g., Pagan v. Abbot, 287 F.R.D. 139, 148-49 (E.D.N.Y. 2012).

### 3. Members Of The Proposed Classes Who Reviewed The Entirety Of Tom's Packaging Also Would Not Have Suffered The Same Injury As Plaintiffs

Consumers who read Tom's explanation of "[w]hat makes a product natural and good" on the product's packaging or visited Tom's website would have relied on different statements than Plaintiffs and would not have suffered any injury, as they would have fully understood "what [Tom's] means by 'natural.'"  See disc. supra at 2-4, 10-11.  As such, if the Court determined that the word natural on the deodorant label was materially false and misleading (which Defendants deny) but that other information on the packaging or Tom's website was not, a consumer that relied solely on the word natural would not have "suffered the same injury" as a consumer that relied upon other statements.  Dukes, 564 U.S. at 350.  Indeed, if a Court found that information on the packaging and website was not materially false and misleading, the latter consumer suffered no injury at all.  Oscar v. BMW, 2012 WL 2359964, *6 (S.D.N.Y. 2012).

### C. Plaintiffs Are Neither Typical Of Nor Adequate To Represent The Proposed Classes

The requirements of Rule 23(a) are intended to "ensure[] that the named plaintiffs are appropriate representatives of the class."  Dukes, 564 U.S. at 349.  But where a named plaintiff's claims result from unique conduct and are subject to unique defenses, she is atypical of and inadequate to represent the class.

### 1. Plaintiffs' Claims Are Atypical To A Portion Of The Proposed Classes

Because Plaintiffs' claims rely on their purchases of Tom's deodorant, they are atypical of a class that includes members who purchased Tom's toothpaste.  DiMuro, 572 F.App'x at 29. Consumers likely have different considerations when purchasing deodorant as opposed to

toothpaste (as demonstrated by Moran, who purchased both products but brings this lawsuit solely based on her purchase of Tom's deodorant (see disc. supra at 5)), including different allegedly "unnatural" ingredients.  Mem. (Dkt. No. 70) at 17, 22; see also Wiener v. Dannon, 255 F.R.D. 658, 666 (C.D. Cal. 2009).   Plaintiffs, therefore, would rely on "entirely unique evidence" to support their claims related to Tom's deodorant as opposed to Tom's toothpaste, and adjudication of those claims would not resolve the claims of purchasers of Tom's toothpaste. DiMuro, 572 F.App'x at 29; Lewis Tree Serv. v. Lucent, 211 F.R.D. 228, 234 (S.D.N.Y. 2002).

## 2. Plaintiffs Are Subject to Unique Defenses That Would Become The Focus Of The Litigation

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of litigation" because "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  See Dauphin v. Chestnut Ridge, 2009 WL 2596636, *3 (S.D.N.Y. 2009).[16]

### a. The Claims Of Plaintiffs de Lacour And Wright, As Well As Other Members Of The Gay Class, Are Barred By The Gay Settlement

As noted above, the Gay Class released claims relating to Tom's allegedly false and misleading natural representation. See disc. supra at 7.  de Lacour and Wright both testified that they purchased Tom's deodorant for years prior to the proposed class period and are therefore part of the Gay Class. Id. at 5-6.  As such, they are subject to the unique defense that their claims are barred by the Gay settlement.  See, e.g., Wal-Mart, 396 F.3d at 106-07; In re Adelphia, 272 F.App'x 9, 13-14 (2d Cir. 2008).  Moreover, Plaintiffs have made no attempt to exclude the members of the Gay Class from their proposed classes, even though it is abundantly clear that

---

[16] At the class certification stage, Defendants need not show that the unique defenses "prevail," but only that the defenses are "meritorious enough" as to require Plaintiffs to "devote considerable time to rebut" them.  Gordon v. Sonor, 92 F.Supp.3d 193, 201 (S.D.N.Y. 2015).

the Gay Class released all of their claims relating to the allegedly false and misleading natural representations, including those based on future purchases. See disc. infra at 21; supra at 7.[17]

### b.   Plaintiffs Are Subject To The Unique Defense That They Are Not Reasonable Consumers Of Natural Personal Care Products

Because Plaintiffs (i) ignored the representations on Tom's packaging and labeling that detailed what makes the products "natural and good," (ii) failed to read the clearly stated ingredient list, and (iii) made no effort to visit Tom's website to learn more about those ingredients and Tom's natural standard, they are subject to the unique defense that they did not behave as reasonable consumers under the circumstances and are otherwise not typical of consumers of Tom's products.   Hairston v. S. Beach Bev., 2012 WL 1893818, *5 (C.D. Cal. 2012). ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

In contrast to the behavior of typical Tom's consumers, de Lacour testified that she never once read the ingredient list during her fifteen years of using Tom's deodorant, while Wright first reviewed the ingredient list when preparing for her deposition in this case.  Lally Decl., Ex. P at 31:13-17, 36:20-24.  Similarly, though Moran described herself as someone who "frequently" looks at ingredient lists on products, she did not read the ingredient list until after she purchased the deodorant three or four times.  Id. at Ex. N at 49:11-24, 59:10-20, 74:12-15.  And Plaintiffs' lack of attention to their purchases is not limited to failing to read the ingredients.  In testimony that somewhat defies logic considering how important Plaintiffs allege purchasing natural deodorant was, Plaintiffs contend they did not review or consider any of the additional information that was on Tom's deodorant other than natural, never reviewed the information on

---

[17] In all events, the fact that members of the Gay Class would have received notice of the allegations that some believed Tom's products were not natural and were purportedly over-priced and chose to continue to purchase them anyway presents a serious predominance issue. See, e.g., In re Currency Conversion, 230 F.R.D. 303, 311 (S.D.N.Y. 2004).

the back panel about what makes a product "natural and good" and never visited Tom's website, despite claiming to have done considerable research.  Id. at Ex. O at 18:1-20:21, 31:17-20; id. at Ex. N at 32:11-33:10, 68:13-18, 74:12-15 85:22-24; id. at Ex. P at 31:13-17, 36:20-24, 44:20-22. Indeed, de Lacour and Wright were aware of no potential issues until Plaintiffs' counsel reached out to discuss this current litigation.  Id. at Ex. O at 18:1-20:21; id. at Ex. P at 16:3-17:11.

"[I]gnor[ing] the evidence plainly before [them]," including the clearly stated ingredient list and other representations on the packaging, as well as the readily accessible information on Tom's website, is hardly the mark of a reasonable consumer who sought natural deodorant free from "chemicals" and was willing to pay a price premium.  Kommer v. Bayer, 252 F.Supp.3d 304, 312 (S.D.N.Y. 2017); Fermin v. Pfizer, 215 F.Supp.3d 209, 211-12 (E.D.N.Y. 2016).  It strains credulity that Plaintiffs did not review the entire label or information available on Tom's website (which the label directs them to) before purchasing Tom's deodorant, and in the cases of de Lacour and Wright, used the product for "years" without seeking out such information.  See disc. supra at 5-6.  This defense unique to Plaintiffs is likely to become the focus of the case to the detriment of absent class members.  Dauphin, 2009 WL 2596636, *3.

### D.    Plaintiffs Cannot Satisfy The Requirements Of Rule 23(b)

Even if Plaintiffs could satisfy their burden under Rule 23(a) (which they cannot), they must also demonstrate the proposed classes meet the criteria enumerated in one of the prongs of Rule 23(b).  Amchem v. Windsor, 521 U.S. 591, 614 (1997).  Plaintiffs, however, cannot do so.

### 1.    Plaintiffs Cannot Satisfy The Requirements Of Rule 23(b)(3)

To certify a class under Rule 23(b)(3), Plaintiffs must prove "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3).   Predominance is "far more demanding" than commonality and is intended to ensure the class is sufficiently cohesive to overcome due process concerns. Amchem, 521 U.S. at 623-24.  Here, common questions do not predominate over individual ones.

17

a. **Because Consumers Purchase Tom's Products For A Variety Of Reasons, Whether The Natural Representation Was Material To Any Given Member Of The Proposed Classes Would Require Individualized Inquiries**

To prevail on their consumer fraud claims, Plaintiffs must prove that the alleged misrepresentations were material to the purchasers of the product. Algarin, 300 F.R.D. at 453; Lombardo, 124 F.Supp.3d at 1287; Ault v. Smucker, 310 F.R.D. 59, 63 (S.D.N.Y. 2015).  If materiality varies between class members, the issue is not subject to common proof.  In re Hain, 2015 WL 12001273, *10; Oscar, 2012 WL 2359964, *6-8; Philip Morris v. Hines, 883 So.2d 292, 295 (Fla. Dist. Ct. App. 2003).[18]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████[19]  Lally Decl., Ex. U; id. at Ex. N at 21:3-23:15.

---

[18] Plaintiffs argue that materiality is common to a class when an objective standard governs the alleged misrepresentation, citing In re Scotts, 304 F.R.D. at 409.  Mem. (Dkt. No. 70) at 12-13.  The court in In re Scotts, however, held that the issues challenged by plaintiffs were subject to objective proof: did the product grow grass and was that grass 50% thicker.  In re Scotts, 304 F.R.D. at 409.  In this case, the term natural is not subject to a single objective definition, as several courts have held (see, e.g., Randolph, 303 F.R.D. at 695) and as such, the subjective definition that consumers may have had in mind when purchasing defeat the presumption of materiality.  See, e.g., Jones, 2014 WL 2702726, *14.

[19] Plaintiffs cite certain Tom's internal research as supporting the contention that the natural representation drives consumer purchases.  Mem. (Dkt. No. 70) at 2-3. ████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████.  Id. ¶¶168-70.



Given that consumers purchase Tom's deodorant and toothpaste for numerous reasons other than natural, neither reliance nor materiality can be presumed across the proposed classes. Oscar, 2012 WL 2359964, *4, 6 ("It is impossible to determine, on a global basis, whether the presence of RFTs . . . 'caused' consumers to pay a higher sum for the MFNI S. For some consumers, the RFTs may have been an important factor; for others, not at all; for others, somewhere in between; and others, perhaps most others, may never have thought to isolate the relative contribution of each of the differences between these models in deciding to purchase the MINI S."); see also In re Hain, 2015 WL 12001273, *10; Hines, 883 So.2d at 295; disc. infra at n.22 (discussing reliance requirement for breach of warranty under New York law).  Since materiality will depend upon individualized inquiries, class certification is not appropriate.  Id.[20]

**b.   Individual Inquiries Would Be Necessary To Determine Each Class Member's Understanding Of The Term Natural**

As previously discussed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮  See disc. supra at 11-12.  In the absence of a uniform definition of natural,

---

[20] Because Plaintiffs cannot establish a material misrepresentation, the Court cannot infer a presumption of reliance under California law (Algarin, 300 F.R.D. at 453), and individualized inquiries would be required to determine reliance on the natural representation, further showing Plaintiffs' inability to satisfy Rule 23(b)(3). See disc. infra at 18-19.

however, this Court would need to perform individualized inquiries into each consumer's subjective understanding of, and expectations for, the term natural.  See, e.g., Randolph, 303 F.R.D. at 695; Jones, 2014 WL 2702726, *14.  Furthermore, because consumers interpret natural differently, any damages calculation would also need to consider "each class member['s] precise definition of [natural]," meaning that "questions of individual damages calculations" will predominate.  Hughes v. Ester C., 317 F.R.D. 333, 356 (E.D.N.Y. 2016); see also Lally Decl., Ex. B (showing few complaints relating to natural ingredients).

### c.    Individual Inquiries Would Be Necessary To Determine Whether The Proposed Class Members Received Any Benefit From Tom's Products

"Where proof of the fact of damages requires evidence concerning individual class members," as is the case here, individual issues predominate.  Newton v. Merrill Lynch, 259 F.3d 154, 188 (3d Cir. 2001).  As noted above, ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████.  Members of the proposed classes who receive benefits separate from the natural representation would have no damages, and this Court could only identify those members through individualized inquiries into consumer expectations.  In re Avon, 2015 WL 5730022, *7; In re Hain, 2015 WL 12001273, *10; Vaccariello v. XM, 295 F.R.D. 62, 74 (S.D.N.Y. 2013).[21]

### d.    Variations In State Law For Breach Of Express Warranty Preclude A Finding That Common Issues Of Law Predominate

New York's choice of law rules prevent Plaintiffs from pursuing a breach of express warranty claim on behalf of the nationwide class.  Specifically, New York choice of law rules

---

[21] Plaintiffs appear to argue that even if class members received other benefits from Tom's products, they still paid a price premium based only on the allegedly misleading natural representation.  Mem. (Dkt. No. 70) at 21-23. ███████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████.; see also In re Avon, 2015 WL 5730022, *7.

dictate that the substantive law of the state where each class member resides must apply to the breach of express warranty claim, implicating the laws of all fifty states and not New York common law.[22]  See, e.g., Szymczak v. Nissan, 2011 WL 7095432, *12 (S.D.N.Y. 2011).  The elements of common law breach of express warranty claims, however, vary materially from state to state.  In re Bridgestone, 288 F.3d 1012, 1015 (7th Cir. 2002) ("[Differences in state law] have led us to hold that . . . warranty, fraud, or products-liability suits may not proceed as nationwide classes."); Kaczmarek v. IBM, 186 F.R.D. 307, 312-13 (S.D.N.Y. 1999).  In light of the lack of uniformity in state law, courts have found that individual issues predominate and have refused to certify nationwide classes.  In re Rezulin, 210 F.R.D. 61, 71 (S.D.N.Y. 2002).  The same outcome should control here.  Id.; see also Langan v. J&J, 897 F.3d 88, 98-99 (2d Cir. 2018).

### e.     Plaintiffs' Proposed Classes Are Not Manageable

Plaintiffs present no evidence that a class action is a superior and manageable method for resolving this case but, instead, argue that it is "administratively feasible" to identify class members because they either "purchased the products, or they did not." Mem. (Dkt. No. 70) at 15.  Plaintiffs' proposed classes, however, present considerable manageability issues.

For one, and as discussed above, Plaintiffs completely ignore the Gay settlement, which precludes all members of the proposed classes who did not exclude themselves from that settlement (including Plaintiffs de Lacour and Wright) from bringing claims against Defendants relating to Tom's allegedly false and misleading natural representation.  See disc. supra at 7. Indeed, Plaintiffs offer no plan to identify the members of the Gay Class that would otherwise be barred from asserting their claims.  In re Petrobras, 862 F.2d at 269; disc. supra at 9-10.

---

[22] Even if New York common law were to apply, class certification would still be inappropriate.  Under New York law, "basis of the bargain" reliance applies, meaning a buyer cannot bring a breach of express warranty claim if she "closes on a contract in the full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty under the terms of the contract."  Galli v. Metz, 973 F.2d 145, 151 (2d Cir. 1992).  As such, individual questions predominate as the validity of each buyer's claim would depend on her understanding of the term natural.  Weiner v. Snapple, 2010 WL 3119452, *11 (S.D.N.Y. 2010); Klein v. Robert's, 28 A.D. 3d 63, 72 (N.Y. App. Div. 2006).

Plaintiffs similarly provide <u>no</u> plan for identifying members of the proposed classes who purchased the <u>specific</u> toothpastes and deodorants identified in Plaintiffs' motion, including but not limited to a plan for excluding those who purchased toothpastes that are SLS-free (Lally Decl., Ex. H-I, K-M) or deodorants that are propylene-glycol-free (<u>id.</u> at Ex. D-G, J).  Those who purchased Tom's products without these ingredients would not have the same claim as other members of the proposed classes, and there is no reasonable way in which to identify these purchasers.  <u>DiMuro</u>, 572 F.App'x at 29.

Nor have Plaintiffs provided a plan to identify consumers who purchased Tom's deodorant and toothpaste during their proposed class period.  Mem. (Dkt. No. 70) at <u>passim</u>. Tom's does not have records of potential class members because third-party retailers primarily sell its products.  Sprague Decl. ¶12.  This Court, therefore, would need to rely solely on class members to both accurately remember dates of purchase and to self-identify.  <u>See, e.g.</u>, <u>Weiner</u>, 2010 WL 3119452, *13.  Courts routinely hold that where there is no way to verify if a purchaser is actually a class member, class certification is improper.  <u>See, e.g.</u>, <u>In re Avon</u>, 2015 WL 5730022, *5.  The ability of the members of the proposed classes to self-identify is particularly problematic in this case, as Plaintiffs have attempted to plead around the <u>Gay</u> Class by setting the class period for the day after the end of the <u>Gay</u> settlement.  Mem. (Dkt. No. 70) at 4.  There is absolutely no reason to believe (and Plaintiffs have certainly offered no evidence) that members of the proposed classes would be able to determine whether they purchased Tom's toothpaste or deodorant before or after September 24, 2015 and which specific toothpastes and deodorants they purchased.  Kivetz Decl. ¶¶308-16; <u>see also</u> <u>In re Avon</u>, 2015 WL 5730022, *5; <u>Weiner</u>, 2010 WL 3119452, *13.

Finally, the lack of commonality and predominance would also render this case unmanageable as a class action.  <u>In re Fosamax</u>, 248 F.R.D. at 403.  As discussed above, members of the proposed classes have different interpretations of natural, were not exposed to

the same representations, and purchased Tom's deodorant and toothpaste for different reasons. See disc. supra at 11-15.  Plaintiffs have provided no details regarding how claims could be tried on a class basis and how members of the proposed classes entitled to recover could be identified if not all putative class members have the same interpretation of natural, viewed the same natural representations, or suffered an injury.  Mem. (Dkt. No. 70); Weiner, 2010 WL 3119452, *11.[23]

### f.   Plaintiffs Cannot Prove Classwide Damages

Finally, to obtain class certification pursuant to Rule 23(b)(3), Plaintiffs must establish that "damages are capable of measurement on a classwide basis."  Comcast v. Behrend, 569 U.S. 27, 34 (2013).   Plaintiffs submitted a conjoint survey conducted by J. Michael Dennis to purportedly derive a price premium that consumers paid for Tom's toothpaste as well as an expert report by Colin B. Weir to calculate the purported classwide damages.  Dennis Decl. (Dkt. No. 65) at passim; Weir Decl. (Dkt. No. 66) at passim.  Defendants' experts, Dr. Joseph Krock and Dr. Kivetz, have detailed the profound flaws in Plaintiffs' purported "price premium" analysis, which Defendants will not repeat in full here, but in summary include that:



- (Kivetz Decl. ¶¶185-251);

- Kivetz Decl. ¶¶197-216);

- (Krock Decl. ¶¶19-26, 47-56; Kivetz Decl. ¶¶217-26, 249-51, 298-300); and

---

[23] A class action is also not superior, as Tom's offers a full money back guarantee, if for any reason, a customer is not satisfied with any Tom's product. "Product Guarantee," available at https://www.tomsofmaine.com/product-guarantee (last visited Sept. 24, 2018); see also Webb v. Carter's, 272 F.R.D. 489, 504-05 (C.D. Cal. 2011).

- [redacted] (Krock Decl. ¶¶60-63; Kivetz Decl. ¶¶252-63).

Even putting those issues aside, however, Plaintiffs' damages calculation suffers from a fundamental flaw: it only calculates a purported price premium for Tom's toothpaste, a product about which none of the Plaintiffs are making claims and a product for which Plaintiffs cannot adequately represent a class. Dennis Decl. (Dkt. No. 65) ¶15; disc. supra at 5-6, 8-9. While Dennis claims that he could apply the price premium survey methodology used for Tom's toothpaste to Tom's deodorant, he has not done so and has no opinions regarding a purported price premium at this time. Id. ¶14 n.2; see also Lally Decl., Ex. W at 60:13-61:16, 72:23-73:7, 74:19-21; id. at Ex. X at 83:17-24, 94:2-8. Courts often deny class certification on the basis that experts, despite proposing a methodology for calculating damages, failed to actually employ that methodology. By way of example, in In re ConAgra, 302 F.R.D. 537 (C.D. Cal. 2014), the court held that plaintiffs had not shown damages could be calculated on a classwide basis where Mr. Weir "describe[d] the methods he would use to make the calculation" but did not actually use them "to identify the price premium." Id. at 577; see also Weiner, 2010 WL 3119452, *8-10. The same is true here. Plaintiffs have not attempted to show that damages can be calculated on a classwide basis for a class of deodorant purchasers, the only class Plaintiffs could possibly represent, and therefore cannot satisfy the requirements of Rule 23(b)(3). Id.[24]

**2. A Class Cannot Be Certified Under Rule 23(b)(2) Because The Primary Purpose Of The Litigation Is Damages, And Plaintiffs Lack Standing For An Injunction**

Plaintiffs purport to seek injunctive relief under Rule 23(b)(2) prohibiting the labeling of Tom's toothpaste and deodorant as natural. Mem. (Dkt. No. 70) at 25. It is axiomatic, however, that Rule 23(b)(2) does not extend to cases where "the appropriate final relief relates exclusively

[24] Plaintiffs have been well aware of the products they purchased and the potential difficulty in certifying a broader class since the filing of the initial Complaint. Am. Compl. (Dkt. No. 8) at passim. Allowing Plaintiffs to conduct the damages analysis on the product that they have known was most applicable to their request for class certification after the fact would impermissibly deprive Defendants of the ability to properly challenge the analysis prior to class certification. Teamsters, 546 F.3d at 201-02.

or predominately to money damages."  Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment; see also Dukes, 564 U.S. at 360-61.  It is indisputable that the primary purpose of the Amended Complaint is to seek relief for past injuries.  Am. Compl. (Dkt. No. 8) ¶¶46-132. Indeed, the purpose of the majority of the laws under which Plaintiffs seek relief is to provide monetary damages.  Id.; see also Wixon v. Wyndham, 2009 WL 3353445, *6 (N.D. Cal. 2009) (certification under Rule 23(b)(2) not appropriate when three of the five claims sought damages). Plaintiffs also submitted two expert reports related to damages, further demonstrating that the requested injunctive relief is incidental.  Dennis Decl. (Dkt. No. 65); Weir Decl. (Dkt. No. 66).

Moreover, Plaintiffs cannot properly represent a Rule 23(b)(2) class because they have each admitted that they do not intend to purchase Tom's products in the future.  See disc. supra at 5-6.  Accordingly, Plaintiffs lack standing to seek a forward-looking injunction.  See, e.g., Kommer, 252 F.Supp.3d at 309-10; In re Avon, 2015 WL 5730022, *8.

## IV.   CONCLUSION

For the reasons stated herein and in the attached declarations and exhibits, Defendants respectfully request that Plaintiffs' motion for class certification be denied.

Dated:  September 24, 2018

Respectfully submitted,

LATHAM & WATKINS LLP

/s/ Kathleen P. Lally

David Callahan *(pro hac vice)*
Kathleen P. Lally *(pro hac vice)*
Peter A. Shaeffer *(pro hac vice)*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Blake T. Denton
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4648

*Counsel for Defendants*
*Colgate-Palmolive Co. and Tom's of Maine, Inc.*