UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>COLGATE-PALMOLIVE CO., and TOM'S OF MAINE INC.<br><br>     Defendants. | Civil Action No. 1:16-CV-08364 (RA) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

Dated: November 23, 2018

                  **BURSOR & FISHER, P.A.**
                  Joshua D. Arisohn
                  Neal J. Deckant
                  Frederick Klorczyk III
                  888 Seventh Avenue
                  New York, NY 10019
                  Telephone: (646) 837-7150
                  Facsimile: (212) 989-9163
                  jarisohn@bursor.com
                  ndeckant@bursor.com
                  fklorczyk@bursor.com

                  *Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**PAGE(S)**

I. THE PROPOSED CLASS IS ASCERTAINABLE AND PROPERLY DEFINED .................................................................................................. 1

    A. Plaintiffs Have Standing To Represent The Class ....................................... 1

    B. The Proposed Class Only Includes Individuals Who Were Injured Outside The Class Period in *Gay v. Tom's of Maine* ................................... 2

    C. Members Of The Proposed Class Were All Injured By Defendants' Misrepresentations ....................................................................................... 4

II. PLAINTIFFS SATISFY THE COMMONALITY REQUIREMENT ............................... 5

III. PLAINTIFFS SATISFY THE TYPICALITY REQUIREMENT ..................................... 6

IV. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B) ............................... 8

    A. Common Issues Of Law Predominate ......................................................... 8

    B. Plaintiffs' Proposed Classes Are Manageable ............................................. 8

    C. Defendants' Arguments Concerning Damages Do No Defeat Class Certification ................................................................................................. 9

    D. Plaintiffs Have Standing For An Injunction ............................................... 10

CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010) .................................................................. 7

*Ackerman v. Coca–Cola Co.*,
  2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................................................................ 10

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  568 U.S. 455 (2013) ....................................................................................................... 5

*Belfiore v. Procter & Gamble Co.*,
  311 F.R.D. 29 (E.D.N.Y. 2015) ..................................................................................... 4

*Belfiore v. Procter & Gamble Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) ............................................................................ 10

*Buonasera v. Honest Co., Inc*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) ............................................................................ 2

*Burgess v. Citigroup*,
  624 F. App'x 6 (2d Cir. 2015) ........................................................................................ 3

*Comcast Corp v. Behrend*,
  133 S.Ct. 1426 (2013) .................................................................................................. 10

*DiMuro v. Clinique Labs., LLC*,
  572 F. App'x 27 (2d Cir. 2014) ...................................................................................... 2

*Ebin v. Kangadis Food, Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................ 6, 8, 9

*Elias v. Ungar's Food Products, Inc.*,
  252 F.R.D. 233 (D.N.J. 2008) ........................................................................................ 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990) ........................................................................................... 7

*Grimes v. Vitalink Commc'ns Corp.*,
  17 F.3d 1553 (3d Cir. 1994) ........................................................................................... 3

*Guido v. L'Oreal, USA, Inc.*,
  2013 WL 3353857 (C.D. Cal. July 1, 2013) ................................................................ 10

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) .......................................................................................... 3

*Holve v. McCormick & Co., Inc.*,
  2018 WL 3861406 (W.D.N.Y. Aug. 14, 2018) ................................................................ 2

*In re Cliffdale Associates*,
  1984 WL 565319 (F.T.C. 1984) ........................................................................................ 6

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) .............................................................................................. 3

*In re Methyl Tertiary Butyl Ether Prod. Liability Litig.*,
  209 F.R.D. 323 (S.D.N.Y.2002) ....................................................................................... 8

*Kurtz v. Kimberly-Clark Corp.*,
  321 F.R.D. 482 (E.D.N.Y. 2017) ...................................................................................... 7

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir.1997) ............................................................................................... 6

*Maywalt v. Parker & Parsley Petroleum Co.*,
  147 F.R.D. 51 (S.D.N.Y.1993) ......................................................................................... 8

*McCrary v. Elations Co., LLC*,
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ................................................................... 4

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir.2002) ............................................................................................ 8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) .............................................................................................. 1

*Paulino v. Conopco, Inc.*,
  2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .................................................................. 6

*Ries v. Ariz. Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal.2012) ....................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................................................................... 5

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 2191901 (N.D. Cal. May 23, 2014) .................................................................. 4

*Williams v. Boeing Co.*,
  517 F.3d 1120 (9th Cir. 2008) .......................................................................................... 3

*Willner v. Manpower Inc.*,
  2014 WL 4370694 (N.D. Cal. Sept.3, 2014) .................................................................... 3

I.  **THE PROPOSED CLASS IS ASCERTAINABLE AND PROPERLY DEFINED**

   A.  **Plaintiffs Have Standing To Represent The Class**

Defendants argue that "Plaintiffs lack standing to pursue claims regarding Tom's toothpaste products, as their claims rely solely on their purchases of deodorant." Defs. Br. at 8. That is wrong. The Second Circuit has held that "in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual…injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). To determine whether conduct implicates the "same set of concerns," the Second Circuit in *NECA-IBEW Health & Welfare Fund* instructed courts to look to the "nature and content of the specific misrepresentation," and specifically noted that "in the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement." *Id.*

Here, Plaintiffs have alleged they personally suffered an injury as a result of Defendants' conduct, as they paid a price premium for Tom's deodorant products labeled as "natural" when the products were not in fact natural. Compl. ¶ 4. Defendants' conduct with regard to purchasers of deodorant implicates the same set of concerns as the conduct alleged to have caused injury to all members of the putative class, including purchasers of Tom's toothpaste products. The false and misleading representation at issue is the placement of the word "natural" on Tom's Products, when the Products contain ingredients that are synthetic and highly chemically processed. Compl. ¶¶ 13-28. Defendants admit that throughout the Class Period, *each and every* Tom's Product label contained the same "natural" representation. Murphy Dep. 58:20-60:4 and 65:10-13, Deckant Decl. Exh. 2. Although the toothpaste products may contain different ingredients compared to the deodorant products, the Products all contain a single uniform misrepresentation. *Id.*

1

The decision in *Buonasera v. Honest Co., Inc.* is particularly instructive, as it also involves personal care products with natural representations. 208 F. Supp. 3d 555 (S.D.N.Y. 2016). There, the court found that the plaintiff had standing to represent purchasers of 37 different hair care and body wash products that he did not personally purchase, because "although the unpurchased products contain different ingredients compared to the purchased products….the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products." *Id.* at 562; *see also Holve v. McCormick & Co., Inc.*, 2018 WL 3861406, at *9 (W.D.N.Y. Aug. 14, 2018) (finding that consumer had class standing to pursue claims for deceptively marketing 29 products containing synthetic and artificial ingredients as "natural," even though she alleged to have purchased just one of the products at issue). In the case at hand, the Tom's toothpaste and deodorant products may contain different ingredients, but the misrepresentation at issue is not merely *similar* across the varying products as in *Buonasera*, it is *identical*. Murphy Dep. 58:20-60:4 and 65:10-13, Deckant Decl. Exh. 2.

*DiMuro v. Clinique Labs, LLC*, which Defendants rely on, is easily distinguishable. Defs. Br. at 8. In *DiMuro*, the court found that the named plaintiffs did not have standing to represent purchasers of four Revlon cosmetics products they had not purchased. *DiMuro v. Clinique Labs*., LLC, 572 F. App'x 27, 29 (2d Cir. 2014). However, in that case, the seven cosmetic products at issue contained 35 different allegedly fraudulent statements. *Id.* In stark contrast to the facts in *DiMuro*, here, Plaintiffs allege only one misrepresentation - a misrepresentation that appeared identically on every one of the Tom's Products.

**B.    The Proposed Class Only Includes Individuals Who Were Injured Outside The Class Period in *Gay v. Tom's of Maine***

Defendants argue that the proposed class must exclude consumers who were members of the settlement class in *Gay vs. Tom's of Maine*, because the settlement agreement in that case precluded class members from "filing, commencing, prosecuting, intervening in or participating" in future actions related to their claims. Defs. Br. at 9. But a settlement agreement may only

2

preclude a party from bringing a future claim where the future claim is based on the identical factual predicate as that underling the claims in the settled class action. *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 247–48 (2d Cir. 2011). The "identical factual predicate" doctrine thus acts as a limitation on a class settlement release. *See Grimes v. Vitalink Commc'ns Corp.,* 17 F.3d 1553, 1563 (3d Cir. 1994). While the parties in *Gay* "may have drafted the settlement agreement to include as broad a release as possible," the release is "enforceable [only] as to subsequent claims ... depending upon the same set of facts." *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008).

Defendants incorrectly argue that an "identical factual predicate" exists because the claims in both actions involve misleading natural representations and the same unnatural ingredients. Defs. Br. at 9-10. Even if those elements of the factual predicate of the claim are identical, the question of whether Plaintiffs and putative class members were injured by Defendants – "as well as the follow-on questions of when, and where, and how – are also part of the factual predicate of [Plaintiffs] claims made here." *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010) (holding earlier settlement release was not enforceable to bar later claims "brought to remedy a different set of injuries"). Plaintiffs' claims here depend on proof of different facts during a different time period, involving deceptive statements made on Defendants' product packaging that was modified following the settlement of the *Gay* action.[1]

The injuries Plaintiffs seek to redress had not even occurred at the time of the execution of the settlement agreement in the *Gay*, and that settlement agreement is not enforceable to bar later claims based on injuries that had not yet occurred and were not included in the scope of the *Gay* allegations. *See Willner v. Manpower Inc.*, 2014 WL 4370694, at *7 (N.D. Cal. Sept.3, 2014) (a release of claims that "go beyond the scope of the allegations of the operative complaint" is impermissible."). Defendants' citation to *Burgess v. Citigroup,* 624 F. App'x 6 (2d Cir. 2015) is misplaced as *Burgess* did not stand for the proposition that Defendants suggest, and

---

[1] The Class Period here begins on September 24, 2015, while the settlement class in the *Gay* action included purchases made from March 25, 2009 through September 23, 2015.

3

in no way held that injuries occurring in differing time periods would not constitute a separate factual predicate. Defs. Br. at 9.

Despite Defendants' arguments to the contrary, even those putative class members who have been purchasing Tom's Products for many years would be properly included in the putative class if they purchased a Tom's Product on or after September 24, 2015. Every purchase resulted in a new injury - an injury that occurred at the time of purchase when the putative class member paid the price premium. Purchases that had not yet occurred at time of the execution of the settlement agreement in *Gay* could not have been properly released by the settlement in that action.

### C. Members Of The Proposed Class Were All Injured By Defendants' Misrepresentations

Defendants argue that the proposed class includes individuals who suffered no injury as a result of their purchases of Tom's Products. Defs. Br. at 10. That is incorrect because every class member suffered damage by paying a price premium for a falsely advertised Product. Compl. at 4. The elements of each claim for which class certification is sought can be established through common proof, and individual inquiries are not required. Defendants attempts to differentiate class members' purchase experiences (whether they took into account recommendations from friends, whether they read the ingredient list, etc.) are unconvincing. *See McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *13 (C.D. Cal. Jan. 13, 2014) (presumption of exposure inferred where the alleged misrepresentations were on the outside of the packaging of every unit). Indeed, all members of the class viewed the misrepresentations on the labels by virtue of purchasing the Products regardless of whether they had prior experience or if the Products had been recommended by someone they knew. *See Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *12 (N.D. Cal. May 23, 2014) ("Whether label statements constitute material misrepresentations does not depend on the subjective motivations of individual purchasers, and the particular mix of motivations that compelled each class member to purchase the products in the first place is irrelevant."); *Belfiore v. Procter & Gamble Co.,*311

4

F.R.D. 29, 70 (E.D.N.Y. 2015) (question of whether a label was material to consumer's decision to purchase "is an objective inquiry that focuses on that packaging.) Classwide evidence will be used to establish whether Tom's labeling was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances. The Supreme Court has held materiality "is a question common to all members of the class" when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 459 (2013) ("The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class.").

## II. PLAINTIFFS SATISFY THE COMMONALITY REQUIREMENT

Defendants argue that Plaintiffs have not produced any evidence that the proposed classes suffered a common injury provable by common proof. Defs. Br. at 11. Defendants are wrong. The common injury is that: (i) the Products' labels contain a uniform "natural" claim; (ii) the Products all contain synthetic ingredients; and (iii) the "natural" claim directly results in common injury because consumers pay a price premium for the Products. These factors are "apt to drive the resolution of the litigation" for Plaintiffs' claims. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Deckant Decl. Exh. 3, Bates No. COLGATETOMS00011847. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Deckant Decl. Exh. 4, Bates No. COLGATETOMS00013657; COLGATE000024006. This evidence proves that Plaintiffs suffered a common injury that can be addressed through common evidence.

Defendants also argue that because there is no uniform understanding of the term "natural," and that the labels contained other representations, there must necessarily be

5

individual inquires. However, a label can be deceptive if it is literally false, misleading, or ambiguous with at least one misleading interpretation. *See, e.g.*, *In re Cliffdale Associates*, 1984 WL 565319, at *47 & n.22 (F.T.C. 1984). A reasonable consumer would understand and expect that a product labeled "natural" would in fact be natural. *Paulino v. Conopco, Inc.,* 2015 WL 4895234, at *5 (E.D.N.Y. Aug. 17, 2015) ("Whether one labels a product 'natural' or 'all natural,' the same plausible inference can be drawn—that the product is natural, meaning it is not made with any non-natural ingredients.") The natural claim is literally false because Tom's Products contain synthetic, highly chemically processed ingredients. Importantly, the natural labeling was the same on every package and therefore creates evidence that is entirely common to the class. Murphy Dep. 58:20 – 60:4 and 65:10-13, Deckant Decl. Exh. 2.

Although Defendants attempt to distinguish the "natural" labeling from the labeling in *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014), the court's holding in that case is quite instructive. Defs. Br. at 11. The *Ebin* court determined that because the labels are uniform in their misrepresentation, the "same generalized evidence will be used to establish whether [Defendant's] label is false, and if so, whether it was likely to mislead a reasonable consumer acting under the same circumstances." *Ebin*, 297 F.R.D. at 568. Here, the labels on all Products contain the misleading natural representation, and therefore Plaintiffs' and the putative class members' "injuries derive from a unitary course of conduct by a single system." Murphy Dep. 58:20 – 60:4 and 65:10-13, Deckant Decl. Exh. 2; *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997). The minimal requirements to satisfy commonality are readily met.

### III. PLAINTIFFS SATISFY THE TYPICALITY REQUIREMENT

Defendants contend that Plaintiffs are atypical and inadequate to represent the class because their claims rely on purchases of Tom's deodorant and not purchases of Tom's toothpaste. Defs. Br. at 14-15. But Plaintiffs' claims are typical of the class they seek to represent because both Plaintiffs' and the putative class members' claims arise from the same course of conduct or practice, are based on the same legal theory, and seek the same remedies

6

equally applicable and beneficial to the class. That is true even though the class contains two different products – toothpastes and deodorants. *See Kurtz v. Kimberly-Clark Corp.,* 321 F.R.D. 482, 535 (E.D.N.Y. 2017) (Plaintiff's claim found to be typical of the class he sought to represent though he did not buy every product at issue). "Claims will succeed or fail based on proof of a 'unitary course of conduct' by the defendants: misrepresenting a material characteristic of its product and charging a higher price for that product because of that characteristic." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Defendants next argue that Plaintiffs are "not reasonable consumers of natural personal care products" because they did not read the product ingredient lists and did not visit the Tom's website to learn about the ingredients included in Tom's Products prior to making their purchases.[2] Defs. Br. at 16. But, "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from ingredient lists in small print on the side of the box." *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010). Manufacturers cannot "mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Id*. Defendants' attempt to hold Plaintiffs to a higher standard – that of reasonable *natural* consumers as opposed to that of reasonable mainstream consumers does not carry weight. They cannot cite to any authority that would support their contention that there is a different standard for consumers of natural products, nor can they cite any persuasive authority demonstrating that the typical Tom's purchaser would read ingredient lists and visit a manufacturer's website before choosing a toothpaste or deodorant off a store shelf.[3] The

---

[2] Defendants also argue that the claims of Plaintiffs de Lacour and Wright are subject to the unique defense that their claims are barred by the settlement in *Gay*. Defs. Br. at 15. But de Lacour and Wright's purchases during the class period were not subject to the release set out in the *Gay* settlement, as discussed in detail above.

[3] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

7

typicality requirement is thus satisfied because other class members have the same or similar injury and the action is based on conduct which is not unique to the named plaintiffs.

## IV. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)

### A. Common Issues Of Law Predominate

The Second Circuit has held that the predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class. *See Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1253 (2d Cir.2002). Here, because Defendants uniformly misrepresented its Products as natural to all class members, this action with its standardized misrepresentation established by generalized proof is appropriate for class certification. *See Ebin*, 297 F.R.D. at 569; *See* Murphy Dep. 58:20 – 60:4 and 65:10-13, Deckant Decl. Exh. 2. Despite the variations in state standards, the injuries being litigated all derive from the alleged misrepresentation of synthetic highly chemically processed ingredients as natural, which would arguably violate all the varying state requirements. *Ebin*, 297 F.R.D. at 565.[4]

### B. Plaintiffs' Proposed Classes Are Manageable

Defendants argue that Plaintiffs' proposed classes are not manageable because Plaintiffs have not presented a plan for identifying members of the proposed class, and because identification would need to rely on class members' self-identification. Defs. Br. at 21-22. But the ascertainability standard "is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *Ebin*, 297 F.R.D. at 567. In fact, "[c]lass members need not be ascertained prior to certification, but the exact membership of the class

---

[4] Defendants' argument that lack of uniformity in state law precludes a finding that common issues of law predominate fails. Defs. Br. at 21. Even if the Court must apply the law of numerous states, common issues still predominate. *See, e.g., Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 58 (S.D.N.Y.1993) (finding "application of the laws of different states, if necessary, does not preclude class action litigation."); *Elias v. Ungar's Food Products, Inc.,*, 252 F.R.D. 233, 249–50 (D.N.J. 2008) (applying forum law because defendant did not "point out or establish any difference in the laws of the various jurisdictions").

8

must be ascertainable at some point in the case." *In re Methyl Tertiary Butyl Ether Prod. Liability Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y.2002).

Here, the proposed class is manageable and ascertainable, because the class definition is based on objective criteria, specifying the Products at issue and the applicable time period. In addition to self-identification, Plaintiffs intend to commission a notice and media expert that will attempt to provide direct notice to many retail customers whose contact information may be on file with retailers (such as those who purchased products from a retailer with store-specific membership cards), and that will develop an extensive but targeted internet and print media campaign aimed at providing notice to other potential class members as well as a plan for weeding out inaccurate or fraudulent claims. Declining to certify classes when consumers are likely to lack proof of purchase "would render class actions against producers almost impossible to bring." *Ebin,* 297 F.R.D. at 567. "[T]he class action device, at its very core, is designed for cases like this where a large number of consumers have [allegedly] been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit." *Id.* If proof of purchase was required to satisfy the ascertainability requirement, "there would be no such thing as a consumer class action," especially with respect to low-cost products. *Ries v. Ariz. Beverages USA LLC,* 287 F.R.D. 523, 535 (N.D. Cal.2012).

**C. Defendants' Arguments Concerning Damages Do No Defeat Class Certification**

Defendants argue Plaintiffs cannot prove classwide damages because there are "profound flaws" in Plaintiffs' purported price premium analysis. Defs. Br. at 23. Each of there supposed flaws are addressed and refuted in detail in the reply declarations of Plaintiffs' experts, Dr. Dennis and Mr. Weir. Conjoint analysis, like that utilized by Dr. Dennis, has been routinely used to determine a market price premium in both litigation and business. *See* Weir Reply Decl. at ¶ 8 n. 5 (citing cases). Defendants' contention that there are particular flaws in the methodology utilized is not fatal to Plaintiffs' demonstration of a working price premium damages model.

9

Defendants also contend that Plaintiffs' price premium damages model is insufficient because a final calculation of the amount of the price premium specific to deodorant products has not yet been calculated. Defs. Br. at 24. But both Dr. Dennis and Mr. Weir explain in their reports and testified at their depositions that the method for calculating the price premium specific to Tom's deodorant products would be the same method demonstrated with the Tom's toothpaste products. Dennis Reply Decl. ¶ 7; Weir Reply Decl. ¶ 14; Weir Dep. at 76:19-78:24, Deckant Decl. Ex. 5. Plaintiffs' experts have set forth a working methodology for calculating damages attributable to Plaintiffs' theory of liability, and therefore satisfy the requirements of *Comcast Corp v. Behrend*, 133 S.Ct. 1426 (2013).[5]

### D. Plaintiffs Have Standing For An Injunction

Defendants argue that Plaintiffs lack standing to seek injunctive relief because the "primary purpose of the Amended Complaint is to seek relief from past injuries," and Plaintiffs "have each admitted that they do not intend to purchase Tom's Products in the future." Defs. Br. at 25. But federal courts across the country have held that that "plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer," because to "hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Ackerman v. Coca–Cola Co.,* 2013 WL 7044866, at *2–3, *14–15, *15 n. 23 (E.D.N.Y. July 18, 2013) (collecting cases). An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf. *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 444–45 (E.D.N.Y. 2015).

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request the Court grant Plaintiffs' Motion for Class Certification. If the court is inclined to deny Plaintiffs' Class Certification Motion for any reason, Plaintiffs requests that the Court do so without prejudice.

---

[5] Furthermore, expert testimony on damages is not even necessary for the GBL §§ 349 and 350 claims, which provide for statutory damages. *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013).

Dated: November 23, 2018								Respectfully submitted,

By:	*/s/ Neal J. Deckant*
	Neal J. Deckant

**BURSOR & FISHER, P.A.**

Joshua D. Arisohn
Neal J. Deckant
Frederick Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
	ndeckant@bursor.com
	fklorczyk@bursor.com

*Attorneys for Plaintiffs*