**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN individually and on behalf of all others similarly situated, | No. 16 Civ. 08364 (KMW) |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| COLGATE-PALMOLIVE CO., and TOM'S OF MAINE INC., | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION**
**FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS**
**REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

Dated: March 20, 2020

**LATHAM & WATKINS LLP**

David Callahan *(pro hac vice)*
Kathleen P. Lally *(pro hac vice)*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Blake T. Denton
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Counsel for Defendants*
*Colgate-Palmolive Co. and Tom's of Maine, Inc.*

## Table of Contents

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................1

        A.      Tom's Stewardship Model Guides It In Developing Natural, Sustainable,
                And Responsible Personal Care Products.................................................................1

        B.      Under The Stewardship Model, Tom's Products Are Sourced And Derived
                From Ingredients Occurring In Nature That Are Minimally-Processed.................2

        C.      Tom's Packaging And Labeling Contain Information Regarding The
                Products' Ingredients And Why Tom's Believes The Products Are
                "Natural And Good" ...............................................................................................3

        D.      Plaintiffs' Alleged Experiences With Tom's Deodorant ........................................4

                1.      Loree Moran........................................................................................4

                2.      Anne de Lacour ...................................................................................5

                3.      Andrea Wright ....................................................................................6

        E.      A Prior Settlement Resolved Plaintiffs' Claims In This Case ...............................6

        F.      This Court Denied Plaintiffs' First Motion For Class Certification ......................7

III.    ARGUMENT ...............................................................................................................8

        A.      Plaintiffs' Proposed Class Definitions Remain Overly Broad...............................9

                1.      None of the Plaintiffs Purchased Toothpaste................................................9

                2.      The Proposed Classes Include Members of the Gay Settlement; At
                        Least Two Plaintiffs Are Members of the Gay Class ...............................10

                3.      Plaintiffs' Newly Proposed Classes Still Include Members Neither
                        Deceived Nor Injured By The Alleged "Natural"
                        Misrepresentations ...................................................................................11

        B.      Plaintiffs Do Not Satisfy The Commonality Requirement ...................................12

                1.      Plaintiffs' Own Testimony Proves Consumers Do Not Have A
                        Common Definition Of "Natural" .............................................................13

                2.      Plaintiffs Cannot Identify Common Injury ...............................................14

                3.      Putative Class Members Who Reviewed Tom's Packaging Or
                        Website Would Not Have Suffered The Same Injury Alleged By
                        Plaintiffs...................................................................................................15

        C.      Plaintiffs Are Neither Typical Nor Adequate To Represent The Putative
                Class........................................................................................................................16

                1.      None of the Plaintiffs Purchased Tom's Toothpaste .................................16

2.      Plaintiffs Are Subject To Unique Defenses ...............................................17

D.      Plaintiffs Still Fail To Meet Rule 23(b)'s Requirements ........................................19

1.      Plaintiffs Cannot Show That a Rule 23(b)(3) Class Would Be Sufficiently Cohesive .................................................................................20

E.      Plaintiffs Cannot Prove Class Wide Damages .......................................................24

IV.     CONCLUSION ..............................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

In re Adelphia,
    272 F. App'x 9 (2d Cir. 2008) ...............................................................17

Algarin v. Maybelline,
    300 F.R.D. 444 (S.D. Cal. 2014) .............................................12, 20, 21

Amchem v. Windsor,
    521 U.S. 591 (1997)...........................................................................19, 20

Ault v. Smucker,
    310 F.R.D. 59 (S.D.N.Y. 2015) .................................................................20

In re Avon,
    2015 WL 5730022 (S.D.N.Y. 2015)................................................ *passim*

Burgess v. Citigroup,
    624 F. App'x 6 (2d Cir. 2015) ...................................................................10

Comcast v. Behrend,
    569 U.S. 27 (2013)....................................................................................24

In re ConAgra,
    302 F.R.D. 537 (C.D. Cal. 2014).................................................................25

In re Currency Conversion,
    230 F.R.D. 303 (S.D.N.Y. 2004) ...............................................................17

Dauphin v. Chestnut Ridge,
    2009 WL 2596636 (S.D.N.Y. 2009)....................................................17, 19

De Lacour v. Colgate-Palmolive Co.,
    2019 WL 4359554 (S.D.N.Y. Sept. 12, 2019).......................................7, 8

DiMuro v. Clinique,
    572 F. App'x 27 (2d Cir. 2014) ......................................9, 16, 17, 23

Ebin v. Kangadis,
    297 F.R.D. 561 (S.D.N.Y. 2014) ...............................................................13

Fermin v. Pfizer,
    215 F. Supp. 3d 209 (E.D.N.Y. 2016) .......................................................18

In re Foodservice,
    729 F.3d 108 (2d Cir. 2013)...................................................................13

In re Fosamax,
    248 F.R.D. 389 (S.D.N.Y. 2008) ........................................................9, 24

Gay v. Tom's,
    No. 0:14-cv-60604- KMM (S.D. Fla. 2014)...............................7, 12, 17

In re Hain,
    2015 WL 12001273 (C.D. Cal. 2015)..............................12, 20, 21, 22

Hairston v. S. Beach Bev.,
    2012 WL 1893818 (C.D. Cal. 2012)...................................................18

Hughes v. Ester C.,
    317 F.R.D. 333 (E.D.N.Y. 2016) .......................................................22

Johns v. Bayer,
    2010 WL 476688 (S.D. Cal. 2010) ......................................................9

Johnson v. Nextel,
    780 F.3d 128 (2d Cir. 2015)..................................................................9

Jones v. ConAgra,
    2014 WL 2702726 (N.D. Cal. 2014) ......................................14, 20, 22

Kommer v. Bayer,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017)................................................18

Larsen v. Trader Joe's,
    2012 WL 5458396 (N.D. Cal. 2012) ..................................................10

Lewis Tree Serv. v. Lucent,
    211 F.R.D. 228 (S.D.N.Y. 2002) .......................................................17

Lombardo v. J&J,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015) ........................................12, 20

Newman v. RCN,
    238 F.R.D. 57 (S.D.N.Y. 2006) ...................................................12, 14

Newton v. Merrill Lynch,
    259 F.3d 154 (3d Cir. 2001)................................................................22

Oscar v. BMW,
    2012 WL 2359964 (S.D.N.Y. 2012)........................................16, 20, 21

Pagan v. Abbot,
    287 F.R.D. 139 (E.D.N.Y. 2012) ..................................................................15

Pelayo v. Nestle USA, Inc.,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) .........................................................13

In re Petrobras,
    862 F.2d at 269 .............................................................................................23

In re Petrobras,
    862 F.3d 250 (2d Cir. 2017)..........................................................................11

Philip Morris v. Hines,
    883 So.2d 292 (Fla. Dist. Ct. App. 2003) ..............................................20, 21

Randolph v. Smucker,
    303 F.R.D. 679 (S.D. Fla. 2014)................................................12, 14, 20, 22

Sarr v. BEF Foods, Inc.,
    2020 WL 729883 (E.D.N.Y. Feb. 13, 2020).........................................13, 18

In re Scotts EZ Seed,
    304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................13, 20

Teamsters v. Bombardier,
    546 F.3d 196 (2d Cir. 2008)........................................................................9, 26

Vaccariello v. XM,
    295 F.R.D. 62 (S.D.N.Y. 2013) ....................................................................22

Wal-Mart v. Dukes,
    564 U.S. 338 (2011)...........................................................................9, 13, 16

Wal-Mart v. Visa,
    396 F.3d 96 (2d Cir. 2005)..........................................................10, 11, 12, 17

Webb v. Carter's,
    272 F.R.D. 489 (C.D. Cal. 2011) ..................................................................24

Wiener v. Dannon,
    255 F.R.D. 658 (C.D. Cal. 2009) ..................................................................16

**STATUTES**

N.Y. Gen. Bus. Law §§ 349 and 350 ........................................................................24

**RULES**

Rule 23 ..................................................................................................................9, 13

Rule 23(a).............................................................................................................7, 8, 9, 19

Rule 23(a).............................................................................................................1, 8, 16

Rule 23(b) ...............................................................................................................8, 9, 19

Rule 23(b)(2).................................................................................................................7

Rule 23(b)(3)...............................................................................................11, 20, 22, 24

Rule 23(b) ...................................................................................................................7, 19

## OTHER AUTHORITIES

"How Products are Made," available at http://www.madehow.com/Volume-1/Baking-Soda.html (last visited March 10, 2020)....................................................6

"Product Guarantee," available at https://www.tomsofmaine.com/product-guarantee (last visited March 9, 2020)........................................................................24

SkinSAFE, "Trader Joe's Unscented Deodorant with Cotton," available at https://www.skinsafeproducts.com/trader-joe-s-unscented-deodorant-with-cotton (last visited March 10, 2020) .............................................................6

Tom's "Mineral Confidence" ........................................................................................3

Tom's "Refreshing Lemongrass" ..................................................................................3

The Colgate and Tom's Defendants ("Tom's" or "Defendants") submit the following opposition to Plaintiffs' renewed motion for class certification:

## I. INTRODUCTION

Plaintiffs' renewed motion should not have taken five months for Plaintiffs to file; it is merely a cut-and-paste job of the motion this Court found in September 2019 to face significant "challenges." Plaintiffs made no effort to address those challenges or Tom's evidence, or provide any additional evidence of their own[1]; they simply replaced a request for nationwide class certification with one for three state classes – New York, Florida and California. The Court should deny Plaintiffs' motion, this time with prejudice:

- Two (and perhaps all) of the named Plaintiffs were indisputably members of a class that settled identical claims against Tom's in 2016;

- None of the Plaintiffs purchased toothpaste during the class period; the one Plaintiff who purchased it outside of the class period makes no complaint about its ingredients despite purporting to represent a class of toothpaste purchasers;

- None of the Plaintiffs purchased deodorant solely for the reasons stated in their cut-and-pasted declarations; each testified in their depositions that they purchased for many other reasons;

- Plaintiffs' experts' surveys were of toothpaste users; they are replete with fundamental errors, and none of the Plaintiffs purchased or are complaining about toothpaste; and

- Plaintiffs have made no effort to address their fundamental failure to meet Rule 23(a)'s requirements for class certification.

## II. FACTUAL BACKGROUND

### A. Tom's Stewardship Model Guides It In Developing Natural, Sustainable, And Responsible Personal Care Products

Tom's was one of the first companies to offer personal care products (including toothpaste and deodorant) free from artificial flavors, fragrances, colors, and preservatives. Sprague Decl.,

---

[1] Plaintiffs submitted redacted (but identical) declarations and expert witness statements; Tom's submits the same responsive reports and evidence that disproved Plaintiffs' claims two years ago.

1

¶ 2. Tom's Stewardship Model sets guidelines to ensure that Tom's products meet its definitions of natural, sustainable, and responsible. Id., ¶ 3. They state that Tom's products are:

- "[S]ourced and derived from nature";
- "[F]ree of artificial flavors, fragrances, colors . . . and preservatives";
- Processed in a manner "that supports [Tom's] philosophy of human and environmental health";
- "Free from animal ingredients with the exception of some bee products"; and
- "Not tested on animals." Lally Decl., Ex. A.

Complaints regarding Tom's products are rare. In 2016 (the most recent year for which such information is of record), less than 1% related to "natural" issues. Id. at Ex. B.

**B.    Under The Stewardship Model, Tom's Products Are Sourced And Derived From Ingredients Occurring In Nature That Are Minimally-Processed**

Tom's personal care products use naturally sourced and derived ingredients. Lally Decl., Ex. A. Tom's website explains that an ingredient is "naturally sourced" when used in a form that "hasn't changed much from how it occurs in the identified source material." Id. at Ex. C. Tom's defines "naturally derived" as an ingredient that is naturally occurring and is modified only to improve its safety or efficacy. Id.

Ingredients in Tom's deodorant and toothpaste involve only material of plant or mineral origin. Sprague Decl., ¶ 10. For example, although sodium lauryl sulfate ("SLS") can be derived from petroleum-based sources, Tom's uses only SLS derived from coconut or palm kernel oil. Id. Tom's propylene glycol is formed through a reaction that takes place at high temperatures and pressures between glycerin obtained from vegetable sources and hydrogen.[2] Id. Tom's website describes exactly what Tom's means by natural, the identity and purpose of its ingredients,

---

[2] Plaintiffs claim (without citing any evidence) that the process Tom's uses to form propylene glycol involves "toxic chemicals." Pls.' Mem. ISO Renewed Mot. for Class Cert. (Dkt. No. 102) ("Ren. Mem.") at 9. Plaintiffs are wrong; Tom's hydrogenolysis process uses no "toxic chemicals," but rather glycerin obtained from vegetable oils and hydrogen, as its website explains. Sprague Decl., ¶ 10.

how they are processed (if at all), as well as alternative products for consumers concerned about particular ingredients. Id. at ¶ 11; Lally Decl., Ex. C.

## C. Tom's Packaging And Labeling Contain Information Regarding The Products' Ingredients And Why Tom's Believes The Products Are "Natural And Good"

Tom's packaging provides significant information about ingredients and Tom's philosophy regarding natural products. In addition to providing on-product information, product labels also direct consumers to Tom's website to learn about the Stewardship Model and what Tom's "mean[s] by natural." Lally Decl., Ex. D; at Ex. E.

Tom's toothpastes and deodorants at issue are by no means uniform; Tom's sells many different deodorants, including those with different scents ("Tea Tree," "Refreshing Lemongrass," "Maine Woodspice"), formats (stick and crystal roll-on), ingredients (propylene glycol-free), and intended consumers (men or women). Lally Decl., Ex. D-G, J. Similarly, Tom's sells toothpaste with different flavors ("Clean Mint," "Spearmint," "Fennel"), functions (cavity protection, enamel strength, and whitening), ingredients (fluoride-free and SLS-free), and intended consumers (adults, children, and toddlers). Id. at Ex. H-I, K-M.

These products also have different packaging. Lally Decl., Ex. D-M. For example, Tom's "Refreshing Lemongrass" deodorant represents that it has "no [a]luminum," "no [a]rtificial [f]ragrance," "[n]o [p]arabens," and "24 HR odor protection." Id. at Ex. D. In contrast, Tom's "Mineral Confidence" deodorant features "hypoallergenic," "24 hour odor protection," and "no aluminum chlorohydrate." Id. at Ex. E. For toothpaste, the "Luminous White" packaging states that it is "safe for enamel" and "fights tarter build-up," (id. at Ex. L), while the "Whole Care" toothpaste touts that it "fights cavities," "promotes remineralization," "freshens breath," and "whitens teeth" (id. at Ex. M).

### D. Plaintiffs' Alleged Experiences With Tom's Deodorant[3]

Plaintiffs allege Defendants misrepresented Tom's products as natural when they purportedly contain synthetic and chemical ingredients, Am. Compl. (Dkt. No. 8) ¶¶1, 13, with rote statements that each Plaintiff "purchased Tom's Products based on claims . . . that the Products were 'natural.'. . . [and] would not have purchased Tom's Products if the labels had not stated the Products were 'natural.'. . . [or] if she had know[n] the Products contained ingredients that were not in fact natural." Id. at ¶¶ 6-8; see also de Lacour Decl. (Dkt. No. 106) ¶ 5; Moran Decl. (Dkt. No. 107) ¶ 5; Wright Decl. (Dkt. No. 108) ¶ 5. Plaintiffs' renewed motion is limited only to particular toothpastes and deodorants and is further limited in that it only contends that one ingredient in each product is not natural: sodium lauryl sulfate ("SLS") in Tom's toothpastes and propylene glycol in Tom's deodorants. Compare Am. Compl. (Dkt. No. 8) at Ex. A, with Ren. Mem. (Dkt. No. 102) at 8-9. Discovery has shown, however, that Plaintiffs (each the sole representative of a distinct statewide class) purchased Tom's products for a variety of reasons, define "natural" differently, and had varying levels of engagement in reviewing the ingredients.

#### 1. Loree Moran

Ms. Moran claims she first purchased Tom's deodorant in the fall of 2015, although she could not recall exactly when.[4] Lally Decl., Ex. N at 19:14-20:12. Despite claiming to represent toothpaste purchasers, Ms. Moran admitted that *she has no concerns regarding Tom's toothpaste*. Id. at 78:2-16. Ms. Moran admitted that she purchased Tom's deodorant for many reasons other than the natural representation, including a friend's recommendation, research regarding "aluminum," her familiarity with Tom's, and the label's "no aluminum" statement. Id. at 21:3-23:15, 32:2-33:23, 54:15-23, 55:7-14. Ms. Moran testified that a natural product is "pure,"

---

[3] No Plaintiff alleges that she purchased Tom's toothpaste and was damaged by that purchase. Am. Compl. (Dkt. No. 8) ¶¶ 6-8; disc. infra at 4-6.

[4] As noted below, the Gay class order precluded anyone purchasing product through late September 2015 from bringing any further action.

contains "[n]o additives," and is not "manipulated in any way." <u>Id.</u> at 87:5-13. She admitted (as she must) that personal care products be made with human intervention:

> The product itself would need to be assembled by people, put in a factory, and that involves people. . . . Short of going outside and grabbing a leaf off a tree and rubbing it under your arms, people have to be involved somewhere. <u>Id.</u> at 138:1-9.

Ms. Moran "frequently" reads ingredient lists but claims to have not reviewed the ingredient list on Tom's deodorant (which discloses propylene glycol as an ingredient) until after using it several times. <u>Id.</u> at 49:11-24, 59:10-20, 74:12-15. She also claimed that she did not see significant portions of the label directing consumers to visit Tom's website, and never visited the website even when researching "no aluminum" deodorants and Tom's in particular. <u>Id.</u> at 68:13-18, 85:22-24. Ms. Moran will not purchase Tom's deodorant again. <u>Id.</u> at 44:13-18.

### 2. Anne de Lacour

Before filing this case, Ms. de Lacour used Tom's deodorant for fifteen years. Lally Decl., Ex. O at 27:15-28:15, 45:16-23. She also purchased Tom's toothpaste one time more than five years ago, a purchase outside the proposed Florida class period. <u>Id.</u> at 33:24-34:9; <u>see also</u> Ren. Mem. (Dkt. No. 102) at 1. Like the other Plaintiffs, Ms. de Lacour had a variety of reasons for purchasing Tom's deodorant, including that it was "natural," contained "[n]o aluminum," "no parabens," and had "no artificial preservatives." <u>Id.</u> at 37:19-38:3.[5] Despite her purported concerns regarding natural products, Ms. de Lacour claims that she didn't see the label's ingredient list during the <u>fifteen years</u> she used Tom's deodorant, and stopped using it only after counsel contacted her searching for plaintiffs for this case. <u>Id.</u> at 18:1-20:21, 31:17-20. Ms. de Lacour will not purchase Tom's deodorant again; she testified that her current deodorant is a combination of baking soda and water. <u>Id.</u> at 27:25-28:8, 56:3-6. Ms. de Lacour testified that she

---

[5] The latter three statements – no aluminum, no parabens, and no artificial preservatives – are indisputably true.

views this as more "natural," or "[n]ot . . . chemically altered" and "comes from nature." <u>Id.</u> at 30:12-16, 45:2-20.[6]

### 3. Andrea Wright

Ms. Wright also used Tom's deodorant for years before she filed this case. Lally Decl., Ex. P at 24:25-25:5. She does not appear to have purchased Tom's toothpaste. <u>Id.</u> at 44:23-25. Ms. Wright says she relied on several alleged representations in making her purchases, including "[n]atural," "no aluminum," and "unscented." <u>Id.</u> at 40:23- 41:4. However, Ms. Wright had <u>no</u> concerns with Tom's deodorant until Plaintiffs' counsel contacted her, and contends that <u>only after</u> retaining Plaintiffs' counsel did she learn that Tom's deodorant contained ingredients that were purportedly not natural—which she defines as "organic" and not containing "synthetic type stuff"—and became dissatisfied with the product. <u>Id.</u> at 16:3-17:11, 42:23-25, 55:22-25. Ms. Wright claims she did not see the deodorant's ingredients until preparing for her deposition, and claims to have never visited Tom's website. <u>Id.</u> at 31:13-17, 44:20-22. Ms. Wright will not purchase Tom's deodorant in the future. <u>Id.</u> at Ex. Q. At the time of her depositions, Ms. Wright's choice of deodorant was a Trader Joe's brand that she picked "because it was there" and because she "trust[s] Trader Joe's because they do a lot of organic type products." Lally Decl., Ex. P at 33:2-22, 34:1-2. It has the <u>very same ingredient</u> she complains about in the Tom's product.[7]

### E. A Prior Settlement Resolved Plaintiffs' Claims In This Case

In 2016, Tom's resolved a class action virtually identical to this case. First Am. Compl. (Dkt. No. 14) ¶2, <u>Gay v. Tom's</u>, No. 0:14-cv-60604- KMM (S.D. Fla. 2014) ("<u>Gay</u>"). After a lengthy mediation, an extensive national campaign to notify class members, and robust briefing,

---

[6] De Lacour views baking soda as "natural," although it is also man-made. <u>See</u> "How Products are Made," available at <u>http://www.madehow.com/Volume-1/Baking-Soda.html</u> (last visited March 10, 2020).

[7] Propylene glycol, the only ingredient Ms. Wright complains about," <u>is the first ingredient listed</u> on the ingredients list of this particular Trader Joe's brand. <u>See</u> SkinSAFE, "Trader Joe's Unscented Deodorant with Cotton," available at <u>https://www.skinsafeproducts.com/trader-joe-s-unscented-deodorant-with-cotton</u> (last visited March 10, 2020).

Chief Judge Michael Moore of the Southern District of Florida held a fairness hearing and granted final approval of the Settlement Agreement on March 11, 2016. Lally Decl., Ex. R at ¶¶ 9-10.

In granting final approval, Judge Moore certified a settlement class of purchasers of "at least one Tom's of Maine Covered Product from March 25, 2009 through September 23, 2015." Id. at ¶ 3. Class members who submitted a valid claim received compensation from a settlement fund and Tom's made certain packaging and labeling changes, including providing additional information on Tom's standards for natural, sustainable, and responsible. Lally Decl., Ex. S at § IV(A)-(B).[8] The Settlement Agreement and Final Order make clear that class members who did not exclude themselves are deemed to have released all claims against Defendants relating to, inter alia, the "labeling, marketing, advertising, packaging, promotion, manufacture, [and] sale and distribution" of Tom's products as natural and are enjoined from pursuing those claims in any style, forum, or manner. Id. at Ex. R at ¶¶ 15-16, 18; id. at Ex. S at § IX(B)(1).

### F.     This Court Denied Plaintiffs' First Motion For Class Certification

On September 12, 2019, this Court denied Plaintiffs' Motion for Class Certification. De Lacour v. Colgate-Palmolive Co., 2019 WL 4359554, at *9-10 (S.D.N.Y. Sept. 12, 2019). In its opinion, this Court noted that Tom's "raise challenging questions about whether Plaintiffs have satisfied Rule 23(a)" but deferred any analysis of those arguments because of the Plaintiffs' complete failure to meet Rule 23(b)'s requirements. Id. at *4. This Court held that Plaintiffs failed to meet Rule 23(b)(2)'s class certification and standing requirements and Plaintiffs' burden to demonstrate predominance under Rule(b)(3), id. at *4-9, stating that Plaintiffs "neglected their burden" under Rule 23(b) by failing to "conduct[] a choice of law analysis," "present[] or analyze[]

---

[8] By virtue of entering into the Settlement Agreement, the Gay plaintiffs and their counsel believed—and Judge Moore ordered—that the changes to the packaging and website sufficiently addressed the concerns laid out in the Gay complaint. Lally Decl., Ex. S.

any differences in state laws of breach of express warranty," or "examine[] how any material differences in those laws bear on predominance." Id. at *8.

This Court allowed Plaintiffs leave to refile to address these fatal issues. Id. at *10. In their Memorandum in Support of their Renewed Motion for Class Certification, Plaintiffs did nothing to address the "challenging questions" that Defendants raised regarding Rule 23(a)'s class certification requirements; instead they simply cut and pasted the earlier Rule 23(a) arguments that this Court found to be "challenging." Compare Ren. Mem. (Dkt. No. 102) at 11-16 with Mem. (Dkt. No. 70) at 11-16. Rather than attempt to address these "challenging questions," Plaintiffs' narrowed classes actually magnify their Rule 23(a) problems (see disc. infra at 12-19). Furthermore, while this Court granted leave to refile on September 12, 2019, Plaintiffs did not refile for nearly five months, showing real questions about counsel's diligence and urgency.

Plaintiffs also wholly failed to cure their 23(b) deficiencies. To address this Court's concern regarding the differences in state express warranty laws, Plaintiffs withdrew their request for nationwide certification and proposed three single-state classes, with each of the three named Plaintiffs serving as the class representatives. Ren. Mem. (Dkt. No. 102) at 1. To support their renewed motion as to narrow classes, Plaintiffs submitted the identical declarations they submitted with their initial motion. In the cut-and-paste process, Plaintiffs left gaps in two of the three declarations and copied over old dates in its expert submissions. Dennis Decl. (Dkt. No. 104); Weir Decl. (Dkt. No. 105). The declarations make Plaintiffs' case worse; each one is at a minimum inconsistent with the sworn testimony each plaintiff gave in between the time she signed the initial declaration and when they signed the "cut-and-paste" versions to support the amended motion.

## III.     ARGUMENT

A class may be certified if, after "rigorous analysis," the court finds that the class meets each of the prerequisites for certification under Rule 23 and the adjudication of the plaintiff's claim

will fully and fairly resolve the claims of the proposed class. <u>Wal-Mart v. Dukes</u>, 564 U.S. 338, 351 (2011). Plaintiffs must satisfy the requirements of Rule 23(a) as well as one or more of the subparts of Rule 23(b). <u>Teamsters v. Bombardier</u>, 546 F.3d 196, 201-02 (2d Cir. 2008). Plaintiffs may not rest on pleading allegations or conclusory statements; they need <u>evidence</u> proving that class certification is appropriate. <u>Id.</u>; <u>Johnson v. Nextel</u>, 780 F.3d 128, 138 (2d Cir. 2015).

### A.      Plaintiffs' Proposed Class Definitions Remain Overly Broad

Before evaluating the requirements of Rule 23, the Court must consider whether the proposed class is properly defined and ascertainable. <u>In re Fosamax</u>, 248 F.R.D. 389, 397 (S.D.N.Y. 2008). Classes that are overly broad or not ascertainable cannot be certified. <u>Id.</u>

### 1.      None of the Plaintiffs Purchased Toothpaste

Although Plaintiffs seek to represent consumers who purchased certain Tom's deodorant or toothpaste, none of the Plaintiffs alleges that she purchased Tom's toothpaste and was damaged by that purchase. Am. Compl. (Dkt. No. 8) ¶¶ 6-8; de Lacour Decl. (Dkt. No. 106) ¶ 5; Moran Decl. (Dkt. No. 107) ¶ 5; Wright Decl. (Dkt. No. 108) ¶ 5. Plaintiffs therefore lack standing to pursue claims regarding Tom's toothpaste. <u>See</u>, <u>e.g.</u>, <u>DiMuro v. Clinique</u>, 572 F. App'x 27, 29 (2d Cir. 2014); <u>Johns v. Bayer</u>, 2010 WL 476688, *4-5 (S.D. Cal. 2010). Toothpaste and deodorant have different ingredients, packaging, and uses, and are by no means "nearly identical." <u>DiMuro</u>, 572 F.App'x at 29. Even the ingredients that Plaintiffs identify as allegedly not natural are differently derived and processed. <u>See</u> disc. <u>supra</u> at 1-3. Plaintiffs did not even try to submit evidence to prove that purchasers of toothpaste and deodorant are sufficiently similar. <u>See</u> Ren. Mem. (Dkt. No. 120) at <u>passim</u>. Indeed, the fact that some Plaintiffs purchased toothpaste but were <u>not</u> concerned about the natural representation proves that purchasers of toothpastes and deodorants have different motivations for purchasing. Lally Decl., Ex. N at 78:2-16. This Court

should deny Plaintiffs' renewed request for certification of a class of toothpaste purchasers. Larsen v. Trader Joe's, 2012 WL 5458396, *4-5 (N.D. Cal. 2012); disc. infra at 10-25.[9]

### 2. The Proposed Classes Include Members of the Gay Settlement; At Least Two Plaintiffs Are Members of the Gay Class

Plaintiffs again completely ignore the Gay settlement, which materially impairs Plaintiffs' request for class certification, because at least two of the three named plaintiffs are members of that settling class. Plaintiffs' newly proposed single-state classes still fail to exclude consumers who were also members of the Gay Class. Ren. Mem. (Dkt. No. 120) at 4. The Gay Settlement Agreement and Final Order precludes members of the Gay Class (including Ms. de Lacour and Ms. Wright, and perhaps Ms. Moran) from "filing, commencing, prosecuting, intervening in or participating" in litigation against Defendants relating to, inter alia, Tom's allegedly false and misleading natural representation. Lally Decl., Ex. R at ¶ 18; id. at Ex. S at § IX(B)(1). Plaintiffs offer this Court no excuse for ignoring this Order, which prevents them from bringing the very claims at issue here.

"Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief" and such authority to release claims is only "limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." Wal-Mart v. Visa, 396 F.3d 96, 106 (2d Cir. 2005). The claims here indisputably arise from the "identical factual predicate" as those asserted in Gay; both actions allege that Tom's used natural representations that caused class members to pay a "premium" for products that were not natural. Compare First Am. Compl. (Gay Dkt. No. 14) ¶¶ 2-3, with Am. Compl. (Dkt. No. 8) ¶¶ 3, 6-8.[10] And the

---

[9] While Ms. de Lacour and Ms. Moran both purchased Tom's toothpaste, Ms. de Lacour's purchase occurred outside the class period and Ms. Moran stated she is not concerned with Tom's toothpaste. See disc. supra at 4-6.

[10] Although Plaintiffs' Amended Complaint covers a different time period than the period in Gay, the date on which a consumer purchased a Tom's product has no effect on Defendants' potential liability in this action and, therefore, cannot constitute a separate factual predicate for purposes of releasing Plaintiffs' claims. See, e.g., Burgess v. Citigroup, 624 F. App'x 6, 8-9 (2d Cir. 2015).

"Covered Ingredients" in Gay included the same ingredients at issue here, further evidencing an "identical factual predicate" for purposes of releasing Plaintiffs' claims. Compare Lally Decl., Ex. S at § II(A)(15), with Am. Compl. (Dkt. No. 8) ¶ 27. The Gay settlement also adequately represented Plaintiffs' interests. "Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members." Wal-Mart, 396 F.3d at 106-07. As applicable here, the Gay settlement covers the same products and ingredients and provided nearly the same recovery requested by Plaintiffs, including restitution. Compare Lally Decl., Ex. S at §§ II(A)(15), IV(A)-(B), with Am. Compl. (Dkt. No. 8) ¶¶ 27, 112, pp. 31-32.

The members of the Gay Class (including at least Ms. de Lacour and Ms. Wright) have released their claims and cannot pursue them again here. See, e.g., Wal-Mart, 396 F.3d at 107.[11]

### 3. Plaintiffs' Newly Proposed Classes Still Include Members Neither Deceived Nor Injured By The Alleged "Natural" Misrepresentations

In their initial motion, Plaintiffs attempted to bring this case on behalf of a proposed class of "all persons in the United States who purchased Tom's of Maine deodorant and/or toothpaste products . . . on or after September 24, 2015," as well as subclasses of California, Florida, and New York consumers. Mem. (Dkt. No. 70) at 4. Plaintiffs narrowed their proposed class in an attempt to cure their 23(b) deficiencies and created the following three single-state classes:

- All persons who purchased Tom's of Maine deodorant and/or toothpaste products on or after September 24, 2015 in the state of New York excluding persons who purchased for purpose of resale" (the "New York Class").

- "All persons who purchased Tom's of Maine deodorant and/or toothpaste products on or after September 24, 2015 in the state of California excluding persons who purchased for purpose of resale" (the "California Class").

---

[11] While the Second Circuit has declined to adopt a stand-alone requirement that plaintiffs set forth an administratively feasible way to identify members of a proposed class, it also held that the predominance and superiority elements of Rule 23(b)(3) encompass this requirement. In re Petrobras, 862 F.3d 250, 268-69 (2d Cir. 2017). As individual inquiries are needed to identify those who purchased for the first time after September 24, 2015, Plaintiffs' motion should be denied on that basis alone. See disc. infra at 21-22.

- "All persons who purchased Tom's of Maine deodorant and/or toothpaste products on or after September 24, 2015 in the state of Florida excluding persons who purchased for purpose of resale" (the "Florida Class").

Ren. Mem. (Dkt. No. 120) at 1. Plaintiffs assert claims for breach of express warranty under both New York and California law and for violations of California, Florida, and New York consumer protection laws on behalf of each single-state class. Id. These claims require examining whether members of the proposed classes were actually deceived and injured by the allegedly false and misleading natural representation. Id. at 3-4.[12]

Plaintiffs' proposed classes still include countless individuals who were neither deceived by the natural representation nor suffered any injury from their purchases of Tom's deodorant and toothpaste, including but not limited to:

- Consumers like Ms. Moran who relied on recommendations of friends and family in purchasing Tom's products (Lally Decl., Ex. N at 147:19-24) (see, e.g., Newman v. RCN, 238 F.R.D. 57, 63- 64, 80-81 (S.D.N.Y. 2006));

- Consumers who read the ingredients listed on the packaging or on Tom's website and fully understood what ingredients were in the product and why Tom's considers them to be natural (see, e.g., Randolph v. Smucker, 303 F.R.D. 679, 695 (S.D. Fla. 2014));

- Consumers who purchased Tom's products for reasons other than the fact that they contain natural ingredients (see, e.g., In re Hain, 2015 WL 12001273, *10 (C.D. Cal. 2015)); and

- Consumers who fully benefitted from their purchases of Tom's products and have no complaints about the products (see, e.g., In re Avon, 2015 WL 5730022, *7).

The defects here are like those in cases where other courts have rejected class certification, including where members of the proposed class purchased products for reasons other than the natural representation or suffered no harm. See, e.g., In re Hain, 2015 WL 12001273, *10.

### B. Plaintiffs Do Not Satisfy The Commonality Requirement

---

[12] See also, e.g., Algarin v. Maybelline, 300 F.R.D. 444, 457 (S.D. Cal. 2014); Lombardo v. J&J, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015); In re Avon, 2015 WL 5730022, *7 (S.D.N.Y. 2015).

The commonality prong of Rule 23 requires Plaintiffs "to demonstrate that the class members have suffered the same injury" that "depend[s] upon a common contention," the truth or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. In cases where neither the alleged misrepresentations nor injury are common to the proposed class, class certification is inappropriate.

### 1. Plaintiffs' Own Testimony Proves Consumers Do Not Have A Common Definition Of "Natural"

Plaintiffs allege that all putative class members define the term "natural" in the same way, but provide no supporting evidence.[13] Ren. Mem. (Dkt. No. 120) at 8. Even the three named plaintiffs do not define "natural" the same way, ███████████████████████████ ████████████████████████ and consider products natural for a variety of reasons, ███████ ████████████████████████████████████████████████████████████ ████████████████████.[14] Lally Decl., Ex. T; see also id. at Ex. U (██████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████).

---

[13] The cases cited by Plaintiffs to argue that courts "routinely" find commonality from a uniform misrepresentation are inapposite, as they involved representations that were not reasonably susceptible to different interpretations. In re Foodservice, 729 F.3d 108, 118 (2d Cir. 2013) (claims involving concealment of a mark-up inserted in invoices); In re Scotts EZ Seed, 304 F.R.D. 397, 403 (S.D.N.Y. 2015) (claims involving "50% thicker with half the water"); Ebin v. Kangadis, 297 F.R.D. 561, 564-65 (S.D.N.Y. 2014) (claims involving "100% Pure Olive Oil").

[14] Any definition of "natural" must also recognize that Plaintiffs are alleging injury from their purchases of deodorant. Ren. Mem. (Dkt. No. 102) at passim. As Moran acknowledged, "[s]hort of going outside and grabbing a leaf off a tree and rubbing it under your arms," some form of processing is necessary to manufacture deodorant. Lally Decl., Ex. N at 138:1-11. The case law recognizes this as well. See, e.g., Sarr v. BEF Foods, Inc., 2020 WL 729883, at *5 (E.D.N.Y. Feb. 13, 2020) (finding "no reasonable consumer would read the phrase 'farm-fresh goodness' and believe that the Mashed Potatoes arrived freshly from a farm," because mashed potatoes "obviously require[] some amount of processing"); Pelayo v. Nestle USA, Inc., 989 F. Supp. 2d 973, 977 (C.D. Cal. 2013) (holding that the term "All Natural" on pasta package was not deceptive because "the reasonable consumer is aware that Buitoni Pastas are not 'springing fully-formed from Ravioli trees and Tortellini bushes'").

Even the named Plaintiffs differ on what natural means. Ms. Moran says natural is a product that is "[p]ure," without "additives," and not "manipulated in any way." Lally Decl., Ex. N at 87:5-11.  Ms. Wright says "organic" and no "synthetic type stuff," id. at Ex. P at 42:23-25, while Ms. de Lacour says "[n]ot chemically altered" and "come[] from nature." Id. at Ex. O at 30:12-16.[15] ████████████████████████████████████ Kivetz Decl. at ¶¶ 135-44.  ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Id. at Ex. L at 9, Ex. M at 15.

Because consumers do not have a single definition of natural and class members do not understand the natural representation on Tom's deodorant in the same way, individual inquiries are required and a finding of commonality is precluded.  See, e.g., Jones v. ConAgra, 2014 WL 2702726, *14 (N.D. Cal. 2014); Randolph, 303 F.R.D. at 695; Newman, 238 F.R.D. at 75.[16]

## 2. Plaintiffs Cannot Identify Common Injury

Plaintiffs have likewise not produced any evidence that the proposed classes suffered a common injury provable by common proof.  Ren. Mem. (Dkt. No. 120) at passim.  Plaintiffs attempt to allege a common injury by claiming that Tom's deodorants and toothpastes contain the natural representation and, as such, all consumers were deceived and all consumers paid a premium. Id. at 5.  Plaintiffs provide no proof that all members of the proposed classes purchased

---

[15] De Lacour's current choice of a replacement to Tom's deodorant, a combination of baking soda and water, illustrates how natural lacks a common meaning. de Lacour testified that no commercial deodorant meets her natural standard, while Wright testified that after she stopped using Tom's deodorant, she switched to a Trader Joes brand that contains propylene glycol, the very ingredient in deodorant that Plaintiffs challenge in their class certification motion. Lally Decl., Ex. O at 45:2-20; id. at Ex. P at 49:8-50:12, 52:12-19; Ren. Mem. (Dkt. No. 120) at 3, 9.

[16] The FDA has not issued any regulations or provided any definition or guidance for the use of the term natural on personal care products (Defs.' Mem. ISO Mot. to Stay (Dkt. No. 33) at 1-3), and Plaintiffs have previously taken the position that the definition of natural for food products is not instructive vis-a-vis personal care products (Opp. to Mot. to Stay (Dkt. No. 35) at 1, 4-5).

Tom's products because they were seeking a natural product. 

Furthermore, the Tom's deodorant labels Plaintiffs take issue with contain representations separate from natural, including "no aluminum," "24 HR odor protection," "[n]o artificial fragrance or preservatives," "[n]o animal testing or animal ingredients," "[s]ustainable practices are a priority in every aspect of our business," and "[w]e strive to maximize recycled content and recyclability of our packaging." Lally Decl., Ex. D. Despite claiming that they relied solely on the natural representation, all three Plaintiffs admitted they purchased Tom's deodorant based partly on other representations on the label, including the "no aluminum" tag, which Plaintiffs do not claim is misleading. See disc. supra at 4-6; Am. Compl. (Dkt. No. 8) at passim.

Whether any given consumer received the benefits he or she expected from Tom's products, however, cannot be a common question answered by common proof. In re Avon, 2015 WL 5730022, *7 (no common injury when many consumers "wanted the product notwithstanding the misleading act"). For example, if a consumer purchased deodorant because of the truthful representation that it has no aluminum, and the consumer received that benefit, she would not have suffered any injury, let alone the same injury as other members of the proposed classes. See, e.g., Pagan v. Abbot, 287 F.R.D. 139, 148-49 (E.D.N.Y. 2012).

### 3. Putative Class Members Who Reviewed Tom's Packaging Or Website Would Not Have Suffered The Same Injury Alleged By Plaintiffs

---

[17] Dennis's survey has another fatal flaw besides its tiny sample size—the Plaintiffs here all purchased deodorant, but Dennis surveyed toothpaste. See disc. supra at 4-6.

Consumers who read Tom's explanation of "[w]hat makes a product natural and good" on the products' packaging or visited Tom's website relied on different statements than did Plaintiffs, and did not suffer any injury, as they would have fully understood "what [Tom's] means by 'natural.'" See disc. supra at 1-4, 11-12. As such, if the Court determined that the word "natural" on the deodorant label was materially false and misleading (which Defendants deny) but that other information on the packaging or Tom's website was not, a consumer that relied solely on the word "natural" would not have "suffered the same injury" as a consumer that relied upon other statements. Dukes, 564 U.S. at 350. Indeed, if a Court found that information on the packaging and website was not materially false and misleading, the latter consumer suffered no injury at all. Oscar v. BMW, 2012 WL 2359964, *6 (S.D.N.Y. 2012).

### C. Plaintiffs Are Neither Typical Nor Adequate To Represent The Putative Class

Rule 23(a)'s requirements are intended to "ensure[] that the named plaintiffs are appropriate representatives of the class." Dukes, 564 U.S. at 349. But where a named plaintiff's claims result from unique conduct and are subject to unique defenses, she is atypical and inadequate.

#### 1. None of the Plaintiffs Purchased Tom's Toothpaste

Because each of the Plaintiffs' claims relies on their purchases of Tom's deodorant, they are atypical of the classes that include toothpaste purchasers. DiMuro, 572 F.App'x at 29. Consumers have different considerations when purchasing deodorant as opposed to toothpaste (as demonstrated by Ms. Moran, who purchased both products but brings this lawsuit solely based on her purchase of Tom's deodorant (see disc. supra at 4)), including different allegedly "unnatural" ingredients. Ren. Mem. (Dkt. No. 102) at 17, 22-23; see also Wiener v. Dannon, 255 F.R.D. 658, 666 (C.D. Cal. 2009). Each Plaintiff, therefore, would rely on "entirely unique evidence" to support their claims related to Tom's deodorant as opposed to Tom's toothpaste, and adjudication

of those claims would not resolve the claims of purchasers of Tom's toothpaste. <u>DiMuro</u>, 572 F.

App'x at 29; <u>Lewis Tree Serv. v. Lucent</u>, 211 F.R.D. 228, 234 (S.D.N.Y. 2002).

### 2. Plaintiffs Are Subject To Unique Defenses

"[C]lass certification is inappropriate where a putative class representative is subject to

unique defenses which threaten to become the focus of litigation" because "there is a danger that

absent class members will suffer if their representative is preoccupied with defenses unique to it."

<u>See</u> <u>Dauphin v. Chestnut Ridge</u>, 2009 WL 2596636, *3 (S.D.N.Y. 2009).

#### a. The <u>Gay</u> Settlement Bars at Least Ms. de Lacour's and Ms. Wright's Claims; Ms. Moran Cannot Prove It Does Not Bar Hers

As noted above, the <u>Gay</u> Class released claims relating to Tom's allegedly false and

misleading natural representation. <u>See</u> disc. <u>supra</u> at 6-7. De Lacour and Wright both testified

that they purchased Tom's deodorant for <u>years</u> prior to the proposed class period and are therefore

part of the <u>Gay</u> Class. <u>Id.</u> at 5-6. The <u>Gay</u> settlement therefore bars their claims. <u>See</u>, <u>e.g.</u>, <u>Wal-</u>

<u>Mart</u>, 396 F.3d at 106-07; <u>In re Adelphia</u>, 272 F. App'x 9, 13-14 (2d Cir. 2008). And Ms. Moran

cannot prove that her first purchase (in the "Fall of 2005") fell outside the <u>Gay</u> class period.

Plaintiffs have made no attempt to exclude the members of the <u>Gay</u> Class from their

newly proposed single-state classes. The <u>Gay</u> Class indisputably released all of their claims

relating to the allegedly false and misleading natural representations, including as to future

purchases. <u>See</u> disc. <u>infra</u> at 22; <u>supra</u> at 6.[18]

#### b. None of the Plaintiffs Represent "Reasonable Consumers" of Natural Products

---

[18] In all events, the fact that members of the <u>Gay</u> Class would have received notice of the allegations that some believed Tom's products were not natural and were purportedly over-priced and chose to continue to purchase them anyway presents a serious predominance issue. <u>See</u>, <u>e.g.</u>, <u>In re Currency Conversion</u>, 230 F.R.D. 303, 311 (S.D.N.Y. 2004).

Because Plaintiffs (i) ignored the representations on Tom's packaging and labeling that detailed what makes the products "natural and good," (ii) failed to read the clearly-stated ingredient list, and (iii) made no effort to visit Tom's website to learn more about those ingredients and about Tom's definition of natural, they are subject to the unique defense that they did not behave as reasonable consumers. Hairston v. S. Beach Bev., 2012 WL 1893818, *5 (C.D. Cal. 2012). ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

In contrast to the behavior of typical Tom's consumers, Ms. de Lacour testified that she never once read the ingredient list during her fifteen years of using Tom's deodorant, while Ms. Wright first reviewed the ingredient list when preparing for her deposition. Lally Decl., Ex. P at 31:13-17, 36:20-24. Similarly, though Ms. Moran described herself as someone who "frequently" looks at ingredient lists on products, she claims to have not read the ingredient list until after she purchased the deodorant three or four times. Id. at Ex. N at 49:11-24, 59:10-20, 74:12-15. Plaintiffs' lack of attention to their purchases is not limited to failing to read the ingredients; Plaintiffs claim that they never read any of the additional information on Tom's deodorant other than "natural," never reviewed the information on the back panel about what makes a product "natural and good," and never visited Tom's website, despite claiming to have done considerable research. Id. at Ex. O at 18:1-20:21, 31:17-20; id. at Ex. N at 32:11-33:10, 68:13-18, 74:12-15 85:22-24; id. at Ex. P at 31:13-17, 36:20-24, 44:20-22. Ms. de Lacour and Ms. Wright had no concerns until Plaintiffs' counsel contacted them. Id. at Ex. O at 18:1-20:21; id. at Ex. P at 16:3-17:11.

"[I]gnor[ing] the evidence plainly before [them]," is hardly the mark of a reasonable consumer who sought natural deodorant free from "chemicals" and was willing to pay an alleged price premium. Sarr v. BEF Foods, Inc., 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020); Kommer v. Bayer, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017); Fermin v. Pfizer, 215 F. Supp. 3d 209, 211-12

(E.D.N.Y. 2016).  It strains credulity that Plaintiffs did not review the entire label or information available on Tom's website (to which the label directs them) <u>before</u> purchasing Tom's deodorant, and in the cases of Ms. de Lacour and Ms. Wright, used the product for "years" without seeking out such information.  <u>See</u> disc. <u>supra</u> at 5-6.  This defense unique to Plaintiffs is likely to become the focus of the case to the detriment of absent class members.  <u>Dauphin</u>, 2009 WL 2596636, at *3.

Finally, as discussed above, Plaintiffs' declarations submitted to support their renewed motion contradict their deposition testimony as to the reasons why they purchased Tom's products. <u>See</u> disc. <u>supra</u>. at 4-6.  None of the Plaintiffs purchased deodorant <u>solely</u> for the reasons stated in their cut-and-pasted declarations; each swore that they purchased for many other reasons.  While the Amended Complaint contained rote recitations that Plaintiffs "purchased Tom's Products based on claims . . . that the Products were 'natural.'. . . [and] would not have purchased Tom's Products if the labels had not stated the Products were 'natural,'. . . [or] if she had know[n] the Products contained ingredients that were not in fact natural," <u>see</u> Am. Compl. at ¶¶ 6-8, Plaintiffs' own testimony reveals that each one purchased Tom's products for a variety of reasons, define "natural" differently, and had varying levels of engagement in reviewing the ingredients, <u>see</u> disc. <u>supra</u>. at 4-6.  Thus, it would not even be possible for this Court to determine <u>what</u> each Plaintiff relied upon in purchasing Tom's products, let alone whether they acted reasonably in doing so.

### D. Plaintiffs Still Fail To Meet Rule 23(b)'s Requirements

Even if Plaintiffs could satisfy their burden under Rule 23(a) (which they cannot), they must also demonstrate the proposed classes meet the criteria enumerated in one of the prongs of Rule 23(b).  <u>Amchem v. Windsor</u>, 521 U.S. 591, 614 (1997).  This Court previously found that Plaintiffs "neglected their burden" to satisfy Rule 23(b)'s requirements, as discussed above (<u>see</u>

disc. supra at 7-8). Because Plaintiffs took no meaningful steps to address their 23(b) deficiencies, they still cannot satisfy this burden.[19]

### 1. Plaintiffs Cannot Show That a Rule 23(b)(3) Class Would Be Sufficiently Cohesive

To certify a class under Rule 23(b)(3), Plaintiffs must prove "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). Predominance is "far more demanding" than commonality and requires a sufficiently cohesive class to overcome due process concerns. Amchem, 521 U.S. at 623-24.

#### a. Consumers—including the putative class representatives—purchase Tom's products for a wide variety of reasons

To prevail on their consumer fraud claims, Plaintiffs must prove that the alleged misrepresentations were material to purchasers. Algarin, 300 F.R.D. at 453; Lombardo, 124 F.Supp.3d at 1287; Ault v. Smucker, 310 F.R.D. 59, 63 (S.D.N.Y. 2015). If materiality varies across the class it is not subject to common proof. In re Hain, 2015 WL 12001273, *10; Oscar, 2012 WL 2359964, *6-8; Philip Morris v. Hines, 883 So.2d 292, 295 (Fla. Dist. Ct. App. 2003).[20]

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[19] Plaintiffs' proposed classes no longer seek injunctive relief and instead seek only monetary relief. Ren. Mem. (Dkt. No. 120) at passim.

[20] Plaintiffs argue that materiality is common to a class when an objective standard governs the alleged misrepresentation, citing In re Scotts, 304 F.R.D. at 409. Ren. Mem. (Dkt. No. 120) at 12-13. The court in In re Scotts, however, held that the issues plaintiffs challenged were subject to objective proof: did the product grow grass and was that grass 50% thicker. In re Scotts, 304 F.R.D. at 409. In this case, the term natural is not subject to a single objective definition, as several courts have held (see, e.g., Randolph, 303 F.R.D. at 695) and as such, the subjective definition that consumers may have had in mind when purchasing defeat the presumption of materiality. See, e.g., Jones, 2014 WL 2702726, *14.



Lally Decl., Ex. U; <u>id.</u> at Ex. N at 21:3-23:15.

Given that consumers across California, New York, and Florida purchase Tom's deodorant and toothpaste for numerous reasons other than it being natural, neither reliance nor materiality can be presumed. <u>Oscar</u>, 2012 WL 2359964, *4, 6 ("It is impossible to determine, on a global basis, whether the presence of [Goodyear run-flat tires] . . . 'caused' consumers to pay a higher sum for the [MINI]. For some consumers, the [run-flat tires] may have been an important factor; for others, not at all; for others, somewhere in between; and others, perhaps most others, may never have thought to isolate the relative contribution of each of the differences between these models in deciding to purchase the MINI S."); <u>see also</u> <u>In re Hain</u>, 2015 WL 12001273, *10; <u>Hines</u>, 883 So. 2d at 295. Because individual inquiry is needed, class certification is not appropriate. <u>Id.</u>[22]

### b. Individualized inquiry into consumers' understanding of "natural" is necessary

---

[21] Plaintiffs cite certain Tom's internal research in support of the contention that the natural representation drives consumer purchases. Ren. Mem. (Dkt. No. 120) at 3. ████████████████████████

████████████████████████████████████████

████████████████████████ <u>Id.</u> ¶¶ 168-70.

[22] Because Plaintiffs cannot establish a material misrepresentation, the Court cannot infer a presumption of reliance under California law (<u>Algarin</u>, 300 F.R.D. at 453), and individualized inquiries would be required to determine reliance on the natural representation. <u>See</u> disc. <u>infra</u> at 21-22.

[REDACTED]. See disc. supra at 4-6. In the absence of a uniform definition of natural, this Court would need to perform individualized inquiries into each consumer's subjective understanding of, and expectations for, the term natural. See, e.g., Randolph, 303 F.R.D. at 695; Jones, 2014 WL 2702726, *14. Because consumers interpret natural differently, any damages calculation would also need to consider "each class member['s] precise definition of [natural]," meaning that "questions of individual damages calculations" will predominate. Hughes v. Ester C., 317 F.R.D. 333, 356 (E.D.N.Y. 2016); see also Lally Decl., Ex. B (showing few complaints relating to natural ingredients).

### c. Individualized inquiries into the benefit consumers received is necessary

"Where proof of the fact of damages requires evidence concerning individual class members," as is the case here, individual issues predominate. Newton v. Merrill Lynch, 259 F.3d 154, 188 (3d Cir. 2001). [REDACTED]

[REDACTED]

[REDACTED] Members of the proposed classes who receive benefits separate from "natural" have no damages, and this Court could only identify those members through individualized inquiries. In re Avon, 2015 WL 5730022, *7; In re Hain, 2015 WL 12001273, *10; Vaccariello v. XM, 295 F.R.D. 62, 74 (S.D.N.Y. 2013).

### d. Plaintiffs' proposed classes are not manageable

Plaintiffs attempt to argue that is case is "manageable as a class action," and that "a class action is the superior method of adjudication," claiming that all four factors in Rule 23(b)(3) favor class treatment. Ren. Mem. (Dkt. No. 102) at 24-25. However, Plaintiffs fail to present convincing evidence in support of this assertion. Plaintiffs' only argument is that "[i]t would cost Class members much more to litigate an individual case than they could recover in damages," yet

Plaintiffs still fail to demonstrate that it is even possible to calculate damages on a class wide basis. See disc. infra at 24-25. Plaintiffs briefly claim manageability because "liability will be established predominantly through common class wide proof," see Ren. Mem. (Dkt. No. 102) at 25; however (see also disc. supra at 9-17), the proposed classes present real manageability issues.

For one, Plaintiffs continue to completely ignore the Gay settlement, which precludes all members of that class (including at least Plaintiffs de Lacour and Wright, and perhaps Plaintiff Moran) from bringing claims against Defendants relating to Tom's allegedly false and misleading natural representation. See disc. supra at 6-7. Plaintiffs have no plan as to these barred class members. In re Petrobras, 862 F.2d at 269; disc. supra at 10-11.

Plaintiffs similarly provide no plan for identifying members of the proposed classes who purchased the specific toothpastes and deodorants identified in Plaintiffs' motion, including but not limited to a plan for excluding those who purchased toothpastes that are SLS-free (Lally Decl., Ex. H-I, K-M) or deodorants that are propylene-glycol-free (id. at Ex. D-G, J), products that do not present the same claim plaintiffs present here. DiMuro, 572 F.App'x at 29.

Nor have Plaintiffs provided a plan to identify consumers who purchased Tom's deodorant and toothpaste during their proposed class period. Ren. Mem. (Dkt. No. 102) at passim. Tom's has no records because its products are sold by third-party retailers. Sprague Decl. ¶ 12. This Court would therefore need to rely solely on class members to both accurately remember dates of purchase and to self-identify. See, e.g., Weiner, 2010 WL 3119452, *13. Courts routinely hold that where there is no way to verify if a purchaser is actually a class member, class certification is improper. See, e.g., In re Avon, 2015 WL 5730022, *5. The ability of proposed class members to self-identify is particularly problematic in this case, as Plaintiffs have attempted to plead around the Gay Class by setting the class period for all three classes for the day after the end of the Gay settlement. Ren. Mem. (Dkt. No. 102) at 1. Members of the proposed classes can't be expected

to remember whether they purchased Tom's toothpaste or deodorant before or after September 24, 2015, or which specific toothpastes and deodorants they purchased. Kivetz Decl. ¶¶ 308-16; <u>see also</u> <u>In re Avon</u>, 2015 WL 5730022, *5; <u>Weiner</u>, 2010 WL 3119452, *13.

Finally, the lack of commonality and predominance render this case unmanageable. <u>In re Fosamax</u>, 248 F.R.D. at 403. The members of the proposed classes have different interpretations of natural, were not exposed to the same representations, and purchased Tom's deodorant and toothpaste for different reasons. <u>See</u> disc. <u>supra</u> at 9-12. Plaintiffs have provided no details regarding how claims could be tried on a class basis or how members of the proposed classes entitled to recover could be identified if not all putative class members have the same interpretation of natural, viewed the same natural representations, or suffered an injury. Ren. Mem. (Dkt. No. 102); <u>Weiner</u>, 2010 WL 3119452, *11.[23]

### E.      Plaintiffs Cannot Prove Class Wide Damages

Finally, to obtain class certification pursuant to Rule 23(b)(3), Plaintiffs must establish that "damages are capable of measurement on a class wide basis."[24] <u>Comcast v. Behrend</u>, 569 U.S. 27, 34 (2013). Plaintiffs submitted a conjoint survey conducted by J. Michael Dennis in 2018 to purportedly derive a price premium and an expert report by Colin B. Weir to calculate the purported class wide damages. Dennis Decl. (Dkt. No. 104) at <u>passim</u>; Weir Decl. (Dkt. No. 105) at <u>passim</u>. Defendants' experts, Dr. Joseph Krock and Dr. Kivetz, have detailed the profound flaws in Plaintiffs' purported "price premium" analysis, including:

---

[23] Neither is a class action superior, as Tom's offers a full money back guarantee, if for any reason, a customer is not satisfied with any Tom's product. "Product Guarantee," available at https://www.tomsofmaine.com/product-guarantee (last visited March 9, 2020); <u>see also</u> <u>Webb v. Carter's</u>, 272 F.R.D. 489, 504-05 (C.D. Cal. 2011).

[24] Tom's additionally reserves its right to challenge the constitutionality of N.Y. Gen. Bus. Law §§ 349 and 350 on due process grounds.



- (Kivetz Decl. ¶¶ 185-251);

- (Kivetz Decl. ¶¶ 197-216); and

- (Krock Decl. ¶¶ 19-26, 47-56; Kivetz Decl. ¶¶ 217-26, 249-51, 298-300).

Plaintiffs' damages calculation also calculates a purported price premium for Tom's toothpaste, a product about which none of the Plaintiffs are making claims and a product for which Plaintiffs cannot adequately represent a class. Dennis Decl. (Dkt. No. 104) ¶15; disc. supra at 4-6, 16-19. While Dennis claims that he could apply the price premium survey methodology used for Tom's toothpaste to Tom's deodorant, he hasn't and has no opinions regarding a purported price premium for deodorant at this time. Id. ¶ 14 n.2; see also Lally Decl., Ex. W at 60:13-61:16, 72:23-73:7, 74:19-21; id. at Ex. X at 83:17-24, 94:2-8. In In re ConAgra, 302 F.R.D. 537 (C.D. Cal. 2014), the court held that plaintiffs had not shown damages could be calculated on a class wide basis where Mr. Weir "describe[d] the methods he would use to make the calculation" but did not actually use them "to identify the price premium." Id. at 577; see also Weiner, 2010 WL 3119452, *8-10. [25]

---

[25] Plaintiffs have known the products they purchased and the potential difficulty in certifying a broader class since they first filed. Am. Compl. (Dkt. No. 8) at passim. Plaintiffs have taken no steps to address these difficulties, and letting Plaintiffs conduct the damages analysis on the product that they have known was most applicable to their class certification motion now would impermissibly deprive Defendants of the ability to properly challenge the analysis prior to class certification. Teamsters, 546 F.3d at 201-02.

## IV.    CONCLUSION

For the reasons stated herein and in the attached declarations and exhibits, Defendants respectfully request that Plaintiffs' renewed motion for class certification be denied with prejudice.

Dated:  March 20, 2020

Respectfully submitted,

LATHAM & WATKINS LLP

/s/ Kathleen P. Lally

David Callahan *(pro hac vice)*
Kathleen P. Lally *(pro hac vice)*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
david.callahan@lw.com
kathleen.Lally@lw.com

Blake T. Denton
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
blake.denton@lw.com

*Counsel for Defendants*
*Colgate-Palmolive Co. and Tom's of Maine, Inc.*