UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN individually and on behalf of all others similarly situated, |
| Plaintiffs, |
| v. |
| COLGATE-PALMOLIVE CO., and TOM'S OF MAINE INC., |
| Defendants. |

Case 1:16-cv-08364-KA

Reply Declaration

of

**COLIN B. WEIR**

April 9, 2019

MAY REFERENCE MATERIALS DESIGNATED "CONFIDENTIAL" OR "HIGHLY

CONFIDENTIAL -- ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 7th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.    I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, household appliances, herbal remedies, health/beauty care products, electronics, furniture, and computers.  My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony, is attached hereto as Exhibit 1.  This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.  Prior to joining ETI, I worked at Stop and Shop Supermarkets for a period of seven years, working as a cash department head, grocery/receiving clerk, and price-file maintenance head.

2.    Contained in Exhibit 1 is a list of numerous litigations in which I have participated in the design, execution and/or determination of the economic suitability of conjoint surveys, or have been found by the court to have expertise in conjoint analysis.  These cases include, but are not limited to *Jones v. Nutiva; Hunter v. Nature's Way; Looper v. FCA; Sanchez-Knutson v. Ford Motor Company; Belfiore v. Procter and Gamble; Kurtz v. Kimberly Clark; In re Scotts EZ*



Reply Declaration of Colin B. Weir
April 9, 2020
Page 2 of 29

*Seed Litigation; In re: ConAgra Foods; In re: Arris Cable Modem; Hadley vs. Kellogg;*

*Martinelli v. Johnson & Johnson; Krommenhock v. Post; and Hudock v. LG.*

3.    I received graduate level training in conjoint analysis as part of my MBA.  I take

continuing education in advanced conjoint design, execution, and analysis through Sawtooth

Software, a leading provider of conjoint analysis software.


## II.  ENGAGEMENT

4.    I provide this declaration in connection with the case filed by Anne de Lacour,

Andrea Wright, and Loree Moran ("Plaintiffs") against Colgate-Palmolive Co. and Tom's of

Maine Inc. ("Defendants").  I make this declaration based upon my own personal knowledge

and, if called as a witness in this action, I would be able to competently testify as to the facts and

opinions set forth herein.

5.    I have been advised by Counsel for Plaintiffs that individuals purchased certain

Tom's of Maine brand Products[1] that were labeled as "Natural" ("the Claim").[2]  I have been

further advised that Plaintiffs allege that this Claim is false and misleading to reasonable

consumers and therefore should not have been made.  I have been asked by Counsel for Plaintiffs

to review the September 21, 2018 Declarations of Joseph A. Krock[3] and Ran Kivetz.[4]

6.    ETI is being compensated at the rate of $600 per hour for my work on this case.  The

opinions expressed in this declaration are my own, and my compensation is not dependent upon

the substance of these opinions or the outcome of the litigation.

---

[1] Tom's of Maine toothpastes and deodorants of various sizes, pack sizes, and flavors.

[2] *See, generally,* First Amended Complaint, filed January 18, 2018 ("Complaint").

[3] Hereinafter "Krock Declaration."

[4] Hereinafter "Kivetz Declaration."


ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 3 of 29

7.   The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report and in Exhibit 2, attached hereto.  In addition, I have relied upon my educational background and more than 16 years of experience.

## III.  NEITHER KROCK NOR KIVETZ DISPUTE THAT CONJOINT IS A RELIABLE METHOD

8.   Below, I will address the specific criticisms raised by Krock and Kivetz.  First, it is notable that neither Krock nor Kivetz suggest that conjoint analysis is an invalid method--nor could they.  Conjoint analysis is a time-tested, peer-reviewed, well-accepted and widely used method.  Conjoint has a long history of use in litigation to determine economic damages (including in scenarios virtually identical to this case), as well as in academia and in industry.[5] Kivetz himself has designed several conjoint studies outside of litigation in the context of "scientific academic research."[6]  Kivetz notes that businesses in the real world rely on conjoint and that "it's used oftentimes to do simulations on market share."[7]  Krock believes that conjoint is a method that Defendant could use to estimate its liability in this very case.[8]

---

[5] *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*; *See, e.g., Khoday v. Symantec Corp.*, 2014 WL 1281600, at *10 (D. Minn. March 13, 2014); *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015); *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014); *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014);  *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015); *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 2018 WL 3126385 (N.D. Cal. June 26, 2018);  *In Re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018); *Hadley v. Kellogg Sales Co.*, 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019); *Krommenhock v. Post Foods, LLC*, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020); *Hudock v. LG Elecs. USA, Inc.*, 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020).

[6] Deposition of Ran Kivetz, November 6, 2018, ("Kivetz Deposition"), at 164.

[7] *Id.*, at 162-163.

[8] Deposition of Joseph Krock, October 19, 2018, ("Krock Deposition), at 49-50.



Reply Declaration of Colin B. Weir
April 9, 2020
Page 4 of 29

9. Instead, Krock and Kivetz quibble about the implementation or validation of these methods. In many instances, their criticisms are speculative at best. What little empirical work that was done by Krock and Kivetz is of little probative value.

10. Neither of the experts proffered by Defendants can know with any certainty whether the results of the Dennis Conjoint Survey are accurate, because neither of those experts calculated the price premium solely attributable to the "Natural" Claim on Tom's of Maine Products:

- Krock:

  Q. Have you done any background research to determine whether the "natural" claim influences the retail price of Tom's toothpaste?

  A. Not specifically, no.[9]

- Kivetz:

  Q. Have you done any research to determine whether the natural claim influences the retail price of Tom's toothpaste?

  A. I've not specifically researched affirmatively the -- what determines the retail price of Tom's of Maine in this case."[10]

## IV. RESPONSE TO KROCK AND KIVETZ

**Krock admits the premise of Plaintiff's case**

11. Krock admits that a product's attributes can impact the market price of that product:

---

[9] Krock Deposition, at 25.

[10] Kivetz Deposition, at 111.


ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 5 of 29

Q.  Can the attributes of a consumer product sold at retail ever have an influence on the market price paid by a consumer of that product?

A.  And attributes meaning?

Q.  Meaning product attributes, characteristics of a product.

A.  I guess in general terms it's possible.[11]

12.  Krock further admits that consumers are economically better off not paying a price premium for products:

Q.  Everything else being equal, would you agree that consumers are better off paying less money rather than more money for a product?

A.  For an identical product, consumers would have -- would benefit from paying less for the identical product, yes.[12]

13.  Krock admits that product differentiation is often used by companies to make more money, and that one way for a manufacturer such as Tom's of Maine to differentiate its products would be through the use of a "Natural" Claim:

Q.  Do you know what product differentiation is?

A.  Generally speaking, yes.

Q.  What is it?

A.  A way for sellers of products to distinguish themselves from other similar products.

Q.  Why do manufacturers try to differentiate their products?

A.  They could have a lot of reasons: to identify with certain groups of consumers, to stand out in the marketplace, to find new consumers. There's many reasons why they would want to differentiate themselves.

---

[11] Krock Deposition, at 16-17.

[12] Krock Deposition, at 19-20



Reply Declaration of Colin B. Weir
April 9, 2020
Page 6 of 29

Q.  Would one of those goals be to sell more products at higher prices?

A.  That could be one of the possibilities.

Q.  Would you agree that one way for a toothpaste producer to differentiate a product would be to label that product with "natural"?

A.  That would be a dif- -- a potential differentiator, yeah. [13]

**Krock is incorrect to assert that Plaintiffs have not put forth a method by which to calculate price premium damages for Tom's Deodorant**

14.  Krock suggests that neither Dennis nor I have "presented concrete findings regarding Tom's deodorant products.[14]  Krock is wrong.  Dennis and I have set forth a concrete set of methods to calculate the price premium due solely to the "Natural" representation on Tom's deodorant products.  It is the same method that we have proposed to calculate the price premium due solely to the "Natural" representation on Tom's toothpaste products.  I explained this at my deposition.

> We had a discussion early on in the case as to whether or not the toothpaste conjoint would be representative of the conjoint that would be done in the deodorant case.
>
> In other words, did we need to set out two different methods or could we have one be representative of the other?
>
> We both agreed we would be using the common method of conjoint.  It would have the same structure of the challenged claim, market-based price points that were actually paid by consumers, distractor attributes, so that the survey would be unbiased, hierarchical Bayes regression estimation, a market simulator that takes into account the actual historic supply side considerations and quantities supplied to the class, as well as the competitive nature of the marketplace, and that those would then be simulated in the simulator to determine a percentage price premium, in the way same as toothpaste, that would be applied to the

---

[13] Krock Deposition, at 92-94.

[14] Krock Declaration, at para 11.



Reply Declaration of Colin B. Weir
April 9, 2020
Page 7 of 29

total sales of deodorant, that comes from the same types of sources as total sales for toothpaste.

Since they are identical methods, we felt that since our task was to demonstrate a method and not necessarily to finish our work, that one would be representative of the other. We could have deodorant and not toothpaste. We picked toothpaste.[15]

**Krock incorrectly asserts that my work amounts to simple multiplication**

15. Krock suggests that the sum total of my work product in this case boils down to simple multiplication.[16] Krock is wrong. Most fundamentally, my expertise is brought to bear in knowing what factors to properly consider in a damages analysis. I have applied my economic (and other) expertise in:

- Determining the total retail sales of Tom's Products to the Class through an analysis of wholesale and retail sales data;

- Determining the appropriateness of using conjoint analysis to determine the market value of the Tom's Products without the "Natural" claim;

- Determining the proper application of the survey results given the market conditions surrounding the sales of the Tom's Products;

- Analyzing the supply factors necessary to determine the marketplace outcome, including:

  o Determining that the quantity of Tom's Products supplied to the class is fixed;

---

[15] Weir Deposition, at 84-85.

[16] Krock Declaration, at paras 14, 71.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 8 of 29

  o Determining that the actual market prices of Tom's Products used in the Weir and Dennis analyses are set as a function of supply and demand;

  o Analyzing retailer prices to determine that, as the sellers of the Tom's Products, retailers can and do respond to changes in demand by adjusting prices;

 • Determining that the market price for the Tom's Products would likely be 12.33% lower in the but-for world where Defendant did not claim that its Products were "Natural."

16. To reach my calculations, I had to comb through tens of thousands of observations of sales figures.  By way of example, a breakdown of monthly retail sales by Tom's product type, flavor, size, and state during the class period comprised 58,952 rows in an Excel spreadsheet, which itself needed to be compiled and organized to analyze efficiently.

17. I also conducted a detailed review of grocers and merchandisers to determine their likely response to changing economic conditions.

18. While the final damage calculation itself involves multiplication that can probably be conducted by the trier of fact, I believe I bring expertise as to the formula used to determine damages, what inputs should be used in that formula, and the determination of the proper values of those inputs (and analyzing and tabulating the necessary data to generate those inputs) as well as understanding the marketplace outcomes that surround the use of that formula.  I can help the trier of fact to understand all of these factors and evidence.

**Krock is not an expert on conjoint**

19. Below I will address in detail the deficiencies of some of Krock's specific criticisms of the Dennis Conjoint Survey.  First, it is important to note that Krock is not an expert in



Reply Declaration of Colin B. Weir
April 9, 2020
Page 9 of 29

conjoint analysis.  He has never designed or executed a conjoint survey of his own.  Krock is not

bashful about admitting this deficiency.

> Q.  Do you purport to be an expert in the field of conjoint analysis?
>
> A.  I think I state in my report that I am not an expert on conjoint analysis.
>
> Q.  How many conjoint studies have you designed?
>
> A.  Zero.
>
> Q.  How many times have you executed a conjoint study?
>
> A.  Professionally?  Zero.
>
> Q.  How many times have you run a hierarchical Bayes regression?
>
> A.  Professionally, zero.
>
> Q.  How many times have you conducted a conjoint-based market simulation?
>
> A.  Zero.
>
> Q.  How many times have you interpreted the results of a conjoint market simulation?
>
> A.  This one time.[17]

20.  Krock claims that his expertise in other fields makes him "eminently qualified to

address the number of big-picture mistakes made by Dr. Dennis."  As will become evident

below, Krock's fundamental lack of knowledge of conjoint leads him to a number of erroneous

"big-picture" conclusions about the Dennis Conjoint Survey.

---

[17] Krock Deposition, at 49, 58.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 10 of 29

**Krock lacks even relevant basic knowledge of how to calculate damages in a litigation such as this**

21.  Krock does not know a single method by which classwide damages could be calculated in any set of circumstances, and has no knowledge of any method that can be used to calculate damages in a mislabeling case.  Krock readily admits:

> Q.  As we sit here today, you cannot tell me any methods that you would use to calculate classwide damages?
>
> A.  No.
>
> Q.  Okay.  As we sit here today, you cannot tell me any method you would use to calculate classwide damages for a consumer product that has been mislabeled?
>
> A.  No.[18]

22.  One has to ask how Krock can be in a position to evaluate damages methods if he isn't even aware of them?

**Krock ignores the obvious solution to class specific samples: a larger sample**

23.  Krock criticizes the Dennis Conjoint Survey for not including state specific results for the class states, and for being unable to do so reliably.[19]

24.  Setting aside for the moment that Dennis has testified that the results are projectable to all members of the class, Krock seems to imply that the method could never be used to determine class-state-specific results under any circumstances if the Court would so require.  But Krock is wrong.  This criticism ignores the blindingly obvious solution that the Dennis Conjoint

---

[18] Krock Deposition, at 23-24.

[19] Krock Declaration, at paras 15-18.



Reply Declaration of Colin B. Weir
April 9, 2020
Page 11 of 29

Survey could very well be updated with additional sample to allow for the calculation of

class-state specific results.

    25.  I testified as such at Deposition.

> Q.  Did you validate his doing national versus state-specific?  Are you validating that aspect of the survey?
>
> A.  For purposes of demonstrating a workable methodology, the nationwide sample is appropriate because it demonstrates that the method works.
>
> If anybody has any quibbles over Dr. Dennis' sample, whether it's to add more people or to include specific states, that's something that can just be done by adding additional interviews to the survey.
>
> In that sense I don't think there is any methodological problem with the choice. Based on what Dr. Dennis has testified in his report, I feel that the sample has been appropriately designed.[20]

**If the Dennis survey only provides a "snapshot" of the market, it is a conservative estimate**

    26.  Krock criticizes the Dennis Conjoint for being a "snapshot" in time that "cannot

represent the preferences that may have been held by consumers three years ago."[21]  Krock's

assertion is not backed up with any research or citation.  Krock ignores that survey research is

regularly conducted as to historic perspectives, and seems to imply that the Dennis results would

be inflated today relative to the class period.

    27.  At deposition, Krock claimed that he felt that "Natural" claims were becoming more

important in the market.  If this is true, it certainly emphasizes the likelihood of there being a

price premium in this action.  But Krock cannot know whether "Natural" claims are more

important because he has done no research to make that determination.

---

[20] Weir Deposition, at 116.

[21] Krock Declaration, at para 27.



Reply Declaration of Colin B. Weir
April 9, 2020
Page 12 of 29

28.  Krock's gut feeling is contradicted by market research.  One study finds that "There is no doubt that consumers are broadly positive about 'natural' claims," but that "There are some signs that the power of 'natural' claims could be waning."[22]

29.  As such, even if it were not routine to conduct a historic survey--which it is--the likely outcome is that the Dennis Conjoint results are conservative, and understate the premium during the class period.

**Variations in price paid, and other "individual" issues do not alter the calculation of total, class-wide damages**

30.  Krock asserts that variations in the market price paid defeats the use of market wide price premium.[23]  This assertion is meaningless for a number of reasons.

31.  First, one of my roles in this litigation was to provide information to Dennis about the very price variations that Krock seeks to highlight.  The Dennis survey is carefully designed to, and does, include these variations in market price to reflect the actual prices paid by class members.

32.  Second, by producing a result in the form of a percentage, the Dennis survey can then be applied back to the actual sales data that also reflects the prices that consumers actually paid in the marketplace.

33.  A tube of Tom's toothpaste of a particular UPC is the same in San Francisco as it is in Albany.  If consumers have been denied a fraction of the product's value, as plaintiffs allege here, it is the same fraction of value in San Francisco and Albany.

---

[22] Do 'natural' claims cut the mustard?, Emma Gubisch for Leatherhead Food Research

[23] Krock Declaration, at paras 19 *et seq*.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 13 of 29

34.   Third, such variations are also inapposite to the calculation of class-wide damages, because the ultimate method of distribution or allocation of damages to individuals during claims administration or a settlement does not alter the calculation of total, class-wide damages.

35.   Class-wide damages under a price premium model can be calculated from the bottom up as the sum of individual damages (as defendants often assert), or can be calculated from the top down, without individual inquiry, by finding the percentage price difference resulting from the Claim and then multiplying the premium by the dollars sold (as discussed in detail in the Weir Declaration). As outlined above, I propose to use the latter technique, obviating the need for individual inquiry.

36.   Ultimately, no matter the method by which damages are distributed, it does not affect the calculation of, or the total amount of class-wide damages in this litigation.

**Krock's analysis of quantity sold by metro area fails to correctly weight by population**

---



Reply Declaration of Colin B. Weir
April 9, 2020
Page 14 of 29

39.  Furthermore, Krock ignores the fact that Dennis' representative sample would also be a reflection of the distinct profile of the underlying population, including the distribution of population in metro and suburban areas.

**Krock is incorrect to suggest the use of so-called "full profile" conjoint analysis**

40.  Illustrating his lack of expertise in conjoint, Krock states that he "understand[s] that one common use of conjoint analysis would be to ask survey respondents to rank a full set of orthogonal and exhaustive combinations of products using all attributes, called a Full Profile approach."[25]

41.  Full Profile conjoint was used in the beginning of conjoint science and is a relic of the past.[26]  It is only useful in analyzing up to six attributes.[27]  A study conducted by Sawtooth Software finds that, as of 2016, no more than two percent of all conjoint studies conducted in the year were traditional full profile studies.[28]  By contrast, Choice-Based Conjoint -- the approach used by Dennis -- accounts for a whopping 81% of conjoint studies.[29]

42.  Krock thinks the full profile approach is also Choice-Based Conjoint: "my understanding is that the full profile is part of choice-based conjoint analysis."[30]  But Krock could not be farther from the truth.  What makes Choice-Based Conjoint distinct is its ability to allow respondents to view only a small subset of product and attribute combinations, while producing a robust model of the market.  Survey researchers overwhelmingly prefer this method because of its efficiency, robustness, and accuracy.  Krock inappropriately suggests that these

---

[25] Krock Declaration at 9.

[26] Getting Started with Conjoint, at 39-40.

[27] *Id.*

[28] 2016 Sawtooth Software User Survey.

[29] *Id.*

[30] Krock Deposition, at 65.



Reply Declaration of Colin B. Weir
April 9, 2020
Page 15 of 29

very *benefits* of Choice-Based Conjoint are frailties of the Dennis Survey.  Because Dennis used

Choice-Based Conjoint, he need not show all product or attribute combinations.

**Dennis' use of 200 conjoint designs is perfectly reasonable in Choice-Based Conjoint**

43.   Krock also suggests that Dennis should have used more than 200 "Versions of

Choice Tasks."[31] What Krock calls "Versions of Choice Tasks" are known by regular

practitioners of conjoint as "Designs."  But due to his lack of experience, Krock did not know

what that term meant.  Nor did he know--despite his casting aspersions-- what an appropriate

quantity of conjoint designs should be.

> Q.   How many designs do you think would be typical for use in a choice-based conjoint survey of 1,000 respondents?
>
> A.   What do you mean by "designs"?
>
> Q.   Designs in the Sawtooth software.
>
> A.   I don't -- I'm not familiar with how you're using that term.  I don't -- I don't understand the question.
>
> Q.   How many versions?
>
> A.   I wouldn't -- I wouldn't have an opinion as to what the correct number is.  I wouldn't know.
>
> Q.   Do you know what the default setting is for the number of designs in Sawtooth software?
>
> A.   I don't.[32]

44.   One reason that Krock might not know the correct number of designs, or what the

typical setting is in Sawtooth, is because he does not have and does not use that software.

---

[31] Krock Declaration, at para 30.

[32] Krock Deposition, 67-68.



Reply Declaration of Colin B. Weir
April 9, 2020
Page 16 of 29

Q.  Do you have a license for Sawtooth software?

A.  No.

Q.  Have you ever used it?

A.  No.[33]

45.  I do have a license for Sawtooth Software, and have used it for 13 years.  While practitioners have substantial leeway in choosing how many designs to use, the typical range would start at approximately eight designs manually curated by the researcher, or -- as done by Dennis and many researchers -- several hundred selected by the Sawtooth Software.  When the software makes the designs, a statistical algorithm is run to ensure that across the entire sample, each attribute and level will be seen in appropriate "level balance" with one another.  This is true even when the design files are not seen in perfectly even distribution.

46.  Krock presents a table showing that some designs were seen by more respondents while others were seen by fewer.  This analysis tells nothing about how frequently each level was seen across the entire sample.

47.  I reviewed the detailed design files and calculated the one-way and two-way frequency to determine whether Dennis' study was "orthogonal" and "level balanced," which would indicate that each level was seen in an appropriate frequency overall, and in contrast with each of the other levels.  Not surprisingly, the designs generated by Sawtooth and used by Dennis did result in level balance and orthogonality.  In Table 1 below, I reproduce the one-way frequencies for Dennis' binary attributes.

---

[33] Krock Deposition, at 58.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 17 of 29

| Table 1. |  |
| :---: | :---: |
| Dennis Survey One-way Frequency |  |
| Attribute/Level | Frequency |
| Natural | 9,054 |
| Fresh Breath | 9,043 |
| Fights Cavities | 9,126 |
| Prevent Tartar Build Up | 8,882 |
| Safe For Enamel | 9,172 |
| No Artificial Dyes | 8,848 |
| Helps Prevent Stains | 9,028 |
| Baking Soda | 8,968 |

**Dennis' sample size is more than sufficient**

48.   Krock claims that Dennis used too small of a sample size relative to the possible attribute combinations.[34]  Krock is once again revealing his lack of experience with conjoint. Typically conjoint surveys collect data from at least 300 respondents if the goal of the research is to conduct robust quantitative research.[35]  Another rule of thumb for selecting a conjoint survey sample size is to set:

$$\frac{nta}{c} \geq 500$$

where $n$ is the number of respondents, $t$ is the number of tasks, $a$ is number of alternatives per task (not including the none alternative), and c is the number of analysis cells.[36]  For his survey, Dennis sampled n=1000 respondents; respondents answered $t$=10 randomized choice tasks of

---

[34] Krock Declaration, at para 29.

[35] Getting Started with Conjoint, at 69.

[36] *Id.*, at 68-69. When considering main effects, *c* is equal to the largest number of levels for any one attribute.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 18 of 29

$a$=3 alternatives per task; and the highest number of levels is $c$=6 analysis cells. The formula in this instance evaluates to 5,000; well in excess of the minimum recommended amount.

**Replication of the Dennis methodology**

49.   Krock boldy asserts that "it is doubtful that Dr. Dennis could replicate this analysis independently" because he did not personally use Sawtooth Software.[37]  Krock also describes the Dennis conjoint analysis to be "a black-box approach to statistical analysis," by which he means that Dennis did not report a measure of accuracy of the conjoint study.[38]

50.   The irony of these accusations should not be missed.  As discussed above, Krock himself has never used Sawtooth Software, and would not be in a position to evaluate whether the conjoint is reproducible.  Moreover, Krock is not aware of even a single measure of reliability of conjoint results, or if one even exists.

Q.   Are there objective measures for the accuracy of a conjoint analysis?

A.   I'm not aware of them, no.[39]

51.   Unlike Krock, I do use Sawtooth Software, and am aware of ways to test the reliability and accuracy of conjoint results.

52.   I obtained a copy of the Dennis Conjoint Survey designs and raw survey responses, and loaded them into the Sawtooth Software.  Following the description in the Dennis Declaration, I conducted a Hierarchical Bayes regression analysis of the raw survey data.  My Bayesian regression results matched exactly with the one conducted by SSI under the direction of Dennis.  I next took the results of the regression and, again following the instructions set forth

---

[37] Krock Declaration, at para 33.

[38] Krock Declaration, at para 60.

[39] Krock Deposition, at 59.


ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 19 of 29

in the Dennis Declaration, conducted a market simulation to calculate the price premium attributable to the "Natural" Claim. My results matched those of Dennis to the penny.

53. After successfully reproducing the Dennis results, I conducted a series of tests to gauge the accuracy of the conjoint.

54. One such method is to determine the holdout performance, which measures how well the conjoint estimates predict the actual choices made by survey respondents when looking at a subset of the choice sets not used in the estimation. This test compares the conjoint results against a "holdout" task. In other words, if the model is able to predict product choices for the one choice set that is "held out" from the data used for estimation, we can be more confident in the validity of the model. In very simple terms, we ask the model, "Given the information obtained from the nine analyzed choice sets, how well can you predict the product choice in the tenth holdout choice?" A purely random guess would predict choices correctly 25% of the time (given a choice of three products plus the "none of these" option in the choice task). I ran thirty holdout performance tests. The holdout performance (known as the "hit rate") of this survey, was approximately 53%. A hit rate in excess of double the chance rate (*i.e.*, 50% in this instance) indicates exceptional performance.[40]

**The Dennis survey makes proper use of orthogonal design**

55. Krock asserts that consumers might have been confused by attribute combinations in the survey that were paired with ingredient lists that were not an exact match for the product.[41] This allegation, like most of them, is baseless because Krock cannot know if consumers were confused because he did not speak to a single consumer to find out.

---

[40] Hit rates, like batting averages, will almost never reach 100%. It would be inappropriate to translate the hit rate into a statement of "percentage accuracy." In other words, just like a batter that hits 33% of the time is exceptional, we would look at the hit rate as a measure of quality, and one would not suggest that a model with a hit rate of 50% is only "50% accurate."

[41] Krock Declaration, at paras 47 *et seq.*



Reply Declaration of Colin B. Weir
April 9, 2020
Page 20 of 29

Q.  Did you speak to any consumers in this case?

A.  No.[42]

56.  Unlike Krock, Dennis did speak with a series of consumers who were shown a copy of the survey and subsequently debriefed about their experience.  It is my understanding that Dennis did not uncover any evidence that would suggest that consumers were confused or had difficulty making reasonable choices in the conjoint exercises.

57.  Even if some of the attributes were not perfect matches with the ingredient lists, this is a normal part of good conjoint design.  So-called orthogonal design, where each of the various levels are shown in all combinations to respondents, is recommended in Choice-Based Conjoint. As is recommended in a conjoint textbook:

There are several advantages associated with orthogonal designs. [...] Lastly, they were shown to yield good predictions, even when some profile combinations are not fully realistic. The predictions made from these designs are not subject to predictive bias.[43]

58.  As such, there are no methodological problems or biases generated from such "unrealistic" choices.

**Relative importance scores do not directly equate to price premium statistics**

59.  Krock asserts that the so-called "importance score" of the "Natural" claim belies the price premium calculated by Dennis.[44]  Importance scores have no direct relationship with price premium statistics.  Importance ranks, like those observed by Krock, simply indicate that there

---

[42] Krock Deposition, at 98.

[43] Applied Conjoint Analysis, Rao, Vithala, at 47-48.

[44] Krock Declaration, at para 69.

ETI  ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 21 of 29

are numerous elements of a product that are "important" to consumers.  Just like it is important

that a plane flight get a passenger to their destination, arrive on time, arrive safely, and have

good in-flight crew experience, it is not surprising that there are numerous factors of Tom's

toothpaste that are important.  But importance scores do not measure a price premium.  Only the

market simulator can measure the price premium.

**Contrary to Kivetz's assertion, the price premium damages analysis takes into account myriad supply side factors**

60.  Kivetz asserts that Dennis and I have failed to properly control for supply side

factors in our analyses.[45]  Kivetz is wrong.  In my analysis, I have used the actual quantity that

was supplied to the class, and I have used the supply-side that was extant during the class period.

As I discuss in greater detail below, the claim that there are no supply-side controls in my design

is disingenuous, because the primary dispute arises not from a lack of supply-side controls, but a

dispute over the nature of the supply side that should be used in the but-for analysis. I will first

reiterate the nature of the supply-side controls present in the Weir survey, and then discuss the

but-for world dispute.

61.  As I discussed in the Weir Declaration, Dennis considered and accounted for supply

side factors in the determination of his price premium calculation.  The Dennis survey includes

market-based price points.  Dennis also considered information from Tom's of Maine marketing

materials, as well as from exploratory interviews with purchasers of the Products when selecting

the other attributes and levels for inclusion in the conjoint.  Dennis has also taken into account

the fact that the quantity supplied of the Products is a known fact, and is fixed as a matter of

history.

---

[45] Kivetz Declaration, at paras 266 *et seq*.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 22 of 29

62.   I have also considered supply side factors in my determination of damages.  First, unlike in a Lanham Act or intellectual property litigation where a but-for quantity of sales may need to be determined, in this litigation, the historic number of units sold is a fact (as I have discussed above) and in this litigation, it would be antithetical to the concept of class definition to suggest that the quantity supplied be anything other than the actual number of units sold.

63.   Furthermore, as is born out in the Dennis study, if one were to assume, *arguendo,* that Defendants would not have lowered the price in concert with demand (indicating that Defendants priced above the market clearing price), then the economic outcome would be that many or all of the purchases would not have occurred.  As such, the price premiums found by Dennis are inherently conservative measures.

64.   It is also an economic perversion for a defendant engaged in a litigation (with obvious conflict of interest) to simply state that it would never have adjusted its prices or would not have adjusted them enough so as to meet demand, and therefore damages should be set at zero or something less than actual economic damages.  If this were permitted, any defendant could simply postulate its way out of economic damages.

65.   Furthermore, it is retailers that set the price of Tom's of Maine Products that consumers actually pay, not Defendant.  While Defendants set the wholesale price of their Products, the price consumers pay is determined via the retail market.  While Defendants may argue that they would not have adjusted the price of Tom's of Maine to meet consumer demand (a doubtful claim to begin with) retailers most certainly would adjust their prices in response to changes in consumer demand.  In fact, retailers are even willing to sell products at prices below marginal cost to meet consumer demand -- this occurs routinely in retail and in other industries. For example, a car dealership with a stock of vehicles, known to have a manufacturing defect, would prefer to take a loss on each vehicle by selling these vehicles to its customers below cost than to sell none at all.  Grocers routinely sell damaged/dented products at below cost.  Likewise



Reply Declaration of Colin B. Weir
April 9, 2020
Page 23 of 29

retail grocers would be motivated to sell Tom's of Maine at below cost to its customers in response to consumer demand, rather than obtain no revenue at all.

66.   In addition, in my calculation of damages I have considered actual market-based retail sales data, which is set in the marketplace by supply and demand.  This data "bakes in" the impact of myriad supply factors as they existed throughout the class period.  This data also demonstrates that retailers can and do vary the price of Tom's of Maine Products in response to market conditions.

**Kivetz inappropriately espouses a but-for world that can best be described as the Wild West: anything can happen**

67.   I have been advised by counsel that in *Comcast Corp. v. Behrend*, the United States Supreme Court quoted the Reference Manual on Scientific Evidence to explain that "[t]he first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." 569 U.S. 27, 38 (2013) (quoting Federal Judicial Center, Reference Manual on Scientific Evidence at 432 (3d ed. 2011) (the "Reference Manual")).

68.   Indeed, when it comes to a but-for analysis, the economic instructions are quite clear: the but-for world is the same as the real world in **every respect but one**: Defendant's allegedly wrongful conduct.  This premise is spelled out in the Reference Manual on Scientific Evidence.

> The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event. In most cases, the analysis considers the difference between the Plaintiffs' economic position if the harmful event had not occurred and the Plaintiffs' actual economic position.
>
> In almost all cases, the damages expert proceeds on the hypothesis that the defendant committed the harmful act and that the act was unlawful. [] The characterization of the harmful event begins with a clear statement of what occurred. The characterization also will include a description of the defendant's



proper actions in place of its unlawful actions and a statement about the economic situation absent the wrongdoing, with the defendant's proper actions replacing the unlawful ones (the but-for scenario). Damages measurement then determines the Plaintiffs' hypothetical value in the but-for scenario. Economic damages are the difference between that value and the actual value that the plaintiff achieved.

**Because the but-for scenario differs from what actually happened only with respect to the harmful act**, damages measured in this way isolate the loss of value caused by the harmful act and exclude any change in the Plaintiffs' value arising from other sources.[46]

69.   The but-for world is a basic economic tool for calculating damages. The but-for world will necessarily lack some amount of realism: it imagines a hypothetical world where an action that took place historically now does not occur. Despite the hypothetical nature of the but-for world, the world is only different from the real world in one respect: the harmful act.

70.   The Reference Manual makes the steps for using this tool clear:

- Identify the harmful event;

- Assume that Defendant is liable for the harm;

- Generate a clear statement of what occurred and what should have occurred;

- Analyze a but-for scenario to determine the economic damages;

  o The but-for world differs from what actually happened only with respect to the harmful act.

71.   In the original Weir Declaration, I set forth details of each of these steps. I noted that Defendant allegedly mislabeled its Products (the harmful event). I assumed for purposes of my research that Plaintiffs would prevail on the merits (assume Defendant is liable). I noted the specific challenged Claim that Plaintiffs claim is misleading (a clear statement of what occurred) and noted that such a statement should not have been made (a statement of what should have

---

[46] Reference Manual on Scientific Evidence, at 432. [Emphasis supplied]

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 25 of 29

occurred). I then set forth a damages framework to isolate the economic impact of the conduct (analysis of damages) and used a but-for world that was the same as the real world in every respect except the harmful conduct.

72.   Contrast this approach with the "rules" for the but-for world set forth by Kivetz. According to him, the but-for world is the Wild West, and can be different from the real world in almost any respect.  According to Kivetz, the but-for world could be different in terms of competitors' behavior, the Defendant's cost of goods sold, or the availability of raw materials.[47] Defendant could replace or remove the Challenged Claim so as to remove any liability at all.[48]

73.   Under Kivetz's rules, not only can Defendant change its behavior in myriad self-serving ways, so too could retailers and competitors.  According to Kivetz, competitors in the but-for world should be allowed to change their prices, introduce new products, change their advertising, and take whatever other actions they may choose in order to take advantage of the Defendant's label change.[49]

74.   Kivetz would allow another major element of the but-for world to change: the very sales of the Product.  Not only could the sales decrease in the but-for world, according to Kivetz, they could even increase![50]

75.   While there are potentially endless combinations of such actions and reactions, one truth about this wrong but-for construction is guaranteed: it will not isolate the impact of Defendant's harmful conduct.  A but-for market price that is measured, for example, as a result of the removal of the claims and the introduction of new products by competitors would be unable to identify the effect due solely to Defendant's misrepresentation.

---

[47] Kivetz Deposition, at 60. 128.

[48] *Id*., at 102.

[49] *Id*., at 128.

[50] *Id.,* at 102.



Reply Declaration of Colin B. Weir
April 9, 2020
Page 26 of 29

**Calculating classwide damages does not require information as to the prices paid or quantities purchased of specific individuals**

76.   Kivetz asserts that there is no data available as to the prices paid or quantities purchased by specific individuals.[51]   From the perspective of determining classwide damages, this assertion is inapposite.   As summarized in the Weir Declaration, there is data about the prices paid in the market, and the quantity of Tom's of Maine Products purchased in the aggregate by the class.   This data is all that is necessary to determine classwide damages in the aggregate.   Such individual data does not impact the calculation of aggregate damages, because the ultimate method of distribution or allocation of damages to individuals during claims administration or a settlement does not alter the calculation of total, class-wide damages.

77.   Class-wide damages under a price premium model can be calculated from the bottom up as the sum of individual damages (as defendants often assert), or can be calculated from the top down, without individual inquiry, by finding the percentage price difference resulting from the Claim and then multiplying the premium by the dollars sold (as discussed in detail in the Weir Declaration). As outlined above, I propose to use the latter technique, obviating the need for individual inquiry.

78.   Ultimately, no matter the method by which damages are distributed, it does not affect the calculation of, or the total amount of class-wide damages in this litigation.

**Individual purchase motivators do not impact the calculation of classwide damages**

79.   Kivetz asserts that there are multiple reasons that consumers purchase Tom's of Maine Products.[52]   But this assertion is a red herring, because individual purchase motivations do

---

[51] Kivetz Declaration, at para 291.

[52] Kivetz Declaration, at para 298.


ECONOMICS AND TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 27 of 29

not impact the market price paid for Tom's of Maine Products, or the price premium included in those prices that is solely attributable to the "Natural" Claim.

80.   Both of Defendants' experts acknowledged that consumers cannot negotiate prices at retail, that consumers pay the same price for Tom's of Maine Products whether they care about the "Natural" claim or not, and that all consumers would have been better off paying less for Tom's of Maine Products.

> Q.   Can consumers negotiate prices for consumer products at retail?
>
> A.   Typically not really.
>
> Q.   So the guy who cares about natural toothpaste can't negotiate his own price, correct?
>
> A.   Not with the store, he can't, no.
>
> Q.   Nor can the guy who doesn't care about natural toothpaste, correct?
>
> A.   That's correct.
>
> Q.   They all pay the same market price, correct?
>
> A.   There -- in that particular market, there would be one -- or in that particular store, there would be one price for that product, yes.
>
> Q.   If a customer paid $5 for Tom's toothpaste from a particular store on a particular day but could have paid $4 at the same store on the same day for the same toothpaste, would that customer be better off paying $4 instead of $5?
>
> A.   If -- it's an odd setup for that.  But if they paid $4 for something that would otherwise be $5, they would be better off.[53]

81.   Individual purchase motivations do not change the price paid by an individual.

82.   Calculating a price premium does not depend on individual purchase motivators because there is no middle ground.  If the market price for the Tom's of Maine Products was

---

[53] Krock Deposition, at 90-91.  *See also*, Kivetz Deposition, at 144 *et seq*.



Reply Declaration of Colin B. Weir
April 9, 2020
Page 28 of 29

higher as a result of the Claim, then ALL consumers will have paid a higher price than if the Claim was not made, regardless of their personal motivations.

83.   Even if a consumer bought a Tom's of Maine Product with the intention to immediately throw that Product in the garbage, the consumer has been harmed because he paid more for the Product than she would have but for the Claim.

**Repeat customers are just as likely to be mislead as first-time buyers--and repeat buyers pay the same price and price premium**

84.   Kivetz argues that repeat customers are unlikely to be misled after their first-purchase.[54]   This argument is factually unsupported, and makes no logical sense.  A "Natural" claim is a "credence" attribute--something that a consumer is informed about but unlikely to be directly observed by the consumer.  Consumers are not breaking out their chemistry set at home to test Tom's of Maine Products for natural or non-natural ingredients.  If consumers are misled during their first purchase, nothing about the use of the product would reveal the deception.  As such, the misleading nature of the "Natural" claim will remain pervasive for repeat purchasers.

85.   As with purchase motivation, repeat purchases of Tom's of Maine Products do not change the price paid by an individual.

86.   Calculating a price premium does not depend on repeat purchases.  If the market price for the Tom's of Maine Products was higher as a result of the Claim, then ALL consumers will have paid a higher price than if the Claim was not made, regardless of whether it is a repeat purchase.

---

[54] Kivetz Declaration, at para 301.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
April 9, 2020
Page 29 of 29

## V.  RESERVATION OF RIGHTS

87.  My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial.  I therefore reserve the right to amend or modify my testimony.


### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Tisbury, Massachusetts, this 9th day of April, 2020.

Colin B. Weir



# Exhibit 1

# Statement of Qualifications
# of

# COLIN B. WEIR

**Statement of Qualifications**

**COLIN B. WEIR**

Colin B. Weir is Vice President at Economics and Technology, Inc.  Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis.  Such analysis often involves analysis of databases, call detail records, and other voluminous business records.  Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software.  Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations.  Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels.  Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue,  Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation,  Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University.  He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

1

ECONOMICS AND
TECHNOLOGY, INC.

*Statement of Qualifications – Colin B. Weir*

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.

Mr. Weir has submitted the following testimony:

**United States District Court, District of New Jersey,** *Brian Gozdenovich, on behalf of himself and all others similarly situated, v. AARP, Inc., AARP SERVICES Inc., AARP Insurance Plan, UnitedHealth Group, Inc., and UnitedHealthcare Insurance Company*, Case No. 2:18-cv-02788-MCA-MAH, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 26, 2020.

**United States District Court, Central District of California,** *Will Kaupelis and Frank Ortega, individually and on behalf of all others similarly situated, v. Harbor Freight Tools, Inc.*, Case No. 8:19-cv-1203-JVS-DFM, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 2, 2020.

**Superior Court of the State of California, County of Los Angeles,** *Jeffrey Koenig, on behalf of himself and all others similarly situated, v. Vizio, Inc*., Case No. BC 702266, on behalf of Greg Coleman Law, Declaration submitted February 27, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *Kym Pardini and Carrie Wood, on behalf of themselves and all others similarly situated, v. Unilever United States, Inc., a Delaware corporation*, Case No. 3:13-cv-01675-SC, on behalf of the Eureka Law Firm, Declaration submitted on February 21, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *Jennifer Nemet, Norbert Kahlert, Angela Matt Architect, Inc., Eddie Field, Tonya Dreher, Adam Schell, Bryan Sheffield, Darryl Lecours, Gisbel De La Cruz, Derek Winebaugh, Michael Skena, Melissa St. Croix, Andrew Olson, John Kubala, Brendan Daly, Steven Ferdinand, Ken Galluccio, Steven Rawczak, Mark Miller, Sven Hofmann, Thomas Siehl, III, Adam Schell, Bradley Conner, Benjamin Tyler Dunn, Ingrid Salgado, Michael Bowman, and Jon Mosley, on behalf of themselves and all others similarly situated, v. Volkswagen Group of America, Inc., Volkswagen AG, Audi AG, Audi of America, LLC, Robert Bosch Gmbh, Robert Bosch LLC, Richard Dorenkamp, Heinz-Jakob Neusser, Jens Hadler, Bernd Gottweis, Oliver Schmidt, and Jurgen Peter*, Case No. 3:17-cv-04372-CRB, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on February 14, 2020.

**United States District Court, Norther District of California, San Francisco Division,** *Vicky Maldonado and Justin Carter, individually and on behalf of themselves and all others similarly situated, v. Apple Inc., Applecare Service Company, Inc., and Apple CSC, Inc.*, Case No. 3:16-cv-04067-WHO, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on February 11, 2020; Deposition on March 12, 2020.



**United States District Court, District of New Jersey,** *Brian Gozdenovich, on behalf of himself and all others similarly situated, v. AARP, Inc., AARP Services Inc., AARP Insurance Plan, Unitedhealth Group, Inc., and Unitedhealthcare Insurance Company,* Case No. 9:18-cv-81258-DMM, on behalf of Bursor & Fisher, P.A., Declaration submitted on January 29, 2020.

**United States District Court, for the Central District of California, Western Division,** *Toya Edwards, on behalf of herself and all others similarly situated, v. Walmart Inc.,* Case No. 1:18-cv-9655, on behalf of Simmons Hanly Conroy LLC, Declaration submitted on December 6, 2019; Deposition on January 9, 2020; Reply Declaration submitted on February 27, 2020.

**United States District Court, District Of Connecticut,** *William Montgomery and Donald Wood Jr., individually and on behalf of all others similarly situated, v. Stanley Black & Decker, Inc., d/b/a Craftsman,* Case No. 3:19-cv-01182-AVC, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 15, 2019.

**United States District Court, Central District of California,** *Paul Stockinger, Elizabeth Stockinger, Basudeb Dey, Gailyn Kennedy, Eliezer Casper, Yvette Alley, and Norman Beil on behalf of themselves and all others similarly situated, v. Toyota Motor Sales, U.S.A., Inc., a California corporation,* Case No.: 17-cv-00035-VAP-KS, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on September 13, 2019; Deposition on October 10, 2019; Reply Declaration submitted on December 12, 2019.

**United States District Court, Southern District of California,** *Patrick McMorrow, Marco Ohlin and Melody DiGregorio, on behalf of themselves, all others similarly situated and the general public, v. Mondelez International, Inc.,* Case No. 3:17-cv-02327-BAS-JLB, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on August 30, 2019; Deposition on October 1, 2019; Omnibus Declaration submitted on December 9, 2019.

**United States District Court for the Eastern District of Wisconsin,** *Scott Weaver, individually and on behalf of a class of similarly situated individuals, v. Champion Petfoods USA, Inc. and Champion Petfoods LP,* Case No. 2:18-cv-01996-JPS, on behalf of Gustafson Gluek PLLC, Declaration submitted on August 13, 2019; Deposition on August 22, 2019.

**United States District Court, Central District of California,** *Collin Shanks, on behalf of himself, all others similarly situated, and the general public, v. Jarrow Formulas Inc.,* Case No. 18-cv-9437-PA (AFMx), on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on July 22, 2019; Reply Declaration submitted on August 12, 2019.

**United States District Court, Eastern District Of Michigan, Southern Division,** *Suresh Persad, Daniel G. Wright and Robert S. Drummond, individually and on behalf of all others similarly situated, v. Ford Motor Company,* Case No. 2:17-cv-12599-TGB-MKM, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on June 25, 2019; Declaration submitted on November 26, 2019.

4



**United States District Court, Southern District of Florida, Fort Lauderdale Division,** *Milita Barbara Dolan, on behalf of herself and all others similarly situated, v. Jetblue Airways Corporation*, CASE NO.: 18-cv-62193-RNS, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on May 23, 2019; Deposition on October 25, 2019.

**United States District Court, Northern District of California,** *Joseph Gregorio, Patrick Quiroz and Adam Cooper individually and on behalf of all others similarly situated, v. The Clorox Company,* Case 4:17-cv-03824-PJH, on behalf of Bursor & Fisher, P.A., Declaration submitted on May 15, 2019; Declaration submitted July 12, 2019; Deposition on July 18, 2019; Reply Declaration submitted on August 21, 2019.

**United States District Court, District of Minnesota,** *Hudock, et al., v. LG Electronics U.S.A., Inc., et al.*, Lead Case No. 0:16-CV-01220-JRT-KMM, Relating to All Consolidated Actions, on behalf of Zimmerman Reed, LLP, Declaration submitted on May 10, 2019; deposition on June 6, 2019.

**United States District Court, Central District of California, Western Division,** *Jennifer Reitman and Carol Shoaff, individually and on behalf of a class of similarly situated individuals, v. Champion Petfoods USA, Inc. and Champion Petfoods LP*, Case: 2:18-cv-01736-DOC-JPR, on behalf of Gustafson Gluek PLLC, Declaration submitted on April 8, 2019, Deposition on April, 26, 2019; Supplemental Declaration submitted on June 20, 2019.

**United States District Court, Central District of California, Western Division,** *Barry Braverman, et al., v. BMW of North America, LLC, et al.*, Case No. 8:16-cv-00966-TJH-SS, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on March 29, 2019; Deposition on May 30, 2019; Reply Declaration submitted on September 16, 2019.

**United States District Court, Southern District of Florida, West Palm Beach Division,** *Judith Marilyn Donoff on behalf of herself and all others similarly situated, v. Delta Air Lines, Inc.*, Case No. 9:18-cv-81258-DMM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on March 26, 2019.

**United States District Court, Western District of Washington,** *Jacob Beaty and Jessica Beaty on, behalf of themselves and all others similarly situated, v. Ford Motor America*, Case No. 3:17-CV-05201-RBL, on behalf of Simmons Hanly Conroy LLC; Declaration submitted on February 22, 2019; Deposition on March 29, 2019; Reply Declaration submitted on July 10, 2019; Deposition on July 30, 2019.

**United States District Court, Southern District of New York,** *Nicholas Parker, on behalf of himself and all others similarly situated, v. United Industries Corporation*, Case No. 1:17-cv-05353, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2019; Declaration submitted March 21, 2019; Declaration submitted on May 3, 2019; Deposition on July 24, 2019.



**United States District Court, Northern District of California,** *Debbie Krommenhock and Stephen Hadley, on behalf of themselves, all others similarly situated, and the general public, v. Post Foods, LLC,* Case No. 3:16-cv-04958-WHO (JSC), on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted January 11, 2019; Deposition on March 1, 2019; Declaration on April 24, 2019; Deposition on May 14, 2019; Supplemental Declaration submitted on June 21, 2019; Omnibus Declaration submitted on August 9, 2019.

**United States District Court, Southern District of New York,** *Leona Hunter and Anne Marie Villa, on behalf of themselves and all others similarly situated, v. Time Warner Cable Inc*., Case No. 15-cv-06445-JPO (JLC), on behalf of Bursor & Fisher, P.A. Declaration submitted on November 30, 2018; Deposition on December 21, 2018; Reply Declaration submitted on February 27, 2019.

**United States District Court, Northern District of California,** *Jeremiah Revitch, on Behalf of Himself and all Others Similarly Situated, v. Citibank, N.A*., Case No. 17-cv-06907-JCS, on behalf of Bursor & Fisher, P.A. Declaration submitted on November 27, 2018; Deposition on December 28, 2018; Reply Declaration submitted on February 1, 2019; Deposition on February 26, 2019.

**United States District Court, Central District of California,** *Kaylee Browning and Sarah Basile, on behalf of themselves and all others similarly situated, v. Unilever United States Inc.*, Case No. 8:16-cv-02210, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 22, 2018; Deposition on November 1, 2018; Reply Declaration submitted on November 23, 2018.

**United States District Court, Southern District of New York,** *Lori Canale, individually, and on behalf of all others similarly situated, v. Colgate-Palmolive Co.,* Case No. 7:16-CV-03308-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 19, 2018.

**Superior Court for the State of California, In and for the County of San Francisco,** *Michelle Gyorke-Takatri and Katie Silver on behalf of themselves and all others similarly situated, v. Nestlé USA, Inc. and Gerber Products Company,* Case No. CGC 15-546850, on behalf of Stanley Law Group, Declaration submitted on September 7, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc*., Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Declaration submitted on August 15, 2018; Deposition on October 12, 2018; Reply Declaration on December 21, 2018.

**Superior Court of the State of California, For The County of San Francisco,** *Deanna Gastelum and Heather Bryden individually and on behalf of all other persons similarly situated, v. Frontier California Inc.*, Case No. CGC-11-511467, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration submitted on July 31, 2018, Declaration submitted August 13, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, For the Southern District of New York,** *Suzanna Bowling, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC*, Case No. 1:17-cv-03982-AJN, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 30, 2018, Deposition on September 6, 2018; Reply Declaration submitted on November 16, 2018.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 15, 2018; Deposition on August 28, 2018; Reply Declaration submitted on November 21, 2018; Declaration submitted on February 21, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *In re: Chrysler-Dodge-Jeep EcoDiesel® Marketing, Sales Practices, and Products Liability Litigation Dorun Bali, et al., v. Fiat Chrysler Automobiles N.V., FCA US LLC, Sergio Marchionne, VM Motori S.p.A., VM North America, Inc., Robert Bosch GmbH, Robert Bosch LLC, and Volkmar Denner*, Case No. MDL 2777-EMC, on behalf of Lieff Cabraser Heimann & Bernstein, Declaration submitted on June 6, 2018, Deposition on July 18, 2018, Reply Declaration submitted on September 4, 2018.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted April 30, 2018, Deposition on May 31, 2018; Reply Declaration submitted June 25, 2018; Declaration submitted on September 20, 2018; Deposition on September 28, 2018; Declaration submitted on October 21, 2019.

**United States District Court, Northern District of Illinois, Eastern Division,** *Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East, Sarah LaVergne, Tony And Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William Ferguson and Cheryl Ferguson, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 1:15-cv-09882-JZL, on behalf of Greg Coleman Law, Declaration submitted April 20, 2018; Reply Declaration submitted on July 13, 2018; Deposition on August 17, 2018.

**United States District Court for the Northern District of California,** *Jackie Fitzhenry-Russell, an individual, on behalf of herself, the general public and those similarly situated v. The Coca Cola Company, and Does 1-50*, Case No. 5:17-CV-00603-EJD, on behalf of Gutride Safier, LLP, Declaration submitted April 16, 2018; Deposition on October 3, 2018.

**United States District Court for the Southern District of New York,** *Josephine James Edwards, individually and on behalf of all others similarly situated, v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT, on behalf of Bursor & Fisher, P.A., Declaration submitted April 16, 2018; Deposition on June 7, 2018.



**United States District Court, Northern District of California,** *Jackie Fitzhenry-Russell, Robin Dale, and Gegham Margaryan, as individuals, on behalf of themselves, the general public and those similarly situated, v. Dr. Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., and Does 1-50,* Case No. 5:17-cv-00564-NC (lead); Case No. 5:17-cv-02341-NC (consolidated); Case No. 5:17-cv-04435-NC (consolidated), on behalf of Gutride Safier, LLP, Declaration submitted April 9, 2018; Deposition on April 19, 2018; Reply Declaration submitted June 6, 2018; Supplemental Declaration submitted on November 19, 2018.

**United States District Court for the Western District of Texas, Austin Division,** *Sylvia Morris, on behalf of herself and all others similarly situated, v. Modernize Inc.*, Case No. 17:-cv-963-SS, on behalf of Bursor & Fisher, P.A., Declaration submitted March 13, 2018; Deposition on June 14, 2018.

**United States District Court, Northern District of California, San Jose Division,** *In re: Arris Cable Modem Consumer Litigation*, Case No. 17-cv-1834-LHK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on March 9, 2018; Reply Declaration submitted April 9, 2018; Deposition on April 11, 2018; Declaration submitted June 13, 2018; Declaration submitted January 31, 2019; Deposition on February 14, 2019; Reply Declaration submitted on March 14, 2019.

**United States District Court, Southern District of New York,** *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR, on behalf of Levi & Korsinsky LLP, Declaration submitted on March 5, 2018; Declaration submitted November 14, 2018; Deposition on November 28, 2018.

**United States District Court, Eastern District of Michigan,** *Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome And Mary Ellen Thome, V. Whirlpool Corporation,* Case No. 16-cv-12409-SJM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted February 12, 2018; Deposition on May 15, 2018; Reply Declaration submitted May 17, 2018.

**United States District Court, Southern District of California,** *Jose Conde, et al., v. Sensa, et al.*, Case No. 14-cv-51 JLS (WVG), on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Declaration submitted February 21, 2019.

**United States District Court, Northern District Of Illinois, Eastern Division,** *Angel Bakov, Julie Herrera, and Kinaya Hewlett, individually and on behalf of all others similarly situated, v.Consolidated World Travel, Inc. d/b/a Holiday Cruise Line, a Florida corporation,* Case No. 15-cv-02980-HDL SEC, on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Deposition on April 25, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of Illinois,** *Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly, Individually and on Behalf of All Others Similarly Situated, v. CVS Pharmacy, Inc., Target Corporation, Walgreen Co., Wal-Mart Stores, Inc., and Fruit of the Earth, Inc.*, Case No. 1:16-cv-06103, on behalf of Greg Coleman Law, Declaration submitted December 22, 2017; Reply Declaration on May 4, 2018.

**United States District Court, Southern District of New York,** *Jaish Markos, individually and on behalf of all others similarly situated, v. Russell Brands, LLC*, Case No. 16-CV-04362(CS), on behalf of The Sultzer Law Group, Declaration submitted on December 1, 2017, Deposition on January 4, 2018.

**United States District Court, Northern District of California,** *Siera Strumlauf, Benjamin Robles, and Brittany Crittenden, individually and on behalf of all others similarly situated,  v.  Starbucks Corporation,* Case No. 16-CV-01306-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 31, 2017, Deposition on December 13, 2017.

**United States District Court, Southern District of California,** *Sheila Dashnaw, William Meier, and Sherryl Jones, individually, and on behalf of all others similarly situated, v. New Balance Athletics, Inc., a corporation; and DOES 1 through 50, inclusive,* Case No. 3:17-cv-00159-L-JLB, on Behalf of The Wand Law Firm, Declaration submitted on September 8, 2017; Deposition on October 5, 2017; Rebuttal Declaration submitted December 11, 2017.

**United States District Court, Central District of California,** *Veronica Brenner, on behalf of herself and all others similarly situated, v. Procter & Gamble Co.*, Case No. 8:16-1093-JLS-JCG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 5, 2017; Deposition on October 10, 2016.

**United States District Court, Eastern District of California,** *Joann Martinelli, individually and on behalf of all others similarly situated, v. Johnson & Johnson And McNeil Nutritionals, LLC*, Case No. 2:15-cv-01733-MCE-DB, on behalf of Bursor & Fisher, P.A., Declaration submitted August 28, 2017, Deposition on December 20, 2017; Reply Declaration submitted on January 5, 2018.

**United States District Court, Northern District of California, San Francisco Division,** *Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, Individually and on Behalf of All Others Similarly Situated, v. Chipotle Mexican Grill, Inc.*, Case No. 3:16-cv-02200-HSG, on behalf of Kaplan Fox & Kilsheimer LLP, Declaration submitted August 11, 2017; Deposition on September 22, 2017.



**United States District Court, Southern District of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation*, Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017, Deposition on November 29, 2017; Supplemental Declaration submitted on September 23, 2019.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.*, Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017; Declaration submitted on August 15, 2018; Deposition on October 12, 2018.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017, Declaration submitted August 25, 2017, Declaration submitted on October 16, 2017; Declaration submitted on August 10, 2018; Declaration submitted on November 6, 2018; Declaration submitted on November 12, 2018; Deposition on December 11, 2018; Oral Testimony and Cross Examination May 7 - 8, 2019.

**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation,* Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted May 9, 2016; Deposition on August 23, 2017; Reply Declaration submitted January 12, 2018; Reply Declaration submitted March 2, 2018.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company*, Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017; Reply Declaration submitted on October 2, 2017; Reply Declaration submitted on October 6, 2017; Declaration submitted on March 23, 2018.

**United States District Court, Southern District of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.



**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC,* Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017; Deposition on January 10, 2018; Supplemental Declaration submitted January 30, 2018; Declaration submitted on March 2, 2018; Supplemental Declaration submitted on March 30, 2018; Supplemental Declaration submitted on November 26, 2018; Deposition on December 20, 2018.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017; Declaration submitted on September 13, 2019; Deposition on October 16, 2019.

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.,* Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50,* Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.

**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.,* Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017; Deposition on July 14, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company,* Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation,* Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017, Deposition on August 15, 2017, Rebuttal Declaration on March 20, 2018.

11



**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 26, 2016; Reply Declaration submitted October 14, 2016; Deposition on October 27, 2016; Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.

**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted September 1, 2016; Declaration submitted October 3, 2016; Deposition on November 4, 2016; Declaration submitted on January 5, 2017.

**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Declaration submitted August 8, 2016; Supplemental Declaration submitted January 22, 2018.

**United States District Court, Central District of California, Eastern Division,** *Jeff Looper, Michael Bright, Scott Johnson, individuals on behalf of themselves and all others similarly situated, v. FCA US LLC, f/k/a Chrysler Group LLC, a Delaware limited liability company, and DOES 1-100 inclusive*, Case No. 14-cv-00700-VAP-DTB, on behalf of Gibbs Law Group, LLP; Declaration submitted August 7, 2016; Deposition on September 29, 2016.

**United States District Court, Eastern District of California,** *Chad Herron, individually, on behalf of himself and all others similarly situation, v. Best Buy Stores, LP, a Virginia limited partnership*, Case No. 12-cv-02103-TLN-CKD, on behalf of Stonebarger Law, A Professional Corporation; Declaration submitted June 24, 2016; Deposition on July 29, 2016; Supplemental Declaration submitted September 8, 2016.

**United States District Court for the Southern District of Florida,** *Angela Sanchez-Knutson v. Ford Motor Company*, Case No. 14:61344-CIV DIMITROULEAS, on behalf of Kelley Uustal Trial Attorneys; Deposition on June 1, 2016.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Declaration submitted April 29, 2016; Deposition on July 13, 2016; Reply Declaration submitted on May 2, 2017; Declaration submitted on October 2, 2016; Reply Declaration submitted on December 14, 2017.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, District of New Jersey,** *In re: AZEK Decking Marketing & Sales Practices Litigation*, Case No. 12-cv-06627-MCA-MAH, on behalf of Seeger Weiss, LLP; Declaration submitted February 26, 2016; Declaration submitted May 16, 2016; Deposition on July 6, 2016; Reply Declaration submitted August 29, 2016.

**United States District Court. Northern District of California,** *In re: Nest Labs Litigation*, Case No. 5:14-cv-01363-BLF, on behalf of Bursor & Fisher, P.A.; Declaration submitted on January 22, 2016; Deposition on March 2, 2016; Reply Declaration submitted on June 3, 2016.

**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on January 19, 2016; Deposition on February 24, 2016; Reply Declaration submitted on May 10, 2016; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.

**United States District Court, Northern District of Ohio, Eastern Division,** *Christopher Meta, On Behalf Of Himself And All Others Similarly Situated v. Target Corporation, et al.*, Case No. 4:14-0832-DCN, on behalf of Tycko & Zavareei, LLP, Declaration submitted January 6, 2016; Deposition on March 15, 2016; Reply Declaration submitted on March 18, 2016.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.*, Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Declaration submitted December 28, 2015; Deposition on April 22, 2016; Rebuttal Declaration submitted June 10, 2016; Responding Declaration submitted July 6, 2018; Rebuttal Declaration submitted on August 10, 2018.

**United States District Court, District of New Jersey,** *In re: Tropicana Orange Juice Marketing and Sales Practices Litigation,* Case No. 12-cv-7382-WJM-JBC, on behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC.; Declaration submitted on November 6, 2015; Deposition on January 28, 2016.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.*, Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Declaration submitted on October 29, 2015; Deposition on December 21, 2015; Reply Declaration submitted on April 3, 2017.

**United States District Court, Eastern District Of New York,** *Patrick Hughes and Nafisé Nina Hodjat, individually and on behalf of others similarly situated, v. The Ester C Company; NBTY, Inc.; and Naturesmart, LLC*, Case No. 12-cv-00041-JFB-ETB, on behalf of Reese LLP and WhatleyKallas LLP; Declaration submitted October 22, 2015; Deposition on December 1, 2015; Reply Declaration submitted on January 28, 2016; Surrebuttal Declaration submitted on April 20, 2016; oral testimony and cross examination on September 20, 2016.

13



*Statement of Qualifications – Colin B. Weir*

**United States District Court, District Of Connecticut,** *Glen Grayson, and Doreen Mazzanti, individually and on behalf of themselves and all others similarly situated, v. General Electric Company*, Case No. 3:13-cv-01799-WWE, on behalf of Izard Nobel LLP; Declaration submitted October 15, 2015; Deposition on November 17, 2015; Rebuttal Declaration submitted March 23, 2016.

**United States District Court, District of New Jersey,** *Lynne Avram, on behalf of herself and all others similarly situated, v. Samsung Electronics America Inc., and Lowe's Home Centers, Inc.*, Case No. 11-cv-6973-KM-MCA, on behalf of Faruqi & Faruqi LLP; Declaration filed July 15, 2015; Deposition September 29, 2015.

**United States District Court, District of Connecticut,** *Heidi Langan, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 3:13-cv-01471-RNC, on behalf of Izard Nobel LLP; Declaration filed June 23, 2015; Deposition on July 21, 2015; Reply Declaration filed October 15, 2015.

**United States District Court, Eastern District of California,** *Yesenia Melgar, on behalf of herself and all others similarly situated, v. Zicam LLC, and Matrixx Initiatives, Inc.*, Case No. 2:14-cv-00160-MCE-AC, on behalf of Bursor & Fisher, PA; Declaration filed June 8, 2015.

**United States District Court, Central District of California, Eastern Division-Riverside** *Michael J. Otto, individually, and on behalf of other members of the general public similarly situated, v. Abbott Laboratories, Inc.*, Case No. 12-01411-SVW(DTBx), on behalf of Baron & Budd; Declaration filed May 25, 2015; Deposition on June 2, 2015; Supplemental Declaration filed July 6, 2015.

**United States District Court, Central District of California,** *Russell Minoru Ono, individually and on behalf of others similarly situated, v. Head Racquet Sports USA, a corp. and Head USA Inc.*, Case No. 13-04222-FMO, on behalf of Baron & Budd; Declaration filed April 24, 2015, Deposition on June 30, 2015; Reply Declaration filed July 2, 2015.

**United States District Court, Southern District of Florida,** *Vanessa Lombardo, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies and Neutrogena Corporation*, Case No. 13-60536-SCOLA, on behalf of Morgan & Morgan; Declaration filed March 31, 2015.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed March 27, 2015; Supplemental Declaration submitted on July 9, 2019; Supplemental Declaration submitted on July 12, 2019; Oral testimony and cross-examination on August 6-8 and 12, 2019.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of Wolf Popper LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed April 30, 2015; Supplemental Declaration submitted on July 9, 2019; Deposition on July 26, 2019; Oral testimony and cross-examination on August 6-8 and 12, 2019.

**United States District Court, Northern District of California,** *Patrick Hendricks, individually and on behalf of all others similarly situated, v. StarKist Co.*, Case No. 13-0729-YGR, on behalf of Bursor & Fisher, PA; Declaration filed January 20, 2015; Deposition on February 10, 2015; Reply Declaration filed April 7, 2015.

**United States District Court, Northern District of California, San Francisco Division,** *Scott Miller and Steve Leyton, individually and on behalf themselves, the general public and those similarly situated v. Ghirardelli Chocolate Company*, Case No. 12-04936-LB, on behalf of Gutride Safier LLP, Declaration filed January 8, 2015; Reply Declaration filed February 5, 2015.

**United States Bankruptcy Court, Eastern District of New York,** *In re: Kangadis Food Inc., d/b/a The Gourmet Factory, Debtor*, Case No. 14-72649-REG, on behalf of Bursor & Fisher, PA; Declaration filed August 5th, 2014; Oral testimony on November 24, 2014.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchom Jenkins, individually and on behalf of all others similarly situated v. Kangadis Family Management LLC, Aristidia Kangadis a/k/a "Mr. Aris," Andromahi Kangadis a/k/a "Mrs. Mahi," and Themis Kangadis*, Case No. 14-cv-1324-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 5, 2014; Deposition on October 9, 2014.

**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration submitted August 11, 2014; Deposition on September 30, 2014; Declaration submitted July 9, 2018; Deposition on March 7, 2019; Reply Declaration submitted on May 22, 2019. Declaration submitted on February 28, 2020.

**United States District Court, Eastern District of California,** *Kyle Dei Rossi and Mark Linthicum, on behalf of themselves and those similarly situated, v. Whirlpool Corporation*, Case No. 12-cv-00125-TLN-CKD, on behalf of Bursor & Fisher, P.A.; Declaration filed July 31, 2014, Deposition on August 20, 2014.

**United States District Court, Northern District of Illinois, Eastern Division,** *In re: Southwest Airlines Voucher Litigation.*, Case No. 11-cv-8176, Hon. Matthew Kennelly, on behalf of Siprut PC; Declaration filed June 4, 2014; Oral testimony and cross examination on June 16, 2014.



**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration filed May 5, 2014; Deposition on May 23, 2014; Declaration filed June 30, 2014; Declaration filed September 8, 2014; Deposition on September 16, 2014, Declaration filed October 27, 2014; Declaration submitted on March 8, 2019.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration filed March 31, 2014; Deposition on May 21, 2014; Declaration filed on January 8, 2016; Deposition on February 10, 2016; Reply Declaration submitted June 30, 2016; Declaration submitted September 1, 2016; Declaration submitted on October 20, 2016.

**United States District Court, Central District of California,** *Julie Fagan, Michael Fagan, Melissa Pennalatore, Amy Sapeika and Shelley Trinchero, individually and on behalf of all others similarly situated v. Neutrogena Corporation*, Case No. 13-cv-01316-SVW, on behalf of Izard Nobel LLP; Declaration filed March 21, 2014; Deposition on April 3, 2014; Supplemental Declaration filed August 4, 2014; Deposition on August 13, 2014; Declaration filed September 9, 2014.

**United States District Court, Central District of California,** *Enzo Forcellati and Lisa Roemmich, individually and on behalf of all others similarly situated v. Hyland's Inc., Standard Homeopathic Laboratories, Inc. and Standard Homeopathic Company*, Case No. 12-cv-01983-GHK, on behalf of Faruqi and Faruqi; Declaration filed December 13, 2013; Deposition on February 27, 2014.

**United States District Court, Southern District of Florida,** *Adam Karhu, on behalf of himself and all others similarly situated, v. Vital Pharmaceuticals, Inc., d/b/a VPX Sports*, Case No. 13-cv-60768-JIC, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed December 13, 2013; Declaration filed January 6, 2014; Declaration filed March 31, 2014.

**Trial Court of Massachusetts, District of Edgartown,** *Schepici v. JetBlue Airways Corp.,* on behalf of plaintiff; Mediation on December 4, 2013.

**Superior Court of California, County of Alameda,** *In re: Cellphone Termination Fee Cases, Ramzy Ayyad, et al, v. Sprint Spectrum, L.P.,* JCCP No. 4332, Case No. RG03-121510, on behalf of the Executive Committee; Declaration filed September 18, 2013.

**United States District Court, Northern District of California,** *Maria Torres, Gabriel Rojas, and Ian Kerner, individually and on behalf of all others similarly situated v. JC Penney Corporation, Inc.; and JC Penney Company, Inc.,*, Case No. cv-12-01105-RS, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration filed September 13, 2013; Deposition on October 2, 2013.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Foods Inc*, Case No. 13-cv-02311-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 26, 2013; Deposition on October 21, 2013.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California,** *Desiree Moore, on behalf of themselves, the general public, and all those similarly situated, v. Verizon Communications*, Case No. 4:09-cv-01823-SBA, on behalf of David Schachman and Associates PC, Jacobs Kolton Chtd., and Keller Grover, LLP; Declaration filed June 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on March 1, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 20, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 19, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of  Claimant; Oral testimony and cross examination on February 13, 2013.

**American Arbitration Association,**  *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 7, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 4, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on January 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 12, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 10, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on November 28, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declarations filed October 4, 2012 and November 5, 2012; Oral testimony and cross examination on November 27, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declaration filed April 16, 2012; Oral testimony and cross examination on May 11, 2012.

**United States District Court, District of Massachusetts,** *Marcy Cruz v. Justin Kagan, Arthur Hegarty, Ronald Teachman, and the City of New Bedford*, Case No. 1:09-cv-11793-RGS, on behalf of Marcy Cruz, Expert Report filed February 28, 2011; Oral testimony and cross examination on December 1, 2011.



**United States District Court, Southern District of New York,** *Bursor & Fisher P.A., v. Federal Communications Commission*, Case No. 1:11-cv-05457-LAK, on behalf of Bursor & Fisher P.A., Declaration filed August 17, 2011.

**United States District Court, District of New Jersey,** *In Re: Sprint Premium Data Plan Marketing and Sales Practices Litigation,* Master Case No. 10-6334 (SDW) MDL No. 2228**,** on behalf of Thornton, Davis, & Fein, P.A., Declaration filed August 11, 2011.

**United States District Court, Northern District of California,** *Patrick Hendricks, on behalf of himself and all others similarly situated, v. AT&T Mobility LLC,* Case No. C11-00409, on behalf of Bursor & Fisher, P.A., Declaration filed August 7, 2011.

**Federal Communications Commission,** *In the Matter of Applications of AT&T Inc. & Deutsche Telekom AG for Consent to Assign or Transfer Control of Licenses and Authorizations*, WT Docket No. 11-65, on behalf of Butch Watson, Declaration filed June 20, 2011.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. O1 Communication, Inc. (U 6065 C), Defendant*, Case No. C.08-03-001, on behalf of the O1 Communications, Inc., Reply Testimony filed November 6, 2009; Oral testimony and cross examination on November 16, 2009.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Oral testimony and cross examination on November 9, 2009.

**United States District Court, District of New Jersey,** *Judy Larson, Barry Hall, Joe Milliron, Tessie Robb, and Willie Davis, individually and on behalf of all others similarly situated, v. AT&T Mobility LLC f/k/a Cingular Wireless LLC and Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel and Nextel Finance Company, Civ. Act. No. 07-5325 (JLL)*, on behalf of PinilisHalpern, LLP and Law Offices of Scott A. Bursor, Declaration filed *under seal* October 19, 2009.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. Pac-West Telecomm, Inc. (U 5266 C), Defendant*, Case No. C.08-09-017, on behalf of the Pac-West Telecomm, Inc., Rebuttal Testimony filed May 1, 2009.

**Illinois Commerce Commission,** Illinois Bell Telephone Company Annual Rate Filing for Non-Competitive Services Under an Alternative Form of Regulation, Ill. C. C. Docket No. 08-0249, on behalf of the People of the State of Illinois, Declaration filed May 2, 2008.



*Statement of Qualifications – Colin B. Weir*

**Federal Communications Commission,** Qwest Petition for Forbearance Under 47 U.S.C. §160(c) From Title II and  *Computer Inquiry Rules* with Respect to Broadband Services, Petition of AT&T Inc, For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of BellSouth Corporation For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of the Embarq Local Operating Companies for Forbearance Under 47 U.S.C. §160(c) From Application of *Computer  Inquiry* and certain Title II Common Carriage Requirements; WC Docket Nos. 06-125 and 06-147, on behalf of the AdHoc Telecommunications Users Committee, Declaration filed October 9, 2007.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Declaration filed January 5, 2007; Deposition on November 13, 2007; Oral testimony and cross-examination on December 19, 2007; Oral testimony on January 9, 2008.

Mr. Weir has served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.

ECONOMICS AND
TECHNOLOGY, INC.

**Exhibit 2**

**Documents Reviewed**

- First Amended Complaint, filed December 9, 2016

- Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009.

- Declaration and Expert Report of J. Michael Dennis, Ph.D., June 15, 2018.

- Kivetz Declaration

- Kivetz Deposition

- Krock Declaration

- Krock Deposition

- Sawtooth Software technical papers, available online at

http://www.sawtoothsoftware.com/support/technical-papers.

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013).

http://www.analysisgroup.com/assessing_false_advertising_claims.aspx.

- *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al*.

- *Khoday v. Symantec Corp.*, No. 11-180 (JRT/TNL), (2014 WL 1281600, at *10 (D. Minn. March 13, 2014)

- *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015)

- *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)

- *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014)

- *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

- *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012)

- *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017)

- *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013)

- *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)

- *Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015)

- *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 2018 WL 3126385 (N.D. Cal. June 26, 2018)

- *In Re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018)

- *Hadley v. Kellogg Sales Co.*, 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018)

- *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019)

- *Krommenhock v. Post Foods, LLC*, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020)

- *Hudock v. LG Elecs. USA, Inc.*, 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020)

- *Getting Started With Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2014.

- *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013

- *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al.*, Public Health Nutrition: 13(5), 688–694

- *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013):57-65

- census.gov

- Applied Conjoint Analysis, Rao, Vithala

- 2016 Sawtooth Software User Survey

- The Kroger Co. 2016 10-K Annual Report

- Publix Super Markets, Inc. 2016 10-K Annual Report

- Safeway Inc. 2015 10-K Annual Report

- SuperValu Inc. 2016 10-K Annual Report

- Ahold Delhaize Annual Report 2016.

- Do 'natural' claims cut the mustard?, Emma Gubisch for Leatherhead Food Research

- COLGATETOMS00011738_CONFIDENTIAL.pptx

- COLGATETOMS00011847_CONFIDENTIAL.pptx

- COLGATETOMS00013164_CONFIDENTIAL.pptx
- COLGATETOMS00013657_CONFIDENTIAL.pptx
- COLGATETOMS00023980_CONFIDENTIAL.PPTX
- COLGATETOMS00000710_CONFIDENTIAL.xlsx
- COLGATETOMS00004908_CONFIDENTIAL.xlsx
- COLGATETOMS00004910_CONFIDENTIAL.xlsx