UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ANNE DE LACOUR, ANDREA WRIGHT,
and LOREE MORAN individually and on
behalf of all others similarly situated,

                        Plaintiffs,

        -against-

COLGATE-PALMOLIVE CO., and TOM'S
OF MAINE INC.,

                       Defendants.
-------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: April 23, 2021           │
└─────────────────────────────────────┘
```

16-CV-8364 (KMW)

**OPINION & ORDER**

Plaintiffs Anne de Lacour, Andrea Wright, and Loree Moran bring this putative consumer class action against Tom's of Maine, Inc. and its parent company, Colgate-Palmolive Co. (collectively, "Defendants" or "Tom's of Maine").   Plaintiffs assert several causes of action concerning Defendants' use of the word "natural" on the labels and packages of their deodorant and/or toothpaste products.   (FAC ¶¶ 14, 15, 17, ECF No. 8.)   Plaintiffs allege that these products are not "natural" because they contain "synthetic and highly chemically processed ingredients."   (*Id.* ¶¶ 16, 18, 23.)   Accordingly, Plaintiffs claim that Defendants breached an express warranty and violated several state consumer protection laws by falsely and misleadingly advertising their products.   (*Id.* ¶¶ 46-132.)

On September 12, 2019, the Court denied without prejudice Plaintiffs' motion to certify a nationwide class of consumers of Tom's of Maine products.   (ECF No. 93.)   Plaintiffs have filed a renewed motion, seeking more narrowly to certify three classes of consumers who purchased Tom's of Maine deodorant and/or toothpaste in three states:   New York, California, and Florida.   (ECF No. 101.)   For the reasons set forth below, Plaintiffs' renewed motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.  Factual Background

Tom's of Maine manufactures personal care products, including deodorant and toothpaste.   These two products account for approximately ▇ of the company's total sales. (*See* Murphy Dep. at 54:9-55:1, Westcot Decl. Ex. 2, ECF No. 103.)    At issue in this litigation are 17 varieties of deodorant, such as "Unscented" or "Tea Tree," and 34 flavors of toothpaste, such as "Cinnamon Clove" and "Mild Mint."    (Product List, Westcot Decl. Ex. 1.)

The labeling for each of these products contains the representation that they are "natural." (Murphy Dep. at 58:20-60:4, 65:10-13, Westcot Decl. Ex. 2.)    On the toothpaste packaging and on the tube itself, for example, the word "natural" appears in lowercase lettering in the top-right hand corner.    (FAC ¶ 15.)



On deodorant products, the word "natural" appears in lowercase lettering toward the middle of the product case, beneath the Tom's of Maine logo and alongside other descriptive language.    (FAC ¶ 17.)

 

Plaintiffs' central contention is that Tom's of Maine's products are not, in fact, "natural." (Ren. Mem. at 3, ECF No. 102.)   The toothpaste and deodorant products at issue contain allegedly "synthetic, artificial, and chemically processed" ingredients including, but not limited to, sodium lauryl sulfate ("SLS") and propylene glycol.[1]   As a result, Plaintiffs argue, Tom's of Maine's "natural" labeling is false and misleading and led Plaintiffs to purchase the company's products at a "price premium."   (Ren. Mem. at 4.)

## II.   Prior Settlement in *Gay v. Tom's of Maine*

This is not the first time that Tom's of Maine's "natural" representations have been subject to litigation.   In July 2015, an amended complaint was filed in federal district court in

---

[1]  Defendants argue that the renewed motion for class certification is limited to these two specific ingredients. (Opp'n at 4, ECF No. 121.)   That is incorrect.   In the very section of Plaintiffs' memorandum to which Defendants cite, Plaintiffs argue that Tom's of Maine products contain "at least one, and in most instances, several ingredients that are synthetic or chemically processed."   (Ren. Mem. at 8.)   In addition, the list of products included in the putative classes identifies allegedly unnatural ingredients beyond SLS and propylene glycol, including glycerin, xylitol, and sorbitol.   (*See* Product List, Westcot Decl. Ex. 1.)

the Southern District of Florida.   (ECF No. 14, *Gay v. Tom's of Maine, Inc.*, No. 14-CV-60604 (S.D. Fla. July 24, 2015 (the "*Gay* Complaint")).)   The *Gay* Complaint alleged, among other things, that Tom's of Maine "manufactured, marketed, sold, and distributed" its products, including toothpaste and deodorant, "using a marketing, advertising and labeling campaign that centered on representations that are intended to, and do, convey to consumers that the Products are 'natural' products that contain only 'natural' ingredients."   (*Id.* ¶ 2.)   Plaintiffs alleged that they "paid premium prices" for Tom's of Maine products "over comparable products that do not purport to be 'natural.'"   (*Id.* ¶ 3.)

In September 2015, the *Gay* parties entered into a court-approved settlement.   (Lally Decl. Ex. S, ECF No. 118 (the "*Gay* Settlement"); Lally Decl. Ex. R ¶¶ 9-10.)   For settlement purposes, the court certified a class consisting of "[a]ll individuals in the United States who purchased at least one Tom's of Maine Covered Product from March 25, 2009 through September 23, 2015."   (Lally Decl. Ex. R ¶ 3.)   The court ordered that each class member "shall be deemed to have . . . released all Released Claims as defined in the Agreement."   (*Id.* ¶ 15.)   The court enjoined all class members from "filing, commencing, prosecuting, intervening in or participating as a plaintiff, claimant or class member in any other lawsuit . . . in any jurisdiction based on the Released Claims," or "pursuing any Released Claims."   (*Id.* ¶ 18.)

In the *Gay* Settlement, "Released Claims" refer to "any and all actions . . . that could reasonably have been, or in the future might reasonably be asserted by Plaintiffs or members of the Settlement Class . . . in any other court or forum, against the Released Persons, . . . arising out of or relating to legal claims made by the Plaintiffs or Members of the Settlement Class arising out of or relating to the allegations in the Actions or Tom's labeling, marketing, advertising, packaging, promotion, manufacture, sale and distribution of all Covered Products as alleged in the Actions."   (Lally Decl. Ex. S ¶ IX.B.1.)

4

In exchange, Tom's of Maine agreed to both monetary and injunctive relief. Specifically, in addition to establishing a settlement fund, Tom's of Maine agreed to several "labeling and advertising changes regarding the Covered Products to address concerns raised by Plaintiffs." (*Id.* ¶ IV.B.)   Tom's of Maine agreed, for example, to include "mention of 'what's inside'" its products "on the front page of Tom's main website," and to "provide the address of its website in a conspicuous location on all of its product packaging." (*Id.* ¶ IV.B.1-3.)

### III.   Procedural History

Plaintiffs here filed a complaint on October 27, 2016 and the First Amended Complaint on December 9, 2016.   (ECF Nos. 1, 8.)   The First Amended Complaint sought both injunctive relief and damages based on breach of express warranty (FAC ¶¶ 46-51); violation of California consumer protection statutes, including California's Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (*Id.* ¶¶ 52-97); violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (*Id.* ¶¶ 98-113); and violation of New York's Deceptive Acts or Practices and False Advertising laws, New York Gen. Bus. Law §§ 349, 350 (*Id.* ¶¶ 114-32).   On January 27, 2017, Defendants filed an answer.   (ECF No. 19.)

On September 10, 2018, Plaintiffs moved to certify, pursuant to Federal Rules 23(b)(2) and 23(b)(3), a nationwide class consisting of "all persons in the United States who purchased Tom's of Maine deodorant and/or toothpaste products . . . on or after September 24, 2015," as well as three subclasses for class members who purchased the relevant Tom's of Maine products in New York, California, and Florida.   (Mot. at 1, ECF No. 63.)

On September 12, 2019, the Court denied Plaintiffs' motion.   (ECF No. 93.)   The Court held that Plaintiffs had not met their burden, pursuant to Rule 23(b)(3), of establishing that

common questions "predominate" over individual issues, in particular with respect to the certification of a nationwide class alleging breach of express warranty.   (*Id.* at 5-6.)

On February 21, 2020, Plaintiffs filed the instant renewed motion for class certification. (ECF No. 101.)   Plaintiffs no longer seek to certify a nationwide class, nor do they seek injunctive relief pursuant to Rule 23(b)(2).   Rather, Plaintiffs seek certification of three narrowed classes, defined as follows:

- "All persons who purchased Tom's of Maine deodorant and/or toothpaste products on or after September 24, 2015 in the state of New York excluding persons who purchased for purpose of resale" (the "New York Class");

- "All persons who purchased Tom's of Maine deodorant and/or toothpaste products on or after September 24, 2015 in the state of California excluding persons who purchased for purpose of resale" (the "California Class"); and

- "All persons who purchased Tom's of Maine deodorant and/or toothpaste products on or after September 24, 2015 in the state of Florida excluding persons who purchased for purpose of resale" (the "Florida Class").

In addition, Plaintiffs seek the appointment of Bursor & Fisher, P.A. as class counsel, and the appointment of named plaintiffs Anne de Lacour, Andrea Wright, and Loree Moran as class representatives.   (Ren. Mem. at 1, 25.)

## LEGAL STANDARD

To qualify for class certification, plaintiffs must demonstrate by a preponderance of the evidence that the requirements of Rule 23 have been met.   *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).   Rule 23(a) imposes four prerequisites to certification: numerosity, commonality, typicality, and adequacy.   Fed. R. Civ. P. 23(a).   In addition, in order for a class that meets the requirements of Rule 23(a) to be "maintained," it also must fall

into one of the categories of Rule 23(b).    Rule 23(b)(3) authorizes class certification when
"questions of law or fact common to class members predominate over any questions affecting
only individual members," and "a class action is superior to other available methods for fairly
and efficiently adjudicating the controversy."    Fed. R. Civ. P. 23(b)(3).

Rule 23 "does not set forth a mere pleading standard."    *Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338, 350 (2011).    Rather, the party seeking certification must "affirmatively
demonstrate" compliance with Rule 23; a class may be certified only if the district court is
satisfied, after a "rigorous analysis," that the requirements of the rule have been met.    *In re
Scotts EZ Seed Litig.*, 304 F.R.D. 397, 404 (S.D.N.Y. 2015) (Briccetti, J.) (citing *In re Am. Int'l
Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237-38 (2d Cir. 2012)).    This inquiry, in which the court
must "probe behind the pleadings," may "overlap with the merits" of plaintiffs' substantive
claims, but it does not require plaintiffs to demonstrate that they will prevail on the merits.
*Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013); *see Johnson*, 780 F.3d at 138 (quoting
*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013)) (stating that plaintiffs
need not "show that the common questions 'will be answered, on the merits, in favor of the
class'").

In addition, the Second Circuit has recognized that Rule 23 contains "an implied
requirement" that a class be "ascertainable."    *In re Petrobras Securities*, 862 F.3d 250, 260 (2d
Cir. 2017).    In order to satisfy this requirement, a class must be "sufficiently definite so that it is
administratively feasible for the court to determine whether a particular individual is a member,"
and must be "defined by objective criteria that are administratively feasible," such that
"identifying its members would not require a mini-hearing on the merits of each case."    *Id.*
(citing *Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015)).

**DISCUSSION**[2]

## I.      Class Standing

As an initial matter, Defendants argue that Plaintiffs lack standing to pursue claims

regarding Tom's of Maine toothpaste, because none of the named plaintiffs allege that they

purchased toothpaste in the putative class period and was damaged by such a purchase.   (Opp'n

at 9, ECF No. 121.[3])   The Court disagrees with Defendants and holds that Plaintiffs have class

standing to pursue claims relating to both deodorant and toothpaste.

In a putative class action, a plaintiff has class standing if they allege (1) that they have

"suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,"

and (2) that such conduct "implicates 'the same set of concerns' as the conduct alleged to have

caused injury to other members of the putative class by the same defendants."   *NECA-IBEW*

*Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal

citations omitted).

The first requirement of this test is satisfied here because Plaintiffs have alleged that they

each suffered an actual injury as a result of Tom's of Maine's labeling of its deodorant.

Plaintiffs allege that they paid a "premium price" for Tom's of Maine products and, accordingly,

seek reimbursement of that premium.   (FAC ¶ 3.)

The second requirement of the test also is satisfied.    In *NECA*, the Second Circuit noted

that, "in the context of claims alleging injury based on misrepresentations, the misconduct

---

[2] Any arguments raised by the parties but not specifically addressed below have been considered by the Court on the merits and rejected.

[3] Plaintiff de Lacour's purchase of toothpaste occurred outside the putative class period, and Plaintiff Moran testified at deposition that she was "[n]ot specifically" concerned with the toothpaste product and was instead "concerned with the deodorant."   (De Lacour Dep. at 33:24-34:9, Lally Decl. Ex. O; Moran Dep. at 78:8-16, Lally Decl. Ex N.)   Plaintiff Wright does not appear to have purchased "any other Tom's of Maine products" apart from deodorant.   (Wright Dep. at 44:23-35, Lally Decl. Ex. P.)

8

alleged will almost always be the same: the making of a false or misleading statement."   693

F.3d at 162.   Whether "the same set of concerns" is implicated for different plaintiffs will then

depend on "the nature and content of the specific misrepresentation alleged."   *Id.*   In a

subsequent decision, the Second Circuit explained that, in *NECA*, the named plaintiff's claims

and the absent class members' claims were "similar . . . in all essential respects" because the loan

offering documents at issue contained similar or identical statements about underwriting

guidelines, and the defendants had issued, underwritten, and sponsored each certificate from each

of the trusts that were at issue.   *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of*

*Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).   The "confluence of

these similarities" led the Second Circuit to conclude that the named plaintiff "had the right

incentives, largely because the proof contemplated for all of the claims would be sufficiently

similar."   *Id.*

District courts have since come to different conclusions as to whether, in a particular case,

plaintiffs have class standing to bring claims on behalf of absent class members with respect to

products that the named plaintiffs did not purchase.   *Compare, e.g.*, *Buonasera v. Honest Co.,*

*Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) (Marrero, J.) (holding that plaintiffs adequately

alleged that a misrepresentation on products labeled "all natural," "natural," and "plant-based"

was sufficiently similar across the products to support class standing for products that the named

plaintiffs had not purchased), *with Goldemberg v. Johnson & Johnson*, 317 F.R.D. 374, 391

(S.D.N.Y. 2016) (Román, J.) (holding that plaintiffs did not have standing with respect to 72

products plaintiffs had not purchased because they were not the same "in all essential respects" as

the 18 products the named plaintiffs had purchased).

Here, Plaintiffs argue persuasively that Tom's of Maine's conduct with respect to

deodorant purchasers implicates the same set of concerns as the conduct that allegedly injured

toothpaste purchasers.   *See Buonasera*, 208 F. Supp. 3d at 563.   The alleged misrepresentation—the use of the word "natural"—appears on Tom's of Maine toothpaste products as well as its deodorant.   (*See* FAC ¶¶ 15, 17; *see also* Murphy Dep. at 58:20-60:4, 65:10-13, Westcot Decl. Ex. 2.)   Plaintiffs allege that, because ingredients in each product are unnatural, they paid a price premium.   (FAC ¶ 3.)   And the misrepresentations that are alleged to have caused injury were made by the "same defendants."   *See NECA*, 693 F.3d at 162.

Defendants' reliance on *DiMuro v. Clinique Labs.* is unavailing.   572 F. App'x 27 (2d Cir. 2014) (summary order).   In that case, the defendants had made *different* advertising claims about each of seven distinct products, with the result that "[e]ntirely unique evidence" would be "required to prove that the 35-some advertising statements" for each product were false and misleading.   *Id.* at 29.   Courts have since distinguished *DiMuro* on this basis from cases in which, as here, the advertising claims are similar or uniform.   *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 544 (E.D.N.Y. 2017).

Defendants argue further that toothpaste and deodorant contain different ingredients, bear different packaging, and have different functions.   (Opp'n at 9.)   The Court acknowledges that there are differences in the allegedly unnatural ingredients in the two groups of products.[4]   But the fact that the deodorant and toothpaste products at issue contain different ingredients is not dispositive, particularly when the sole alleged misrepresentation—that each product is "natural"—is the same.[5]   *See Buonasera*, 208 F. Supp. 3d at 563; *see also Suarez v. California Nat. Living, Inc.*, 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019) (Briccetti, J.) (following

---

[4]  Plaintiffs attest that Exhibit 1 to the Westcot Declaration reflects a "complete list of the products included in the putative class."   (Ren. Mem. at 2 n.1; Westcot Decl. ¶ 2.)

[5]  To the extent that divergent proof across different products presents manageability issues at a later stage of the litigation, the Court may consider the use of subclasses.   *See* Fed. R. Civ. P. 23(c)(5).

*Buonasera* and holding that class standing was satisfied because "[e]ach product is allegedly (i) a cosmetic product (ii) sold and marketed by defendant and (iii) labeled and marketed as 'natural' . . . and (iv) plaintiff alleges each product contains one or more synthetic ingredients").

In light of the above, the Court holds that each named plaintiff has class standing with respect to the 17 deodorant products and 34 toothpaste products identified in the list of products included in this action.   (*See* Product List, Westcot Decl. Ex. 1.)

## II.      Rule 23(a) Requirements

Rule 23(a) sets forth four prerequisites to class certification: numerosity, commonality, typicality, and adequacy.   Fed. R. Civ. P. 23(a).   As explained below, the Court holds that Plaintiffs have demonstrated, by a preponderance of the evidence, that these prerequisites have been met.

### A.      Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable."   Fed. R. Civ. P. 23(a).   The Second Circuit has stated that this requirement may be met by a class consisting of 40 or more members.   *See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).   "Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."   *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

Plaintiffs allege that Defendants' deodorant and toothpaste products are sold nationwide at retail chains such as Walmart, Target, Walgreens, and CVS.   (FAC ¶ 40; Ren. Mem. at 11.) Retail sales during the class period in New York, California, and Florida amounted to

████████████████████████████, respectively, which strongly suggests that the number of potential class members surpasses 40.   (*See* Ren. Mem. at 11.)   Defendants do not contest that the proposed classes are sufficiently numerous.   The numerosity requirement is thus

satisfied for each of the New York, California, and Florida Classes.

        **B.**    **Commonality**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   Commonality requires the plaintiffs "to demonstrate that the class members have suffered the same injury."   *Dukes*, 564 U.S. at 350.   In addition, any common questions must be of "such a nature that [they are] capable of classwide resolution," such that determination of their "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."   *Id.*   Put differently, the common questions must be able to "generate common *answers* apt to drive the resolution of the litigation."   *Id.* (emphasis original). "[E]ven a single common question will do."   *Wal-Mart*, 564 U.S. at 359 (internal quotation marks and brackets omitted).

Defendants argue that commonality cannot be satisfied because (1) class members, including the named plaintiffs, define the word "natural" differently; (2) Plaintiffs have not demonstrated that all class members purchased Tom's of Maine deodorant because they sought a natural product; and (3) class members who reviewed Tom's of Maine packaging and/or the company's website would have understood "what Tom's means by 'natural.'"   If the "natural" claim is found to be false but the other packaging information and website statements are not, Defendants argue, class members will not have suffered the same injury.   (Opp'n at 13-16.)

Defendants' arguments are unavailing, particularly at the class certification stage of the litigation.   With respect to each of the New York, California, and Florida Classes, Plaintiffs argue that the "natural" label on Tom's of Maine's products is false and misleading and causes consumers to pay a price premium for the product.   (FAC ¶ 3.)   The alleged injuries to class members thus flow from the same alleged misrepresentation.   Even class members who may have educated themselves about Tom's of Maine's ingredients may suffer the same injury as

other class members by virtue of paying a price premium for the product.   *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568-69 (S.D.N.Y. 2014) (Rakoff, J.) ("[E]ven if a class member actively wanted to buy pomace instead of 100% pure olive oil, they nevertheless paid too much for it.").

In addition, there are common questions relating to the proof of Plaintiffs' claims. Defendants concede that the "natural" label is present on all of its products.   (Murphy Dep. at 58:20-60:4, 65:10-13, Westcot Decl. Ex. 2.)   As other courts in this district have held, whether a label that is uniform across products is false and/or misleading is common to all class members and is apt to drive the resolution of the litigation, because the same generalized evidence will be used to prove plaintiffs' claims.   *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405; *Ebin*, 297 F.R.D. at 565.   Moreover, all of the deodorant products contain the same two ingredients that Plaintiffs allege are unnatural: propylene glycol and ascorbic acid.   (*See* Product List, Westcot Decl. Ex. 1.)   Similarly, all of the toothpaste products at issue contain SLS, and a majority also contains glycerin and xylitol.   (*See id.*)   Whether these ingredients are "natural"; whether the "natural" claim is false and/or misleading; and whether class members paid a premium for Tom's of Maine deodorant and/or toothpaste because of that advertising claim, are all common questions apt to drive resolution of this litigation.   The commonality requirement is thus satisfied for each of the New York, California, and Florida Classes.

### C.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3).   Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."   *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

As with class standing, Defendants argue that Plaintiffs are not typical because their allegations are based on purchases only of deodorant and not toothpaste.   Here, too, this argument is unpersuasive.   In each of the New York, California, and Florida Classes, each class member's claim arises from the same course of events: the purchase of a product that is advertised as "natural."   (Ren. Mem. at 2-3; Murphy Dep. at 58:20-60:4, 65:10-13, Westcot Decl. Ex. 2.)   Because Plaintiffs allege that they paid a price premium as a result of this claim, the alleged injury is the same as that of toothpaste purchasers.   In addition, Plaintiffs seek relief through common legal claims: breach of express warranty and/or violations of state consumer protection laws.   District courts routinely find the typicality requirement satisfied in such circumstances.   *See, e.g.*, *Ebin*, 297 F.R.D. at 565-66 (finding typicality satisfied when all claims arose out of labeling olive oil tins, all class members allegedly were injured by paying a price premium, and plaintiffs sought redress through claims including breach of express warranty and New York consumer protection laws); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406.

Defendants next argue that Plaintiffs are subject to unique defenses, because they did not behave as reasonable consumers of Tom's of Maine products and because the *Gay* Settlement Agreement bars their claims.   (Opp'n at 17-18.)

The "mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification," but "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."   *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S.Ct. 1702 (2017).   When defendants argue that unique defenses apply to the putative class representative, courts analyze the issue under either the typicality or adequacy prongs of Rule 23(a).   *Bowling v. Johnson & Johnson*, 2019 WL 1760162, at *4 (S.D.N.Y. Apr.

14

22, 2019) (Nathan, J.).   The relevant inquiry is not whether a unique defense ultimately will succeed on the merits.   Rather, courts consider whether any unique defenses will "unacceptably detract from the focus of the litigation to the detriment of absent class members."   *In re Omnicom Grp., Inc., Sec. Litig.*, 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007) (Casey, J.) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)). Courts "need not definitively resolve whether such defenses would succeed on their merits"; rather, courts refuse certification "only when confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff."   *Id.*

First, Defendants argue that the named plaintiffs failed to act as "reasonable consumers" of "natural products."   (Opp'n at 17-19.)   De Lacour testified that, in the fifteen years during which she used Tom's of Maine deodorant, she did not look at the back of the product, where the ingredients are listed.   (De Lacour Dep. at 38:4-9, Lally Decl Ex. O.)   Wright testified that she did not review the ingredients in Tom's of Maine deodorant until shortly before her deposition in this case.   (Wright Dep. at 31:13-17, Lally Decl. Ex. P.)   Moran also testified that she did not consult the back of the product before purchase.   (Moran Dep. at 59:10-20, Lally Decl. Ex. N.)

These issues, however, reflect the kinds of individualized factual questions that do not bar certification.   In addition, as discussed *infra* Section IV.A, the "reasonable consumer" standard required by each of the New York, California, and Florida consumer protection statutes is objective, and thus is not contingent on the particular experiences of the named plaintiffs.   Class certification may not involve "free-ranging merits inquiries."   *Amgen Inc.*, 568 U.S. at 466.   The contours of the "reasonable consumer" standard will not be defined at this stage of the litigation, nor will the Court hold, as a matter of law, that no reasonable consumer, acting reasonably under the circumstances, would likely be misled by Tom's of Maine's "natural" claim.

Second, Defendants argue that the named plaintiffs are subject to a unique defense because, as members of the *Gay* class,[6] their claims against Defendants were released pursuant to the *Gay* Settlement.[7]   (Opp'n at 6-7, 17-19.)   Plaintiffs disagree, arguing that their claims do not arise from the "identical factual predicate" as those in the *Gay* litigation.   (Reply at 1-3, ECF No. 127.)

The Court is not persuaded that Defendants have made a sufficient showing that the defense applies.   The "identical factual predicate" doctrine operates as a limitation on the ability of settling parties to release claims in class action litigation.   As a general matter, plaintiffs may "release claims that were or could have been pled in exchange for settlement relief."   *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005).   Such releases may include claims that are not presented "as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."   *Id.* at 107 (citing *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)).   Put differently, a release may bar future actions that "depend[] on the very same set of facts."   *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 n.7 (2d Cir. 1981).

Defendants are correct that there are similarities between the instant claims and those in *Gay*.   In both cases, class members challenge Tom's of Maine's "natural" representation as false and misleading, alleging that it causes consumers to pay a price premium.   (*Compare Gay*

---

[6] Wright and de Lacour are members of the *Gay* class; they each testified at their respective depositions to purchasing Tom's of Maine products during the relevant class period.   In addition, at this stage, the evidence suggests that Moran may be a member of the *Gay* class.   She testified that her first purchase of Tom's of Maine products occurred in September of 2015, and the *Gay* class period ends on September 23, 2015.

[7] In the *Gay* Settlement, class members expressly agreed that the "labeling, marketing, advertising, packaging, promotion, manufacture, sale and distribution modifications" described in the Settlement Agreement "are satisfactory to the Plaintiffs and the Settlement Class and alleviate the alleged deficiencies with regard to labeling, marketing, advertising, packaging, promotion, manufacture, sale and distribution of the Covered Products as set forth in or related to the Complaints."   (Lally Decl. Ex. S ¶ IX.B.)

Compl. ¶¶ 2-3, *with* FAC ¶¶ 1-3.)    To the extent that Plaintiffs purchased deodorant and/or toothpaste products with the very same packaging that was at issue in *Gay*, their claims would have arisen from the same factual predicate as those in *Gay*, and therefore could be barred by the release.    But Plaintiffs state that their claims are based on their September 24, 2015 or later purchases of products with *re-designed* packaging, *i.e.*, Plaintiffs' claims relate to "deceptive statements made on product packaging that was modified following the settlement in *Gay*." (Reply at 2.)    Defendants concede that, pursuant to the *Gay* Settlement, they "made certain packaging and labeling changes, including providing additional information on Tom's standards for natural, sustainable, and responsible."    (Opp'n at 7.)    The claims in this litigation thus do not depend on "the very same set of facts" as those in *Gay*.    *Nat'l Super Spuds, Inc.*, 660 F.2d at 18 n.7.    Rather, they focus on *modified* labeling and packaging.    Accordingly, the Court declines to find that the *Gay* settlement operates as a unique defense that "threatens to become the focus of the litigation."    *See In re Omnicom Grp., Inc., Sec. Litig.*, 2007 WL 1280640, at *4.

At this stage and for class certification purposes, the Court does not believe that Defendants have made the requisite showing that a unique defense is applicable to the named plaintiffs.    The typicality requirement is thus satisfied for each of the New York, California, and Florida Classes.

### D.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."    Fed. R. Civ. P. 23(a)(4).    Courts must inquire whether the named plaintiffs' interests are "antagonistic to the interest of other members of the class" and whether putative class counsel are qualified.    *Baffa*, 222 F.3d at 60.

All three named plaintiffs claim to have suffered the same injury as the absent class members: paying a price premium for Tom's of Maine deodorant and/or toothpaste products

17

because of allegedly false and misleading advertising.   There is thus no conflict between their interests and those of absent class members.   In addition, each named plaintiff has sat for deposition, responded to written discovery requests, and declared that they are prepared to testify at trial.   (De Lacour Decl. ¶¶ 6-7, ECF No. 106; Moran Decl. ¶¶ 6-7, ECF No. 107; Wright Decl. ¶¶ 6-7, ECF No. 108.)   With respect to class counsel, Bursor and Fisher, P.A. have extensive experience litigating consumer class action claims.   (Firm Resume, Westcot Decl. Ex. 11.)   The firm has been appointed class counsel on dozens of occasions and has won multi-million dollar verdicts in five class action jury trials since 2008.   *Id.*   Defendants do not dispute that Plaintiffs have and will continue to undertake the endeavors above, nor do they dispute the competency of Plaintiffs' counsel.   The adequacy requirement is thus satisfied for each of the New York, California, and Florida Classes.

### III.   Ascertainability

The Second Circuit recognizes an "implied requirement" in Rule 23 that a proposed class be "ascertainable."   *In re Petrobras Securities*, 862 F.3d at 260.   The "touchstone of ascertainability" is whether the class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."   *Id.* at 264.   A class is ascertainable when it is "defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case."   *Id.* There is no "freestanding administrative feasibility requirement."   *Id.* at 268.   The Second Circuit has described ascertainability as a "modest threshold requirement" that precludes certification "only . . . if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269.

The New York, California, and Florida Classes are each ascertainable.   Class members may be defined by the objective criteria of whether they purchased the identified Tom's of Maine

deodorant and/or toothpaste products in a particular timeframe.

Defendants argue that consumers may not remember when they bought a particular product.   Defendants further argue that Plaintiffs have not provided a plan to identify members of the proposed class who purchased deodorant free of propylene glycol or toothpaste free of SLS, such that may not present the same claims.   (Opp'n at 23.)   Several exhibits that Defendants identify in support of these arguments show images of deodorants that do, in fact, contain propylene glycol, and toothpaste that does contain SLS.   (*See* Lally Decl. Exs. D, F, G, I.)   In any event, as other courts in this district have noted, declining to certify a class when class members may not have retained proof of purchase "would render class actions against producers almost impossible to bring."   *Ebin*, 297 F.R.D. at 567; *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407-08.   In addition, Plaintiffs have identified a general plan, which includes commissioning a notice and media expert and developing targeted media campaigns, to provide notice to potential class members, and to "weed[] out inaccurate or fraudulent claims."   (Reply at 9-10.)

In light of the above, the Court finds that each of the New York, California, and Florida Classes is ascertainable.

## IV.    Rule 23(b) Requirements

The Court turns now to the requirements set forth in Rule 23(b).   Rule 23(b)(3) authorizes class certification when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).

### A.    Predominance

The predominance requirement "tests whether the proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547

(2d Cir. 2010) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).   This test is

"more demanding than Rule 23(a)." *Johnson*, 780 F.3d at 138 (quoting *Comcast Corp.*, 569

U.S. at 34).   The court must consider "the elements of the claims and defenses to be litigated,"

as well as "whether generalized evidence could be offered to prove those elements on a class-

wide basis or whether individualized proof will be needed to establish each class member's

entitlement to relief." *Id.* (quoting McLaughlin on Class Actions § 5:23).   The Court also must

consider whether "the common issues can profitably be tried on a classwide basis, or whether

they will be overwhelmed by individual issues." *Id.*; *see Glatt v. Fox Searchlight Pictures, Inc.*,

811 F.3d 528, 538 (2d Cir. 2016) (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d

108, 118 (2d Cir. 2013)) ("The predominance requirement is satisfied if resolution of some of the

legal or factual questions that qualify each class member's case as a genuine controversy can be

achieved through generalized proof, and if these particular issues are more substantial than the

issues subject only to individualized proof.").

Plaintiffs allege that Tom's of Maine falsely represented its deodorant and/or toothpaste

products as "natural," causing class members to pay a price premium.   (FAC ¶ 3.)   Common

questions in each of the New York, California, and Florida Classes include whether the

ingredients in the product are indeed "natural," whether the "natural" label is false and/or

misleading, and whether class members paid a premium for these products.   The Court will first

address whether these common issues predominate with respect to each of the three proposed

classes, and will then address the question of damages and the alleged price premium.

    1.   <u>New York Class</u>

Plaintiff Moran's claims are based on alleged violations of New York's Deceptive Acts or

Practices and False Advertising laws, New York Gen. Bus. Law §§ 349, 350 ("GBL"), and

breach of an express warranty.   (FAC ¶¶ 114-32.)   As explained below, common questions predominate with respect to the GBL claims, but individual questions predominate with respect to the express warranty claims.

GBL Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."   N.Y. Gen. Bus. L. § 349.   In order to state a claim, a plaintiff must allege that the act or practice was consumer-oriented; the act or practice was misleading in a material respect; and the plaintiff was injured as a result.   *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).   Materiality is an objective inquiry: a deceptive act is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances."   *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000).   The same analysis applies to false advertising claims brought pursuant to GBL Section 350.   *Id.* at 522.   Sections 349 and 350 require neither proof of reliance, nor proof that the defendants intended to mislead consumers.   *See Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 453 (N.Y. 2012); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995).

Here, classwide evidence will be used to determine whether the "natural" claim was false and, if so, whether it was likely to mislead a reasonable consumer.   Every toothpaste and deodorant product included the "natural" label, and every class member was thus exposed to the same representation.   (Murphy Dep. at 58:20-60:4, 65:10-13.)

Defendants argue that individual issues predominate because there is no uniform definition of the term "natural" and because class members, including the named plaintiffs, may purchase Tom's of Maine products for reasons different from one another, and that are unrelated to the "natural" claim.   (Opp'n at 20-21.)   These arguments, however, are unpersuasive.

Defendants' first argument is unpersuasive because, when the representation on a product is uniform, as in this case, "the only question is how such packaging would have influenced a

21

consumer under the objective test" required by Section 349.   *Goldemberg*, 317 F.R.D. at 389.

In addition, Plaintiffs' experts have provided some evidence that consumers have a generalized

understanding of the term "natural."   (*See, e.g.*, Dennis Decl. ¶ 45, ECF No. 104; Weir Decl. ¶¶

12-13, ECF No. 105.)

Defendants' second argument is likewise unpersuasive because it misconstrues the nature

of the alleged injury.   Plaintiffs allege that the "natural" misrepresentation is misleading and

thus results in a price premium.   (FAC ¶ 3.)   The fact that an individual purchaser may have

bought Tom's of Maine deodorant for a reason independent of that representation is not germane,

because—if Plaintiffs are correct—the consumer nonetheless paid too much for the product.

*Ebin*, 297 F.R.D. at 568-69; *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 266 (E.D.N.Y.

2019).   The predominance requirement is thus satisfied with respect to the Section 349 and 350

allegations.

In contrast, the New York express warranty claims are *not* susceptible to classwide

treatment.   To state a claim for breach of express warranty, a plaintiff must allege (1) the

existence of a material statement amounting to a warranty; (2) the buyer's reliance on this

warranty; (3) breach of the warranty; and (4) injury to the buyer caused by the breach.   *See*

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482

(S.D.N.Y. 2014) (Román, J.) (collecting cases); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at

410.   Under New York's concept of reliance, courts must inquire into whether each buyer had

knowledge of the truth or falsity of the relevant facts.   *In re Scotts EZ Seed Litig.*, 304 F.R.D. at

411.

Plaintiffs argue that each element in its express warranty claim can be established through

common proof because each deodorant and toothpaste product contained the alleged express

warranty that the product was "natural," and the products did not conform to this

warranty.   (Ren. Mem. at 17-18.)   The Court finds this argument unpersuasive.   In assessing reliance, the Court must evaluate *each* class member's knowledge of the truth or falsity of the products' "natural" label.   *See, e.g.*, *Kurtz*, 321 F.R.D. at 544 (collecting cases); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 411; *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) (Cote, J.).   Accordingly, individual questions predominate, and Plaintiffs' claims of breach of express warranty pursuant to New York law are thus inappropriate for class treatment.

### 2.   California Class

Plaintiff Wright's claims are based on allegations of breach of express warranty and violations of California consumer protection statutes: the Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, *et. seq*. ("CLRA"); False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*. ("FAL"); and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"). (FAC ¶¶ 52-97.)   The predominance requirement is satisfied as to all of these claims.

To state a claim for breach of express warranty in California, plaintiffs must prove that a seller's statements "constitute an affirmation of fact or promise," that "the statement was part of the basis of the bargain," and that "the warranty was breached."   *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 411.

Unlike express warranty claims under New York law, however, "the concept of reliance has been purposefully abandoned" in California for express warranty claims.   *Id.* (citing *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Cal. App. 4th 2010)).   Rather, a "warranty statement made by a seller is presumptively part of the basis of the bargain."   *Karim v. Hewlett-Packard Co.*, 2014 WL 555934, at *6 (N.D. Cal. Feb. 10, 2014).   A plaintiff "need only show that the warranty statement was made by [the seller] in order for it to be presumed part of the basis of the bargain."   *Id.*   As a result, breach of express warranty claims pursuant to

California law are appropriate for class treatment when a defendant's alleged misrepresentation, and whether that misrepresentation breached warranties, are issues common to members of the putative class.   *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015).

Such common questions predominate in this case.   Classwide evidence will be used to determine whether the "natural" claim was false and, if so, whether it was likely to mislead a reasonable consumer.   Every toothpaste and deodorant product included the "natural" label, and every class member was thus exposed to the same representation.   (Murphy Dep. at 58:20-60:4, 65:10-13; *see Brown v. Hain Celestial Grp.*, 2014 WL 6483216, at *17-18 (N.D. Cal. Nov. 18, 2014) (certifying a class claiming violation of California's express warranty law for products that were labeled as organic); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 983-86, 1018-2021, 1035 (certifying a class alleging violation of California's express warranty law for cooking oils labeled as "100% Natural").)

Plaintiffs' claims pursuant to California's consumer protection laws are also appropriate for classwide treatment.   Because, "[f]or purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable," the Court addresses the statutes in tandem.   *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014).   The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."   Cal. Bus. & Prof. Code § 17200.   The FAL prohibits the dissemination of advertising that is deceptive, untrue, or misleading.   Cal. Bus. & Prof. Code § 17500.   And the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."   Cal. Civ. Code § 1770.   Claims pursuant to all three statutes are governed by an objective "reasonable consumer" test, which requires plaintiffs to "show that members of the public are likely to be deceived" by the business practice or advertising at issue.   *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410.

In addition, under the UCL and FAL, there is no requirement that plaintiffs demonstrate individualized proof of reliance.   *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012).   Rather, a "presumption, or at least an inference, of reliance arises under the UCL and FAL whenever there is a showing that a misrepresentation was material."   *McCrary v. Elations Co.*, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014).   As the Supreme Court has explained, materiality is a question that is "common to all members of the class" when, as is the case here, an objective standard governs whether an alleged misrepresentation is material.   *See Amgen Inc.*, 568 U.S. at 459.   Plaintiffs are, however, required to demonstrate injury and causation. *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. at 482.   Causation for CLRA claims "is commonly proved more likely than not by materiality."   *Id.*

Defendants argue that Plaintiffs cannot satisfy the materiality requirement because the term "natural" is defined differently by different consumers.   (Opp'n at 20 n.20.)   But the Court is satisfied that, at this stage of the litigation, Plaintiffs have offered sufficient evidence that the "natural" claim is material.   Plaintiff Wright, in an affidavit, testified that she would not have purchased Tom's of Maine deodorant if the product had not stated that it was "natural" and would not have purchased the products if she knew that the ingredients were not natural. (Wright Decl. ¶ 5.)   In addition, Plaintiffs' experts have offered evidence that, even though there may not be a precise, uniform definition of "natural," consumers generally interpret that term in a similar manner.   (*See, e.g.*, Dennis Decl. ¶ 45; Weir Decl. ¶¶ 12-13, 54.)   And there are internal documents from Tom's of Maine that demonstrate ████████████████████ ████████████████████████████████████████████████

████████████████████████████████████████████   (*See, e.g.*, Westcot Decl. Ex. 3.[8])

In light of the above, Plaintiffs have provided sufficient evidence, for class certification

purposes, that the predominance inquiry is satisfied for the claims pursuant to California's

express warranty law, the UCL, FAL, and CLRA.

       3.   <u>Florida Class</u>

Plaintiff de Lacour alleges violations of Florida's Deceptive and Unfair Trade Practices

Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq*.   The predominance requirement is satisfied as to

this claim.

To bring a claim pursuant to the FDUTPA, plaintiffs must establish three elements: a

deceptive act or unfair practice; causation; and actual damages.   *Carriuolo v. Gen. Motors Co.*,

823 F.3d 977, 985-86 (11th Cir. 2016).   Each of these three elements is objective and, because

the FDUTPA does not require proof of actual, individualized reliance, "the mental state of each

class member is irrelevant."   *Id.* at 985.   In addition, damages pursuant to the FDUTPA are

measured according to a formula that can readily be applied on a classwide basis when the

misrepresentation has allowed the manufacturer to "command a price premium."   *Id.* at 986-87.

Here, determining whether an objective, reasonable consumer would be misled by the

"natural" claim, which appears on every product at issue, may be demonstrated with classwide

proof.   Plaintiffs may similarly use common proof to show that they paid a price premium in

connection with that claim.   Courts also have observed that the FDUTPA's "reasonable

---

[8] Defendants characterize certain statements in Exhibit 3 as relating to the use of ███████ ingredients, as opposed to "natural" ones.   (Opp'n at 21 n.21.)   But several statements, including that the █████ ████████ that consumers ████████████████████████████ than █████ ████████ ████████████████████████████ and that consumers state that █████████ demonstrate—for purposes of class certification—that there is sufficient evidence as to the materiality of the "natural" claim.   (*See* Westcot Decl. Ex. 3.)

consumer" test is similar to that required by GBL Sections 349 and 350.   *See Hasemann*, 331

F.R.D. at 274-75 ("Cases analyzing both FDUTPA and GBL claims support a finding that false

advertising claims under both statutes meet the predominance requirement.").   Accordingly, for

the same reasons that the predominance requirement is satisfied for the New York Class's GBL

Section 349 and 350 claims, that requirement also is satisfied for the Florida Class.[9]

### B.   Damages

In order to satisfy the predominance requirement of Rule 23(b)(3), Plaintiffs must

propose a damages model that is consistent with their theory of liability.   *Comcast Corp.*, 569

U.S. at 34-35.   A plaintiff's expert is not required to *perform* their analysis at the class

certification stage.   *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 414.   "All that is required at class

certification is that 'the plaintiffs must be able to show that their damages stemmed from the

defendant's actions that created the legal liability.'"   *Sykes v. Mel S. Harris & Assocs. LLC*, 780

F.3d 70, 88 (2d Cir. 2015) (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir.

2013)).

Plaintiffs' theory of liability is that Tom's of Maine misrepresented that its products were

"natural," and that this alleged misrepresentation caused consumers to pay a higher price for the

products.   There is some evidence, including from Defendant's internal documents, that ███

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[9] In a footnote, Defendants argue that "the fact that members of the *Gay* Class would have received notice of the allegations that some believed Tom's products were not natural and were purportedly over-priced and chose to continue to purchase them anyway presents a serious predominance issue."   (Opp'n at 17 n.18.)   Defendants provide no evidence that Plaintiffs had notice of the allegations that were made in *Gay* involving the "natural" labeling.   In fact, Plaintiffs' deposition testimony indicate that they each learned of the problems with the "natural" label when counsel approached them about the litigation, and they each stopped purchasing the products thereafter. (*See* Lally Decl., Ex. N at 55:19-24; *id.*, Ex. O at 18:1-19:12; *id.*, Ex. P at 16:3-21; *see also* Callahan Decl. Ex. B part 15 at 5-6, Ex. D part 5 at 11-12, Ex. F part 2 at 5-6, ECF No. 144.)

███████████████████████████████████████████████████.   (Weir

Decl. ¶¶ 10-14; Westcot Decl. Ex. 5.)

Plaintiffs retained J. Michael Dennis, Ph.D. to design, conduct, and report on a consumer

survey to measure whether the "natural" claim on Tom's of Maine toothpaste products causes a

price premium to be paid by consumers and, if so, the amount of that premium.   (Dennis Decl. ¶

14.)   Dr. Dennis conducted his survey using the "choice-based conjoint methodology."   At a

high level, "[c]onjoint analysis is a representative survey technique that permits an economist to

analyze the value of various product attributes."   (Weir Decl. ¶ 18.)   This analysis is carried

out by "systematically varying the attributes of the product [in surveys] and observing how

respondents react to the resulting product profiles[,]" and subsequently applying statistical

methods (including regression analysis) to the survey responses to calculate attribute value.   (*Id.*

¶¶ 21-23.)   Such conjoint surveys are among the standard marketing research techniques for

quantifying consumer preferences for products and their constituent components, and they have

been widely relied upon in litigation.   (Dennis Decl. ¶ 25; Weir Decl. ¶¶ 20, 20 n.14, 24.)

Here, Dr. Dennis used conjoint methodology in order "to measure the marketplace price

premium solely attributable to Defendants' use of the challenged 'natural' claim."   (Dennis

Decl. ¶ 25.)

Plaintiffs also retained Dr. Colin B. Weir, a damages expert, to provide "a framework for

the calculation of, and a preliminary estimate of, damages suffered by the proposed class of

consumers as a result of the allegedly false and misleading [c]laim" that Tom's of Maine's

products are "natural."   (Weir Decl. ¶ 5.)   That framework relies on Dr. Dennis's conjoint

survey, which Dr. Weir helped to develop.   (*Id.* ¶¶ 31-32.)

In Dr. Weir's opinion, the 1,000 respondents to Dr. Dennis's survey are representative of

the putative class, and the survey results are both projectable to the class as a whole and provide

a reliable, accurate measure of the market price premium attributable solely to the claim that Tom's of Maine products are "natural."   (*Id.* ¶ 34.)   Using the results of Dr. Dennis's survey, along with retail sales data ██████████████████████████████ ██████████████████████████████████████████), Dr. Weir has provided preliminary damages calculations for each of the New York, California, and Florida Classes.[10]   (*Id.* ¶¶ 55-63, Tables 1-3.)

Defendants argue that Plaintiffs' damages methodology is flawed because it measures the premium associated with toothpaste, not deodorant.   (Opp'n at 25.)   That argument is unconvincing.   *Comcast* requires the Court to consider only whether a proposed *methodology* for calculating damages is consistent with the plaintiffs' theory of liability.   Both of Plaintiffs' experts have made clear that the methods used to measure the premium associated with toothpaste can readily be applied to deodorant products.   Dr. Dennis stated that he would employ "the same price premium survey methodology," with "appropriate changes" to reflect the deodorant brands that compete with Tom's of Maine and the particular attributes of those products, and could thus "provid[e] reliable data on any economic loss caused by Defendants' use of the 'natural' claim on their deodorant products."   (Dennis Decl. ¶¶ 20, 67.)   Although Defendants point out that Dr. Dennis has not yet applied the conjoint survey methodology to deodorant, nothing in *Comcast* requires him to do so at this stage of the litigation.   *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 414.

---

[10]  Plaintiffs contend that proof of damages will be "very simple" for the New York Class because statutory damages are available to each class member and, therefore, "no individualized damages inquiries are necessary."   (Ren. Mem. at 22.)   Dr. Weir thus calculates the damages by using data from ████████████ and multiplying the number of units sold by the $50 and $500 damages per violation that GBL §§ 349 and 350 respectively require. (*Id.* ¶ 65, Table 4.)   Although plaintiffs must prove "actual . . . harm" in order to obtain statutory damages pursuant to GBL Section 349, plaintiffs may satisfy this requirement by showing that they paid a price premium.   *See Goldemberg*, 317 F.R.D. at 393 n.15 (citing *Oswego*, 647 N.E.2d at 745; *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2021)).

Defendants also argue that there are fundamental flaws in Plaintiffs' price premium analysis.    Defendants do not argue that any particular flaw is critical, but rather summarize the opinions set forth in reports by their retained experts, Dr. Ran Kivetz and Joseph A. Krock, Ph.D. (Opp'n at 24-25; Krock Decl., ECF No. 123; Kivetz Decl., ECF No. 124.)

Defendants argue that ███████████████████████████████████

████████████████████████████████████████████████████████

███████████████.   (Opp'n at 25.)   Dr. Dennis points out, however, that ████████████

██████████████████████████████████████████████████████

████████████████████████████████.   (Dennis Reply Decl. ¶

8, ECF No. 129.)   In addition, Dr. Dennis's findings show that ████████████████████

██████████████████████████████████████████████████████

████████████████████████████.   (*Id.* ¶ 9.)



Defendants' experts also disagree with numerous details of Dr. Dennis's conjoint study. They argue, among other things, that ███████████████████████████████████

████████████████████████████████████████.   Plaintiffs' experts respond to each of Defendants' criticisms of their methodology, however, demonstrating that the conjoint study adopted numerous measures to attempt to isolate the "natural" claim and to construct a robust survey following industry-standard practices.    (*See* Dennis Reply. ¶¶ 32-39.)

Defendants' objections are thus not fatal at the class certification stage, because Plaintiffs have sufficiently demonstrated that their proposed model is consistent with their theory of liability and attempts to isolate and measure the price premium effect of Tom's of Maine's claim that their products are "natural."    *Comcast Corp.*, 569 U.S. at 34-35; *see Goldemberg*, 317 F.R.D. at 393-96, 396 n.19 ("Defendant's criticisms of what the proposal does not yet do, which relate to data selection and exact variable determinations, are thus unavailing at this juncture.").

The requirements of *Comcast* are satisfied.

**C.    Superiority**

Finally, Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   In making this determination, the Court considers the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.[11]   *Id.*   Because "proceeding individually would be prohibitive for class members with small claims," a class action is "frequently superior to individual actions." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).

Defendants argue that a class action is not superior because Tom's of Maine offers a "full money back guarantee" to unsatisfied customers.   (Opp'n at 24 n.23.)   Rule 23, however, was drafted "with the legal understanding of 'adjudication' in mind: the subsection poses the question whether a single suit would handle the dispute better than multiple suits."   *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 (citing *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011).   In addition, because the money back guarantee is a non-adjudicative form of redress, it cannot effectuate the punitive remedies and purposes of statutes such as GBL Sections 349 and 350.   *See id.* at 415-16 (holding that a class action is superior to defendants' "No Quibble

---

[11]  To the extent that Defendants argue that a class action is not superior because the proposed classes are unmanageable, those arguments sound in ascertainability, typicality, and predominance, which the Court has addressed.   Manageability, in connection with the superiority analysis, is "explicitly comparative," demanding consideration of whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."   *In re Petrobras Securities*, 862 F.3d at 268 (emphasis omitted).   Indeed, "it may be that challenges of administrative feasibility are most prevalent in cases 'in which there may be no realistic alternative to class treatment.'"   *Id.* (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017)).

Guarantee" refund program).    Indeed, consumers may not even realize that the guarantee exists.

*See id.*    Accordingly, considering the factors set forth in Rule 23(b)(3), the Court finds that a

class action is superior to other available methods for adjudicating Plaintiffs' claims.

## CONCLUSION

For the reasons set forth above, Plaintiffs' renewed motion for class certification is

GRANTED IN PART and DENIED IN PART, as follows:

1. The motion to certify the New York Class is GRANTED with respect to the claims for

   relief pursuant to GBL Sections 349 and 350, and DENIED with respect to the claims for

   relief pursuant to alleged breach of express warranty.

2. The motion to certify the California Class is GRANTED.

3. The motion to certify the Florida Class is GRANTED.

The Court hereby certifies the following classes:

1. All persons who purchased Tom's of Maine deodorant and/or toothpaste products, as

   identified in Exhibit 1 to the Westcot Declaration, on or after September 24, 2015 in the

   state of New York excluding persons who purchased for purpose of resale.

2. All persons who purchased Tom's of Maine deodorant and/or toothpaste products, as

   identified in Exhibit 1 to the Westcot Declaration, on or after September 24, 2015 in the

   state of California excluding persons who purchased for purpose of resale.

3. All persons who purchased Tom's of Maine deodorant and/or toothpaste products, as

   identified in Exhibit 1 to the Westcot Declaration, on or after September 24, 2015 in the

   state of Florida excluding persons who purchased for purpose of resale.

It is FURTHER ORDERED that:

1. Plaintiffs Moran, Wright, and de Lacour are appointed as class representatives for the

   New York, California, and Florida Classes respectively.

2.  Bursor & Fisher, P.A. is appointed as class counsel.

3.  Counsel shall confer as to the appropriate next steps in this litigation.   On or before May 28, 2021, the parties shall file a joint letter that addresses all case management issues going forward, including (but not limited to) proposed notice to absent class members and any necessary discovery regarding the merits of Plaintiffs' claims.   To the extent the parties disagree on any case management issues, the joint letter shall explain the parties' respective positions on such issues.

4.  On or before May 28, 2021, Plaintiffs shall also file a letter brief addressing why their proposals for notice are consistent with the requirements of Rule 23 and due process.

5.  Defendants' request for oral argument is denied.

6.  The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 101, 115.

    SO ORDERED.

Dated: New York, New York
       April 23, 2021                                    _____*/s/ Kimba M. Wood*_____
                                                              KIMBA M. WOOD
                                                         United States District Judge