UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>COLGATE-PALMOLIVE CO. and TOM'S OF MAINE, INC.,<br><br>                Defendants. | Case No. 16-cv-8364-KMW-OTW |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY

**BURSOR & FISHER, P.A.**
Sarah N. Westcot *(admitted pro hac vice)*
701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
Joshua D. Arisohn
888 Seventh Ave
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ndeckant@bursor.com
          jarisohn@bursor.com

*Counsel for Plaintiffs and the Class*

TABLE OF CONTENTS

P<small>AGE</small>(S)

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARD FOR ISSUANCE OF A STAY ..................................................... 2

III. ARGUMENT ..................................................................................................................... 2

    A. Defendant Has Not Shown And Cannot Show A Likelihood That The Second Circuit Will Grant Its Rule 23(f) Petition Or Agree With Defendant On The Merits ................................................................................ 2

        1. Standard For Granting A Rule 23(f) Petition .............................................. 3

        2. This Case Does Not Meet The Standard For Granting A 23(f) Petition ................................................................................................ 5

        3. Defendant Has Not Made A Strong Showing That It Is Likely To Succeed On The Merits If The Second Circuit Accepts Its 23(f) Petition .............................................................................. 6

    B. Defendant Has Not Alleged Irreparable Harm ....................................................... 10

    C. A Stay Would Substantially Injure Class Members .............................................. 10

    D. A Stay Is Contrary To The Public Interest ............................................................. 11

IV. CONCLUSION ................................................................................................................ 11

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Abbassi v. INS*,
  143 F.3d 513 (9th Cir. 1998) .................................................................................. 2

*Blair v. Equifax Check Servs., Inc.*,
  181 F.3d 832 (7th Cir. 1999) ............................................................................. 3, 4

*Gray v. Golden Gate Nat'l Recreational Area*,
  2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) ........................................................ 2

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) .................................................................................. 7

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) .................................................................................... 5

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ............................................................................................... 2

*Holve v. McCormick & Company, Inc.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) ................................................................... 9

*In re Bogdanovich*,
  2000 WL 1708163 (S.D.N.Y. Nov. 14, 2000) ...................................................... 10

*In re Delta Air Lines*,
  310 F.3d 953 (6th Cir. 2002) .................................................................................. 3

*In re Literary Works In Electronic Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ................................................................................... 7

*In re Sumitomo Copper Litig.*,
  262 F.3d 134 (2d Cir. 2001) .......................................................................... *passim*

*Johnson v. Geico Cas. Co.*,
  269 F.R.D. 406 (D. De. 2010) ................................................................................ 2

*Liberty Synergistics, Inc. v. Microflo Ltd.*,
  2013 WL 101427 (E.D.N.Y. Jan. 8, 2013) ........................................................... 10

*Marcus v. BMW of North America, LLC*,
  687 F.3d 584 (3d Cir. 2012) ................................................................................... 8

*Miller v. Ghirardelli Chocolate Co.*,
  912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................................................... 8

*Miss Am. Org. v. Mattel, Inc.*,
   945 F.2d 536 (2d Cir. 1991) .................................................................................................. 10

*Morris v Alle Processing Corp.*,
   2013 WL 6199579 (E.D.N.Y. Nov. 27, 2013) ......................................................................... 3

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ................................................................................................ 8, 9

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................ 1, 2, 10, 11

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ............................................................................................... 3

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
   415 U.S. 1 (1974) .................................................................................................................. 10

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*,
   775 F.3d 154 (2d Cir. 2014) .............................................................................................. 8, 10

*Suarez v. California Natl. Living, Inc.*,
   2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ........................................................................... 9

*TBK Partners, Ltd. v. W. Union Corp.*,
   675 F.2d 456 (2d Cir. 1982) ................................................................................................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..................................................................................................... 7

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) ............................................................................................... 3, 4

*Weber v. U.S.*,
   Tr., 484 F.3d 154 (2d Cir. 2007) ............................................................................................ 5

*Willner v. Manpower Inc.*,
   2014 WL 4370694 (N.D. Cal. Sept. 3, 2014) ......................................................................... 8

RULES

Federal Rule of Civil Procedure 23 .................................................................................... *passim*

## I. INTRODUCTION

In their motion, Defendants Colgate-Palmolive Co. ("Colgate") and Tom's of Maine, Inc. ("Tom's") (collectively, "Defendants") argue that this action should be stayed until Defendants exhaust every avenue of appeal. *See* Memorandum of Law In Support of Defendants' Motion For Stay Pending Petition For Appeal And Any Subsequent Appeal ("Motion"), ECF. No. 153. Defendants claim that their Federal Rule of Civil Procedure 23(f) petition warrants a stay. Of course, Defendants never cite the highly restrictive standard for granting a 23(f) petition, making interlocutory review extremely unlikely. Under that standard, Defendants must show either "(1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) that the certification order implicates a legal question about which there is a compelling need for immediate resolution." *In re Sumitomo Copper Litig.*, 262 F.3d 134, 139 (2d Cir. 2001). Defendants fail to demonstrate that either of these requirements has been met.[1] Consequently, this case does not satisfy the Second Circuit's standards for granting a 23(f) appeal.

Other factors also weigh against a stay. Defendants fail to make "a strong showing" that they are "likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 426 (2009). They also fail to demonstrate they will be irreparably injured absent a stay. Accordingly, the Court should reject Defendants' attempt to drag out the proceedings with an indeterminate stay pending a decision from the appellate court as to Defendants' 23(f) petition and any subsequent appeal.

---

[1] A court may still grant a Rule 23(f) petition that fails to satisfy either of the foregoing requirements if the petition "presents special circumstances that militate in favor of an immediate appeal," but Defendants fail to raise any such special circumstances in their petition, and none exist here. *Id.* at 140.

1

## II. LEGAL STANDARD FOR ISSUANCE OF A STAY

Issuance of a stay is "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433-34. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34. Courts consider four factors in determining whether to issue a stay:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The first two factors are "the most critical." *Id.* Neither is satisfied by the mere proposal of a non-frivolous appeal argument or potential injury. "It is not enough that the chance of success on the merits be better than negligible"; "[m]ore than a mere possibility of relief is required." *Id.* (internal quotation marks omitted; alteration in original). Similarly, "simply showing some 'possibility of irreparable injury' . . . fails to satisfy the second factor." *Id.* at 434-35 (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)).

## III. ARGUMENT

**A. Defendant Has Not Shown And Cannot Show A Likelihood That The Second Circuit Will Grant Its Rule 23(f) Petition Or Agree With Defendant On The Merits**

Where a party moves for a stay pending the resolution of a 23(f) petition, "the Court must consider both the likelihood that the [appellate court] will grant Defendants' Rule 23(f) petition, and the likelihood that the [appellate court] will agree with Defendants on the substantive merits." *Gray v. Golden Gate Nat'l Recreational Area*, No. 08-cv-722, 2011 WL 6934433, at *1 (N.D. Cal. Dec. 29, 2011); *accord Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 412 (D. De. 2010) ("[T]he Court must predict both the likelihood that the Third Circuit

2

will grant Defendants' Petition, and the likelihood that the Third Circuit will agree with Defendants on the substantive merits."); *see also, e.g.*, *Morris v Alle Processing Corp.*, No. 08-cv-4874, 2013 WL 6199579, at *1 (E.D.N.Y. Nov. 27, 2013) ("Defendants have also not shown that it is likely that [the] Second Circuit will even hear defendants' appeal under Rule 23(f)."). Defendants are unlikely to succeed on either of these counts.

As the parties seeking a stay, Defendants bear the burden of showing they have a likelihood of success on both of these fronts. Defendants have not even attempted to make this showing with regard to the granting of their 23(f) petition, an omission that by itself is fatal to its motion for a stay.

Defendants claim that stays pending 23(f) petitions are a regular occurrence, but "the Rule 23(f) appeal is never to be routine." *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002); *see also, e.g.*, *Sumitomo*, 262 F.3d at 140 ("[T]he standards of Rule 23(f) will rarely be met."); *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999) ("[S]tays will be infrequent"). Defendants cannot obtain a stay without explaining why their case is the rare case that merits immediate interlocutory appeal. Defendants have not done so. Even if the Court considered *sua sponte* the likelihood that the Second Circuit would grant Defendants' 23(f) petition, the result would be the same.

      1.      **Standard For Granting A Rule 23(f) Petition**

By nature, "interlocutory appeals are inherently interlocutory appeals are inherently 'disruptive, time-consuming, and expensive,' . . . and consequently are generally disfavored." *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)). The prudential concerns weighing against interlocutory appeal "are, if anything, even more compelling in the class action context," and therefore "interlocutory appeals should be the exception, not the rule." *Id.* at 1276; *Mowbray*,

3

208 F.3d at 294. The Second Circuit has held that a 23(f) petition may be granted in one of two situations:

> Petitioners seeking leave to appeal pursuant to Rule 23(f) must demonstrate either (1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) that the certification order implicates a legal question about which there is a compelling need for immediate resolution.

*Sumitomo*, 262 F.3d at 139. The Second Circuit explicitly noted that these standards "will rarely be met." *Id.* at 140.

The first category "comprises the so-called 'death knell' cases" – that is, "cases in which the class certification order effectively terminates the litigation either because the denial of certification makes the pursuit of individual claims prohibitively expensive or because the grant of certification forces the defendants to settle." *Id.* at 138. The reviewing court "must be wary lest the mind hear a bell that is not tolling," and "the party seeking leave to appeal ha[s] to further demonstrate, at a minimum, that 'the district court's ruling on class certification is questionable ... taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review.'" *Id.* (quoting *Blair*, 181 F.3d at 834-35) (ellipsis in original).

The second category, that of "a legal question about which there is a compelling need for immediate resolution," is satisfied only when the question "is of fundamental importance to the development of the law of class actions ***and it is likely to escape effective review after entry of final judgment***." *Id.* at 139-140 (emphasis added); *accord, e.g.*, *Mowbray*, 208 F.3d at 294 (category limited to "those instances in which an appeal will permit the resolution of an unsettled legal issue that is … likely to escape effective review if left hanging until the end of the case"); *Blair*, 181 F.3d at 835. Rule 23(f) does not "serve a precedent-creation function;" rather, a case

must be unlikely "to yield an appealable final judgment" for even an important legal question to merit immediate interlocutory appeal. *Weber v. U.S. Tr.*, 484 F.3d 154, 160 n.5 (2d Cir. 2007); *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 81 (2d Cir. 2004).

In both categories, the Second Circuit's "determination of whether the district court's decision is sufficiently questionable to warrant interlocutory review will be tempered by [its] longstanding view that the district court is often in the best position to assess the propriety of the class." *Sumitomo*, 262 F.3d at 139. "Views expressed by the district court at the time of class certification, although not required, [are] relevant to [the Second Circuit's] determination of whether interlocutory appeal iswarranted." *Id.* at 140.

### 2. This Case Does Not Meet The Standard For Granting A 23(f) Petition

This case does not meet the requirements set out by the Second Circuit for granting a 23(f) petition. The first category or potentially meritorious petitions, those in which "the certification order will effectively terminate the litigation," does not apply here, because even if Defendants' arguments on the *Gay* settlement's preclusive effect or the standing of purchasers of toothpaste products are successful, it would not dispose of the Court's class certification order.

First, the District Court correctly determined that the class action settlement approved in *Gay v. Tom's of Maine, Inc.*, No. 14-cv-60604 (S.D. Fla. Mar. 11, 2016), ECF No. 43, does not preclude the District Court's class certification order in this matter. Plaintiffs in this action purchased various Tom's of Maine Products with labeling and packaging that was different than the labeling and packaging that was the subject of the settlement in *Gay*, and the purchases at issue in this action were made well after the class period covered by the *Gay* settlement. Plaintiffs' claims therefore depend on proof of different transactions, during a different time period, and do not involve the identical factual predicate at issue in *Gay*.

Even if Defendants are correct about the *Gay* settlement's preclusive effective, it would

5

not dispose of the Court's class certification order because there is no concrete evidence to suggest that Plaintiff Moran was a member of the *Gay* settlement class. Moran Dep. at 20:11-12, ECF No. 144-1 at 21. Moreover, all three plaintiffs continued purchasing the products well after September 23, 2015 (the last day of the *Gay* class period), unaware that any settlement had taken place**.** Thus, even if the Court determines the *Gay* settlement precludes Plaintiff Wright and Plaintiff de Lacour's claims, the *Gay* settlement does not dispose of the Court's class certification order because (1) Plaintiff Moran did not purchase Tom's of Maine Products within the *Gay* class period, and (2) both Plaintiff Wright and Plaintiff de Lacour made purchases of Tom's of Maine Products well after the *Gay* class period ended and the product labeling and packaging had changed.

Second, Defendants' argument with regard to the standing of toothpaste purchasers would similarly fail to dispose of the Court's class certification order. Here, the District Court certified a class of "[a]ll persons who purchased Tom's of Maine deodorant and/or toothpaste products" in New York, California, and Florida. Order at 33, ECF No. 146. Even if Defendants' arguments are valid (they are not), it would only narrow the class to deodorant purchasers. *See Sumitomo Copper Litig.*, 262 F.3d at 143 (declining to exercise interlocutory review because it "arguably would not alter the district court's grant of certification with respect to the common-law fraud claim"). A Rule 23(f) appeal is even further ill-fitting because class standing for unpurchased products is not a "novel legal question," nor is it "likely to escape effective review after entry of final judgment." *See id.* at 140.

> **3.   Defendant Has Not Made A Strong Showing That It Is Likely To Succeed On The Merits If The Second Circuit Accepts Its 23(f) Petition**

As discussed above, Defendants' failure to show a likelihood of success on the merits of their 23(f) petition is an independently sufficient ground to deny the stay request. In support of their 23(f) petition, Defendants make two arguments, both of which are without merit.

First, as discussed above, Defendants argue that Plaintiffs are barred from litigating their claims because they are based on purchases of products covered by the *Gay* settlement. Def. Br. at 14. In doing so, Defendants contend that the District Court too narrowly construed the "identical factual predicate" rule when it expressly found that Plaintiffs' claims, based on modified labeling and packaging, did not depend on the very same set of facts as those in *Gay*. *Id*. at 15. That is wrong. The "identical factual predicate" rule does not apply because Plaintiffs' claims depend on proof of different transactions, during a different time period, and involve distinctive product packaging that was not at issue in the *Gay* action.

"Plaintiffs in a class action may release claims <u>that were or could have been pled</u> in exchange for settlement relief." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). "Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions…" *In re Literary Works In Electronic Databases Copyright Litig.*, 654 F.3d 242, 247-48 (2d Cir. 2011). However, "a settlement agreement's bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). "Any released claims not presented directly in the complaint," therefore, "must 'be based on the identical factual predicate as that underlying the claims in the settled class action.'" *In re Literary Works*, 654 F.3d at 248 (citing *TBK Partners, Ltd. v. W. Union Corp.,* 675 F.2d 456, 460 (2d Cir. 1982)).

Plaintiffs' claims were not even actionable at the time of the *Gay* settlement release because the modified packaging was not yet in existence. Further, Plaintiffs' claims were also not yet ripe because they had not yet purchased the Tom's of Maine Products with the modified packaging. Thus, the injuries Plaintiffs seek to redress had not even occurred at the time of the execution of

the settlement agreement in *Gay*, and that settlement agreement is not enforceable to bar later claims based on injuries that had not yet occurred and were not included in the scope of the *Gay* allegations. *See Willner v. Manpower Inc.*, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014) (a release of claims that "go beyond the scope of the allegations of the operative complaint" is impermissible).

Second, Defendants argue that the misrepresentations at issue in connection with their toothpaste products do not "implicate[] the same set of concerns" as the misrepresentations at issue with their deodorant products and, therefore, the Court improperly granted class certification as to "unpurchased products." Def. Br. at 21-22 (internal quotations omitted). That is wrong.

"[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *See Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)).[2]

Here, Defendants manufacture and sell 17 varieties of deodorant, such as 'Unscented' or 'Tea Tree,' and 34 flavors of toothpaste, such as 'Cinnamon Clove' and 'Mild Mint.'" "The

---

[2] Defendants argue this Court's "expansive" standard "conflicts with the rules" of sister circuits. Def. Br. at 18. That is incorrect. *See, e.g.*, *Marcus v. BMW of North America, LLC*, 687 F.3d 584, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types."); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) ("The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.").

labelling for each of these products contains the representation that they are 'natural.'" *See* Order at 2, ECF No. 146; *see also* Murphy Dep. at 58:20-60:4, 65:10-13, Westcot Decl. Ex. 2, ECF No. 110-2 at 4, 7. Plaintiffs' central contention is that Tom's of Maine's products are not, in fact, "natural." Instead, "[t]he toothpaste and deodorant products at issue contain allegedly synthetic, artificial, and chemically processed ingredients, including, *but not limited to*, sodium lauryl sulfate ('SLS') and propylene glycol." *Id.* (internal quotations omitted) (emphasis added); *see also* Product List, Westcot Decl. Ex. 1, ECF No. 110-1 at 2-4. "As a result, Plaintiffs argue, Tom's of Maine's 'natural' labelling is false and misleading and led Plaintiffs to purchase the company's products at a 'price premium.'" Order at 3.

The first prong is easily, and undisputedly, satisfied. Def. Br. at 20 (contesting only whether "the challenged conduct implicates the same set of concerns …."); *see also* Order at 8 ("The first requirement of this test is satisfied here because Plaintiffs have alleged that they each suffered an actual injury as a result of Tom's of Maine's labelling of its deodorant.").

The second prong is also easily satisfied. Defendants' misrepresentations for their deodorants "implicate[] the same set of concerns" as Defendants' misrepresentations for their toothpastes because "the nature and content of the specific misrepresentations" is the same for both. *See NECA*, 693 F.3d at 162; *see also Holve v. McCormick & Company, Inc.*, 334 F. Supp. 3d 535, 551 (W.D.N.Y. 2018). The "content" is identical; both products claim they are "natural." Order at 2. The "nature" of the misrepresentations is the same because Defendants sell both products, and—contrary to their "natural" labelling—both products contain "allegedly synthetic, artificial, and chemically processed ingredients …." *Id.* at 3 (internal quotations omitted); *see also Suarez v. California Natl. Living, Inc.*, 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019). The harm that flows from Defendants' conduct is also the same, having "led Plaintiffs to purchase the

9

company's product at a 'price premium.'" *See* Order at 3.  Put together, Plaintiffs' claims are "similar … in all essential respects," with "the proof contemplated" for both products "sufficiently similar." *See Retirement Bd. of Policemen's Annuity*, 775 F.3d at 161.  Plaintiffs thus possess a "sufficiently personal and concrete stake" and have plainly established class standing for toothpaste purchasers. *See id.* at 163.

### B. Defendant Has Not Alleged Irreparable Harm

Defendants have also failed to identify any irreparable injury.  Defendants only reference in passing the "significant costs that both parties will undertake" as the basis for any potential harm they may suffer should a stay not be granted.  But litigation costs are not considered a reason to stay a case, even if Defendants had demonstrated any likelihood of success.

Defendants cite no cases that equate litigation expenses with irreparable harm, nor can they: "It is well established that '[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'" *In re Bogdanovich*, No. 00-cv-2266, 2000 WL 1708163, at *6 (S.D.N.Y. Nov. 14, 2000) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)) (alteration in original); *see also, e.g.*, *Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d Cir. 1991) ("[D]elay, loss of business reputation, and the cost of litigation alone are insufficient to establishirreparable harm"); *Liberty Synergistics, Inc. v. Microflo Ltd.*, No. 11-cv-523, 2013 WL 101427, at *2 (E.D.N.Y. Jan. 8, 2013).

### C. A Stay Would Substantially Injure Class Members

Defendants entirely ignore the third factor in the stay analysis, "whether issuance of the stay will substantially injure the other parties interested in the proceeding," as to the members of the Class. *Nken*, 556 U.S. at 426.  While they state that a "stay of any length…will not prejudice Plaintiffs" and that Plaintiffs "only seek modest individual damages in this case," they fail to address the injury suffered by members of the Class.  Motion at 6.  Here, Class members' interests

weigh against a stay. Consumers have a strong interest in being fully compensated for losses they have suffered.

## D.     A Stay Is Contrary To The Public Interest

Defendants also entirely ignore the fourth and final factor in the stay analysis, the interest of the public. *Nken,* 556 U.S. at 434. For the reasons referenced above regarding absent class members' interests in being fully compensated for losses they have suffered, this factor weighs against Defendants' stay request.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to stay.

Dated:  July 9, 2021                                               Respectfully submitted,

**BURSOR & FISHER, P.A**

By:     */s/ Sarah N. Westcot*

Sarah N. Westcot (admitted *pro hac vice*)
701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-2700
Email: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
Joshua D. Arisohn
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ndeckant@bursor.com
             jarisohn@bursor.com

*Counsel for Plaintiffs and the Class*