**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v.<br><br>COLGATE-PALMOLIVE CO., and TOM'S OF MAINE INC.,<br><br>                    Defendants. | Civil Action No. 1:16-cv-08364-KMW |

**[REDACTED] MEMORANDUM OF LAW IN SUPPORT OF**
**TOM'S OF MAINE INC.'S MOTION FOR SUMMARY JUDGMENT**

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

*Attorneys for Defendants Colgate-*
*Palmolive Co. and Tom's of Maine,*
*Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................ 3

    I.    Tom's Is an Industry Leader in Transparency and the Manufacture of
Personal and Oral Care Products Marketed as Safe, Effective, and Natural. ........ 3

    II.   Plaintiffs Seek ███████ in Damages from Tom's Based on Vague
Allegations that the Word "Natural" on the Front of the Packaging
Deceives Consumers. ................................................................................................ 5

    III.   Plaintiffs Offer No Survey Evidence of How Consumers Construe
"Natural," and Plaintiffs and Their Proffered Experts Do Not Agree on
What "Natural" Means. ............................................................................................ 5

    IV.   Plaintiffs' Proffered Injury and Damages Experts Rely Exclusively on a
Conjoint Model that Yields Nonsensical Results and Is Undercut by Real-
World Data. .............................................................................................................. 6

LEGAL STANDARD ................................................................................................... 7

ARGUMENT ................................................................................................................ 7

    I.    The *Gay* Settlement Bars the Named Plaintiffs' Individual Claims. ..................... 7

    II.   Plaintiffs Have Not Produced Evidence of a Triable Fact on Deception. ........... 10

        A.   Plaintiffs Have Not Produced Evidence of How Reasonable
Consumers Understand the Term "Natural" on Tom's Toothpaste
and Deodorant. ........................................................................................... 11

        B.   Plaintiffs Have Not Produced Evidence that Tom's Products Fail to
Meet Reasonable Expectations for "Natural" Toothpaste and
Deodorant. .................................................................................................. 14

        C.   There Is No Dispute that Tom's Provides the Information about Its
Ingredients and Processing Steps that Plaintiffs Claim Is Missing. .......... 15

    III.   There Is No Reliable Evidence that the Class Has Been Injured. ........................ 17

        A.   Plaintiffs' Conjoint Shows No Injury to Plaintiffs. ................................. 18

        B.   Defendants Are Entitled to Summary Judgment for Deodorants
that Did Not Feature the Word "Natural" on the Front Label. ................ 19

        C.   Plaintiffs' Theory of Injury Is Not Cognizable. ....................................... 19

    IV.   Plaintiffs Lack Standing to Pursue Injunctive Relief. ......................................... 20

    V.   New York Law Bars Plaintiffs' Claim for Classwide Statutory Damages. .......... 20

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*1256 Hertel Ave. Assocs., LLC v. Calloway*,
  761 F.3d 252 (2d Cir. 2014)............................................................................ 24

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020)............................................................................ 20

*Bivens v. Gallery Corp.*,
  134 Cal. App. 4th 847 (Cal. Ct. App. 2006) ................................................. 10

*Borenkoff v. Buffalo Wild Wings, Inc.*,
  2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ................................................. 17

*Boswell v. Bimbo Bakeries USA, Inc.*,
  570 F. Supp. 3d 89 (S.D.N.Y. 2021)......................................................... 16, 17

*Brazil v. Dole Packaged Foods, LLC*,
  660 F. App'x 531 (9th Cir. 2016) ................................................................. 17

*Burgess v. Citigroup Inc.*,
  624 F. App'x 6 (2d Cir. 2015) ......................................................................... 8

*D'Antonio v. Metro. Transp. Auth.*,
  2010 WL 1257349 (S.D.N.Y. Mar. 31, 2010) ............................................... 7

*Douglas v. Seacoast Prod., Inc.*,
  431 U.S. 265 (1977).......................................................................................... 25

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ......................................................................... 10

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.*,
  2021 WL 4502439 (E.D.N.Y. Sept. 30, 2021) ............................................. 16

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)........................................................................... 15

*Gasperini v. Center for Humanities, Inc.*,
  518 U.S. 415 (1996)......................................................................................... 23

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019) ......................................................................... 25

*Hanna v. Plumer*,
  380 U.S. 460 (1965)......................................................................................... 24

*Hughes v. Ester C Co.*,
  330 F. Supp. 3d 862 (E.D.N.Y. 2018) ..................................................... 10, 13

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011).............................................................. 9

*In re Gen. Motors LLC Ignition Switch Litig.* ("*In re GM*"),
   427 F. Supp. 3d 374 (S.D.N.Y. 2019)............................................................ 2, 3, 18

*In re KIND LLC "Healthy & All Natural" Litig.* ("*KIND*"),
   2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022)....................................................... passim

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011)........................................................................ 8, 9

*In re Scotts EZ Seed Litig.*,
   2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) ......................................................... 22

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) .............................................................. 17

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
   2021 WL 3666312 (S.D. Fla. Aug. 18, 2021)....................................................... 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................. 20

*McAnaney v. Astoria Fin. Corp.*,
   2007 WL 2702348  (E.D.N.Y. Sept. 12, 2007). ..................................................... 9

*McLaughlin v. American Tobacco Co.*,
   522 F.3d 215 (2d. Cir. 2008)....................................................................... 20

*Montera v. Premier Nutrition Corp.*,
   -- F. Supp.3d --, 2022 WL 3348573 (N.D. Cal. Aug. 12, 2022)...................................... 25

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ................................................................... 16, 17

*Myun-Uk Choi v. Tower Rsch. Cap. LLC*,
   2020 WL 1503446 (S.D.N.Y. Mar. 30, 2020) ......................................................... 7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) ............................................................................... 10

*Parker v. Time Warner Ent. Co.*,
   331 F.3d 13 (2d Cir. 2003)......................................................................... 25

*Rule v. Brine, Inc.*,
   85 F.3d 1002 (2d Cir. 1996)........................................................................ 7

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) .................................................................... 3, 21, 22, 24

*Sharpe v. A&W Concentrate Co.*,
   2021 WL 3721392 (E.D.N.Y. July 23, 2021) ........................................................ 22

*Simmons v. Author Sols.*, LLC,
   2015 WL 4002243 (S.D.N.Y. July 1, 2015) ..................................................... 23, 24

*Small v. Lorillard Tobacco Co., Inc.*,
   94 N.Y.2d 43 (1999) ............................................................................... 17

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
 251 U.S. 63 (1919) ................................................................................... 25

*Steele v. Wegmans Food Mkts., Inc.*,
 472 F. Supp. 3d 47 (S.D.N.Y. 2020) ........................................................ 17

*Strumlauf v. Starbucks Corp.*,
 2018 WL 306715 (N.D. Cal. Jan. 5, 2018) ............................................... 10

*Stutman v. Chem. Bank*,
 95 N.Y.2d 24 (2000) ................................................................................. 19

*TBK Partners, Ltd. v. Western Union Corp.*,
 675 F.2d 456 (2d Cir. 1982) ........................................................................ 8

*White v. H&R Block, Inc.*,
 2004 WL 1698628 (S.D.N.Y. Jul. 28, 2004) ........................................... 20

*Yu v. Dreyer's Grand Ic e Cream, Inc.*,
 2022 WL 799563 (S.D.N.Y. Mar. 16, 2022) ........................................... 17

**Statutes**

28 U.S.C. § 2072(b) ........................................................................................ 22

C.P.L.R. § 901(b) ..................................................................................... 21, 22

N.Y. Ins. Law § 5106(a) ................................................................................ 22

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................ 7

# PRELIMINARY STATEMENT[1]

Despite six years of litigation, Plaintiffs have failed to produce enough evidence to withstand summary judgment.   Their core theory is that the word "natural" on the front of Tom's of Maine's deodorant and toothpaste labels misleads reasonable consumers and caused them to overpay for these products.   Under that theory, Plaintiffs must show that reasonable consumers would believe that a handful of ingredients—which begin as birch, corn, citrus fruits coconut, palm nut, or other plants and vegetables—become "unnatural" when processed for safety and efficacy to be used in toothpaste and deodorant.   But now that the record is closed, the holes in their case are clearer than ever.  Tom's is entitled to summary judgment for four reasons.

***First***, Named Plaintiffs released these claims as part of a prior class action (*Gay*) that settled class members' claims "related in any way" to Tom's "natural" representations, including "future identical statements."   SUMF ¶¶ 47-52.   When the Court certified the classes in April 2021, it found that Plaintiffs ***might*** build a case against Tom's based on packaging ***changes*** that the *Gay* settlement compelled.   Plaintiffs declined to do so.  Instead, they have re-litigated *Gay*, as Defendants showed in their decertification motion (ECF No. 221).   Plaintiffs now own up to this, conceding their case is "based upon" Tom's "natural" representation, which is unchanged since *Gay*.  ECF No. 225 at 4.   Under clear Second Circuit precedent, this means that the *Gay* release applies to the Named Plaintiffs' claims, because those claims are based upon the same factual predicate as *Gay*.   With no plaintiffs to represent the classes, the case cannot proceed.   In a different case, counsel might be able to substitute plaintiffs.   But that will not work here,

---

[1] Unless otherwise indicated, (1) all defined terms share the same meaning as in Tom's concurrently filed Rule 56.1 statement ("SUMF"), (2) all factual citations are to the SUMF or the October 24, 2022 Declaration of Hannah Y. Chanoine ("Chanoine Decl.") (3) all internal citations and quotation marks are omitted, and (4) all emphasis is added.

because—as explained in the decertification motion—the *Gay* release also bars a substantial portion of the class.  The Court should grant Tom's summary judgment and decertify the classes.

**Second**, Plaintiffs tried the same playbook to prove deception that failed after many years of litigation in *In re KIND LLC "Healthy & All Natural" Litig.* ("*KIND*"), 2022 WL 4125065, at *7-16 (S.D.N.Y. Sept. 9, 2022) (Buchwald, J.)—another "natural" false advertising case—and this Court should grant summary judgment for the same reasons.  Like the *KIND* plaintiffs, Plaintiffs and their experts have never tested consumers' understanding of "natural," and they disagree about what "natural" means.  This leaves Plaintiffs with no proof of how reasonable consumers understand the "natural" representation on Tom's toothpaste or deodorant, and no proof that Tom's does not meet **that** understanding of "natural."  As in *KIND*, Tom's "cannot be held liable because it has failed to adjust its labeling to hit the moving target of counsel's various solicited understandings of '[] Natural.'"  *Id.* at *12.  Moreover, to the extent consumers had any questions about how Tom's ingredients are sourced or processed, Tom's invites consumers to review that information published on its website—where consumers could find all of the "processing" information Plaintiffs allege that Tom's omits.  Plaintiffs do not dispute the accuracy of this information—another reason summary judgment is appropriate.

**Third**, under Plaintiffs' injury theory, they must demonstrate that they paid **more** for what they purchased than what they received.  Plaintiffs' proffered experts try to do this by theorizing about the price of Tom's toothpaste and deodorant in a hypothetical but-for world in which the products are **not** marketed as "natural."  But as Judge Furman has held, a demand-side only model like the one here cannot—as a matter of law—isolate a price premium theoretically paid by consumers.  *In re Gen. Motors LLC Ignition Switch Litig.* ("*In re GM*"), 427 F. Supp. 3d 374, 385 (S.D.N.Y. 2019).  That is because the model sidesteps Economics 101, namely, that to predict a price in the but-for world, one needs to show the impact of that but-for world on **both**

supply **and** demand curves.  Among other defects, Plaintiffs only attempt to measure half the story, *i.e.*, what happens to the demand curve if one were to remove the word "natural," without predicting what happens to the supply curve in the same hypothetical.  Without that missing piece, Plaintiffs cannot show a but-for world price premium.  As in *In re GM*, Plaintiffs "have no evidence of the market price of 'what they received,'" and cannot show overpayment injury. *Id.*

 **Finally**, Plaintiffs' claim for New York statutory damages **of** ████████ fails because New York law precludes the statutory damages remedy in class actions brought under statutes like General Business Law ("GBL") §§ 349 and 350, which provide for actual damages.  In these circumstances, the statute is a choice of remedies provision.  New York's statutory damages bar therefore applies.  The plurality opinion in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), does not control, because that case concerned a different statute that allowed **only** statutory damages.  Constitutional avoidance supports this construction, because it will prevent plaintiffs from forum-shopping their way to federal court to threaten defendants with a damages award —like Plaintiffs' ████████ claim here—that offends due process.

**BACKGROUND**

**I.**  **Tom's Is an Industry Leader in Transparency and the Manufacture of Personal and Oral Care Products Marketed as Safe, Effective, and Natural.**

 Since its beginning in the 1970s, Tom's has adhered to a set of guiding principles, known as its Stewardship Model, when producing personal and oral care products.  Chanoine Decl. Exs. 1, 2.  The Stewardship Model provides, among other things, that Tom's use ingredients "sourced and derived from nature," "not tested on animals," and "free from artificial flavors, fragrances, colors, and preservatives."  SUMF ¶ 9.  Following this model, Tom's puts the word "natural" on most of its front packaging.  SUMF ¶ 1.  In November  2020, for example, Tom's removed the "natural" claim from its Long-Lasting deodorant line for space reasons.  SUMF ¶¶ 6, 7.  Since

3

2016, Tom's net U.S. sales of toothpaste and deodorants/antiperspirants have averaged ███

███ per year.  SUMF ¶¶ 36, 37.

Like many makers of products labeled "natural," Tom's has been the target of class actions in recent years.  In the now-settled *Gay v. Tom's of Maine* lawsuit, a group of plaintiffs challenged the "core representation" on Tom's packaging, *i.e.*, the word "natural" on the front of the packaging, which they claimed misled consumers into believing that Tom's products were "natural" when they in fact "contain[] unnatural, synthetic, and chemically-processed ingredients."  SUMF ¶¶ 38, 39.  The *Gay* class included purchasers of all Tom's products from March 25, 2009 to September 23, 2015.  SUMF ¶ 65.

As part of the *Gay* settlement, Tom's made two key changes, as depicted here.  First, it modified its packaging to put its website address next to a call-out to "Learn more about our Stewardship Model and what we mean by 'natural'" just above the "goodness box" on the products' back labels.  SUMF ¶¶ 68, 72.  Second,



it expanded the information about the Stewardship Model available on its website and added pages of information detailing the purpose, source, and processing for each ingredient in its products.  SUMF ¶¶ 12-32.  Every page on Tom's website displays a banner through which the consumer can choose to "Learn what we mean by natural" and "Explore our ingredients."  SUMF ¶ 11.   As the *Gay* class explained to Judge Moore, these changes to the back of the

packaging and website "resolv[ed] the root cause of the Actions" and provided Tom's consumers "disclosures as to its definition of 'natural' so that consumers will receive the necessary notice to make informed decisions when purchasing the Covered Products."  SUMF  ¶ 54.

**II.    Plaintiffs Seek ▮▮▮▮▮ in Damages from Tom's Based on Vague Allegations that the Word "Natural" on the Front of the Packaging Deceives Consumers.**

Plaintiffs filed this case in 2016, seeking to certify a class beginning the day after the *Gay* class period ended, claiming that the word "natural" on the front of Tom's toothpaste and deodorant packaging is "alleged to be false," because the products contain "ingredients that are synthetic and highly chemically processed."  SUMF ¶ 77.   Plaintiffs do not challenge any other representation on the label.  Chanoine Decl. Ex. 3.  Plaintiffs seek damages for the alleged price premium they paid due to the alleged misrepresentation under California, Florida, and New York law, and for breach of express warranty under those states' common law.  SUMF ¶¶ 79, 80. They also seek classwide damages of ▮▮▮▮▮ for the same alleged injury under New York law based on their alleged entitlement to $550 per unit of toothpaste and deodorant sold.  SUMF ¶ 81.  They abandoned any claim to classwide injunctive relief.  SUMF ¶ 105.

In 2021, the Court certified classes of California, Florida, and New York toothpaste and deodorant purchasers for the false advertising claims, and a class of California purchasers for the express warranty claims.  SUMF ¶ 86, 87.  As the order recognizes, none of the three Named Plaintiffs purchased Tom's toothpaste during the Class period, two of them are undisputedly members of the *Gay* class, and the "evidence suggests" that the third is too.  SUMF ¶¶ 88, 89.

**III.   Plaintiffs Offer No Survey Evidence of How Consumers Construe "Natural," and Plaintiffs and Their Proffered Experts Do Not Agree on What "Natural" Means.**

Plaintiffs' proffered consumer survey expert, Brian Sowers, conducted surveys that he claims show the "natural" representation deceives consumers.  But Sowers did not even "ask consumers what they think 'natural' means."  SUMF ¶ 132.  Instead, he asked participants to

choose whether they thought Tom's toothpaste and deodorant contain "only natural ingredients," "some natural ingredients," or "no natural ingredients."  He defined "natural" as "not artificial," and "artificial" to mean "not natural."  SUMF ¶¶ 129-31.  He did not ask consumers if they agreed with that understanding, or whether, what, or how much processing they believed would make a natural substance unnatural.  SUMF ¶¶ 132–39.  Named Plaintiffs and Sowers' survey participants (when not prompted by his question) expressed a variety of understandings about what "natural" means.  SUMF ¶¶ 100-102; 145-46.

Plaintiffs' material expert, Dr. Zhaohui Zhou, disagreed with Sowers.  Zhou testified that the "only natural ingredients" definition that Sowers posed did not capture a "key aspect" of Zhou's conception of "natural"—that ingredients must be "minimally processed."  SUMF ¶ 166.  Zhou testified that ice and smashed garlic are not "natural" because there is "a lot of chemical reaction"—thus more than "minimal processing"—when water freezes or garlic is smashed.  SUMF ¶¶ 161-63.  Defendants have moved to exclude the opinions of Sowers and Zhou as unreliable and irrelevant.

## IV.   Plaintiffs' Proffered Injury and Damages Experts Rely Exclusively on a Conjoint Model that Yields Nonsensical Results and Is Undercut by Real-World Data.

Plaintiffs' two proffered injury and damages experts, Dr. J. Michael Dennis and Colin Weir, attempted to demonstrate that Plaintiffs overpaid for products labeled "natural" through the use of conjoint surveys.  SUMF ¶¶ 109, 110, 118.  According to Dennis and Weir, those surveys are intended to measure the theoretical value of individual product attributes, which they refer to as the "price premium" or "part-worth," attributable to each product attribute.  SUMF 112, 118.  But Dennis and Weir failed to account for real-world data showing that consumers paid the same price for Tom's Long-Lasting deodorant after Tom's removed the "natural" claim from the packaging.  SUMF ¶ 124.  Dennis's model also calculates absurd price premiums at

certain price points and ***could not calculate any*** price premium below others:  $5.99 for deodorant and $4.00 for toothpaste—prices that many Class members paid during the Class Period.  Chanoine Decl. Ex. 33 at ¶ 106.  And the part-worths that Dennis calculated for just five attributes of Tom's deodorant—excluding the "natural" attribute—totaled $10.92, well over the $7.99 purchase price for the entire test product that Dennis used for his experiment.  *Id*. at Fig. 12.  Defendants have moved to exclude the opinions of Dennis and Weir as unreliable.

## LEGAL STANDARD

The moving party is entitled to summary judgment when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party may satisfy its burden by pointing to the absence of evidence supporting the non-moving party's claims.  *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 2020 WL 1503446, at *3 (S.D.N.Y. Mar. 30, 2020).  Once the moving party meets its burden, the non-moving party must present evidence showing that a genuine issue of material fact exists.  *Id.* The non-moving party cannot "escape summary judgment … by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."  *D'Antonio v. Metro. Transp. Auth.*, 2010 WL 1257349, at *3 (S.D.N.Y. Mar. 31, 2010).  Instead, it must present declarations, depositions, or other admissible evidence showing that a genuine issue of material fact exists.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  When the non-moving party fails to present sufficient evidence, summary judgment is warranted.  *Tower Research*, 2020 WL 1503446, at *3.

## ARGUMENT

**I.    The *Gay* Settlement Bars the Named Plaintiffs' Individual Claims.**

Defendants are entitled to summary judgment on each of the Named Plaintiffs' claims because all of their claims are barred by the settlement and release in *Gay*.  It is undisputed that

two Named Plaintiffs are members of the *Gay* class who did not opt out of the *Gay* settlement, and the Court found the "evidence suggests" the third is as well.  SUMF ¶¶ 88-92.[2]  In that settlement, *Gay* class members released all past, present, and future claims "related in any way to 'natural'" statements, including "***future identical statements***" on Tom's labels.  SUMF ¶¶ 38-66.  The settlement permissibly released—and bars class members from asserting—future claims predicated on the same core conduct that was alleged or litigated in *Gay*, even if those claims were "independent injuries."  *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248–49 (2d Cir. 2011) (upholding release of future claims arising from future infringing acts because they arose from the same challenged practice of publishing works-for-hire without consent); *see also* ECF No. 218 ("Decertification Motion") at 12–15.  That is because a trial of the first suit would have determined if the defendant could continue the challenged practice.  *See In re Literary Works*, 654 F.3d at 248–49.  The test in this Circuit is whether the cases share an identical factual predicate, *i.e.*, they "depend upon proof" of the same core facts, *see Burgess v. Citigroup Inc.*, 624 F. App'x 6, 9 (2d Cir. 2015), or share a "realistic identity of issues," *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982).

As Defendants demonstrated in the Decertification Motion, Plaintiffs' claims depend on proving the same facts that were at the core of *Gay*—that Tom's practice of putting the word

---

[2] Ms. de Lacour and Ms. Wright admitted that they purchased Tom's for years during the *Gay* class period.  SUMF ¶¶ 93, 95.  Ms. Moran also testified that she made her first purchase of Tom's products in September 2015, and the *Gay* class period ended on September 23, 2015.  SUMF ¶¶ 89, 94 (noting that "evidence suggests" Ms. Moran is also a class member).  But even if the Court were to find that there is a disputed fact issue about her membership in the *Gay* class, it should decertify the New York class, because weeding out *Gay* class members would require individualized inquiry into whether each absent *de Lacour* class member purchased a Tom's product during the nearly seven-year *Gay* class period.  *See* Decertification Motion at 19–20.

"natural" on the front of its toothpaste and deodorant packaging allegedly misleads reasonable consumers because certain ingredients are supposedly artificial.  *See* Decert. Mot. at 12–19.

Plaintiffs now admit as much.  After contending that their claims were based on "packaging that was ***modified*** following the settlement in Gay," SUMF ¶ 106, they now agree that the "natural" representation "has been the focus of the litigation from the very beginning." ECF No. 225 at 4.  That admission is consistent with their experts' opinions, which were limited to the same claims, ingredients, and alleged price premium that were at issue in *Gay*.  *See* ECF No. 218 at 16–17; *see also* SUMF ¶¶ 84, 85.   With a different caption, those same opinions could have been offered in support of the plaintiffs' claims in *Gay.*

The *Gay* release bars the claims of the Named Plaintiffs as *Gay* class members. *See In re Literary Works*, 654 F.3d at 248; *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 399 (S.D.N.Y. 2011) (future claims barred "where there is a realistic identity of issues between the former and future cases").  And when individual defenses bar class representatives' claims after certification, the court should decertify the class, or class counsel must try to substitute plaintiffs. *See McAnaney v. Astoria Fin. Corp.*, 2007 WL 2702348, at *13 (E.D.N.Y. Sept. 12, 2007).  But substituting plaintiffs would be futile here.  As Defendants explain in the Decertification Motion, the Classes include large numbers of repeat purchasers of Tom's products who—like the Named Plaintiffs—are enjoined by the *Gay* release from pursuing this action.

Defendants long ago raised the issue that the *Gay* settlement barred the Named Plaintiffs' claims*.*  Class counsel had ample time to identify new named plaintiffs, but chose not to do so. Instead they insisted to the Court that they were pursuing ***different*** claims from the one in *Gay*. As it turns out, none of that was true, as Plaintiffs have now conceded.  The Court should grant summary judgment on the Named Plaintiffs' claims, dismiss the claims of the Classes in the absence of any adequate representative to pursue their claims, and decertify the Classes.

Finally, were the Court to hold that the *Gay* release does not apply (because Plaintiffs'
claims center on post-*Gay* labeling changes), then the Court should nonetheless enter summary
judgment as to the Class.  There is no evidence in the record—as Plaintiffs never tried to develop
such evidence (nor could they)—that any post-*Gay* changes misled reasonable consumers.

## II.     Plaintiffs Have Not Produced Evidence of a Triable Fact on Deception.

To avoid summary judgment, Plaintiffs have the burden of producing evidence
demonstrating that "natural" on Tom's toothpaste and deodorant packaging would mislead
objectively reasonable consumers acting reasonably under the circumstances.[3]  *See Oswego*
*Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995).  It is not
enough to show that "some few consumers" were deceived.  *See Ebner v. Fresh, Inc.,* 838 F.3d
958, 965 (9th Cir. 2016).  Plaintiffs must demonstrate a "probability that a significant portion of
the general consuming public" or "targeted consumers" would be misled.  *Id.*  Here, this type of
claim required extrinsic evidence (1) demonstrating reasonable consumers' understanding of the
word "natural" on Tom's toothpaste and deodorant, (2) from which a factfinder could conclude
that Tom's toothpaste and deodorant did not comport with ***that*** understanding.  *See In re KIND*,
2022 WL 4125065, at *7–16; *see also Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 872
(E.D.N.Y. 2018) ("To satisfy the reasonable consumer standard, a plaintiff must adduce extrinsic
evidence—ordinarily in the form of a survey—to show how reasonable consumers interpret the
challenged claim.").  Plaintiffs have met neither burden.

---

[3] Plaintiffs must demonstrate a false and misleading statement under the same objective
consumer standard for their statutory claims under California, Florida, and New York law, *see*
*Bivens v. Gallery Corp.*, 134 Cal. App. 4th 847, 861 (Cal. Ct. App. 2006); *Jackson v. Anheuser-*
*Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *11 (S.D. Fla. Aug. 18, 2021), and their breach
of express warranty claims under those same state laws.  *Strumlauf v. Starbucks Corp.*, 2018
WL 306715, at *2, 9 (N.D. Cal. Jan. 5, 2018).

**A.      Plaintiffs Have Not Produced Evidence of How Reasonable Consumers Understand the Term "Natural" on Tom's Toothpaste and Deodorant.**

Plaintiffs have developed no evidence from which a trier of fact could determine reasonable consumers' understanding of the "natural" representation on Tom's toothpaste and deodorant.  Indeed, Plaintiffs and their experts have never inquired into consumers' understanding of the term "natural," and ***they themselves disagree*** about what "natural" means. This failure of proof requires summary judgment.  *See KIND*, 2022 WL 4125065, at *7.

Judge Buchwald encountered this same situation in a case concerning the "All Natural" representation on KIND bars.  *Id*. at *7.  The court granted summary judgment to KIND, finding that the plaintiffs failed to identify how reasonable consumers understood KIND's "All Natural" claim.  *Id.*  There, as here: (1) the plaintiffs' survey expert failed to ask consumers what "All Natural" means, leaving a factual void on the issue of what reasonable consumers expected when they purchased the products, (2) the plaintiffs' experts disagreed themselves about the meaning of "All Natural," (3) the plaintiffs' personal understanding of the term demonstrated a "diversity of views about how to understand the term 'All Natural,' and (4) there was no regulatory definition that could set an objective standard.  *Id.*, at *8–11.

1. *Plaintiffs' proffered survey expert did not ask consumers what "natural" or "artificial" mean.* As explained in Defendants' *Daubert* motion, the opinions of Plaintiffs' consumer survey expert, Brian Sowers, rest on serious methodological errors that require their exclusion.  But even setting those issues aside, his opinions do not demonstrate how objectively reasonable consumers would understand the "natural" representation on Tom's packaging because Sowers admitted that his assignment "wasn't to ask consumers what they think 'natural' means."  SUMF ¶ 132.  Instead, Sowers merely asked whether participants believed that "natural" means "contains <u>only</u> natural (*i.e.*, no artificial ingredients)," "contains <u>some</u> natural

ingredients and <u>some</u> artificial ingredients," or "contains <u>no</u> natural ingredients (i.e. only artificial ingredients)."  SUMF ¶ 133.  But this question is a complete circle, because Sowers said that "artificial" just means "not natural," SUMF ¶¶ 129-131, so it cannot say anything about how reasonable consumers understand the "natural" representation on Tom's packaging.  He did not ask what participants understood by the phrases "natural ingredients" and "artificial ingredients," or pose the question of how much processing would make toothpaste or deodorant "unnatural" in the minds of reasonable consumers.  SUMF ¶¶ 134-36.  And this is despite the fact that many participants' verbatim answers to other questions indicated that they had differing views of "natural" than the one Sowers presented them.  SUMF ¶¶ 145-46.

As Judge Buchwald explained in response to a very similar survey in *KIND*, a survey that does not even ask how reasonable consumers understand the term "natural" can "provide no useful information about how a reasonable consumer understands" the claim.  *See KIND*, 2022 WL 4125065, at *13–14.  Instead, it leaves unaddressed key fact issues necessary to prove the deception element of plaintiffs' claims, such as: "What processing, if any does a reasonable consumer believe can occur to an ingredient or product before that ingredient or product is considered artificial or synthetic?"  *KIND*, 2022 WL 4125065, at *12.  That same dispositive issue is at play here, but as in *KIND*, Plaintiffs have adduced no evidence to address it.

In fact, neither Plaintiffs nor their experts seem inclined to resolve these questions. Plaintiff Moran testified: "So it's a fine line, the question you're asking, the role of people in the creation of a product … Short of going outside and grabbing a leaf off a tree and rubbing it under your arms, people have to be involved somewhere.  So the degree that people are involved is the question."  *See* SUMF ¶ 103; *see also* SUMF ¶ 154 (Zhou testifying that "[a]nother issue here is people understand toothpaste is a manmade product with different ingredients.").  It sure is.  Yet Plaintiffs' survey expert did not even try to determine how much "human involvement" or

processing a reasonable consumer would believe makes a toothpaste or deodorant unnatural, leaving Plaintiffs with a key evidentiary gap they do not fill.  *See KIND*, 2022 WL at 13–14.

2.  *Plaintiffs' own experts cannot agree on what "natural" means*.  Plaintiffs' materials expert, Zhou, **disagrees** with the definition of "natural" that Sowers showed survey respondents.  Sowers' definition is incomplete, Zhou testified, because it failed to capture a "key aspect" of **his** understanding of "natural," *i.e.*, that ingredients must be "minimally processed."  SUMF ¶¶ 151-52.  Zhou admitted that there was no clear definition of "minimally processed," and that the concept was so amorphous that even freezing water and smashing garlic could be considered "unnatural" processes.  SUMF ¶¶ 159-63.  That is because, according to Zhou, there is "a lot of chemical reaction" when water freezes or garlic is smashed, such that freezing and smashing could be considered "highly processing" those ingredients.  SUMF ¶¶ 161-63.

3.  *Plaintiffs' personal understandings cannot set the objective standard.*  Plaintiffs' individual understandings of the "natural" representation are equally confused.  They advanced personal definitions that, while sharing some similarities, focused on different things.  de Lacour believes "natural" means "not altered," Moran thinks it means "not made or caused by people," and Wright says "natural" means "organic, natural, no synthetic type stuff."  SUMF ¶¶ 100-102.  Moran's standard is facially implausible—no one expects deodorant to be "not made or caused by people."  She admitted as much, but never clarified her understanding.  SUMF ¶ 103.  Wright's understanding imposes a totally different requirement, "organic," that none of the Plaintiffs, their experts, or the regulators mention.  de Lacour's "not altered" understanding does not expound on what amount of "altering" would be acceptable.  These vague notions and highly "anecdotal" understandings cannot show that a "broad section of reasonable consumers interpret the challenged statements in the manner Plaintiffs' allege."  *Hughes*, 330 F. Supp. at 872; *see also KIND*, 2022 WL 4125065, at *8–11.

4. *Plaintiffs cannot look to regulatory or industry standards to fill the void.* There is also no regulatory standard that could supply the missing reasonable consumer standard. The FDA has not promulgated a regulation governing the use of "natural" on personal care and oral care product labels. Moreover, the FDA has *solicited* comments on how to define "natural" in the context of food labeling, demonstrating that even the FDA believes the term can have many different meanings and no "single objective meaning to consumers." *See KIND*, 2022 WL 4125065, at *8 (collecting different definitions of "All Natural").[4] Zhou, Plaintiffs' materials scientist, acknowledges this in his report and further spotlights varying definitions of "natural," drawn from regulations, dictionaries, and scientific journals. See SUMF ¶¶ 155-58.

As in *KIND*, the failure of plaintiffs' experts to ask what reasonable consumers expect when purchasing "natural" toothpaste and deodorant, and their internal disagreement about what the term means, is a complete failure of proof on the first element of their deception claim: establishing reasonable consumers' understanding of the term "natural." *See KIND*, 2022 WL 4125065, at *8. In the absence of an objective standard, summary judgment is warranted, because Tom's "cannot be held liable because it has failed to adjust its labeling to hit the moving target of counsel's various solicited understandings of '[] Natural.'" *Id.* at *12.

**B.      Plaintiffs Have Not Produced Evidence that Tom's Products Fail to Meet Reasonable Expectations for "Natural" Toothpaste and Deodorant.**

Plaintiffs cannot satisfy the first prong of their deception theory, *i.e.* establishing reasonable consumers' understanding, as described above. *See supra* 11–14. Plaintiffs' claims also fail for the separate reason that there is no evidence that Tom's products fail to meet ***that***

---

[4] While FDA has an informal policy on foods labeled as "natural," that guidance conflicts with ***both*** Sowers' ***and*** Zhou's definition because: (1) ingredients that would "normally be expected to be in [a particular] food" can be considered "natural," regardless of their process; and (2) the guidance does not apply to "production methods," or "processing or manufacturing." SUMF ¶ 156.

standard.  Because Zhou and Sowers disagreed about the standard for "natural," Plaintiffs' two key expert opinions on deception are like ships passing in the night: Zhou did not apply the same "definition" that Sowers showed to survey participants; and Sowers did not test the "key aspect" of Zhou's definition, namely, whether consumers believe that ingredients that are more than "minimally" processed render a toothpaste or deodorant ***not*** natural.  SUMF ¶¶ 151-52, 166. There is therefore no evidence Tom's products fail to meet reasonable consumers' expectations for a "natural" toothpaste or deodorant.

This exact scenario played out in *KIND*.  Plaintiffs' survey and materials experts there applied different definitions of the term "All Natural" in their reports.  After finding that the plaintiffs had failed to submit proof of "a reasonable consumer's understanding" of KIND's "All Natural" claim, Judge Buchwald held that—even assuming that the plaintiffs could satisfy the objective standard requirement—their "claims would still not survive the motion for summary judgment for the independent reason that plaintiffs have not shown that any [] product claiming to be 'All Natural' contains 'artificial or synthetic' ingredients" because the experts applied different standards.  *In re KIND*, 2022 WL 4125065, at *14.  The same is true here.

### C.  There Is No Dispute that Tom's Provides the Information about Its Ingredients and Processing Steps that Plaintiffs Claim Is Missing.

Plaintiffs' own evidence shows that consumers have varied understandings of the term "natural."  *See supra* 13–14.  That does not prove deception.  *See KIND*, 2022 WL 4125065, at *13 (multiple definitions only "distorts the reasonable consumer standard").  The Court should also enter summary judgment because, to the extent consumers had questions about what was in Tom's toothpaste and deodorant, Tom's packaging and website information would have told them everything that Plaintiffs' claim is missing.  This "context is crucial."  *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).  False advertising claims require a context-specific

inquiry that includes the advertisement as a whole, qualifying language or disclosures, and reasonable consumers' overall shopping experience—"not limited to the physical label." *See Moore v. Trader Joe's Co.,* 4 F.4th 874, 882 (9th Cir. 2021).  Moreover, as Judge Furman observed, when front label claims can be interpreted more than one way, shoppers are on notice that they should look to the ingredient panel and elsewhere, because they know that the "devil is in the details." *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 94 (S.D.N.Y. 2021) (reasonable consumers would not be misled by "all butter" claim on cookies).[5]

Here, it is undisputed that consumers could find all of the challenged ingredients fully disclosed on Tom's labels, and that each deodorant and toothpaste package directs them to Tom's website to "Learn more about our Stewardship Model and what we mean by 'natural' at www.tomsofmaine.com."  SUMF ¶ 2.  Every Tom's webpage displays the link "Learn what we mean by natural," giving consumers one click access to Tom's "natural" definition, where consumers can also find accurate information about each ingredient's purpose in Tom's formulas, and how each ingredient is sourced, derived, and processed—including each ingredient that Plaintiffs challenge here.  SUMF ¶¶ 11-32.  Plaintiffs do not challenge this court-approved cue to visit the website, or anything on the website itself, as misleading.

For example, Plaintiffs allege that SLS is not "natural" because it "is a highly chemically processed surfactant, detergent, and emulsifier sourced from fatty acids that are extracted from coconut or palm oil, which are then chemically converted into esters and hydrogenated through the addition of chemicals to produce fatty alcohol."  FAC ¶ 27(j).  Plaintiffs allege further "the fatty alcohol is then sulfated and neutralized through further chemical processing to yield the

---

[5] *See also Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, 2021 WL 4502439, at *3 (E.D.N.Y. Sept. 30, 2021) (granting motion to dismiss because reasonable consumers would turn chapstick packaging over to read directions for use).

final ingredient." *Id.*  These *exact* details can be found on Tom's information page about SLS on its website, as excerpted here.  Courts routinely dismiss lawsuits challenging front-of-package labels for products that provide far less information to consumers.  *See Trader Joe's Co.*, 4 F.4th at 882; *Boswell*, 570 F. Supp. 3d at 9; *Yu v. Dreyer's Grand Ice Cream, Inc.*, 2022 WL 799563, at *7 (S.D.N.Y. Mar. 16, 2022) ("dipped in

## HOW IS IT MADE?

Our Stewardship Model guides us to select ingredients which have been processed in a manner that supports our philosophy of human and environmental health.

Sodium lauryl sulfate may be derived from either petroleum based or vegetable based sources. The SLS Tom's of Maine uses is entirely derived from the vegetable sources of coconut and/or palm kernel oil. The oils can be split into glycerin and the component fatty acids, one of which is lauric acid. The lauric acid is isolated and then hydrogenated to form the lauryl alcohol. Alternately, the whole oil can be esterified and then hydrogenated to form the fatty alcohols of which lauryl alcohol would be isolated by fractionation. The lauryl alcohol is then combined with sulfur which then forms the salt, sodium lauryl sulfate.

rich milk chocolate" not misleading where ingredients disclosed on product packaging).[6]

## III.    There Is No Reliable Evidence that the Class Has Been Injured.

Plaintiffs' claims also fail because they have not met their burden to show an actual injury for their statutory and common law claims by demonstrating that the allegedly deceptive conduct caused Class members to pay a higher price.  *See Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018); *Small v. Lorillard Tobacco Co., Inc.,* 94 N.Y.2d 43, 56 (1999) (rejecting deception-as-injury theory and holding that lost purchase price cannot be an injury); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 979 (S.D. Cal. 2014) (actual injury required element for express warranty claims).[7]

---

[6] *See also Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("Natural Flavor" not deceptive when there was some natural vanilla bean in ice cream).

[7] *See also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (UCL, CLRA, and FAL damage measured by "difference between the prices customers paid" and product's value, *i.e.*, "the 'price premium' attributable" to allegedly deceptive labels).

Plaintiffs try to meet their injury burden through Dennis and Weir.  Dennis purported to use the conjoint "method" to calculate a supposed overpayment injury caused by the alleged deception.  As Defendants explain in their *Daubert* motion, the Court should exclude Dennis and Weir's opinions because, among other reasons, they rely on doctored data and ignore real-world data that contradicts their model, leaving Plaintiffs with no evidence of injury.  But the Court can also grant summary judgment to Tom's because (1) a conjoint study that fails to account for supply-side factors in the but-for world cannot establish injury as a matter of law, and (2) New York rejects the "fraud on the market" mechanism on which Plaintiffs rest their injury theory.

### A.      Plaintiffs' Conjoint Shows No Injury to Plaintiffs.

Plaintiffs acknowledge that they must prove the difference in value between a product with the "natural" representation and one without it.  Dennis and Weir contend that the conjoint analysis allows them to do that by forecasting the products' market price ***without*** the "natural" claim (the market price in the "but-for" world), which they then compare to the actual price consumers paid for those products in the real world.  SUMF ¶¶ 113-116.  But Dennis's conjoint model is incapable of measuring price premium.  As Judge Furman held in *In re GM*, a conjoint study cannot calculate a but-for market price unless it can measure the quantity of products a supplier would be willing to sell at prices that consumers would be willing to pay in the but-for world.  427 F. Supp. 3d at 385.  Dennis's model did not consider but-for supply-side factors and cannot measure a price premium.  Plaintiffs "have no evidence of the market price of 'what they received,'" and the Court should grant summary judgment on this basis alone because they cannot show an overpayment injury for any of their claims.  *See id.*

Moreover, Dennis's analysis confirms that Named Plaintiffs (who say they purchased only deodorant) have suffered no injury from any alleged misrepresentation on ***toothpaste***.  As Dennis admitted, he conducted different surveys and calculated "pretty different price

premiums" for Tom's toothpaste and deodorant: ██████████████████ for

deodorant.  SUMF ¶¶ 113-14.  Dennis needed two surveys because, as a "scientific" matter,

"[t]hese are two different product categories" with "different ingredients," "different

competitors," and "different price points," and "even just the actual substance of what is being

sold is different."  SUMF ¶ 111.  Sowers confirmed that it would have been "improper from a

survey design perspective" to lump "natural" toothpaste and deodorant purchasers together

because the perceptions of deodorant purchasers about toothpaste, and vice versa, "are

irrelevant."  SUMF ¶ 127.  Named Plaintiffs, however, never paid the alleged ████ premium

for Tom's toothpaste—in fact, they never paid *anything* for Tom's toothpaste—so they have not

suffered any injury as a result of any toothpaste claim.  Summary judgment should be entered

against them and the toothpaste Classes decertified.  *See* Decertification Motion at 22–25.

**B.      Defendants Are Entitled to Summary Judgment for Deodorants that Did Not
          Feature the Word "Natural" on the Front Label.**

Tom's Long-Lasting deodorant labels were revised to remove "natural" starting in 2020.

SUMF ¶ 6.  Tom's is entitled to judgment on sales of those deodorants.  *Stutman v. Chem. Bank*,

95 N.Y.2d 24, 31 (2000) (no claim for injury if no deceptive act has occurred).

**C.      Plaintiffs' Theory of Injury Is Not Cognizable.**

Plaintiffs' injury theory is that Tom's "natural" representation supposedly inflated the

marketwide price of its toothpastes and deodorants. As the Court noted, under this theory, "the

fact that an individual purchaser may have bought Tom's of Maine deodorant for a reason

independent of that representation is not germane, because—if Plaintiffs are correct—the

consumer nonetheless paid too much for the product."  *See* ECF No. 146 at 22.  This theory

replaces individualized issues of causation, reliance, and materiality with a presumption that the

alleged price premium affected every purchase.

But the Second Circuit has declined to extend this presumption of marketwide harm, known as "fraud on the market" in the securities context, to cases of alleged consumer fraud. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223-24 (2d. Cir. 2008), *abrogated on other grounds* ("[W]e cannot assume that . . . the market at large internalized the misrepresentation to such an extent that all plaintiffs can be said to have relied on it."). That is because the factual premise for the fraud-on-the-market doctrine, *i.e.*, that "the market at large internalized the misrepresentation"—does not apply to consumer goods such as Tom's toothpaste and deodorant, where there is no efficient market that immediately prices in all information. *See id.* If it did, then Plaintiffs' experts would have to account for all of the information in the market, including the detailed information about Tom's ingredients disclosed on Tom's website. *White v. H&R Block, Inc.*, 2004 WL 1698628, at *12 (S.D.N.Y. Jul. 28, 2004) (dismissing claims as immaterial because "truth was all over the market" and "well-developed markets reflect *all* publicly available information"). They did not do so. Absent this fraud-on-the-market presumption, Plaintiffs cannot prove marketwide injury.

## IV.   Plaintiffs Lack Standing to Pursue Injunctive Relief.

Defendants are entitled to summary judgment on Named Plaintiffs' injunctive claims. That relief is unavailable unless they can demonstrate they would be "among the injured" in the future. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (denying injunctive relief). Plaintiffs will not purchase Tom's products again (SUMF ¶¶ 97-99), and therefore will not be "among the injured." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 148–49 (2d Cir. 2020) (affirming dismissal of injunctive relief where plaintiffs would not buy product again).

## V.   New York Law Bars Plaintiffs' Claim for Classwide Statutory Damages.

Plaintiffs seek more than ████████ in statutory damages under New York General Business Law ("GBL") §§ 349 and 350. SUMF ¶ 81. That figure, which plaintiffs derive by

multiplying every unit of toothpaste and deodorant sold during the class period by $550, is ██

████████████████████████ in actual damages claimed by the New York class, and

approximately ████████████████████████████████████ since 2016, *see*

SUMF ¶¶ 36-37 .  But New York law forbids recovery of classwide statutory damages.  The few

district courts that have concluded Rule 23 preempts New York's election-of-remedies rule

misapplied Supreme Court precedent and did not consider important constitutional avoidance

principles.  Those principles—which ***no federal court*** has considered—require enforcing New

York's bar on aggregating statutory penalties because allowing them would offend due process.

**A.  Statutory Damages Are Not Available in GBL §§ 349 and 350 Class Actions.**

The GBL proscribes "deceptive acts or practices" and "false advertising," and offer two

remedies: actual damages, or statutory damages of $50 and $500, respectively.  GBL §§ 349(h)

& 350.  But New York Law bars classes from seeking statutory damages where actual damages

are available: "[u]nless a statute creating or imposing a penalty, or a minimum measure of

recovery specifically authorizes the recovery thereof in a class action, an action to recover a

penalty, or minimum measure of recovery created or imposed by statute may not be maintained

as a class action."  C.P.L.R. § 901(b).  When New York amended the GBL to provide for private

rights of action, it did so against this backdrop, as reflected in the legislative history.  Therefore,

New York law as a whole limits the remedies available to classes bringing lawsuits under the

GBL to actual damages or injunctive relief.

**B.  Federal Rule 23 Does Not Preempt § 901(b) *As Applied* to GBL §§ 349 and 350.**

Plaintiffs seek to evade the clear state-law limit on their collective recovery by bringing

this case in federal court.  They rely on *Shady Grove Orthopedic Assoc., P.A. v. Allstate

Insurance Co.*, 559 U.S. 393 (2010), a case in which a New York class sought to recover in

federal court aggregated statutory penalties (the only remedy available) under a New York

insurance statute.  Section 901(b) barred such a class in state court.  A plurality of the Supreme Court held that Rule 23 preempts § 901(b) where § 901(b) ***prohibits*** plaintiffs from maintaining a class action.  *Id.* at 401–02.  Tom's recognizes that courts in this Circuit have reluctantly extended *Shady Grove* and permitted plaintiffs to assert classwide statutory damages claims under the GBL that would be precluded in state court.[8]  But those decisions are mistaken; *Shady Grove* is inapplicable.  And to the extent the Court harbors any doubt, constitutional avoidance principles—not yet considered by any other court—require adopting the approach that will not invite a procession of cases seeking unconstitutionally disproportionate damages.

> *1.* Shady Grove *Expressly Reserved the Issue Here.*  When assessing whether Rule 23 preempts state law, a two-step framework governs.  The first question is whether Rule 23 and state law conflict.  If not, then state law controls.  If so, then state law still controls if Rule 23 would "abridge, enlarge, or modify a substantive [state] right."  *Id.*; 28 U.S.C. § 2072(b).

At the first step, a narrow majority of the *Shady Grove* Court concluded that, as to the insurance statute at issue, § 901(b) collided with Rule 23 because the federal rule would have permitted the action to "be maintained," *Shady Grove*, 559 U.S. at 398, whereas § 901(b) would have entirely precluded maintenance of a class action, *id.* at 398–99.  Four Justices dissented, arguing that § 901(b) should have governed because state laws that merely restrict the remedies a class may recover do not conflict with Rule 23.  *See id.* at 446–47 (Ginsburg, J., dissenting).  The majority responded, however, that, on the facts before the Court, § 901(b) did more than merely "set[] a ceiling on damages (or put other remedies out of reach)."  *Id.* at 401 n.4.  Instead, because the insurance statute carried *only* a statutory interest penalty, *see* N.Y. Ins. Law

---

[8] *See, e.g.*, *Sharpe v. A&W Concentrate Co.*, 2021 WL 3721392, at *10 (E.D.N.Y. July 23, 2021); *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *5-6 (S.D.N.Y. Aug. 8, 2017).

§ 5106(a), and § 901(b) forbids maintenance of a class seeking that remedy, § 901(b) would "prevent[] the class action[]" in *Shady Grove* "from coming into existence at all." *Shady Grove*, 559 U.S. at 401. The majority declined to decide whether a state law that merely "limits the remedies available in an existing class action would conflict with Rule 23." *Id.*

At the second step—for which there is no majority opinion—four Justices concluded that Rule 23 governs irrespective of the degree to which it upsets state substantive law. *Id.* at 408-10. But Justice Stevens would have analyzed whether Rule 23 displaced state substantive law based on a "careful interpretation of the state and federal provisions at issue." *Id.* at 418-19 (Stevens, J., concurring in part) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, n.7 (1996)). The dissenting Justices never reached the question.

*2. Rule 23 Does Not Preempt § 901(b) Where State Law Merely Restricts the Remedies Available to a Plaintiff Class*. This case presents the remedies question the Court reserved in *Shady Grove*. Section 901(b) does not prevent plaintiffs from bringing a class action. In combination with the GBL, it merely restricts their remedy to actual damages and injunctive relief, and is thus enforceable in federal court.

***First***, state law here does not conflict with Rule 23. As the Court explained in *Shady Grove*, Rule 23 does nothing more than "provide[] a one-size-fits-all formula" for deciding whether a class action "may be maintained." 559 U.S. at 398–99. That is, so long as plaintiffs satisfy certain eligibility criteria, a federal court may certify a class. In this case, § 901(b) has no quarrel with Rule 23. Provided they satisfy Rule 23, Plaintiffs may maintain a class action. Section 901(b) just restricts the types of damages they may recover—a subject to which Rule 23 does not speak. *See id.* at 443-45 (Ginsburg, J., *dissenting*).

At least one court in this district has agreed that state laws merely restricting the remedies a class may recover are enforceable. *See Simmons v. Author Sols.*, LLC, 2015 WL 4002243, at

*6 n.10 (S.D.N.Y. July 1, 2015).  Others, such as the district court in *In re Scotts EZ Seed Litigation*, have not.  2017 WL 3396433.  The *EZ Seed* court felt "constrained" to reach a different result in the context of § 901(b) because it understood *Shady Grove* to hold that "Section 901(b) is no longer valid in federal court."  *Id.* at *6.  But *Shady Grove* held no such thing.  The Court in *Shady Grove* simply held that § 901(b) is preempted when it **precludes** the maintenance of a class action.  *See* 559 U.S. at 398–99.  The statute otherwise remains on the books and enforceable.  And this Court should apply it here.

      *Second*, the federal rule must yield here because it would unsettle "important state interests."  The GBL's legislative history leaves no doubt that New York intended to preserve litigants' rights to bring a class action for actual damages under the GBL, but that plaintiffs could not aggregate the GBL's statutory remedies to create eye-popping damages awards.[9]  Allowing plaintiffs to use Rule 23 to amplify $550 in statutory damages would upend this policy choice and invite the forum shopping that *Erie* and the Rules Enabling Act discourage.  *See Hanna v. Plumer*, 380 U.S. 460, 467–68 (1965); *Shady Grove*, 559 U.S. at 435 (Stevens, J., concurring).

      *3.  Constitutional Avoidance Supports the Construction that Will Not Produce Massive, Unconstitutional Damages Awards*.  To the extent the Court concludes that the preemption question here is close, the constitutional avoidance cannon requires resolving it in a manner least likely to invite unconstitutionally large statutory damages claims.  Under the federal and New York constitutional avoidance principles, statutes "must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score."

---

[9] The senate rejected a version of the bill exempting GBL claims from § 901(b)'s limitations. *See* SUMF ¶ 82.  This legislative history reflects the compromise that "class actions, for actual damages (not statutory damages) would still lie under Article 9 of the CPLR," and that this "compromise **limits the damages recoverable** by the class under a §349 suit, but importantly, **does not limit the right of similarly situated plaintiffs to bring a §349 suit**."  SUMF ¶ 83.

*1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 260–61 (2d Cir. 2014); *see Douglas v. Seacoast Prod., Inc.*, 431 U.S. 265, 272 (1977) (preemption is "treated as 'statutory' for purposes of … deciding statutory claims first to avoid unnecessary constitutional adjudications").

Statutory damages offend due process where they are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919); *see also Parker v. Time Warner Ent. Co.*, 331 F.3d 13, 22 (2d Cir. 2003). Earlier this year in a GBL class action, a California court concluded that statutory damages of $91 million violated due process, where actual damages were just $1.4 million. *See Montera v. Premier Nutrition Corp.*, -- F. Supp.3d --, 2022 WL 3348573, at *1 (N.D. Cal. Aug. 12, 2022). A "shockingly large" $1.6 billion statutory damages award violated due process where the actual harm suffered by plaintiffs from a short-run campaign "was not severe." *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019). The ███████ Plaintiffs seek here, as compared to the ███████ in actual damages, is even more shocking, and were it to be awarded in a subsequent verdict, it plainly would be unconstitutional.

The preemption question here should be resolved so as to avoid opening federal courts to such cases, which were "not within the contemplation of those who promulgated either the [state] statute[s] or the [federal] rule" in question. *Parker*, 331 F.3d at 26 (Newman, J., concurring). Here, that means applying New York's limitation on GBL class remedies in federal court. The Court should grant summary judgment for Tom's and hold that Plaintiffs' New York remedies are limited to actual damages.

## CONCLUSION

For the foregoing reasons, and the reasons expressed in Defendants' concurrently filed *Daubert* motions, the Court should grant summary judgment to Tom's on all claims.

Dated: October 24, 2022                    O'MELVENY & MYERS LLP

                                           BY: */s/ Hannah Y. Chanoine*

                                           Hannah Y. Chanoine
                                           Gerard A. Savaresse
                                           O'MELVENY & MYERS LLP
                                           Times Square Tower
                                           7 Times Square
                                           New York, NY 10036-6524
                                           Telephone: (212) 326-2128
                                           Facsimile: (212) 326-2061
                                           Email: hchanoine@omm.com
                                           Email: gsavaresse@omm.com

                                           Richard B. Goetz (pro hac vice)
                                           Carlos M. Lazatin (pro hac vice)
                                           O'MELVENY & MYERS LLP
                                           400 South Hope Street
                                           Los Angeles, CA 90071
                                           Telephone: (213) 430-6655
                                           Facsimile: (213) 430-6407
                                           Email: rgoetz@omm.com
                                           Email: clazatin@omm.com

                                           *Attorneys for Defendants Colgate-Palmolive
                                           Co., and Tom's of Maine, Inc.*