UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>COLGATE-PALMOLIVE CO. and TOM'S OF MAINE, INC.,<br><br>                Defendants. | Case No. 16-cv-8364-KMW-OTW |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT COLGATE-PALMOLIVE COMPANY'S**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Sarah N. Westcot (admitted *pro hac vice*)
701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: scott@bursor.com
       swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Counsel for Plaintiffs and the Classes*

**TABLE OF CONTENTS**

**P**AGE(S)

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD............................................................................................................ 2

ADDITIONAL MATERIAL FACTS SHOW THAT COLGATE IS DIRECTLY
LIABLE ................................................................................................................................. 3

    I.    There Is A Revolving Door Of Senior Personnel Between Colgate
        And Tom's ................................................................................................... 3

    II.    Defendants Create Product Formulas In Unified Recipe Sheets ............................. 5

    III.    Colgate Reviews Product Labeling In Collaboration With Tom's............................ 6

    IV.    Colgate Regularly Reviews Sales Data And Runs Surveys On Tom's
        Products........................................................................................................ 7

    V.    Colgate Provides Significant Legal, Marketing, And R&D Services
        For Tom's...................................................................................................... 9

    VI.    Colgate And Tom's IT Infrastructures Have A Common File Sharing
        System......................................................................................................... 12

ARGUMENT........................................................................................................................ 13

CONCLUSION.................................................................................................................... 15

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970) .................................................................................................... 2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................... 2

*Cityspec, Inc. v. Smith*,
   617 F. Supp. 2d 161 (E.D.N.Y. 2009) ........................................................................ 2

*Holtz v. Rockefeller & Co.*,
   258 F.3d 62 (2d Cir. 2001) ......................................................................................... 2

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .................................................... 13, 14

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ..................................................................................... 2

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018) .................................................................................... 2, 3

*Ogden v. Bumble Bee Foods, LLC*,
   2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ................................................................... 2

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
   842 So. 2d 773 (Fla. 2003) ......................................................................................... 2

*Schwartz v. Avis Rent A Car System, LLC*,
   2013 WL 2182078 (D.N.J. May 20, 2013) .......................................................... 12, 13

*Sepracor Inc. v. Dey L.P.*,
   2010 WL 2802611 (D.Del. July 15, 2010) ................................................................ 13

*Small v. General Motors Corp.*,
   2006 WL 3332989 (D. Maine Nov. 15, 2006) .......................................................... 14

*Stoltz v. Fage Dairy Processing Industry, S.A.*,
   2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .......................................................... 12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................................................................... 3

**RULES**

Fed. R. Civ. P. 56(a) ........................................................................................................................ 2

Federal Rule of Civil Procedure 30(b)(6) ....................................................................................... 3

**INTRODUCTION**

Defendant Colgate-Palmolive Co.'s ("Colgate") motion for summary judgment should be denied in its entirety. Colgate argues that it has done "nothing" to "become directly liable," taking the position that "Tom's is deemed to be its own brand." Colgate Br. at 1-2. Despite whatever Colgate might "deem" about Defendant Tom's of Maine, Inc. ("Tom's") being an "independent subsidiary," *Id.* at 2, the facts tell a different story.

Colgate states – vaguely, with no further information – that "Colgate provides guidance and oversight over some of Tom's business affairs," "Tom's and Colgate employees sometimes consult with each other on business decisions," "Colgate employees provide some administrative, legal, and other support" to Tom's employees, and "[t]he two businesses also share information with one another." *Id.* at 3. That is putting things mildly.

In actuality, the evidence shows that there is a revolving door of senior personnel between Colgate and Tom's, Defendants create product formulas via unified recipe sheets bearing the Colgate logo, Colgate employees reviewed the labeling of Tom's products, Colgate regularly reviews sales data and runs surveys on Tom's products, Colgate provides a wealth of logistical support to Tom's (*i.e.*, legal, marketing, and R&D), and Defendants even have IT infrastructures with a common file sharing system. These facts are discussed in greater detail below. They show that Colgate took an active role in the formulation, labeling, and sale of the Tom's products at issue, and Colgate is an equal partner with Tom's as to the conducted alleged. At minimum, the issue of whether Colgate should be held directly liable should be considered by the finder of fact.[1]

---

[1] To simplify the issues, Plaintiffs will not argue that Colgate should be held liable on a theory of veil piercing.

1

## **LEGAL STANDARD**

Summary judgment is only appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Liberty Lobby*, 477 U.S. at 255.

A fact is material "if it might affect the outcome of the suit," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citations omitted). "The Court should not grant summary judgment if there is 'any evidence in the record that could reasonably support a jury's verdict for the non-moving party.'" *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (citation omitted).

To prevail on their claims for false advertising or deceptive business practices, Plaintiffs must show that Defendants' all natural labels were "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (citations omitted); *see also PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (describing Florida law similarly). "[W]hether a reasonable consumer would have been misled by a defendant's misrepresentation is 'generally a question of fact which requires consideration and weighing of evidence from both sides.'" *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *9 (N.D. Cal. Jan. 2, 2014) (quoting *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)). "'[R]easonable consumers

should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. … Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging.'" *Mantikas*, 910 F.3d at 637 (emphasis added) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008)).

## **ADDITIONAL MATERIAL FACTS SHOW THAT COLGATE IS DIRECTLY LIABLE**

### **I.    There Is A Revolving Door Of Senior Personnel Between Colgate And Tom's**

Between Colgate and Tom's, there is a revolving door of top personnel, such that senior Tom's employees are frequently promoted to work at Colgate. Indeed, when Tom's designated corporate witnesses to testimony on its behalf pursuant to Federal Rule of Civil Procedure 30(b)(6), it selected two individuals who were presently employed in senior roles at Colgate (not Tom's). Additionally, both witnesses had transitioned between Colgate and Tom's at various points during their careers. Tom's did not designate any Rule 30(b)(6) witnesses who were presently its own employees.

<u>First</u>, Tom's produced JoAnne Murphy to offer testimony on its behalf. Westcot Decl. Exhibit 1(Murphy Tr.) at 6:9-14, 9:3-11. Ms. Murphy is presently the Director of Sustainability and Communications for North America at Colgate, but at the time of her deposition was the Director of Shopper Marketing at Colgate. *Id.*. Specifically, Tom's designated Ms. Murphy to offer testimony concerning: (i) "sales of Tom's of Maine products," *Id.*. at 35:5-36:4; (ii) "the average wholesale price paid to Defendants by retailers" and distributors, *Id.* at 36:15-22; (iii) "any price premium that did or could result or was or could be charged in relation to the 'all natural' claims," *Id.* at 37:18-25; (iv) "the labeling, packaging, [and] marketing" of the Tom's products, including "any changes to the labeling or packaging of the products during the class

3

period," Murphy Tr. at 41:7-17; (v) "Defendants' communications with the United States or any state government or agency, including, but not limited to, the U.S. Food and Drug Administration or the California Attorney General regarding any of the products," *Id.* at 48:7-11; and (vi) "Defendants' computer systems, including all hardware and software" concerning relevant information "related to designing, manufacturing, marketing, advertising, selling, account for, or distributing the [Tom's] products," *Id.* at 50:16-51:7.

Ms. Murphy testified that she had "been working at Colgate-Palmolive" for "[n]ineteen years," but in providing that response she conflated the entities of Colgate and Tom's. *Id.* at 9:3-5 ("Q. How long have you been working at Colgate-Palmolive? A. Nineteen years."). Ms. Murphy then clarified that she had actually transitioned between Colgate and Tom's during her career – she had worked as the Director of Shopper Marketing at Colgate "[s]ince August 2017," was the "director of marketing for Tom's of Maine" from "April 2014 until August 2017," was the "director of shopper marketing for the Walmart account" at Colgate "[f]rom December 2011 until March 2014," was the "[d]irector of the underarm protection business" at Colgate from "July 2008 until November 2011," and was previously employed in various roles at Colgate, including "senior brand manager on liquid hand soap," "senior brand manager on oral care," and "business analyst," since she first joined Colgate on June 1999. *Id.* at 6:3-13:24.

Second, Tom's offered Julia Sprague to provide further testimony on its behalf. Ms. Sprague is a Global Project Manager at Colgate, a role she assumed in October 2020. Westcot Decl. Ex. 2 (Sprague 2022 Tr). at 6:3-4. Specifically, Tom's designated Ms. Sprague to offer testimony concerning: (i) "the formulation and ingredients of the products, including the date and substance of any changes thereto," Westcot Decl. Exhibit 3 (Sprague 2017 Tr.) at 28:5-11; (ii) "whether to add warnings or any clarification to the products concerning any change in

4

formulation and/or ingredients," *Id.* at 36:23-37:4; and (iii) "[D]efendants' decision to use of and discontinuance of any of the ingredients listed in Exhibit A of plaintiff's complaint," *Id.* at 38:6-12.

Ms. Sprague had also transitioned between Colgate and Tom's at several points during her career. Prior to joining Colgate, Ms. Sprague was a Stewardship Manager at Tom's. *Id.* at 7:12-17. Before that role, Ms. Sprague was a "senior technical associate" handling "[o]ral care process engineering" at Colgate from 2009 to January 2010. *Id.* at 22:22-23:3. Prior to that, Ms. Sprague was a "technical manager" at Colgate from 2007 to 2009. *Id.* at 23:20-24:4. Ms. Sprague started at Colgate in 2001, where she worked as a "technical associate" or "senior technical associate" until 2007. *Id.* at 24:5-24.

## II.   Defendants Create Product Formulas In Unified Recipe Sheets

Ms. Sprague testified that Defendants create "product data management" ("PDM") management recipe sheets, that "goes on to tell you what it is or all the data about the product and then the recipe for the product itself." *Id.* at 57:19-58:2. These PDM management recipe sheets are integrated into Defendants' "S-A-P application," which is the "management software" handling "formula development," and is "used within Colgate-Palmolive and Tom's to establish []our formula[s]:"

> Q. Do you recognize the information contained on this document?
> A. Yes. I recognize that the document is a – a recipe.
> Q. And what is a management recipe?
> A. So this is the S-A-P application that is used within Colgate-Palmolive and Tom's to establish your formula.
> Q. And what is an S-A-P application? What does that refer to?
> A. So S-A-P is our management software overriding for, you know, material management but also formula development through PDM application within S-A-P.
> Q. What is – what does PDM stand for?

5

|   |   |   |
|---|---|---|
| A. | | I think it stands for product development management. |
| Q. | | So this is a list of components of different Tom's of Maine products; is that right? |
| A. | | This particular one, so the one on top here, this product data management recipe, three star, is, as it says in the description, it's the Tom's baby lotion, fragrance free, and then it goes on to tell you what it is or all the data about the product and then the recipe for the product itself. |
| Q. | | And that's the Colgate-Palmolive logo on the upper left; is that right? |
| A. | | That is correct. |

Sprague 2017 Tr. at 57:2-58:5; *See also* Westcot Decl. Ex. 4.

### III. Colgate Reviews Product Labeling In Collaboration With Tom's

On December 8, 2017, Ms. Sprague received an email from Mark Signorin, the Fragrance Development Leader at Colgate, asking about Tom's Stewardship Model. Mr. Signorin writes:



Westcot Decl. Ex. 5.; *See also* Sprague 2022 Tr. at 125:15-131:19.

On November 6, 2017, Ms. Sprague accepted an invitation to join a meeting to "better discuss the topic of calling an ingredient 'naturally sourced,'" organized by Kelly Zheng at Colgate:

|   |   |   |
|---|---|---|
| Q. | | Okay. Have you seen this document before, JS 27? |
| A. | | I don't recall it, but again it's a calendar invite to me, so. |
| Q. | | Okay. This looks like this is a calendar invite from an individual named Kelly Zheng; do you see her e-mail, right in the center of the page? |
| A. | | Yes, I see her e-mail. |

6

> Q. Do you know who Kelly Zheng is?
>
> A. I don't know or recall her exact position.
>
> Q. She had a colpal.com e-mail address; is that correct?
>
> A. Yes, she had a colpalmolive.com address.
>
> Q. So she worked for Colgate?
>
> A. Yes, colpal address would be working for Colgate.
>
> …
>
> Q. And she titles the invitation – do you see here what she titles the invitation as "Deeply understand the requirement to claim 'natural.'" Do you see that?
>
> A. Yes, I see the subject of the invitation.
>
> Q. And then it says, "The meeting is to better understand the topic of calling an ingredient 'natural sourced.'" Do you see that?
>
> A. Yes, I see that information.

Sprague 2022 Tr. at 307:19-308:13, 308:20-309:8. *See also* Westcot Decl. Ex. 6.

**IV.     Colgate Regularly Reviews Sales Data And Runs Surveys On Tom's Products**

Ms. Murphy testified that Colgate would regularly receive and review sales data from Tom's of Maine:

> Q. In your position at Colgate-Palmolive dealing with the Tom's of Maine products, did you regularly deal with sales data?
>
> A. Yes, we would on a monthly basis receive sales information both from our internal as well as external sources.

Murphy Tr. at 35:23-36:5. Ms. Murphy later confirmed that "[s]ales we did [look at on a regular basis]." *Id.* at 37:1-7.

Colgate also ran consumer research studies on Tom's products for the purposes of price analysis:

> Q. Were you involved in any price analysis at Tom's of Maine or Colgate-Palmolive?
>
> A. There were two studies that we ran with a market research provider on the elasticity of our deodorants, price elasticity on the deodorants and toothpaste business.
>
> Q. What was that name?

> A. Analytic Partners.
>
> …
>
> Q. When you say the elasticity of the deodorants and toothpaste, what do you mean by that?
>
> A. We were looking at different changes in price, what the corresponding change in volume would be on a percentage basis based on historical data.
>
> Q. So if you changed the price, would there be a change in the amount of sales you would get for those products?
>
> A. Correct.
>
> …
>
> Q. What was the – how was the data provided to the company, to Colgate or Tom's of Maine?
>
> A. In a PowerPoint.
>
> …
>
> Q. Was any other data provided?
>
> A. I believe spreadsheets were given to Heather, but they were not something that I specifically saw.
>
> Q. Would these be considered consumer research studies?
>
> A. Yes.

Murphy Tr. at 38:1-10, 38:17-39:2, 40:3-16.

Ms. Murphy also testified that Colgate ran a "brand equity study that is done by Icon Added Value," that "the parent company Colgate-Palmolive uses to evaluate brand equity across different Colgate brands," including Tom's of Maine:

> Q. What is [Exhibit 8]?
>
> A. It is a brand equity study that is done by Icon Added Value. It is a company that, the parent company Colgate-Palmolive uses to evaluate brand equity across, different Colgate brands as well.
>
> Q. When you say used to measure a brand equity, what do you mean by that?
>
> A. We like to look at what consumers perceive different brands to be, almost dissect the brand's personality in the eyes of a consumer, and how that relates to other brands in the competitive set.
>
> …

8

> Q. Two slides. Do you see where it says at the top of Slide 33 Main touch point for Tom's is the point of sale?
>
> A. Yes.
>
> …
>
> Q. So consumers are getting their information about Tom's from the retail locations?
>
> A. Yes.
>
> Q. And would that include the product package and labelling?
>
> A. Yes.

Murphy Tr. at 135:6-20, 136:9-137:2.

### V.     Colgate Provides Significant Legal, Marketing, And R&D Services For Tom's

Ms. Murphy testified that Colgate handled governmental communications as on behalf of Tom's, from Colgate's own "quality department," "safety department," "regulatory, [and] legal department[s]:"

> Q. Are you familiar with any of Colgate or Tom's of Maine's dealings with the United States or any state government agencies regarding any of the Tom's of Maine products?
>
> A. Our quality department, our safety department, regulatory, legal department. As part of a very large company, we are very on top of what we need to do.
>
> Q. These are all departments within Colgate-Palmolive?
>
> A. Yes.

*Id.* at 48:24-49:11.

Plaintiffs' counsel also deposed Elizabeth Eddy, who held the role of Senior Brand Manager of Total Category Marketing at Tom's until she left in June 2021. Westcot Decl. Ex. 7 (Eddy Tr.) at 16:14-18:4. In total, Ms. Eddy worked at Tom's for seven years, since 2014. *Id.* at 16:14-18:4. Ms. Eddy testified that her role at Tom's as a brand manager involving "being responsible for [a] rollout" when "we were getting ready to launch some new [product] categories in the marketplace." *Id.* at 23:6-18. Ms. Eddy specifically "led the categories of baby, lip, lotion and body wash." *Id.* at 23:6-18. Later, as a senior brand manager, Ms. Eddy

9

"led category marketing" for "both the oral care and the personal care categories," which means that she "co-led revenue growth management, national sales meetings," and was involved with "preparing sales documents for the sales team to sell new items." Eddy Tr. at 18:5-20.

In this capacity, Ms. Eddy testified that she "worked with a number of people at the Colgate Palmolive Company," specifically those concerning legal representation, research and development, and other cross-functional partners:

> Q. Did your – anything within your role or responsibilities during your job as a senior brand manager, did it ever require you to ever work with anyone at Colgate-Palmolive Company?
>
> A. Yes, I worked with a number of people at Colgate-Palmolive Company. So some of our legal representation were Colgate-Palmolive employees. Many of my R&D partners were on the payroll for Colgate-Palmolive. … But I'd say most of my role I worked with Tom's of Maine employees, but there were times when I would collaborate with cross-functional partners who supported Tom's of Maine but were at Colgate-Palmolive.

Chanoine Decl. Ex. 12 at 36:16-37:12.

Plaintiffs' counsel also took the deposition of Walter "Rob" Robinson, a Head of Brand for Tom's. Westcot Decl. Ex. 8 (Robinson Tr.) at 6:22-24. As a Head of Brand at Tom's, Mr. Robinson "focus[es] largely on marketing equity issues that are at the equity level of the company," which "including working with agency teams to ensure creative consistency" and "a focus on our corporate social responsibility markets and … our ongoing community building through social media." *Id.* at 17:9-19.

Mr. Robinson testified that "we're part of the Colgate corporation," so "if I needed guidance or advice or simply wanted to have someone to run an idea off of" in connection with product marketing, "I might turn to somebody at Colgate:"

> Q. What is your interaction with anyone at Colgate-Palmolive company? Can you describe that?
>
> A. I – in my role as head of brand I would sometimes interact with

10

> other members of the Colgate marketing team or our other departments.
>
> Q. What other departments?
>
> A. It sort of depends on the situation, but we're part of the Colgate corporation. So if I needed guidance or advice or simply wanted to have someone to run an idea off of, I might turn to somebody at Colgate.

Chanoine Decl. Ex. 10 at 13:3-18 (objection omitted). Specifically, Mr. Robinson noted that "in the Colgate marketing team," "[o]ne [such] individual [at Colgate] that I might interact with … is Diana Housling (phonetic), who does digital and eCommerce marketing," and "[a]nother individual that I might interact with would be Bill Vendergraf (phonetic), who does Colgate marketing." *Id.* at 14:4-11.

## VI. Colgate And Tom's IT Infrastructures Have A Common File Sharing System

Ms. Sprague testified that Tom's uses file sharing systems called the "G drive" and Google Drive, which contains documents and files concerning "divisions within Tom's of Maine, for example, accounting," which are "accessible to employees of Colgate-Palmolive:"

> Q. … The G drive contains, among other documents, files that you use in the course of your employment, correct?
>
> A. Correct.
>
> …
>
> Q. … Do other divisions within Tom's of Maine, for example, accounting, do they also store documents on the G drive?
>
> A. Yes.
>
> …
>
> Q. Other than the G drive and the Google Drive, are you aware of any other computer systems used within Tom's of Maine to share documents?
>
> A. To share documents?
>
> Q. Mm-hmm.
>
> A. There are no other systems I'm aware of.
>
> Q. Are these documents accessible to employees of Colgate-Palmolive on the G drive?

>   A. If they have access and are given that path, yes.
>
>   Q. Okay. And if they have access and are given that path, are the documents on the Google Drive also accessible to employees of Colgate-Palmolive?
>
>   A. Yes.

Chanoine Decl. Ex. 11 at 43:4-44:19. Ms. Murphy confirmed. She testified that: "We are, as a subsidiary of Colgate, we are on Google, I know that. We are all kind of sharing a Google drive." Murphy Tr. at 51:8-13.

## ARGUMENT

Colgate argues that it has done "nothing" to "become directly liable in this case," as "[n]othing in the record suggests that Colgate had any direct involvement in the development, labeling, or marketing" of the Tom's products at issue – Colgate contends that "Tom's drives its own product marketing and labeling." Colgate Br. at 1. Thus, Colgate reasons that "Plaintiffs cannot establish direct liability" because "[t]he record shows that Colgate had *no* role, let alone a direct one, in Tom's decision to market its toothpastes and deodorants as 'natural.'" *Id.* at 6 (bold and italics in original). That is wrong.

"In order to state a plausible claim that a parent company may be held directly liable for the acts of its subsidiary, a plaintiff must allege facts supporting an inference that the parent company engaged in the conduct at issue, and general, conclusory allegations are not sufficient." *Cf. Stoltz v. Fage Dairy Processing Industry, S.A.*, 2015 WL 5579872, at *29 (E.D.N.Y. Sept. 22, 2015) (dismissing direct liability claims against parent companies based on conclusory allegations that the parent entities "'operate as a single integrated and common enterprise' without setting forth any specific facts to support this allegation"). In *Schwartz v. Avis Rent A Car System, LLC*, 2013 WL 2182078, at *1 (D.N.J. May 20, 2013), for example, the court granted a motion for leave to file an amended complaint with allegations supporting direct

liability against a parent company, based on allegations that the defendants "charg[ed] plaintiff and class members hidden surcharges for frequent-flyer miles or rewards points earned from Avis's travel partners in connection with their rental-car agreements." There, the court found that direct liability might be established where "[t]h[e] conduct [at issue] concerns the Avis website, and Plaintiff alleges that ABG controlled the website with Avis from the corporate headquarters that they shared," and "the website is central to the Plaintiff's allegations because the reservation process that he used with Avis was web-based." *Id.* at \*5. *See also Sepracor Inc. v. Dey L.P.*, 2010 WL 2802611 (D.Del. July 15, 2010) (allowing plaintiff to add defendants' parent company as party to the litigation based on its involvement in the action giving rise to the litigation).

Here, it is established by the facts, above, that Colgate is no mere arms-length parent company, or a simple shareholder in Tom's. Rather, Colgate took a direct role in the mislabeling at issue. That is, top Tom's employees regularly cycle between the two entities (and vice versa), product formulations are created on Colgate-stamped recipe sheets, Colgate ran consumer surveys concerning the Tom's products, Colgate employees regularly asked for clarification of the "all natural" claims at issue, and the two entities even share an IT infrastructure with file sharing between Colgate and Tom's. *See supra*. Colgate is an equal partner with Tom's, and it should be held liable for the same reasons discussed in Plaintiffs' opposition to Tom's motion for summary judgment.

Colgate's cases are readily distinguishable. In *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at \*6 (E.D.N.Y. Aug. 29, 2013), based on the plaintiffs' allegations, that "PepsiCo was acting as a parent company, who necessarily exercises a considerable degree of control over the subsidiary corporation" (citations omitted). This finding was based on

13

unsupported allegations that "PepsiCo markets, advertises, and distributes the products at issue, that PepsiCo "actively coordinates its marketing and advertising with Defendant Frito-Lay," and PepsiCo's involvement in the so-called "Power of One – America's Council," which "bring[s] together its top food and beverage leaders." *Id.* at *5. Not much else is alleged. Here, by contrast, the facts show that Colgate played an outsized role in the Tom's of Maine company by, among other things, cycling top personnel between the two entities, creating product formulas on joint recipe sheets, reviewing product labeling, running surveys, and providing significant technical, legal, marketing, and R&D support. *See supra*. Likewise, *Small v. General Motors Corp.*, 2006 WL 3332989, at *31-32 (D. Maine Nov. 15, 2006) is equally distinguishable, where the court granted summary judgment in favor of a corporate parent company, where "it did not design, manufacture or distribute the flex fan but rather was at most an indirect shareholder" in the subsidiary. The facts here are readily distinguishable.

## CONCLUSION

For the foregoing reasons, Colgate's motion for summary judgment should be denied in its entirety.

Dated: December 1, 2022              Respectfully submitted,


                                     By: */s/ Sarah N. Westcot*
                                            Sarah N. Westcot

                                     **BURSOR & FISHER, P.A**
                                     Scott A. Bursor
                                     Sarah N. Westcot (admitted *pro hac vice*)
                                     701 Brickell Ave, Suite 1420
                                     Miami, FL 33131-2800
                                     Telephone: (305) 330-5512
                                     Facsimile: (305) 676-2700
                                     Email: scott@bursor.com
                                            swestcot@bursor.com

**BURSOR & FISHER, P.A**
Neal J. Deckant
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Counsel for Plaintiffs and the Classes*

15