**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ANNE DE LACOUR, ANDREA WRIGHT, and
LOREE MORAN, individually and on behalf of all
others similarly situated,

                Plaintiffs,

     v.

COLGATE-PALMOLIVE CO. and TOM'S OF
MAINE, INC.,

                Defendants.

Case No. 16-cv-8364-KMW-OTW

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**TOM'S OF MAINE, INC.'S MOTION FOR SUMMARY JUDGMENT**

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Sarah N. Westcot (admitted *pro hac vice*)
701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: scott@bursor.com
       swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Counsel for Plaintiffs and the Classes*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ........................................................................................................................ 4

I.     THE IDENTICAL FACTUAL PREDICATE DEFENSE DOES NOT
       APPLY ....................................................................................................................... 4

II.    PLAINTIFFS HAVE PRESENTED EVIDENCE THAT DEFENDANT'S
       "NATURAL" REPRESENTATION IS FALSE AND MISLEADING ........................... 8

       A.     Plaintiffs Have Evidence Demonstrating How A Reasonable
              Consumer Would Understand The Term "Natural" ................................. 9

       B.     Tom's Does Not And Cannot Argue Its Products Are "Natural" ........................ 13

       C.     Tom's Attempt to Clarify Its Misleading Label Representation On
              The Tom's Website Does Not Cure The Misrepresentation................................. 14

III.   PLAINTIFFS HAVE EVIDENCE OF CLASSWIDE INJURY ...................................... 15

       A.     The Results Of Dr. Dennis's Conjoint Analysis Prove Injury ............................ 15

       B.     Defendant Is Not Entitled To Summary Judgment On Its Long
              Lasting Deodorants ................................................................................................. 19

       C.     Plaintiffs Do Not Argue "Fraud On The Market" Theory .................................... 20

IV.    PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF ..................... 20

V.     DEFENDANT'S ARGUMENTS AGAINST THE APPLICATION OF
       SHADY GROVE ARE WRONG .................................................................................... 22

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955 (E.D.N.Y. July 21, 2010).........................................................17

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970) ..............................................................................................4

*Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*,
    751 F.3d 71 (2d Cir. 2014) ..................................................................................24

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...........................................................................................4, 9

*Aslanidis v. U.S. Lines, Inc.*,
    7 F.3d 1067 (2d Cir. 1993) ..................................................................................24

*Belfiore v. Procter & Gamble Co.*,
    94 F.Supp.3d 440 (E.D.N.Y. 2015) ................................................................21, 22

*Boelter v. Hearst Communications, Inc.*,
    2016 WL 3369541 (S.D.N.Y. June 17, 2016) ......................................................24

*Buchanan v. Maine*,
    469 F.3d 158 (1st Cir. 2006)................................................................................25

*Burgess v. Citigroup Inc.*,
    624 F. App'x 6, 9 (2d Cir. 2015) ...........................................................................7

*Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*,
    887 F.2d 399 (2d Cir. 1989) ................................................................................16

*Camreta v. Greene*,
    131 S.Ct. 2020, (2011)........................................................................................24

*Cityspec, Inc. v. Smith*,
    617 F. Supp. 2d 161 (E.D.N.Y. 2009) ...................................................................4

*Davidson v. Kimberly-Clark Corp.*,
    873 F.3d 1103 (9th Cir. 2017) .............................................................................21

*Department of Hous. & Urban Dev. v. Rucker*,
    535 U.S. 125 (2002) ............................................................................................24

*Golan v. FreeEats.com, Inc.*,
   930 F.3d 950 (8th Cir. 2019) ........................................................................................ 25

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ........................................................................................................ 25

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) .................................................................. 3, 17

*Henderson v. Gruma Corp.*,
   2011 WL 1362188 (C.D. Cal. Apr. 11, 2001) ............................................................. 21

*Holtz v. Rockefeller & Co.*,
   258 F.3d 62 (2d Cir. 2001) ............................................................................................. 4

*In re G.M. Litig.*,
   407 F. Supp. 3d 212 (S.D.N.Y. Aug. 6, 2019) .......................................................... 18

*In re KIND "Healthy and All Natural" Litig.*,
   2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022) ........................................................ 9, 10

*In re Literary Works*,
   654 F.3d 242 (2d Cir. 2011) ...................................................................................... 5, 7

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ............................................................. 17

*Kim v. BMW of Manhattan, Inc.*,
   819 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) .................................................................... 16

*Kind LLC v. Clif Bar & Co.*,
   2014 WL 2619817 (S.D.N.Y.,2014) ........................................................................... 11

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ............................................................................ 3, 17

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ....................................................................................... 9

*Louis Vuitton Malletier, S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012) .......................................................................................... 16

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988) ..................................................................................................... 24

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018) ................................................................................. 14, 15

*Martinelli v. Johnson & Johnson*,
  2019 WL 1429653 (E.D. Cal. Mar. 29, 2019)......................................................... 18

*Milner v. Dep't of Navy*,
  562 U.S. 562 (2011) ............................................................................................ 24

*Montera v. Premier Nutrition Corp.*,
  2022 WL 3348573 (N.D. Cal. Aug. 12, 2022) ....................................................... 25

*Ogden v. Bumble Bee Foods, LLC*,
  2014 WL 27527 (N.D. Cal. Jan. 2, 2014)................................................................. 9

*Psihoyos v. John Wiley & Sons, Inc.*,
  2012 WL 5506121 (S.D.N.Y. 2012) ...................................................................... 16

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014) ................................................................................. 16

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) .......................................................................... 21

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ............................................................................... 3, 22, 23

*Simmons v. Author Solutions, LLC*,
  2015 WL 4002243 (S.D.N.Y. July 1, 2015)............................................................ 23

*Sony BMG Music Ent. v. Tenenbaum*,
  660 F.3d 487 (1st Cir. 2011)....................................................................... 4, 16, 25

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
  251 U.S. 63 (1919) .............................................................................................. 24

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) .............................................................................. 4, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................................................... 5

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................ 14


STATUTES

Colo. Rev. Stat. § 6-1-113(2)(a) .................................................................................. 23

New York General Business Law ("GBL")............................................................ *passim*

**RULES**

CPLR § 901(b) .................................................................................................... 3, 22

Fed. R. Civ. P. 23 ................................................................................................ 3, 22

Fed. R. Civ. P. 56(a) ............................................................................................ 4, 9

**OTHER AUTHORITIES**

6 McCarthy on Trademarks and Unfair Competition § 32:1988 (5th ed.) ................................... 10

## INTRODUCTION

It is difficult to understand how Defendant Tom's of Maine, Inc. ("Tom's") believes that summary judgment in its favor is warranted.  Plaintiffs have substantial evidence that will prove Tom's "natural" representation is false, that the representation was material and deceptive to reasonable consumers, and that Plaintiffs and members of the class were injured by paying a premium for products they believed to be natural, but which were in fact, not natural.  Tellingly, Tom's does not argue the toothpaste and deodorant products at issue are in fact "natural," but rather argues that Plaintiffs have failed to gather the evidence necessary to support a genuine factual dispute.  But Tom's cannot meet that burden of establishing the absence of disputed factual materials necessary for summary judgment.

*First*, Defendant attempts to rehash an old argument – that Plaintiffs' claims are barred by a prior class settlement in the *Gay* action.  Defendant Tom's of Maine's Motion for Summary Judgment ("MSJ"), ECF No. 241 at 7-10.  But the Court has already ruled on this issue, finding that the identical factual predicate defense does not apply, where Plaintiffs' claims are based on *different* packaging during a *different* time period.  *See* Order Granting Class Certification, ECF No. 146 at 17.  The evidence on this issue is even more clear now than at the time of the Court's ruling, as Defendant has produced additional evidence related to its post-*Gay* packaging "redesign."  Chanoine Decl. Ex. 7 (Kindness Decl.) ¶¶ 4-9 (Tom's graphics production specialist describes toothpaste and deodorant packaging "redesign" and "master brand packaging refresh" that occurred after the *Gay* settlement).  Defendant's motion for summary judgment and decertification of the classes on this basis is without merit.

*Second*, Defendant argues Plaintiffs have "no proof" that reasonable consumers would be deceived by the "natural" representation on Tom's packaging.  MSJ at 10-17.  In doing so, Tom's attempts to either ignore or discredit the work of Plaintiffs' four expert witnesses,

including experts who conducted consumer perception surveys, surveys regarding the premium price consumers are willing to pay for products with the "natural" representation, and a scientific expert who provides testimony regarding the ingredients in Tom's products and the meaning of the term "natural."  Each of these experts put forth evidence that cannot be ignored on the basis of Tom's survey criticism.  As addressed in Plaintiffs' oppositions to Tom's contemporaneously filed motions to strike each of these experts, the Defendant's survey design critiques go to the weight of the evidence and not the admissibility.

Defendant also ignores its own internal documents and testimony of Tom's witnesses which support Plaintiffs' claims and demonstrate a triable issue of fact on deception.  For example,



*Id.; see also* Westcot Decl. Ex. 6 (J. Murphy 2022 Tr.) at 71:15- 94:18

*See* Westcot Decl., Ex. 16 (COLEGATETOMS00167649)

As such, Defendant's contention that there is "no proof" on the issue of deception is unfounded.

***Third***, Defendant argues Plaintiffs have not "demonstrate[d] that they paid more for what they purchased than what they received."  MSJ at 17-20.  Again, Defendant attempts to discredit the work of Plaintiffs' experts, Dennis and Weir, arguing that the conjoint survey Dennis conducted to measure price premium doesn't account for supply side factors.  That is wrong. Dennis's conjoint properly considered supply side factors by (1) utilizing prices that mirror those actually observed in the market and that are based on actual sales data, and (2) holding quantity constant—by using the quantities of the challenged products that were actually sold during the class period.  *See* Westcot Decl. Ex. 4, (Weir Tr.) 197:13-198:2.  Defendant's exact arguments have been rejected over and over by courts within this Circuit and throughout the country.  *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 576 (N.D. Cal. 2020) (Rejecting argument that conjoint made no attempt to account for competitors' actions in the market because "the model utilized prices that 'mirror' those actually observed in the market and based on actual sales data, and also holds quantity constant"); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1106 (N.D. Cal. 2018) (finding the proposed conjoint analysis adequately accounts for supply-side factors and does not merely measure demand-side willingness-to-pay).

***Finally***, Defendant argues Plaintiffs' claims for classwide statutory damages under New York General Business Law ("GBL") §§ 349 and 350 are barred by New York law.  MSJ at 20-25.  That is wrong.  *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (holding CPLR § 901(b) is preempted by Fed. R. Civ. P. 23, making statutory damages available in a class action in federal court).  After *Shady Grove*, there is no question that class actions for statutory damages may be pursued in federal court.  Indeed, the Second Circuit has affirmed orders certifying a class to pursue statutory damages under GBL § 349.  *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015) ("statutory damages under

GBL § 349 can be assessed on the basis of common proof").  Defendant's due process argument

is also incorrect, and premature at this juncture.  The question of whether a statutory damage

award violates due process should not be reached until after such an award has been made, and

after the district court considers whether a remittitur should be ordered.  *See Sony BMG Music

Ent. v. Tenenbaum*, 660 F.3d 487, 511 (1st Cir. 2011) (holding that the principle of constitutional

avoidance required the district court to address the issue of remittitur before determining whether

a statutory damage award violated due process).

## LEGAL STANDARD

Summary judgment is only appropriate when the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.

R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  The burden

of demonstrating the absence of any genuine dispute as to a material fact rests with the moving

party.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).  In determining whether there is a

genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in [its] favor." *Liberty Lobby,* 477 U.S. at 255.

A fact is material "If it might affect the outcome of the suit," and a dispute is "genuine" if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citations omitted). "The Court should

not grant summary judgment if there is 'any evidence in the record that could reasonably support

a jury's verdict for the non-moving party.'" *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168

(E.D.N.Y. 2009) (citation omitted).

## ARGUMENT

## I.    THE IDENTICAL FACTUAL PREDICATE DEFENSE DOES NOT APPLY

Recycling arguments from their opposition to Plaintiffs' motion for class certification,

petition for permission to appeal, and motion for decertification, Defendant now argues for a fourth time that Plaintiffs' claims are barred by a settlement in the *Gay* action. MSJ at 7-10. Defendant's argument is still wrong.

Defendant's primary argument here is again premised upon a misapplication of the identical factual predicate defense. Under the identical factual predicate rule, "plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). "Any released claims not presented directly in the complaint, however, must be based on the identical factual predicate as that underlying the claims in the settled class action," to bar future litigation. *In re Literary Works*, 654 F.3d 242, 248 (2d Cir. 2011) (internal quotation marks omitted).

The identical factual predicate defense does not apply here because Plaintiffs' claims depend on proof of <u>different transactions</u>, <u>during a different time period</u>[1], and <u>involve different product packaging</u> that was not at issue in the *Gay* action. These facts are undisputed. Defendant admits the packaging was changed post-*Gay*, and the class period here does not overlap with the *Gay* class period, meaning different purchases during a different time period are implicated.

The Court has already addressed this argument, rejecting the applicability of the identical factual predicate defense to the present matter and providing a detailed rationale for its decision:

> To the extent that Plaintiffs purchased deodorant and/or toothpaste products with the very same packaging that was at issue in *Gay*, their

---

[1] The classes certified here are clearly defined as including only purchases made *after* the end of the *Gay* class period on September 23, 2015. *See* Class Cert. Order, ECF No. 146 at 17 ("Plaintiffs state that their claims are based on their September 24, 2015 or later purchases of products[.]"); *Id*. at 32 (setting forth class definitions for the New York, California, and Florida classes to include "all persons who purchased Tom's of Maine deodorant and/or toothpaste products, as identified in Exhibit 1 to the Westcot Declaration, on or after September 24, 2015…").

claims would have arisen from the same factual predicate as those in
*Gay*, and therefore could be barred by the release. But Plaintiffs state
that their claims are based on their September 24, 2015 or later
purchases of products with *re-designed* packaging, *i.e.*, Plaintiffs'
claims relate to "deceptive statements made on product packaging that
was modified following the settlement in *Gay*." (Reply at 2.)
Defendants concede that, pursuant to the *Gay* Settlement, they "made
certain packaging and labeling changes, including providing
additional information on Tom's standards for natural, sustainable,
and responsible." (Opp'n at 7.) The claims in this litigation thus do
not depend on "the very same set of facts" as those in *Gay*. *Nat'l Super
Spuds, Inc.*, 660 F.2d at 18 n.7. Rather, they focus on *modified* labeling
and packaging.

April 23, 2021 Class Certification Order ("Class Cert. Order") at 17, ECF No. 146.

That rationale remains accurate today. The present litigation is based on whether the

modified post-*Gay* labeling of the Tom's of Maine products was deceptive towards consumers.

The *Gay* litigation, on the other hand, turned on whether the previous *Gay* labeling of the Tom's

of Maine products was deceptive towards consumers. Defendant has admitted Tom's of Maine

product packaging and labeling was changed post-*Gay,* even including images of deodorant

labels depicting the label changes post-*Gay* in their briefing. *See* Defendants' Motion to

Decertify, ECF No. 221 at 6. The evidence on this issue is even more clear now than at the time

of the Court's prior ruling, as Defendant has produced additional evidence related to its post-*Gay*

packaging – describing the packaging changes as a "redesign" and a "master brand packaging

refresh." Chanoine Decl. Ex. 7 (Kindness Decl.) ¶¶ 4-9 (Tom's graphics production specialist

describes toothpaste and deodorant packaging "redesign" and "master brand packaging refresh"

that occurred after the *Gay* settlement).

Defendant's reliance on *In re Literary Works* is misplaced. In *In re Literary Works*,

publishers had allegedly exceeded the scope of their agreement with authors by publishing the

authors' written works (the "Subject Works" at issue) on online databases. 654 F.3d 242, 245

(2d Cir. 2011).  After reaching a settlement, objectors argued that "the Settlement impermissibly release[d] claims beyond the factual predicate of the case" because it absolved liability for future publications of the *same* Subject Works at issue in the Settlement.  *Id.* at 247.  The Second Circuit rejected the argument, however, reasoning that any future injury stems from the *identical* facts at issue in the present matter (*i.e.*, the publication of the exact same Subject Works), and therefore the identical factual predicate defense would apply.  *Id.* at 248 ("We find both of these arguments unavailing because *future use of the [same] Subject Works*, whether by publishers or by sublicensees, falls squarely within the factual predicate underlying authors' claims.") (emphasis added).  Accordingly, the Second Circuit noted that a trial of any future lawsuit based on subsequent publications of the Subject Works would amount to the same litigation in the current lawsuit had it reached trial—whether publication of the Subject Works constituted copyright infringement.  *Id.* ("Put another way, a trial of this case would determine whether it is permissible for publishers to continue to sell and license *the works*.") (emphasis added).  The circumstances here are quite different as Plaintiffs' claims do not involve the *same* labeling as was at issue in the previously litigated *Gay*.

Defendant's reliance on *Burgess v. Citigroup Inc.* is also misplaced.  There plaintiff's allegations of new facts were found to not be relevant to the defendant's liability, and thus the court there found the identical factual predicate defense applied.  624 F. App'x 6, 9 (2d Cir. 2015) ("But these additional facts … were not allegations that the [present actions'] claims depended upon for proof of the Defendants-Appellees' liability, and thus do not constitute a separate factual predicate.").  Conversely, here, the new facts pled by Plaintiffs concern the false and misleading nature of Defendant's new "redesigned" label – facts that directly pertain to Defendant's liability in the present matter, constituting a separate factual predicate from the old

7

labeling at issue in *Gay*.

Defendant's attempt to argue that Plaintiffs' "focus" on the "natural" representation on this changed packaging somehow avoids application of the identical factual predicate doctrine is completely unsupported. MSJ at 9. Plaintiffs' allegations regarding Defendant's false and misleading post-*Gay* packaging have been the basis of Plaintiffs' claims from the filing of the initial complaint in 2016. In making this argument, rather than viewing the packaging in its entirety, Defendant attempts to cherry pick a portion of the label that they claim remained the same while ignoring other portions of the label that were changed. Chanoine Decl. Ex. 7 (Kindness Decl.) ¶¶ 4-9 (describing the modifications to Tom's toothpaste and deodorant labels that occurred after the *Gay* settlement). But the bottom line is the packaging was changed.

In finding that the Gay settlement did not preclude Plaintiffs' distinct claims, the Court properly applied the identical factual predicate doctrine. *See* Plaintiffs' Opposition to Defendants' Motion to for Class Decertification, ECF No. 225 at 3-13. That ruling should not be disturbed. Defendant's motion for summary judgment on this basis should be denied and the classes should not be decertified.

## II.    PLAINTIFFS HAVE PRESENTED EVIDENCE THAT DEFENDANT'S "NATURAL" REPRESENTATION IS FALSE AND MISLEADING

Defendant argues Plaintiffs have not produced sufficient evidence to raise a genuine dispute of fact on the issue of deception. MSJ at 10-17. That is wrong. Plaintiffs have advanced more than sufficient evidence that a reasonable consumer is likely to be deceived by the "natural" representation on Defendant's product packaging. Defendant's argument is directly belied by the evidence submitted by experts Zhou and Sowers, Plaintiffs' experiences, and Defendant's own documents. Plaintiffs go far beyond a mere showing that "some few consumers" were deceived. MSJ at 10.

### A.   Plaintiffs Have Evidence Demonstrating How A Reasonable Consumer Would Understand The Term "Natural"

Defendant argues "Plaintiffs have not produced evidence of how reasonable consumers understand the term 'natural' on Tom's Products." MSJ at 11-14. But to prevail on a motion for summary judgment the movant must "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the Defendant. And given the volume of evidence in the record supporting Plaintiffs' allegations of deception, Defendant is woefully unable to meet that burden.

 "[W]hether a reasonable consumer would have been misled by a defendant's misrepresentation is 'generally a question of fact which requires consideration and weighing of evidence from both sides.'" *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *9 (N.D. Cal. Jan. 2, 2014) (quoting *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)).

Defendant relies almost exclusively on *In re KIND "Healthy and All Natural" Litig.*, 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022). But that case is easily distinguishable. In *In re KIND*, a myriad of distinct issues led the court to decertify the classes: (1) the plaintiffs abandoned certain labeling claims that were present at the time of class certification, such that there was a change in circumstances from the time of class certification (*Id*. at 8); (2) the court found that each of the plaintiffs advanced a different understanding of the "all natural" representation at issue and that plaintiffs advanced not one, but five different definitions of the term "natural" (*Id*. at 9); (3) the court excluded plaintiffs' consumer perception survey expert, such that the court found a "complete failure of proof concerning an essential element" of

plaintiffs' case (*Id.* at 9-10); and (4) the court excluded plaintiffs' material science expert finding that his analysis of the allegedly unnatural ingredients at issue was not relevant as he only considered what "typically occurs" in the production of the ingredients, as opposed to considering the actual production of the ingredients as sourced by the defendant (*Id.* at 16).

Here, unlike in *In re KIND*, (1) there has not been a change in circumstances, as Plaintiffs' allegations and challenged representation have remained consistent throughout the litigation; (2) Plaintiffs advance one consistent understanding of the "natural" representation at issue (i.e., not artificial/synthetic or highly chemically processed); (3) Plaintiffs' consumer survey expert utilized widely accepted survey methodologies, is highly qualified in his area of expertise, and his report has not been excluded by this Court; and (4)  Plaintiffs' material science expert is similarly highly qualified, conducted a thorough analysis of the alleged unnatural ingredients with process information obtained from the specific chemical manufacturers and suppliers utilized by Defendant, and his report has not been excluded by this Court.

The court in *In re KIND* also did not have before it the large swaths of evidence put forth by Plaintiffs here.  Plaintiffs' evidence includes the testimony of a highly credentialed and experienced consumer market research expert, Brian M. Sowers, who submitted a report detailing the two consumer perception surveys he conducted to test whether the "natural" representation on Tom's toothpaste and deodorant packaging communicates to relevant consumers that the products contain only natural ingredients (i.e., no artificial ingredients). Chanoine Decl. Ex. 35 (Sowers Report) ¶ 7.  Sowers found "net deception levels" of 26.3% and 24%, far above the threshold level for demonstrating actual consumer confusion, demonstrating that consumers are in fact being deceived by Tom's packaging. *See* 6 McCarthy on Trademarks and Unfair Competition § 32:1988 ([5]th ed.) ("the Second Circuit found that a 15-20% rate

corroborates a finding of likely confusion."); *Kind LLC v. Clif Bar & Co.*, 2014 WL 2619817, at *9 (S.D.N.Y. 2014) (15% net confusion rate sufficient).  Defendant's criticism that Sowers should have asked consumers "what natural or artificial means" is baseless.  The aim of the survey was not to determine a consumers' definition of "natural," but rather simply to determine whether or not consumers understood the "natural" representation to mean the products would or would not contain artificial or synthetic ingredients.  The subject of Sowers' survey goes to the heart of Plaintiffs' theory of liability and directly advances one of the key issues in Plaintiffs' case – whether consumers were misled by the "natural" representation on Defendants product packaging.  The results of Sowers' surveys alone are enough to reject Defendant's argument regarding a lack of evidence of deception.  But there is more.

Plaintiffs have also submitted the report of an expert in the field of chemistry, biochemistry, and chemical biology, and professor in the Department of Chemistry and Chemical Biology at Northeastern University, Dr. Zhaohui Zhou.  Chanoine Decl. Ex. 41 (Zhou Report) ¶¶ 3-4.  Utilizing his expertise and experience, Zhou offers scientific explanations of seven ingredients featured in Defendant's products.  His analyses consistently demonstrate that the ingredients "are inherently incompatible with the term 'natural,'" and that Defendant's products "contain ingredients that are heavily processed using non-natural and man-made industrial processes."  *Id.* at ¶ 88, 89.  While Defendant takes issue with the written reports and testimony submitted by Sowers and Zhou, it cannot be said that Plaintiffs have offered no proof of common deception.  MSJ at 20-21.  Plaintiffs *have* offered proof, and Defendant's criticisms of that proof are better suited for cross-examination at trial.  Defendant is free to make these arguments concerning Plaintiffs' experts' methodologies to the jury, but they do not warrant summary judgment in Defendant's favor.

Defendant quibbles with the variations between the definitions of "natural" stated by Dr. Zhou and Sowers. But Zhou opines that while definitions of the term "natural" "may emphasize different aspects," they all "are consistent among themselves, including "nothing artificial or synthetic" and "only minimally processed." Chanoine Decl. Ex. 41 (Zhou Report) ¶ 23. Even though there may not be a precise, uniform definition of "natural," consumers generally interpret that term in a similar manner. ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████ *See*, e.g. Westcot Decl. Ex. 11 (COLGATETOMS00041108) at p.8. There is also evidence that ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

Westcot Decl. Ex. 24 (COLGATETOMS00028415) at 12.

In additional to expert testimony, Defendant's own documents and testimony from company witnesses support Plaintiffs' claims and demonstrate a triable issue of fact on deception. For example, ██████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████ Westcot Decl. Ex. 19 (COLGATETOMS00162590) at p. 76.

██████████████████████████████████████████████

██████████████████████████████████████████████

 *Id.; see also* Westcot Decl. Ex. 6 (J. Murphy 2022 Tr.) at 71:15- 94:18

Plaintiffs have demonstrated that there is a genuine dispute of material fact as it pertains to deception.

### B.    Tom's Does Not And Cannot Argue Its Products Are "Natural"

Defendant argues Plaintiffs have produced "no evidence that Tom's products fail to meet reasonable consumers' expectations for a 'natural' toothpaste or deodorant."  MSJ at 14-15. That is wrong.

First, and most notably, Defendant makes no attempt to argue its Products are in fact natural, because they cannot.  Tom's products "contain ingredients that are heavily processed using non-natural and man-made industrial processes," such that the products "are inherently incompatible with the term 'natural.'"  Chanoine Decl. Ex. 41 (Zhou Report) ¶¶ 88-89.

Defendant's own expert, Dr. Clevenger, even admitted that Tom's products do not meet the Internal Organization of Standardization ("ISO") standards to be appropriately described as "natural," and that none of the seven Tom's ingredients he analyzed can be found in nature. Westcot Decl. Ex. 23 (Clevenger Tr.) 63:22-64:4; 68:14-24.  He also admitted that sodium lauryl sulfate (contained in the Tom's products at issue) does not meet the Natural Products Association ("NPA") definition of the term "natural."  *Id.* 64:24-65:24.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬ That is not surprising given that Tom's sources its ingredients from a host of chemical manufacturing companies including Jost Chemical Company, Dow Chemical Company, Lyondell Chemical Co., Galaxy Chemical Corporation, and Yuxin Chemical Co. Westcot Decl. Ex. 22 (Defendants' Responses to Plaintiffs' Second Set of Interrogatories) at 4.

Given this volume of evidence, it cannot be said that Plaintiffs offer no proof that Tom's products fail to meet reasonable expectations for "natural" toothpaste and deodorant products. Defendant's motion for summary judgment should be denied.

### C. Tom's Attempt to Clarify Its Misleading Label Representation On The Tom's Website Does Not Cure The Misrepresentation

Defendant argues that summary judgment is warranted because "to the extent consumers had questions about what was in Tom's toothpaste and deodorant, Tom's packaging and website information would have told them everything that Plaintiffs' claim is missing." MSJ at 15-17. Tom's attempts to cure the misrepresentation of its products as "natural" by including additional information on the Tom's corporate website or the back of the packaging does not remedy the deception that is front and center on each and every product at issue.

*Mantikas v. Kellogg Co.* is instructive. The court there found that "reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." 910 F.3d 633, 637 (2d Cir. 2018); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) (finding that ingredient lists are not on packaging "so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for

14

liability for the deception."). "Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging.'" *Mantikas*, 910 F.3d at 637.

Here, Defendant attempts to cure the deceptive quality of its "natural" representation by including a reference to its company website, where consumers can "learn more" about the ingredients in Defendant's products and "what we mean by 'natural.'" But Defendant's own documents state that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████

Furthermore, Defendant's own internal ██████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████

## III. PLAINTIFFS HAVE EVIDENCE OF CLASSWIDE INJURY

### A. The Results Of Dr. Dennis's Conjoint Analysis Prove Injury

Defendant argues "Plaintiffs have not met their burden to show an actual injury for their statutory and common law claims by demonstrating that the alleged deceptive conduct caused class members to pay a higher price." MSJ at 17-20. That is wrong.

First, no showing of actual damages is required for Plaintiffs' claims under GBL §§ 349 and 350, as statutory damages of $50 and $500 per violation are provided for.  "[S]tatutory damages are by definition a substitute for unproven and unprovable damages … designed precisely for instances where actual harm is difficult or impossible to calculate." *Psihoyos v. John Wiley & Sons, Inc.*, 2012 WL 5506121 (S.D.N.Y. 2012) , at *3, *affirmed* 748 F.3d 120, 127 (2d Cir. 2014); *see also Louis Vuitton Malletier, S.A. v. LY USA, Inc.* , 676 F.3d 83, 110 (2d Cir. 2012) (explaining that statutory damages were meant to ensure plaintiffs could recover "more than *de minimis* compensation  … [despite] the unprovability of actual damages"); *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*, 887 F.2d 399, 406 (2d Cir. 1989) (explaining that statutory damages are "an automatic measure of recovery to plaintiffs regardless of injury or profits"); *Tenenbaum I*, 660 F.3d at 507 ("[T]he availability of statutory damages is not contingent on the demonstration of actual damages."); *Kim v. BMW of Manhattan, Inc.*, 819 N.Y.S.2d 848, at *3 (N.Y. Sup. Ct. 2005) ("Plaintiffs here have not alleged pecuniary damages. Accordingly, they are entitled to the statutory damages of $50.").  For Counts VIII and IX, no proof of actual damages is required.

Second, Plaintiffs have shown an actual injury as a result of deceptive conduct in the form of price premium paid by Plaintiffs and class members.  Plaintiffs' expert Dr. J. Michael Dennis measured whether the "natural" claim on Tom's toothpaste and deodorant products cause any market price premium to be paid by Tom's of Maine consumers.  Chanoine Decl. Ex. 31 (Dennis Report) ¶ 18.  Drawing on his more than 25 years of experience in survey research, Dennis designed conjoint surveys following a rigorous protocol, and carried out a series of quality control and quality assurance measures.  *Id.* at ¶ 78.  The results of Dr. Dennis' surveys demonstrate that class members paid at least a ███ price premium for Tom's toothpastes and

at least a ███████ price premium for Tom's deodorant products – solely attributable to
Defendant's "natural" claim. *Id.* ¶¶ 74-75. This is evidence showing an actual injury. *See
Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (An actual
injury claim under section 349 typically requires a plaintiff to allege that, on account of a
materially misleading practice, she purchased a product and did not receive the full value of her
purchase.'); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010)
(Finding "injury can be demonstrated through allegation that a plaintiff overpaid for the product,
or, stated differently, by a claim that a plaintiff paid a premium for a product based on the
defendants' inaccurate representations.").

     Defendant's criticisms of Dennis's survey methodologies are without merit, and go to the
weight of the evidence and not admissibility. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D.
552, 576 (N.D. Cal. Mar. 9, 2020) (finding critiques regarding consideration of competitor
actions in the market, demand factors, etc. to be "fodder for cross-examination…not grounds for
exclusion."). Defendant argues Dennis's conjoint is incapable of measuring price premium
because it didn't consider supply side factors. That is incorrect. As discussed in Plaintiffs'
contemporaneously filed opposition to Defendant's motion to strike the testimony of Dr. Dennis,
Courts have found that conjoint analyses can adequately account for supply-side factors when (1)
the prices used in the surveys underlying the analyses reflect the actual market prices that
prevailed during the class period; and (2) the quantities used (or assumed) in the statistical
calculations reflect the actual quantities of products sold during the class period. *See Hadley v.
Kellogg Sales Company*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. Aug. 17, 2018); *Martinelli v.
Johnson & Johnson*, 2019 WL 1429653, at *4 (E.D. Cal. Mar. 29, 2019) (conjoint analysis

"factored supply-side data into its design" because it incorporated "actual real-world prices" and "the actual number of units sold").

Here, in designing the price premium survey, Dennis considered supply-side factors and real-world market transaction information from consumer transaction data for Defendant's products and for their competitors. Chanoine Decl. Ex. 31 (Dennis Report) ¶ 23. He obtained this real-world market data from his market scan of retail prices of Tom's of Maine toothpastes and deodorants and their competitors. *Id.* His surveys included those market-based price points for Tom's of Maine products and for Tom's competitors, all based on actual real-world prices that consumers have paid for the products."[2] *Id.* at ¶ 38. Defendant primarily relies on *In re G.M. LLC Ignition Switch Litig.*, but the finding there related to a conjoint analysis in a product defect case (not a mislabeling case), finding that a conjoint survey could not account for the supply side because the claim at issue concerned an alleged dangerous defect. *In re G.M. Litig.*, 407 F. Supp. 3d 212, 238 (S.D.N.Y. Aug. 6, 2019). Here, the subject of Dennis's conjoint analysis is not a dangerous defect, but the mislabeling of Tom's of Maine deodorant and toothpaste products. Defendant's criticisms of Dennis's survey are without merit.

Defendant then pivots to argue that the fact that Dennis conducted two surveys (one for Tom's toothpaste and one for Tom's deodorants) should somehow necessitate a ruling of summary judgement for Defendant. MSJ at 19. Defendant makes this argument without citing a single authority to support it. In making this argument, Defendant flatly ignores the fact that the Court has found Plaintiffs to be appropriate representatives of a class of purchasers of both Tom's toothpaste and deodorant products because "conduct with respect to deodorant purchasers

---

[2] Defendants also incorrectly argue that Dennis does not factor in competitor reactions that are necessary for the analysis. MSJ at 14. But Dennis accounts for these factors through the use of the "none of these" option in his surveys.

implicates the same set of concerns as the conduct that allegedly injured toothpaste purchases," and "the alleged misrepresentation—the use of the word "natural"—appears on Tom's of Maine toothpaste products as well as its deodorant."  Class Cert. Order, ECF No. 146 at 9-10; *see also* Westcot Decl. Ex. 1 (J. Murphy 2018 Tr.) at 58:20-60:4, 65:10-13.  The fact that Plaintiffs' conjoint and consumer survey experts conducted separate surveys of toothpaste and deodorant purchases is no revelation.  In fact, Plaintiffs' conjoint expert, Dr. J. Michael Dennis, explained in his initial report submitted in connection with Plaintiffs' class certification motion that his work would involve separate surveys for toothpaste and deodorant products.  The Court acknowledged this fact in its Order when it described the application of his survey methodology to the execution of a separate future survey of deodorant purchasers:

> Both of Plaintiffs' experts have made clear that the methods used to measure the premium associated with toothpaste can readily be applied to deodorant products. Dr. Dennis stated that he would employ "the same price premium survey methodology," with "appropriate changes" to reflect the deodorant brands that compete with Tom's of Maine and the particular attributes of those products, and could thus "provid[e] reliable data on any economic loss caused by Defendants' use of the 'natural' claim on their deodorant products."

Class Cert. Order, ECF 146 at 29.  To now claim that Plaintiffs' submission of different surveys for toothpaste and deodorant products is somehow "new evidence" supporting decertification of the class and summary judgment is disingenuous at best.  No change in circumstance has occurred with regard to Plaintiffs' standing to represent toothpaste purchasers, and Defendants' arguments on this point should be rejected.

## B.    Defendant Is Not Entitled To Summary Judgment On Its Long Lasting Deodorants

Defendant argues certain Tom's deodorant products (the long-lasting variety) were revised starting in 2020 to remove the "natural" label, and that Defendant is therefore entitled to summary judgment on the sales of those products.  That is incorrect.  The class period here

includes purchases of Tom's toothpaste and deodorant products occurring on or after September 24, 2015. The fact that Defendant started to remove the false and misleading "natural" claim on certain product lines after this litigation was filed does not mean there can be no claim for injury or that no deceptive act has occurred. Defendant offers no support for their position on this point, and their argument here should be rejected.

### C. Plaintiffs Do Not Argue "Fraud On The Market" Theory

Defendant incorrectly argues that Plaintiffs theory of injury is a "fraud on the market" theory. But this is not a securities case, and Plaintiffs allege no such thing. Plaintiffs' injury is the price premium paid for products that did not meet consumers' reasonable expectations as a direct result of Defendant's false and misleading labeling. Defendant's argument on this point falls flat.

## IV. PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF

Defendants argue they are entitled to summary judgment on Plaintiffs claims for injunctive relief. MSJ at 20. That is wrong. While Plaintiffs do not intend to purchase Tom's products as they are currently sold, they may purchase Tom's products in the future if they were properly labeled. *See* Westcot Decl. Ex. 25 (Moran Tr.) 54: 15-55; Westcot Decl. Ex. 26 (Wright Tr.) 62:16-19); Westcot Decl. Ex. 27 (de Lacour Tr.) 55:23-56:2).

A plaintiff may seek injunctive relief based on the "consumer's plausible allegations" that: (i) "[they] will be unable to rely on the product's advertising or labeling in the future," or that (ii) "[they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017) ("Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be

the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.").

Courts have also recognized that preventing plaintiffs from seeking injunctive relief against deceptive sales practices would undermine consumer protection laws.  *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("[W]ere the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, the injunctive relief would never be available in false advertising cases, a wholly unrealistic result."); *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2001) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing.").

*Belfiore v. Procter & Gamble Co.* is instructive.  There, the court observed that "[f]ederal courts have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." 94 F.Supp.3d 440, 445 (E.D.N.Y. 2015).  The court then reasoned that "[t]he only way a consumer could enjoin conduct would be if he were made aware of the situation by suffering injury." *Id.*  Moreover, "[a]n injunction in connection with a class action is designed to afford protection of future consumers from the same fraud." *Id.*  Thus, "[t]o hold otherwise would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *Id.*   Here, Plaintiffs face that same threat of future

harm because, while they desire to purchase Tom's products in the future, they will be unable to

rely on the product's advertising and labeling, and so will not purchase the product.  For the

Court "to hold otherwise would effectively bar any consumer who avoids the offending product

from seeking injunctive relief."  *See Belfiore*, 94 F.Supp.3d at 445.

## V.      DEFENDANT'S ARGUMENTS AGAINST THE APPLICATION OF SHADY GROVE ARE WRONG

Defendant's argue Plaintiffs' claims for classwide statutory damages under New York

General Business Law ("GBL") §§ 349 and 350 are barred by New York law.  MSJ at 20-25.

That is wrong.

There is nothing in the text of §§ 349 or 350 to support that argument.  The only

restriction on the recovery of statutory damages for GBL §§ 349 and 350 claims is New York's

CPLR § 901(b), which states:

> Unless a statute creating or imposing a penalty, or a minimum
> measure of recovery specifically authorizes recovery thereof in a
> class action, an action to recover a penalty, or minimum measure
> of recovery created or imposed by statute may not be maintained
> as a class action.

Given §§ 349 and 350's silence on the issue, CPLR § 901(b) operates to preclude statutory

damages in class actions.  But, of course, that rule applies only in state court, and is preempted

here by Fed. R. Civ. P. 23.  *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,

559 U.S. 393, 416 (2010) (holding CPLR § 901(b) is preempted by Fed. R. Civ. P. 23, making

statutory damages available in a class action in federal court).  After *Shady Grove*, there is no

question that class actions for statutory damages may be pursued in federal court.  Indeed, the

Second Circuit has affirmed orders certifying a class to pursue statutory damages under GBL §

349.  *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015) ("statutory

damages under GBL § 349 can be assessed on the basis of common proof").

*Shady Grove* is a death-blow to Defendant's argument.  Defendant's argument lacks any basis in the text of the statutes, and it is directly contradicted by the legislative history Defendant cites.  The text of GBL § 349(h) and GBL § 350-e(3) explicitly provide for statutory damages.  And numerous state and federal courts have recognized that GBL §§ 349 and 350 claims can be asserted in class actions.  *See, e.g.*, *Sykes*, 780 F.3d at 87 (affirming order granting class certification on a GBL § 349 claim).

The key feature of the text of both statutes, § 349(h) and § 350-e(3), is that they make no distinction between claims for actual and statutory damages.  This is a crucial difference between these statutes and the Colorado statute discussed in Defendant's brief.  MSJ at 23.  Defendant relies on *Simmons v. Author Solutions, LLC*, 2015 WL 4002243 (S.D.N.Y. July 1, 2015) (Cote, J.), which states:

> *Except in a class action* …, any person who … is found to have engaged in … any deceptive trade practice … shall be liable in an amount equal to … [t]he greater of:
>
> (I)     The amount of actual damages sustained; or
>
> (II)    Five hundred dollars; or
>
> (III)   Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct ….

*Id.* at *5, *quoting* Colo. Rev. Stat. § 6-1-113(2)(a).  Obviously, the key language here, which Judge Cote italicized, was the text stating that these provisions apply "*Except in a class action*." *Id.*  Again, neither GBL § 349 nor § 350 has language like this.

Defendant urges the Court to consider "legislative history" in interpreting GBL §§ 349 and 350 to preclude statutory damages.  MSJ at 24.  But where the text of the statute is unambiguous, consideration of legislative history is improper.  *Department of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002) ("[R]eference to legislative history is inappropriate

when the text of a statute is unambiguous."). Here, the text of both §§ 349 and 350 are unambiguous on two crucial points. The text makes no distinction between class and individual claims, and imposes no limitations on the availability of statutory as opposed to actual damages. On these points, there is no ambiguity and no reason to resort to legislative history.[3] Furthermore, even if the court were to indulge in a foray into legislative history, that history would directly contradict Defendant's argument.

Finally, Defendant argues summary judgment is appropriate on Plaintiffs' GBL §§ 349 and 350 claims because the amount of statutory damages sought would be excessive and offend due process. MSJ at 25. Defendant is wrong, and its constitutional due process argument is premature at this point.[4] "[T]he long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445 (1988); *see also Camreta v. Greene,* 131 S.Ct. 2020, 2031, (2011) (noting rule that courts must avoid resolving constitutional questions unnecessarily). "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Buchanan v. Maine,* 469 F.3d 158, 172 (1st Cir. 2006) (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99 (1981)) (internal quotation marks

---

[3] *See, e.g.*, *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011) ("But the more fundamental point is what we said before: Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it."); *Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 77 (2d Cir. 2014) ("Legislative interpretation begins with the plain text of the statute and, where the text is unambiguous, also ends there because the judicial inquiry is complete.") (internal quotation marks omitted); *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993) ("If the words of a statute are unambiguous, judicial inquiry should end, and the law interpreted according to the plain meaning of its words."); *Boelter v. Hearst Communications, Inc.*, 2016 WL 3369541, at *5 (S.D.N.Y. June 17, 2016) ("Legislative history, however, should only be considered when construing statutory text that is by itself unclear .…").
[4] Even if a particular ratio between actual and statutory damages was required – and it is not – the ratio here would not offend due process. In *Williams*, the Supreme Court affirmed an award of statutory damages that was 113 times actual damages. 251 U.S. 63, 64 (1919) .

omitted).  Here, the question whether a statutory damage award violates due process should not be reached until after such an award has been made, and after the district court considers whether a remittitur should be ordered.  *See Tenenbaum I*, 660 F.3d at 511 (holding that the principle of constitutional avoidance required the district court to address the issue of remittitur before determining whether a statutory damage award violated due process).

Both cases cited by Defendant involve the reduction of a statutory damage award at the time of entry of final judgment.  *See* Montera v. Premier Nutrition Corp., 2022 WL 3348573, at *1 (N.D. Cal. Aug. 12, 2022) (court reduced statutory damage upon a motion for entry of judgment following a jury verdict); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 957 (8th Cir. 2019) (affirming district court's reduction of statutory damages on a post-trial motion for reduction of damages following a jury trial).  There is no support for Defendant's proposition that Plaintiffs' GBL §§ 349 and 350 claims should be stricken prior to an award of damages.  Defendant's arguments are incorrect and premature, and summary judgment on this basis should be denied.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment should be denied in its entirety.

Dated:  December 1, 2022                    Respectfully submitted,

                                                       By: */s/ Sarah N. Westcot*
                                                Sarah N. Westcot

                                        **BURSOR & FISHER, P.A**
                                        Scott A. Bursor
                                        Sarah N. Westcot (admitted *pro hac vice*)
                                        701 Brickell Ave, Suite 1420
                                        Miami, FL 33131-2800
                                        Telephone: (305) 330-5512
                                        Facsimile: (305) 676-2700

Email: scott@bursor.com
          swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Counsel for Plaintiffs and the Classes*