## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COLGATE-PALMOLIVE CO., and TOM'S OF MAINE INC.,<br><br>Defendants. | Civil Action No. 1:16-cv-08364-KMW |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF PLAINTIFFS' PROFFERED CONSUMER SURVEY EXPERT, BRIAN M. SOWERS

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

*Attorneys for Defendants Colgate-Palmolive Co. and Tom's of Maine, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

    I.    Plaintiffs Admit that Sowers Did Not Test Consumer Understanding of
"Natural." ........................................................................................ 2

    II.    Sowers' Opinions Are Based on a Circular and Leading Control. ...................... 4

    III.    Sowers' Opinions Are Based on a Leading Closed-Ended Question. ................... 7

        A.    Sowers' Key Closed-Ended Question Was Biased and Leading. .............. 8

        B.    Sowers Left Respondents Guessing What He Meant by "Natural." .......... 9

        C.    Sowers' Response Options Constrained Answers. ................................. 10

CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)...............................................................................3

*Franklin Res. Inc. v. Franklin Credit Mgt. Corp.*,
    988 F. Supp. 322 (S.D.N.Y. 1997).......................................................7

*In re KIND LLC "Healthy & All Natural" Litig.* ("*KIND*"),
    2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022)..............................passim

*Longoria v. Million Dollar Corp.*,
    2021 WL 791505 (D. Colo. Mar. 2, 2021) ..........................................6

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007)..................................................4

*Price v. L'Oreal USA, Inc.*,
    2020 WL 4937464 (S.D.N.Y. Aug. 24, 2020) ..................................1, 8

*Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc.*,
    2006 WL 2588002 (S.D.N.Y. Sept. 6, 2006).....................................6, 7

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
    648 F. App'x 609 (9th Cir. 2016) ......................................................3, 4

*THOIP v. Walt Disney Co.* ("*THOIP II*"),
    788 F. Supp. 2d 168 (S.D.N.Y. 2011)..........................................4, 5, 7

*United States v. Romano*,
    794 F.3d 317 (2d Cir. 2015)..................................................................1

*Universal City Studios, Inc. v. Nintendo Co.*,
    746 F.2d 112 (2d Cir. 1984)...............................................................8, 9

**Other Authorities**

Shari S. Diamond, Reference Guide on Survey Research, *in* Reference Manual On
    Scientific Evidence 258 (Federal Judicial Center 2d ed. 2000)..............5

## INTRODUCTION

Plaintiffs contend that this Court must accept Sowers' irrelevant and methodologically unsound opinions because his errors go only to weight.  Dkt. 260 ("Opp.") 1.  No case supports such a sweeping proposition—and Plaintiffs cite none—as it would effectively nullify *Daubert* challenges to surveys.  The reality is that "the gatekeeping inquiry must be tied to the facts of a particular case."  *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015).  Here, Sowers' choice to test only an irrelevant question—and "the cumulative effect" of his methodological errors—warrants exclusion.  *See, e.g.*, *Price v. L'Oreal USA, Inc.*, 2020 WL 4937464, at *8-9 (S.D.N.Y. Aug. 24, 2020) (excluding survey, and noting that, while critiques about methodology typically go to weight "there are only so many questions of weight that can be tolerated; as each flaw in a survey diminishes its reliability and probative value, and [] eventually the cumulative effect of the flaws mandates exclusion").

*First*, Sowers' opinions are irrelevant because they do not fit this case.  Plaintiffs admit that Sowers did not seek "to test consumers' understanding" of "natural" but instead just asked whether "natural" means "only,"  "some," or "no natural ingredients."  Opp. 7, 19-21.  But Plaintiffs are not litigating a case about whether Tom's products contain 100% natural ingredients.  Rather, their claim is that seven specific ingredients—which indisputably start as corn, soy, coconut, and other plants—do not meet reasonable consumers' expectations for "natural" toothpaste and deodorant due to their level of processing.  Sowers' surveys provide "no useful information" about *that* question, and would leave the jury guessing about the issues Plaintiffs actually raise:  Does processing make a plant substance not natural?  And if so, how much processing?  *In re KIND LLC "Healthy & All Natural" Litig.* ("*KIND*"), 2022 WL 4125065, at *11-12 (S.D.N.Y. Sept. 9, 2022).  Worse, Sowers would confuse the jury with testimony about the rate at which consumers were purportedly deceived, even though his surveys

do not fit Plaintiffs' theory of deception and thus cannot measure deception under that theory.

*Second*, Plaintiffs do not dispute that the red, bold, all-capitalized warning label on Sowers' control stimulus looked nothing like real toothpaste or deodorant packaging.  But they claim that Sowers could design any control he wanted—no matter how absurd—because "false advertising" controls need not look plausible.  That made-up rule makes no sense and Plaintiffs cite no law for it.  Nor is it supported by the two non-legal authorities they cite.  Experts must design valid surveys in "false advertising" cases, just as they must in other areas.

*Third*, Plaintiffs do not dispute that Sowers' opinions are based entirely on responses to a single, closed-ended question that (1) presented respondents with only one conception of "natural" that was tied to the absence of "artificial ingredients," (2) failed to define any of those key terms except in an entirely circular manner, and (3) gave participants no opportunity to disagree with the natural-means-not-artificial paradigm presented within the predetermined answer choices.  Plaintiffs claim that Sowers can get away with all of this because those criticisms go only to weight.  Not so.  Surveys that lead respondents to plaintiffs' preferred answer choices through suggestive prompts or constrained answer choices, or that fail to define key terms like "artificial," are inadmissible.

## ARGUMENT

**I.    Plaintiffs Admit that Sowers Did Not Test Consumer Understanding of "Natural."**

Sowers' surveys do not fit Plaintiffs' theory of this case.  Plaintiffs' claims turn on whether seven challenged ingredients in Tom's toothpaste and deodorant are not "natural" because they are "synthetic or chemically processed."  Opp. 2-3 (quoting Ex. 4 (FAC) ¶ 23); Ex. 10 (Moran Tr.) 138:3-11.  It is undisputed that those ingredients start out as corn, palm, coconut and other plants, but Sowers never asked respondents what it means for an ingredient to be "synthetic" or what amount of processing, if any, would make plant-based toothpaste and

deodorant ingredients "synthetic" or "unnatural."  Instead, he asked (in a leading and biased manner) whether consumers think "natural" means "only natural ingredients" or "some natural ingredients" or "no natural ingredients."  He then purported to calculate the rate of deception amongst prospective "natural" toothpaste and deodorant purchasers.

As in *KIND*, this "limited inquiry" does not shed any light on what reasonable consumers expect of "natural" toothpaste and deodorant.  *See* 2022 WL 4125065, at *11-12.  That is because the question Sowers asked does not match the wrong that Plaintiffs allege.  His question measures, at most, whether consumers think Tom's "natural" claim conveys something about the ratio of natural to artificial ingredients.  It has nothing to do with whether reasonable consumers expect Tom's toothpaste and deodorant to contain ingredients that qualify as "natural" based on their degree of processing.  Sowers' surveys do not fit Plaintiffs' theory of deception and they thus cannot show "in any relevant sense" whether reasonable consumers are deceived.  *Cf. Comcast Corp. v. Behrend*, 569 U.S. 27, 37 (2013) (holding that plaintiffs could not rely on methodology that identified damages that were "not the result of the wrong").

Plaintiffs argue that even though Sowers did not actually "ask what respondents understood" by "natural," his opinions nevertheless clear the "low" bar for relevancy.  Opp. 7. But the factfinder can learn nothing from Sowers about whether reasonable consumers agree with Plaintiffs' theory of what makes ingredients "synthetic" or "artificial"—because he never asked.  He should not be permitted to tell the jury about "net rates of deception" that have nothing to do with the specific deception alleged in this case.

Plaintiffs do not cite a single case in which a court admitted expert opinions based on consumer survey evidence that never tested consumers' understanding of the claim at issue.  The only case they cite—*ThermoLife International, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609 (9th Cir. 2016)—says nothing of the sort.  The dispute in *ThermoLife* centered on whether a

dietary supplement manufacturer had falsely advertised supplements as "safe, natural, [and] legal" in violation of the Lanham Act.  *Id.* at 611.  The court of appeals held that an expert's opinion (which was not based on any survey evidence) about whether the supplement industry would consider the supplements safe was relevant to the ultimate question of "whether [the] products were, in fact, safe."  *Id.* at 613.

Here, the ultimate question turns on what reasonable consumers think it means for a toothpaste or deodorant to be "natural."  Sowers generated no relevant information bearing on that question.  His opinions should be excluded.  *See KIND*, 2022 WL 4125065, at *11-12.

## II.  Sowers' Opinions Are Based on a Circular and Leading Control.

*Commercial Reasonableness.*  Plaintiffs do not dispute that Sowers' control packaging statement is not commercially viable.  Nor could they.  The bold red warning language "**CONTAINS <u>SOME</u> NATURAL INGREDIENTS\* \*contains one or more artificial ingredients**" that Sowers added to his control stimulus does not resemble the packaging of any personal or oral care products on the market.  That is enough to exclude his opinions.  *See, e.g.*, *THOIP v. Walt Disney Co.*, 788 F. Supp. 2d 168, 180-81 (S.D.N.Y. 2011) ("*THOIP II*"); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 591 (S.D.N.Y. 2007).

Plaintiffs do not even attempt to demonstrate that the control was commercially viable, but instead maintain that they could use any unrealistic control they wanted because this is a false advertising case, not a trademark likelihood-of-confusion case.  Opp. 11-12.  That purported distinction is made up out of whole cloth.  It is also inconsistent with Plaintiffs' and Sowers' insistence elsewhere that trademark law is highly relevant.  *See* Ex. 2 (Sowers Report) at 31 n.30; Opp. 5.  Nothing in the caselaw or literature supports Plaintiffs' use of a control so unreasonable that one respondent thought it looked like a "joke."  Ex. 3 (Verbatims), at G-3.

Plaintiffs cite ***no*** legal authority for their made up distinction, and neither of their two

other sources supports it.  They first cite Professor Diamond's *Trademark and Deceptive Advertising Surveys* treatise for the proposition that "controls for false advertising cases are not the same as controls for likelihood of confusion cases."  Opp. 11.  But the passage they cite simply lists four "'standard' ways of presenting respondents … with test and control stimuli" (such as showing the test and control stimuli to different groups of respondents, or showing all stimuli to the same respondents, but at different times).  Opp. Ex. 1 at 226-27.  And it identifies two such presentations as appropriate for false advertising or trademark secondary-meaning cases, and two as appropriate for likelihood-of-confusion surveys.  *Id.*  Nothing in that treatise supports ***designing*** a commercially unreasonable control stimulus in any context.  In fact, the treatise explains elsewhere that controls in false advertising cases, just as in likelihood of confusion cases, "should match the tested advertisement as closely as possible in every respect other than the aspect of the test stimulus alleged to contain the misinformation."  Reply Ex. 1 (Diamond Ch. 8) at 216-17 & n.178.

Plaintiffs' only other cited source, a Federal Trade Commission ("FTC") staff guidance document on best practices for making digital advertising disclosures, Opp. 12, has nothing to do with survey design.  It does not even mention surveys.  *See* Opp. Ex. 2.  And like the Diamond treatise, nothing in it supports Sowers'design of a commercially unreasonable control stimulus. In sum, Plaintiffs' only defense of Sowers' control is a distinction for which they cite no support.

Basic principles of good survey design apply in all contexts.  As Sowers himself agreed, a "good control" should "shar[e] as many similarities with the test condition but for the element whose influence is being tested."  Reply Ex. 2 (Sowers Tr.) 142:10-15; *accord THOIP II*, 788 F. Supp. 2d at 181 ("[A] control should share as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed." (citing Shari S. Diamond, Reference Guide on Survey Research, *in* Reference Manual

On Scientific Evidence 258 (Federal Judicial Center 2d ed. 2000))).  That principle applies in false advertising cases.  *See Longoria v. Million Dollar Corp.*, 2021 WL 791505, at *8 (D. Colo. Mar. 2, 2021) (observing, in Lanham Act false advertising case, that "survey designers will substitute for the contested mark a control that shares as many characteristics with the contested mark as possible"); *see also Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc.*, 2006 WL 2588002, at *24 (S.D.N.Y. Sept. 6, 2006) (Lanham Act false advertising).  Courts have thus properly excluded surveys offered in false advertising cases for using control stimuli that, like Sowers' here, included "a prominent disclaimer" that was "suggestive and implanted responses to closed-ended questions."  *Procter & Gamble*, 2006 WL 2588002, at *24.

*Circular Matching Test*.  Plaintiffs also do not dispute that using a control stimulus designed to match the language of a response option would artificially inflate Sowers' net deception rate.  But they insist that Sowers' use of "**CONTAINS <u>SOME</u> NATURAL INGREDIENTS\* \*contains one or more artificial ingredients**" as a control stimulus and his corresponding use of "Contains <u>some</u> natural ingredients and <u>some</u> artificial ingredients" as an answer choice did not have that effect.  According to Plaintiffs, this did not amount to a mere matching test because *not all* respondents performed the match correctly—1/3 of respondents selected the wrong "Contains <u>only</u> natural ingredients (i.e., no artificial ingredients)" option despite the bright red cue on the label.  Plaintiffs are wrong for two reasons.

First, Plaintiffs cannot seriously dispute that a reasonable respondent who was paying attention would have matched the "Contains <u>some</u> natural ingredients" stimulus to the answer choice that consisted of the identical language.  Indeed, nearly all of the remaining 2/3 of control respondents did just that.  Ex. 2 (Sowers Report) at 19 tbl.3, 32 tbl.6.  As Professor Kivetz explains, the fact that 1/3 of respondents gave the wrong answer indicates that Sowers' vague and leading questions caused those respondents to either hazard guesses or stop paying

attention—only two of the several forms of "noise" controls must capture.  *See* Ex. 8 (Kivetz Report) ¶ 117-18; Reply Ex. 1 (Diamond Ch. 8) at 212 (noting controls should also capture "bias" and "preconceptions").  That some respondents flunked this reading test does not validate Sowers' results.  *See Franklin Res. Inc. v. Franklin Credit Mgt. Corp.*, 988 F. Supp. 322, 335 (S.D.N.Y. 1997) ("Surveys which do nothing more than demonstrate the respondents' ability to read are not probative on the issue of [] consumer confusion.").

Second, Sowers' leading control did not need to influence many respondents to skew overall results.  Only approximately 400 respondents participated in each survey (200 in the test, and 200 in the control).  Even if only 25 control-group respondents were improperly influenced by the wording of Sowers' control stimulus to select the matching answer choice—as opposed to selecting the "<u>only</u> natural ingredients" answer—that would have yielded net deception rates of 14.2% for toothpaste and 12% for deodorant.  That the leading control stimulus did not work on *all* participants says nothing about whether it impacted Sowers' results.  It did, and Sowers' opinions should be excluded on that basis.  *See THOIP II*, 788 F. Supp. 2d at 181-82 (excluding survey where control, while accounting for some variables, "improperly inflat[ed] the results"); *Procter & Gamble*, 2006 WL 2588002, at *24 (excluding survey where "disclaimer was suggestive and implanted responses to closed-ended questions").

## III.    Sowers' Opinions Are Based on a Leading Closed-Ended Question.

Plaintiffs do not dispute that Sowers' opinions are based on a closed-ended question that supplied predetermined answer choices that *only* defined "natural" by reference to the presence or absence of "artificial ingredients."  Nor do they dispute that the surveys (1) never defined "artificial" and "contains," (2) used a circular definition of "natural," and (3) did not allow respondents to select an answer choice reflecting a different understanding of "natural."  But Plaintiffs contend that the Court must accept all of this because these obvious methodological

errors go to weight.  Opp. 1.  That is not the law.  Each of these errors independently warrants exclusion, and together, the "cumulative effect of the flaws mandates exclusion."  *Price*, 2020 WL 4937464, at *8-9 (excluding survey expert); *KIND*, 2022 WL 4125065, at *10-14.

### A.   Sowers' Key Closed-Ended Question Was Biased and Leading.

Plaintiffs admit that Sowers' answer choices—such as "Contains <u>only</u> natural ingredients (i.e., no artificial ingredients)"—tied the concept of "natural" to "no artificial ingredients," without testing any other understanding of "natural."  Opp. 3-4, 7.  The answer choices did so even though, as Plaintiffs acknowledge, there are multiple understandings of "natural."  Dkt. 272, at 12.  Indeed, Sowers himself discarded responses to his open-ended questions that suggested consumers hold other understandings.  To Sowers, "it really doesn't matter what [consumers] say."  Dkt. 233 ("Mot.") 20 (quoting Ex. 1 (Sowers Tr.) 195:18-23).  Nor did he care "to ask to consumers what they think 'natural' means," Ex. 1 (Sowers Tr.) 70:20-71:5—the exact same admission that Dennis made in *KIND*.  Mot. 18 n.5.  Like the flawed Dennis survey, so long as Sowers' survey participants were willing to check the "contains <u>only</u> natural ingredients" box, Sowers' work was done.[1]  That warrants exclusion.  *KIND*, 2022 WL 4125065, at *11-14; *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984).

Plaintiffs cannot paper over the inescapable parallels between Sowers' surveys and Dennis's survey in *KIND*.  Plaintiffs say that in *KIND*, unlike here, Dennis's closed-ended question "direct[ed] respondents with the phrase 'because of this [all natural] descriptor, what is your expectation for the product.'"  Opp. 16.  But that language was not the basis for Judge

---

[1] Plaintiffs suggest (in a section heading) that Sowers properly ignored open-ended responses because those questions were merely intended to "filter" and "funnel" respondents to his key closed-ended question.  Opp. 15.  But Plaintiffs do not explain what "filtering" or "funneling" function the open-ended questions served.  As Professor Kivetz explained, Sowers' open-ended questions did neither.  Reply Ex. 3 (Kivetz 2022 Tr. Excerpt) at 104:11-106:21.

Buchwald's decision to exclude the Dennis survey.  Plaintiffs also contend that, in *KIND*, Dennis sought "to test consumers' understanding of the term 'all natural,'" whereas Sowers "plainly is not seeking to evaluate respondents' definition of natural."  Opp. 20-21.  That misstates *KIND*. Just like Sowers here, Dennis claimed in *KIND* that his "exercise was *not* a general one of measuring consumers' opinions of the 'All Natural' claim in a vacuum."  Mot. at 18, n.5.

Plaintiffs also cannot distinguish *Nintendo*.  They say that the connection there found to be leading (between Donkey Kong and King Kong) was presented "directly in the question itself," but they fail to explain why that should matter.  Opp. 17.  It does not.  Nothing in *Nintendo* hinges on where in the survey the leading connection is made.  *See Nintendo*, 746 F.2d at 118.  What mattered was that respondents "were presented with the Donkey Kong-King Kong connection rather than permitted to make their own associations."  *Nintendo*, 746 F.2d at 118. Here, Sowers made the "natural-artificial" connection apparent in his closed-ended answer choices (and in bold red cues in his control packaging), achieving the same leading result.

### B.    Sowers Left Respondents Guessing What He Meant by "Natural."

Plaintiffs also offer no response to Defendants' argument that Sowers failed to define the key term "artificial," forcing respondents to guess at what counts as an "artificial" toothpaste or deodorant ingredient.  Mot. 21.  Plaintiffs point out that Sowers did define the term "natural." Opp. 18.  But Sowers defined "natural" to mean "no artificial [toothpaste or deodorant] ingredients," and according to him, "artificial" simply means "not natural," Ex. 1 (Sowers Tr.) 66:7-67:5, rendering his "definition" circular and meaningless.[2]

---

[2] Plaintiffs do not dispute that Sowers also did not define "contains."  As Judge Buchwald explained in *KIND*, "contains" must be defined in the context of a claim about natural ingredients.  2022 WL 4125065, at *12.  That is because it is not obvious, for example, whether "trace or residual amounts of chemicals that were used in processing ingredients" count as

Sowers thus forced respondents to guess what he meant.  Some respondents may have selected the "<u>only</u> natural ingredients (i.e., no artificial ingredients)" response option, thinking that answer related to minimal ingredient processing.  Others may have selected the same answer, thinking that it related to something else entirely.  Because Sowers did not define his terms, however, the factfinder has no way to know whether any of Sowers' survey responses evidences the type of deception Plaintiffs allege.

### C.    Sowers' Response Options Constrained Answers.

Plaintiffs contend throughout their opposition that Sowers' closed-ended question was not leading because it permitted respondents to select "Don't know/unsure" and "No opinion."  Opp. 4, 9-10, 17-19.  They do not, however, cite any authority holding that the inclusion of these options cures an otherwise leading question.  *KIND* demonstrates the opposite.  *See* 2022 WL 4125065, at \*10 (excluding survey with "Not sure/No expectation" option).

Nor do Plaintiffs respond to Defendants' argument that those response options leave no room for respondents who ***do*** have an opinion of what "natural" means that does not align with the "no artificial ingredients" theory presented.  Mot. 23.  Plaintiffs' argument that "the 'don't know/unsure' option" served "to provide respondents with an option if their opinion was not reflected in the other answer choices" makes no sense.  Opp. 19.  Consumers who ***knew*** they had opinions not reflected in the answer choices had no appropriate choice to select.

### CONCLUSION

The Court should exclude the opinions of Brian M. Sowers.

---

"containing" a non-natural ingredient.  *Id.*  Plaintiffs' only response is to dismiss Judge Buchwald's reasoning as "far-fetched" and "farcical," because consumers must have a "general understanding" of "contains" (and of "natural").  Opp. 18.  Consumers may well hold a general understanding of those words, but Sowers used them in a very specific context:  He asked whether consumers thought ***toothpaste or deodorant products*** "contain" ***artificial ingredients***.

Dated: December 16, 2022

O'MELVENY & MYERS LLP

BY: */s/ Hannah Y. Chanoine*

Hannah Y. Chanoine
Gerard A. Savaresse
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524
Telephone: (212) 326-2128
Facsimile: (212) 326-2061
Email: hchanoine@omm.com
Email: gsavaresse@omm.com

Richard B. Goetz (pro hac vice)
Carlos M. Lazatin (pro hac vice)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6655
Facsimile: (213) 430-6407
Email: rgoetz@omm.com
Email: clazatin@omm.com

*Attorneys for Defendants Colgate-Palmolive
Co., and Tom's of Maine, Inc.*