```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 03, 2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ANNE DE LACOUR, ANDREA WRIGHT,
and LOREE MORAN, individually and on
behalf of all others similarly situated,

                          Plaintiffs,

        v.

COLGATE-PALMOLIVE CO., and TOM'S
OF MAINE INC.,

                          Defendants.
-----------------------------------------------------X

16-CV-8364 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

      In this case, Plaintiffs challenge the use of the word "natural" by Tom's of Maine, Inc.

("Tom's") and its parent company, Colgate-Palmolive Co. ("Colgate") (collectively,

"Defendants") on the labels of their toothpaste and deodorant.  Plaintiffs allege that the use of the

word "natural" on these products is false and misleading, because the products "contain synthetic

[and/or] highly chemically processed ingredients."  (First Am. Compl. ¶¶ 13, 16, 18, 23

("FAC"), ECF No. 8.)  Plaintiffs contend that Defendants' "natural" labeling permitted

Defendants to sell the products at a price premium.  (*See id.* ¶ 14.)  Plaintiffs seek damages on

behalf of themselves and three classes (the "California Class," the "Florida Class," and the "New

York Class") pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code

§§ 1750 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; Florida's Deceptive

and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*; New York's General

Business Law ("NYGBL") §§ 349-350; and for breach of express warranty.  (*Id.* ¶¶ 5, 46-132.)

      Presently before the Court are: (1) Colgate's motion for summary judgment, (2) Tom's

motion for summary judgment, (3) Defendants' motions to exclude four of Plaintiffs' experts, and (4) Defendants' motion for class decertification. For the following reasons, Tom's motion for summary judgment is GRANTED, Defendants' motion to exclude the opinions of Mr. Brian Sowers ("Sowers") is GRANTED, Defendants' motion to decertify the classes is GRANTED, and the remaining motions are DENIED as moot.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed and derived from the Parties' Local Rule 56.1 statements and record evidence.[1]

### I.      Factual Background

Tom's is a wholly-owned subsidiary of Tom's of Maine Holdings, Inc., which is a wholly-owned subsidiary of Colgate. (Pls.' Resp. to Colgate's Rule 56.1 Statement ¶ 8, ECF No. 271.) Tom's manufactures personal care products, including toothpaste and deodorant. Tom's markets many of its toothpaste and deodorant products as "natural," including the 34 flavors of toothpaste and the 17 varieties of deodorant at issue in this litigation. (*See* Pls.' Resp. to Tom's Rule 56.1 Statement ¶ 1, ECF No. 275; *see also* Apr. 23, 2021 Op. & Order at 2, ECF No. 146.) As illustrated below, each toothpaste and deodorant product's packaging contains the representation that the product is "natural." (*See* Murphy Dep. at 58:16-60:4, 65:10-13, Westcot Decl. Ex. 1, ECF No. 276.)

---

[1] Defendants move the Court to take judicial notice of various publicly available documents and Plaintiffs do not object. (Req. Judicial Notice, ECF No. 248.) Therefore, the Court grants Defendants' motion and takes judicial notice of the documents. *See* Fed. R. Evid. 201(c).

 

 

(FAC ¶¶ 15, 17.)

Plaintiffs contend that Tom's "natural" labeling is false and misleading because the products at issue contain "synthetic [and/or] highly chemically processed" ingredients like aluminum chloralhydrate, glycerin, propylene glycol, sodium lauryl sulphate, sorbitol, and xylitol. (*Id.* ¶¶ 13, 16, 18, 23.) Plaintiffs claim that they were injured by Tom's "natural" representations because they were led to purchase the products at a price premium. (*Id.* ¶¶ 3-4.)

## II. Procedural History

Plaintiffs initiated this action on October 27, 2016 and filed a First Amended Complaint on December 9, 2016. (Compl., ECF No. 1; FAC.) Plaintiffs seek damages for violations of the CLRA, FAL, UCL, FDUTPA, NYGBL, and for breach of express warranty. (FAC ¶ 5.) On January 27, 2017, Defendants filed an Answer. (Answer, ECF No. 19.)

On September 10, 2018, Plaintiffs filed their first Motion for Class Certification pursuant

3

to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  (Pls.' First Mot. Class

Certification, ECF No. 63.)  Plaintiffs asked the Court to certify a nationwide class consisting of

"all persons in the United States who purchased Tom's of Maine deodorant and/or toothpaste

products . . . on or after September 24, 2015" as well as three subclasses of individuals who

purchased the products in New York, California, and Florida.  (*Id.*)  The Court denied Plaintiffs'

motion without prejudice, holding, in part, that Plaintiffs had not met their burden of establishing

that common questions predominated over individual issues with respect to the certification of

the nationwide class.  (Sept. 12, 2019 Op. & Order at 5-7, ECF No. 93.)

On February 21, 2020, Plaintiffs filed a Renewed Motion for Class Certification, no

longer seeking to certify a nationwide class, but instead seeking certification of three separate

state classes.  (Pls.' Renewed Mot. Class Certification, ECF No. 101.)  Taking Plaintiffs'

allegations as true at the class certification stage,[2] the Court granted Plaintiffs' motion in part,

and denied it in part.  (Apr. 23, 2021 Op. & Order at 32.)  The Court certified three classes (the

"California Class," the "Florida Class," and the "New York Class") consisting of "all persons

who purchased [covered] Tom's of Maine deodorant and/or toothpaste products . . . on or after

September 24, 2015" in California, Florida, or New York "excluding persons who purchased for

purpose of resale."[3]  (*Id.*)

Discovery has concluded, and Defendants have now filed motions for summary

judgment, motions to exclude Plaintiffs' experts, and a motion for class decertification.

---

[2] At class certification, Plaintiffs' allegations were accepted as true, and the Court credited Plaintiffs' proffered definition of "natural."  But at the summary judgment stage, Plaintiffs' allegations are no longer entitled to the assumption that they are true, and the Court must determine whether a reasonable consumer would share Plaintiffs' definition based on the current record.

[3] The Court denied Plaintiffs' motion to certify the New York Class with respect to the claims for relief pursuant to alleged breach of express warranty.  The Court held that individual questions predominate with respect to these claims because in assessing reliance, "the Court must evaluate *each* class member's knowledge of the truth or falsity of the products' 'natural' label."  (*Id.* at 22-23.)

**LEGAL STANDARDS**

## I.     Standard for Summary Judgment

A court shall grant summary judgment if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding a motion for summary judgment, a court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [the nonmoving party's] favor."  *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998).  A court's "function is not to weigh the evidence, make credibility determinations or resolve issues of fact," but rather to determine whether there are issues to be tried.  *Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir. 1997).  "'Conclusory allegations, conjecture, and speculation,' as well as the existence of a mere 'scintilla of evidence in support of the [nonmoving party's] position,' are insufficient to create a genuinely disputed fact."  *Hayes v. Dahlke*, 976 F.3d 259, 267–68 (2d Cir. 2020) (citations omitted).

## II.    Standard for Admissibility of Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  Rule 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education" to testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.

The party offering the expert's testimony has the burden of establishing its admissibility.  *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).  The district court serves as a "gatekeeper" tasked with ensuring that the expert is qualified; the expert's testimony is relevant; and the expert's testimony is reliable.  *See Nimely v. City of New York,* 414 F.3d 381, 396–97 (2d Cir. 2005); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265–68 (2d Cir. 2002).

A threshold question is whether an expert's proposed testimony is relevant.  "[T]he trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant."  *Amorgianos*, 303 F.3d at 265.  Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.").

In addition, an expert's testimony must be reliable.  In assessing the reliability of an expert's proposed testimony, the court considers "(1) whether [the] theory or technique 'can be (and has been) tested,' (2) 'whether the theory or technique has been subjected to peer review and publication,' (3) [the] technique's 'known or potential rate of error,' and 'the existence and maintenance of standards controlling the technique's operation,' and (4) whether [the] particular technique or theory has gained 'general acceptance' in the relevant scientific community."  *Amorgianos*, 303 F.3d at 266 (quoting *Daubert*, 509 U.S. at 593–94) (citations omitted).  These factors do not constitute a "definitive checklist or test" and the court's inquiry is

6

a "flexible one."  *Id.*

### III.   Standards for State Law Claims

Plaintiffs bring statutory claims pursuant to the CLRA, FAL, UCL, FDUTPA, and NYGBL, as well as breach of express warranty claims.  (*See* FAC ¶¶ 46-132.)

### A.  California Statutory Claims

Plaintiffs bring claims pursuant to California's CLRA, FAL, and UCL.  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  The FAL prohibits the dissemination of advertising that is deceptive, untrue, or misleading.  Cal. Bus. & Prof. Code § 17500.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Plaintiffs' claims under all three statutes are governed by the "reasonable consumer" standard, which requires Plaintiffs to show a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (2003)); *see also McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023).

### B.  Florida Statutory Claims

The FDUTPA declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204.  To bring a claim pursuant to the FDUTPA, a plaintiff must establish three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Carriuolo v. General Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016).  In order to satisfy the first element, the plaintiff must demonstrate that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances."  *Id.* at 983–84.

### C.  New York Statutory Claims

The NYGBL declares unlawful "[d]eceptive acts or practices" or "false advertising" in "the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §§ 349-350.  To make out a prima facie case pursuant to NYGBL §§ 349 or 350, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts [were] misleading in a material way, and (3) the plaintiff has been injured as a result."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521–22 (2d Cir. 2000).  Similar to California and Florida statutory law, this inquiry is objective: a deceptive act is one "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Id.* at 521.

### D.  Breach of Express Warranty Claims

Plaintiffs bring breach of express warranty claims pursuant to California, Florida, and New York law.  These claims fail if Plaintiffs cannot demonstrate that Defendants made false, deceptive, or misleading statements.  *See Strumlauf v. Starbucks Corp.*, No. 16-CV-1306, 2018 WL 306715, at *2, *4 (N.D. Cal. Jan. 5, 2018) ("[i]n California, New York, and Florida, a claim for breach of express warranty requires plaintiff to show that defendant made a false or misleading statement") (collecting cases).

### DISCUSSION

### I.     Tom's Motion for Summary Judgment

Plaintiffs claim that Tom's use of "natural" on its toothpaste and deodorant products is false or misleading because the products "contain synthetic [and/or] highly chemically processed ingredients."  (FAC ¶¶ 13, 16, 18, 23.)  Plaintiffs seek damages pursuant to the CLRA, FAL, UCL, FDUTPA, NYGBL, and for breach of express warranty.

For each cause of action, Plaintiffs must demonstrate that a "reasonable consumer" would likely be deceived by Tom's use of "natural" on its toothpaste and deodorant packaging. *See In re KIND LLC "Healthy and All Natural" Litig.*, 627 F. Supp. 3d 269, 282 (S.D.N.Y. 2022) (Buchwald, J.) (citing cases applying the reasonable consumer standard to CLRA, FAL, UCL, FDUTPA, and NYGBL claims). The reasonable consumer standard is an objective one, which "requires more than a mere possibility that [a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner*, 838 F.3d at 965 (quoting *Lavie*, 129 Cal. Rptr. 2d at 495). Rather, it requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* To survive summary judgment, Plaintiffs must "'introduce evidence that could support a finding that reasonable consumers believe' the plaintiffs' proffered theory of deception." *In re KIND*, 627 F. Supp. 3d at 282 (quoting *Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1026 (C.D. Cal. 2020)).

Here, Plaintiffs must offer evidence that could support a finding that a reasonable consumer understands that Tom's use of "natural" conveys that Tom's products do not contain synthetic and/or highly chemically processed ingredients. Plaintiffs proffer a range of evidence purporting to establish a reasonable consumer's understanding of "natural" that supports their theory of deception. Plaintiffs' evidence consists of Sowers's expert report, governmental guidance, Named Plaintiffs' definitions, Tom's internal documents, and the testimony of Tom's employees. This evidence is either inadmissible or insufficient to establish a reasonable consumer's understanding of "natural," for reasons set forth *infra*.

### A.  Sowers's Report

Sowers designed two surveys, one for toothpaste and one for deodorant, to test whether consumers were misled by Tom's "natural" claims.  Respondents were shown products that had the "natural" labeling at issue here.  (*See* Sowers Rpt. ¶¶ 23, 55, Chanoine Decl. Ex. 2, ECF No. 234.)  Respondents were then asked a series of questions.[4]  (*See id.* ¶¶ 35-39, 67-71.)  Sowers's conclusions rest on respondents' answers to only one of his questions: whether the use of the word "natural" on Tom's products and packaging conveyed that the products contained "<u>only</u> natural ingredients (i.e., no artificial ingredients)[,] <u>some</u> natural ingredients and <u>some</u> artificial ingredients[,] [or] <u>no</u> natural ingredients (i.e., only artificial ingredients)."[5]  (*Id.* at ¶¶ 39, 71.)  This question, however, is fatally flawed because (1) Sowers defined "natural" and "artificial" only in relation to each other (i.e., that "natural" means not artificial and "artificial" means not natural), (*see* Pls.' Mem. Opp. at 18, ECF No. 260), and (2) the words "natural" and "artificial" are ambiguous.  Because Sowers failed to provide respondents with adequate definitions of "natural" or "artificial," no meaningful conclusion can be drawn from respondents' answers.[6]  *See Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242, 2020 WL 1503452, at *8 (S.D.N.Y. Mar. 30, 2020) (Caproni, J.) (excluding a survey, in part, because the survey used

---

[4] In addition to the question cited in the next sentence, Sowers asked respondents: (1) "What was the main message communicated to you by the product packaging?"; (2) "What other messages, if any, were communicated to you by the product packaging?"; (3) "Did the product packaging communicate anything about whether or not the [toothpaste/deodorant] is natural?"; (4) "What <u>did</u> the product packaging communicate about whether or not the [toothpaste/deodorant] is natural?"  (*See* Sowers Rpt. ¶¶ 35-39, 67-71.)  As stated in the text above, Sowers did not rely on respondents' answers to these questions in reaching his conclusions.  (Pls.' Resp. to Tom's Rule 56.1 Statement ¶ 148.)

[5] Respondents could also select "No opinion" or "Don't know/Unsure."  (Sowers Rpt. ¶ 13.)

[6] Plaintiffs attempt to overcome this flaw, in part, by asserting that consumers have a "general understanding of the plain English meaning of the word 'natural.'"  (Pls.' Mem. Opp. at 18.)  Respondents' answers to Sowers's fourth question in fn 4, *supra*, demonstrate that consumers have many differing understandings of the term.  When Sowers asked: "What did the product packaging communicate about whether or not the [toothpaste/deodorant] is natural?" (Sowers Rpt. ¶¶ 38, 70), respondents stated, among other things, that "natural" communicated: "certified organic," "earthy," "[n]o animal testing, recyclable," "[n]o aluminum," and, even less helpfully, "natural."  (Defs.' Mem. Supp. at 8, ECF No. 233; Chanoine Decl. Ex. 3.)

undefined and ambiguous terms).  Consequently, Sowers's report and his testimony regarding the report are inadmissible.

### B.  Other Evidence in the Record

To support their view of a reasonable consumer's understanding of "natural," Plaintiffs point to governmental guidance,[7] Named Plaintiffs' definitions, Tom's internal documents, and the testimony of Tom's employees.  This evidence, however, fails to demonstrate that a reasonable consumer understands that Tom's use of "natural" conveys that Tom's products do not contain synthetic and/or highly chemically processed ingredients.  Rather, the evidence shows that there are many interpretations of the word "natural."

First, there is no governmental guidance regarding the use of "natural" labeling on personal care products.  (*See* Pls.' Resp. to Tom's Rule 56.1 Statement ¶ 155.)  The most analogous guidance is with respect to food products.  The governmental agencies that have attempted to ascribe meaning to "natural" as used on food products have not agreed with one another.

In 1982, the United States Department of Agriculture issued a memorandum stating that, for meat and poultry products, "natural" means free of "artificial flavor[s] or flavoring[s], coloring ingredient[s], or chemical preservative[s] . . . or any other artificial or synthetic ingredient[s]" and "not more than minimally processed."  *See* Product Labeling: Definition of the

---

[7] Plaintiffs also point to Better Business Bureau National Advertising Division ("NAD") decisions from 1998, 2013, and 2016.  (Westcot Decl. Exs. 7-9.)  In 1998, NAD found that representing that a mouthwash contained "Pure, simple ingredients from nature" could be misleading because it contained poloxamer 335 that may "be literally sourced in nature[] (as is every chemical substance), [but] [] is, nevertheless subjected to extensive processing before metamorphosing into the emulsifying agent that is included in the final product."  (*Id.* Ex. 7 at 5-6.)  In 2013, NAD recommended that a company discontinue advertising its nail polish as "natural" because an ingredient was derived from "'cracking' or breaking carbon bonds under pressure, a chemical alteration of [] castor oil." (*Id.* Ex. 9 at 5-6.)  In 2016, NAD concluded that labeling an antiperspirant as, among other things, "naturally dry" "conveys an express[, and unsupported,] message that natural ingredients are responsible for the dryness provided by [the] antiperspirant," when the ingredient responsible is extensively processed, and therefore, not natural.  (*Id.* Ex. 8 at 12-15.)  Plaintiffs do not point to evidence suggesting that a reasonable consumer's views align with NAD's views.

11

Term "Natural," 71 Fed. Reg. 70503, 70504 (Dec. 5, 2006); *see also* OFF. OF POL'Y,

PROGRAM & EMP. DEV., FOOD SAFETY & INSPECTION SERV., U.S. DEP'T AGRIC.,

FOOD STANDARDS AND LABELING POLICY BOOK (2005).

In about 1988, the United States Food and Drug Administration ("FDA") stated that

"natural" means "nothing artificial or synthetic . . . [has been] included in, or has been added to,

the product that would *not normally be expected to be there*."  *See* Food Labeling: Nutrient

Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60421, 60466

(proposed Nov. 27, 1991) (emphasis added); *see also Use of the Term Natural on Food Labeling*,

U.S. Food & Drug Admin. (Oct. 22, 2018), https://www.fda.gov/food/food-labeling-

nutrition/use-term-natural-food-labeling.[8]

In 2015, the FDA solicited public comments with respect to the use of "natural" on food

product packaging.  *See* Use of the Term "Natural" in the Labeling of Human Food Products, 80

Fed. Reg. 69905 (Nov. 12, 2015).  The FDA received over 7,000 comments.  The comments

reflected many possible interpretations of the word "natural," including "organic," "minimally

processed," "chemical free," "hormone free," "non-GMO," and "not 'artificial'/'synthetic.'"  *See*

*generally* Comment Letters on Use of the Term "Natural" in the Labeling of Human Food

Products, https://www.regulations.gov/docket/FDA-2014-N-1207/comments (last visited Jan. 02,

2024).  After receiving these public comments, the FDA did not promulgate a definition.

In addition to the fact that there is no governmental guidance regarding the use of

"natural" labeling on personal care products, and because governmental attempts to define

"natural" on food products have not resulted in a consistent definition of "natural," Plaintiffs

---

[8] This definition is not helpful here, given that a factfinder could not know what a reasonable consumer would normally expect to be in toothpaste or a deodorant.

cannot rely on governmental guidance to establish a reasonable consumer's understanding of "natural."  *See In re Kind*, 627 F. Supp. 3d at 284 (noting that plaintiffs could not rely on an objective, regulatory definition of "All Natural" to demonstrate a reasonable consumer's understanding of the term, in part, because no such definition existed).

Second, Plaintiffs cannot rely on Named Plaintiffs' testimony[9] to demonstrate a reasonable consumer's understanding of "natural."  Named Plaintiffs have offered nothing to show that their views of the word "natural" reflect those held by a reasonable consumer, rather than their own subjective beliefs.  *See Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 872 (E.D.N.Y. 2018) (concluding plaintiffs' "conclusory allegations and 'anecdotal' testimony" were insufficient to create a genuine issue of material fact as to deception).

Finally, Plaintiffs cannot rely on Tom's internal documents or the testimony of Defendants' employees to support their theory of deception.[10]  None of Tom's internal documents provides a basis for a factfinder to determine a reasonable consumer's understanding of "natural."  The statements of Defendants' employees do not represent a reasonable consumer's understanding of "natural," but rather the views of each individual.

Plaintiffs have failed to produce evidence that a reasonable consumer interprets "natural" in the manner Plaintiffs allege.  Therefore, there is no triable issue of fact as to deception. Defendants are entitled to summary judgment with respect to Plaintiffs' CLRA, FAL, UCL, FDUTPA, NYGBL, and breach of express warranty claims.  *See Tran*, 471 F. Supp. 3d at 1026–29 (granting summary judgment to defendants where plaintiffs failed to offer evidence that

---

[9] Plaintiff Wright defines natural as "organic, natural, no synthetic type stuff."  (Wright Dep. 42:23-44:1, Chanoine Decl. Ex. 25, ECF No. 244.)  Plaintiff de Lacour defines natural as "not altered, chemically altered, comes from nature."  (De Lacour Dep. 30:12-31:16, *id.* Ex. 27.)  Plaintiff Moran defines "natural" as "existing in nature and not made or caused by people[;] coming from nature."  (Moran Dep. 137:5-142:3, *id.* Ex. 26.)

[10] Tom's internal documents include ██████████████████████████ ████████████████████████.  (*See* Westcot Decl. Exs. 11-16, 19, 24.)

13

"reasonable consumers believe[d] the word 'Pure' on [defendants' product] label mean[t] that there [would] be no *trace amounts* of pesticide in their honey") (emphasis in original); *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-CV-1228, 2022 WL 991518, at *21 (N.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-CV, 2023 WL 3829559 (2d Cir. June 6, 2023) (granting summary judgment to defendants where plaintiff did not "provide[] admissible evidence demonstrating that the 'Biologically Appropriate' label [on defendant's pet food] would lead a reasonable consumer to believe the products contained no heavy metals or BPA.").

## II.   Defendants' Motion for Class Decertification

Defendants have also moved to decertify the classes.  A district court has an "affirmative duty [to] monitor[] its class decisions" as the evidentiary record develops, and may decertify a class if the requirements of Rule 23 are not met.  *See Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (quotations omitted).  A key requirement of Rule 23(b)(3) is that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Here, discovery has shown that there is no support for Plaintiffs' allegation that reasonable consumers understand that Tom's use of "natural" conveys that Tom's products do not contain synthetic and/or highly chemically processed ingredients.  There is no generalized proof of deception, and thus common issues of fact do not predominate in this case.  Accordingly, the Court decertifies the classes.

## CONCLUSION

For the foregoing reasons, Tom's motion for summary judgment is GRANTED,

Defendants' motion to exclude the opinions of Sowers is GRANTED, Defendants' motion to

decertify the classes is GRANTED, and Defendants' remaining motions are DENIED as moot.

The Clerk is respectfully directed to close the motions at ECF Nos. 217, 227, 232, 240, 248, 249,

253, and 256.

SO ORDERED.

Dated:  New York, New York
        January 03, 2024

                                    _____/s/ Kimba M. Wood_____
                                        KIMBA M. WOOD
                                    United States District Judge